**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SM MERGER/ARBITRAGE, LP and ASSOCIATED CAPITAL GROUP, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CEREVEL THERAPEUTICS HOLDINGS, INC., BAIN CAPITAL INVESTORS, LLC and PFIZER, INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

I. NATURE OF THE ACTION ........ 2

II. JURISDICTION AND VENUE ........ 5

III. PARTIES ........ 6

A. Plaintiffs ........ 6

B. Defendants ........ 6

IV. FACTUAL ALLEGATIONS ........ 7

A. Bain Forms Cerevel Therapeutics in 2018 ........ 7

B. Cerevel Goes Public Through a De-SPAC Transaction and Enters into a Shareholder Rights Agreement ........ 7

C. Bain and Pfizer Maintain Control of Cerevel Following the De-SPAC ........ 9

D. Bain Appoints Its Partner Ron Renaud as Cerevel's CEO while Managing Cerevel's Search for Regional Partners ........ 10

E. While in Possession of Material Nonpublic Information Regarding AbbVie's Interest in a Whole-Company Acquisition, Bain Exercises its Control to Cause Cerevel to Issue a Misleading Offering Document and Allow Itself to Purchase 5,480,052 Shares at a Deep Discount ........ 13

F. AbbVie and Cerevel Continue to Negotiate and Ultimately Agree that AbbVie Will Acquire Cerevel at Nearly Double the October Offering Price ........ 15

G. Bain and Pfizer Cause Cerevel To Issue a False and Misleading Proxy Statement Misleads Investors In Order To Garner Shareholder Support for the Merger ........ 17

V. ADDITIONAL ALLEGATIONS RELATING TO DEFENDANTS' SCIENTER (RELATING TO THE FRAUD CLAIMS ONLY) ........ 18

VI. FALSE AND MISLEADING STATEMENTS ........ 19

A. October 11, 2023 Press Release ........ 19

B. October 11, 2024 Preliminary Prospectus Supplement ........ 19

C. October 12, 2023 Form 8-K and Press Release ........ 20

D. October 12, 2023 Prospectus ........ 20

E. November 1, 2023 Earnings Call ........ 21

F. December 6, 2023 Merger Announcement ... 21

G. January 18, 2024 Proxy Statement ... 22

VII. LOSS CAUSATION ... 23

VIII. CLASS ACTION ALLEGATIONS ... 24

IX. APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE) ... 25

X. NO SAFE HARBOR ... 27

COUNT I Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against Cerevel ... 28

COUNT II Violation of Section 20A of The Exchange Act Against Bain ... 30

COUNT III Violation of Section 14(a) of The Exchange Act Against Cerevel ... 31

COUNT IV Violation of Section 20(a) of The Exchange Act Against Bain and Pfizer ... 32

PRAYER FOR RELIEF ... 33

JURY TRIAL DEMANDED ... 33

Plaintiffs, by and through their attorneys, bring this action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act") against Defendants Cerevel Therapeutics Holdings, Inc. ("Cerevel" or the "Company") and Cerevel's controlling shareholders, Bain Capital Investors, Inc. ("Bain") and Pfizer, Inc. ("Pfizer," and, collectively with Cerevel and Bain, "Defendants"), on behalf of themselves and all other persons or entities that:

(a) sold or otherwise disposed of the publicly-traded common stock of Cerevel during the period from October 11, 2023 through August 1, 2024, inclusive (the "Class Period") and thus were damaged by Defendants' violations of Section 10(b) of the Exchange Act (the "Fraud Claim Class");

(b) held shares of Cerevel as of the January 8, 2024 record date ("Record Date") and were entitled to vote on the merger of Cerevel and AbbVie Inc. ("AbbVie") and thus were damaged by Defendants' violations of Section 14(a) of the Exchange Act (the "Proxy Claim Class"); and

(c) sold shares of Cerevel stock contemporaneously with Bain Capital's purchase of shares on or about October 16, 2023 and thus were damaged by Bain's violations of Section 20A of the Exchange Act (the "Insider Trading Claim Class," and collectively with the Fraud Claim Class and the Proxy Claim Class, the "Class").

Plaintiffs allege upon personal knowledge with respect to their own actions and upon information and belief with respect to all other allegations, which is based upon, among other things, Plaintiffs' counsel investigation. Plaintiffs' counsel's investigation has included, without limitation, a review and analysis of: (a) regulatory filings concerning Cerevel with the U.S. Securities and Exchange Commission ("SEC"); (b) press releases and investor information issued and disseminated by Cerevel; (c) other publicly available information concerning Cerevel

including, without limitation, securities analyst reports and media reports; and (d) public versions of verified pleadings and othering filings in *SEIU Pension Plans Master Trust v. Bain Capital Investors, LLC*, C.A. No. 2024-1274-JTL, currently pending in the Delaware Court of Chancery.

Plaintiffs believe that substantial additional evidentiary support is likely to exist for the allegations set forth herein after a reasonable opportunity for further investigation or discovery

## I. NATURE OF THE ACTION

1. This Action seeks to recover damages on behalf of shareholders damaged by omissions and wrongdoing in connection with Cerevel's October 16, 2023 secondary stock offering (the "October Offering") and related false and misleading statements in Cerevel's January 18, 2024 Proxy Statement ("Proxy") for AbbVie's acquisition of Cerevel for $45 per share (the "Merger").

2. The October Offering was orchestrated by Cerevel's controlling shareholders, Bain and Pfizer, in order for Bain to increase its investment at a deeply discounted price in advance of AbbVie's forthcoming acquisition of Cerevel. Bain purchased millions of shares from the October Offering for just $22.81 per share while in possession of material nonpublic information regarding Cerevel's negotiations to be acquired with AbbVie. Moreover, Bain and Pfizer controlled Cerevel and Cerevel's public statements that failed to disclose those negotiations or even that Cerevel was for sale.

3. Just 51 days after the October Offering, Cerevel publicly announced that AbbVie agreed to acquire Cerevel for $45 per share – *i.e.* nearly double the offering price. Bain's discounted purchases from the October Offering resulted in it receiving a ***windfall of more than $120 million***.

* * *

4. Cerevel was a Massachusetts-based biopharmaceutical company co-founded in 2018 by contributions of neuroscience assets from Pfizer Inc. and monetary investment from Bain. In 2020, Cerevel went public through a merger with a Special Purpose Acquisition Company ("SPAC"), Arya Sciences Acquisition Corp. II ("Arya").

5. In connection with the de-SPAC transaction, Bain and Pfizer continued to maintain control of Cerevel, including, among other things, collectively owning 51.3% of the voting stock of Cerevel (as of January 8, 2024) and possessing the right to nominate the majority of Cerevel's Board of Directors (the "Board"). Bain and Pfizer also had certain rights to cause Cerevel to issue additional stock and to purchase their pro-rata share of any additional stock offerings, effectively guaranteeing that Bain and Pfizer would remain in control of the Company. Moreover, on May 3, 2023, Cerevel announced that Bain Capital Partner Ronald Renaud would become the Chief Executive Officer ("CEO") of Cerevel.

6. Also in May 2023, Cerevel's ongoing search for oversees partners led to bioscience-giant AbbVie making an initial offer to work with Cerevel as its Japanese regional partner. However, undisclosed to investors, by no later than September 23, 2023, AbbVie had informed Cerevel that it had shifted its interest from a regional partnership to instead pursuing a whole-Company acquisition of Cerevel.

7. Just two weeks later, and after at least one meeting to discuss a potential acquisition of the Company by AbbVie between the Cerevel Board and its financial advisors at Centerview Partners ("Centerview"), on October 10, 2023, Cerevel's Board—of which Bain appointed 6 of 12 members and Pfizer appointed two additional members—approved a secondary stock offering, which the Company publicly represented was purportedly to extend the company's cash runway into 2026. The next day, October 11, 2023, Cerevel publicly announced the offering of 19,728,189

shares at a price of $22.81 per share, raising a total of just under $500 million when the offering closed on October 16, 2023.

8. Bain and Pfizer, which at all relevant times controlled Cerevel, orchestrated the October Offering to increase Bain's position in advance of the lucrative—and at the time non-public—AbbVie merger. Specifically, Bain acquired 5,480,052 shares of common stock in the October Offering for $22.81 per share, paying approximately $125 million in total.

9. Nowhere did the October Offering documents disclose that AbbVie had expressed interest in a whole-company acquisition prior to the offering, nor that the Cerevel Board had met with Centerview to launch a sales process in response to AbbVie's interest in a whole company acquisition. These omissions of material facts artificially deflated the price of Cerevel's stock, permitting Bain to acquire shares from the October Offering at a deep discount at the expense of the Insider Trading Class.

10. Just 51 days after the October Offering closed, Cerevel announced it had agreed to be acquired by AbbVie for $45 per share. The December 6, 2023 merger announcement partially corrected Cerevel's October omission of advanced talks with AbbVie and the launch of a sales process. However, the merger announcement, as well as the Proxy issued on January 18, 2024, continued to mislead investors about Cerevel's sale process, the real reason for the October Offering, and the truth regarding the timing of AbbVie's interest in an acquisition.

11. At the $45 per share merger price, the 5,480,052 shares Bain acquired in the October Offering were worth $246,602,340, meaning Bain made an approximate $121.6 million profit on the shares it had acquired from the October Offering just 51 days prior. Bain's purchases in the October Offering were made while Bain was in possession of material nonpublic information

regarding AbbVie's interest in a whole-company acquisition and the advanced stage of negotiations.

12. The Fraud Claim Class and Proxy Claim Class were also damaged by false and misleading statements in Cerevel's Proxy statement, which misled investors regarding the true nature and timing of the sales process and related conflicts, including but not limited to that the process and October Offering were orchestrated by Bain in order to maximize its profits and rush through a sale of the Company even if it was not in the best interest of public shareholders.

## II. JURISDICTION AND VENUE

13. The claims asserted herein arise under Sections 10(b), 14(a), 20A and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, giving this Court jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this judicial district, as Cerevel was incorporated in this district. Many of the acts charged herein, including the omissions of material facts and dissemination of materially false or misleading information, occurred in substantial part in this judicial district.

15. In connection with the acts, transactions and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## III. PARTIES

### A. Plaintiffs

16. SM Merger/Arbitrage, LP ("SM Merger/Arbitrage") is a private hedge fund overseen by its investment manager, S. Muoio & Co. LLC. SM Merger/Arbitrage's principal place of business is located at 509 Madison Avenue, New York, NY.

17. Associated Capital Group, Inc. ("Associated Capital") is a private hedge fund overseen by its investment manager, S. Muoio & Co. LLC. Associated Capital's principal place of business is located at 191 Mason Street, Greenwich, CT.

### B. Defendants

18. Defendant Cerevel Therapeutics Holdings, Inc. was a Delaware corporation with its principal executive offices located Cambridge, Massachusetts. On August 1, 2024, Cerevel was acquired by AbbVie Inc. Prior to the acquisition, Cerevel's stock traded on the NASDAQ under the symbol "CERE".

19. Defendant Bain Capital Investors, LLC, which includes its subsidiary BC Perception Holdings, LP (and is collectively referred to herein as "Bain"), is a multi-asset alternative investment firm based in Boston, Massachusetts. Bain has more than $185 billion in assets under management. Bain, along with Pfizer Inc., co-founded Cerevel and controlled the Company during the Class Period.

20. Defendant Pfizer, Inc. is a pharmaceutical company headquartered in New York, New York. Pfizer co-founded Cerevel with Bain in 2018 and alongside Bain maintained significant control over the Company during the Class Period.

## IV. FACTUAL ALLEGATIONS

### A. Bain Forms Cerevel Therapeutics in 2018

21. Cerevel Therapeutics was formed on July 23, 2018 by Bain Capital and Pfizer Inc. as a biopharmaceutical company focused on developing drug candidates to treat disorders of the central nervous system ("CNS").

22. The Company was created by the contribution of pre-commercial neuroscience assets from Pfizer and a monetary investment by Bain. Specifically, Pfizer contributed a portfolio of pre-commercial neuroscience assets to Cerevel, which included three clinical-stage compounds and several pre-clinical compounds designed to target a broad range of CNS disorders including Parkinson's, Alzheimer's, epilepsy, schizophrenia and addiction. Funds affiliated with Bain Capital Private Equity and Bain Capital Life Sciences committed $350 million and indicated they had the ability to provide additional capital should it be needed in the future.

23. At its inception, Bain held a 75% equity interest in Cerevel and Pfizer held a 25% equity interest in Cerevel.

24. Cerevel's initial Board consisted of four directors – two appointed by Bain and two appointed by Pfizer. Specifically, Bain appointed to the Cerevel Board two of its managing directors, Adam Koppel and Chris Gordon, while Pfizer appointed two of its senior vice presidents, Morris Birnbaum and Doug Giordano.

### B. Cerevel Goes Public Through a De-SPAC Transaction and Enters into a Shareholder Rights Agreement

25. On July 30, 2020, Cerevel announced it would merge with Arya Sciences Acquisition Corp II ("Arya"), a special purpose acquisition company (SPAC), sponsored by Perceptive Advisors. Perceptive Advisors is a private equity and private credit investment

management company focused on the life sciences industry with approximately $8 billion in assets under management.

26. Upon the closing of the merger on October 28, 2020 (the "De-SPAC Transaction"), Arya II redomiciled as a Delaware corporation, was renamed Cerevel Therapeutics Holdings, Inc. and Arya II's common stock was listed on NASDAQ under the ticker symbol "CERE."

27. Cerevel received proceeds of approximately $467 million from the De-SPAC Transaction before transaction expenses, which included cash proceeds of about $147 million from Arya II's trust account and $320 million from private investment in public equity ("PIPE") investors. The PIPE investors included Perceptive, Bain, Pfizer and other institutional investors. Defendant Bain contributed $100 million through the PIPE, while Defendant Pfizer contributed $12 million.

28. Immediately following the De-SPAC Transaction, the prior owners of Cerevel (i.e. Defendant Bain, Defendant Pfizer and certain Cerevel management), owned approximately 68.63% of the outstanding Cerevel publicly traded stock.

29. In connection with the merger, Cerevel entered into an Amended and Restated Registration and Shareholder Rights Agreement, dated October 27, 2020, by and among Bain, Pfizer, Cerevel and certain other Cerevel stockholders (the "Shareholder Rights Agreement"). The Shareholder Rights Agreement provided Bain the right to nominate six representatives to Cerevel's 12-person board of directors (with two such representatives required to be independent and subject to Pfizer's prior written consent). The Shareholder Rights Agreement also provided Pfizer the right to nominate two representatives to the Board.

30. The Shareholder Rights Agreement also provided Bain and Pfizer the right to require Cerevel to offer additional shares to the public. Specifically, the Shareholder Rights

Agreement provided Bain and Pfizer the right to require Cerevel to file a registration statement and use reasonable best efforts to cause the registration of all or part of their registrable securities (the "Demand Registration Rights"). The Shareholder Rights Agreement also provided Bain and Pfizer to file a shelf registration statement pursuant to Rule 415 of the Securities Act and use reasonable best efforts to cause the registration of all or a portion of their registrable securities (the "Shelf registration rights").

31. Finally, the Shareholder Rights agreement gave Bain and Pfizer preemptive rights to purchase their *pro rata* portion of newly issued Cerevel common stock in connection with future stock offerings.

**C. Bain and Pfizer Maintain Control of Cerevel Following the De-SPAC**

32. Based on their majority ownership of Cerevel's outstanding stock and the nomination of the majority of Cerevel's board of directors, Bain and Pfizer collectively controlled Cerevel following the De-SPAC Transaction.

33. Bain and Pfizer's control of Cerevel continued at all relevant times following the De-SPAC Transaction through the 2024 merger with AbbVie. Indeed, in its SEC filings, Cerevel indicated it is a "controlled company" under the applicable NASDAQ rules. Cerevel's 2023 Form 10-K (filed February 27, 2024) also warned that "Bain Investors and Pfizer have significant influence over us, and may have interests different from yours." The warning continued, noting that "As of December 31, 2023, Bain Investors and Pfizer own, collectively, approximately 51.3% of the outstanding shares of our common stock. Furthermore, so long as they own certain specified amounts of our equity securities, Bain Investor and Pfizer have certain rights to nominate our directors. As long as such entities each own or control a significant percentage of outstanding voting power, they will have the ability to strongly influence all corporate actions requiring stockholder approval, including the election and removal of directors and the size of our board of

directors, any amendment of our certificate of incorporation or bylaws, or the approval of the Merger or any other merger or other significant corporate transaction, including a sale of substantially all of our assets."

**D. Bain Appoints Its Partner Ron Renaud as Cerevel's CEO while Managing Cerevel's Search for Regional Partners**

34. In early 2023, Cerevel engaged in discussions regarding various regional partnerships for emraclidine, its M4-selective positive allosteric modulator in development for schizophrenia and Alzheimer's disease psychosis and lead asset. As part of that process, representatives of Cerevel contacted 17 potential counterparties who might be interested in a Japan partnership for emraclidine, including AbbVie, and executed confidentiality agreements with eight potential partners, including with AbbVie.

35. On May 3, 2023, Cerevel announced the appointment of Ronald Renaud as President, Chief Executive Officer and a member of the Board, effective June 12, 2023. Renaud was previously a partner at Defendant Bain and following his appointment as Cerevel CEO remained at Bain as a Senior Advisor.

36. On a May 3, 2023 earnings call coinciding with the announcement of the appointment of Renaud as CEO, an analyst as Evercore ISI Institutional Equities asked about Cerevel's potential pursuit of a strategic transactions, noting that "An SEC filing recently surfaced which said that your SAPC sponsor is currently engaging in preliminary discussions about a potential strategic transaction. Tony, if you could offer any color on this, and is this in any way related to your stepping down as CEO?"

37. Mr. Coles, the then-CEO and Chairman of Cerevel, responded "Thanks for the question, Mike. And on the SEC filing from one of our investors, this was a filing that Perceptive made. There are no strategic transaction conversations underway, so I can dispense with that."

38. The next quarter, on its August 2, 2023 earnings, Cerevel and Renuad indicated that Cerevel was evaluating "partnerships and regional collaborations in service of meaningful value creation for our patients and our shareholders." Renuad did not discuss more comprehensive strategic transactions such as a sale of the whole company.

39. Also during the August 2, 2023 earnings call, Renaud indicated that Cerevel had $825 million in cash and marketable securities on its balance which, which provided the Company "runway comfortably into 2025." Renuad stated that "opportunistically bolstering the balance sheet remains a priority for the company to ensure we maintain the financial strength to maximize the value of our broad pipeline."

40. Under Renaud's leadership, Cerevel continued to pursue a potential regional partnership in Japan, including with AbbVie. AbbVie eventually made a non-binding offer to serve as Cerevel's Japanese partner for emraclidine in May 2023.

41. Discussions between Cerevel and AbbVie regarding a potential regional partnership in Japan continued until August 2023, at which point Cerevel indicated to AbbVie that its non-binding indicative terms were not sufficient for AbbVie to continue participating in the process.

42. On September 23, 2023, an email between Paul Burgess, Cerevel's Chief Business Development and Strategic Operations Officer, emailed Cerevel's financial advisors at Centerview a document regarding potential regional partnerships that indicated with respect to AbbVie that AbbVie "[i]ndicated interest in whole co," and the Company was "await[ing] term sheet, discuss next steps once received."

43. On September 25, 2023, AbbVie formally notified Cerevel that it was withdrawing its interest in a Japanese regional partnership with Cerevel.

44. According to the Proxy, during the September 25, 2023 discussion, AbbVie did not indicate its interest in a whole company acquisition. However, this statement in the Proxy is misleading because Burgess had emailed Cerevel's financial advisors at Centerview just two days before that AbbVie was indeed interested in a whole company acquisition and was awaiting a term sheet.

45. On September 27, 2023, Cerevel held a regularly scheduled board meeting where it invited its financial advisors at Centerview to discuss, among other things, a potential sale of Cerevel. Notably, the Board determined that Pfizer "could be an interested party if Cerevel were to engage in a strategic process for the potential acquisition of Cerevel" and decided to recuse Pfizer's two directors from the meeting.

46. At the September 27, 2023 meeting, Centerview advised Cerevel's Board that a sale of the company would be difficult prior to the company's highly anticipated emraclidine results, which were expected in December 2024.

47. According to the Proxy, at the September 27, 2023 meeting, the Board directed Cerevel management to continue to execute on its strategic plan and develop options to extend Cerevel's cash runway into 2026, which would be expected to provide Cerevel with at least 12 months of capital beyond the anticipated data readout of the Phase 2 trials of emraclidine for the treatment of schizophrenia in the second half of 2024.

48. According to the Proxy, the Board also directed Cerevel management to advise AbbVie "that Cerevel was focused on a potential regional partnership in Japan and was not considering other strategic transactions."

### E. While in Possession of Material Nonpublic Information Regarding AbbVie's Interest in a Whole-Company Acquisition, Bain Exercises its Control to Cause Cerevel to Issue a Misleading Offering Document and Allow Itself to Purchase 5,480,052 Shares at a Deep Discount

49. On October 10, 2023, Cerevel's Board, still controlled by Bain and Pfizer, approved a follow-on public offering. According to the Proxy, "the Board determined that extending the cash runway for Cerevel into 2026 by way of a public equity offering would best position Cerevel for future success was an offering to extend the company's cash runway into 2026."

50. On October 11, 2023, Cerevel publicly announced the offering of $400 million of its shares, which ultimately led to Cerevel offering 19,728,189 shares at a price of $22.81 per share, raising a total of just under $500 million (the "October Offering").

51. The October Offering was announced through a press release and the filing of a Preliminary Prospectus Supplement to a registration statement on Form S-3 (known as a "shelf" registration) dated November 18, 2022.

52. In a section titled "Use Of Proceeds" the October 11, 2023 Preliminary Prospectus Supplement stated "We currently intend to use the net proceeds from this offering, together with our existing cash, cash equivalents and marketable securities, to support our ongoing and planned clinical trials and other research and development activities, and for working capital and other general corporate purposes, including to extend our cash runway into 2026."

53. Neither the October 11, 2023 Press Release nor the Preliminary Prospectus disclosed that Cerevel was in discussions with AbbVie regarding a whole-company sale, nor that just days earlier the Cerevel Board had met with its financial advisors at Centerview regarding AbbVie's interest and other potential strategic transactions.

54. On October 12, 2023, Cerevel filed a Form 8-K with the SEC, which attached copies of Cerevel's underwriting agreement with Goldman Sachs & Co. LLC and a copy of the October 11, 2023 Press Release.

55. Also on October 12, 2023, Cerevel filed a Prospectus Supplement regarding the offering. The October 12, 2023 Prospectus Supplement also failed to disclose the ongoing discussions with AbbVie and related Board meeting with Centerview.

56. The October Offering closed on October 16, 2023. In total, Cerevel offered 19,728,189 Shares for $22.81 per share, raising just shy of $500 million.

57. Bain acquired 5,480,052 shares of common stock from the October Offering for $124,999,986. Bain filed a Schedule 13D on October 18, 2023 disclosing the purchase of shares from the October Offering, and Bain's acquisition of shares through the offering was reported by at least one financial news outlet on October 19, 2023.

58. According to Schedule 13D's filed on October 18, 2023, after the October Offering Bain held 65,679,781 shares of Cerevel, representing approximately 36.5% of Cerevel's outstanding stock, and Pfizer owned 27,349,211 shares of Cerevel, or 15.2% of the Cerevel's outstanding stock. Bain's Schedule 13D noted that as a result of certain "voting arrangements", Bain and Pfizer "may be deemed to be a group for purposes of Section 13(d) under the Securities Exchange Act of 1934, as amended". Together, Bain and Pfizer continued to control the Company, including together owning approximately 51.7% of Cerevel's outstanding stock.

59. Bain's October 18, 2023 Schedule 13D also disclosed that it had entered into a lock-up agreement with Cerevel and its "pursuant to which the Reporting Person agreed, subject to certain exceptions, not to sell or offer to sell any shares of Common Stock or securities convertible into or exercisable or exchangeable for, shares of Common Stock for a period of 45 days after the

date of the prospectus relating to the October 2023 Offering without the prior written consent of the representative." (the "October Lock-Up Agreement"). The October Lock-Up Agreement thus was set to expire on November 26, 2023.

60. Through Bain's control of Cerevel through its stock ownership, appointment of Renaud as CEO, and control of the Board, Bain had material nonpublic information regarding the status of the ongoing negotiations with AbbVie for a whole-company acquisition at the time it purchased shares from the October Offering.

**F. AbbVie and Cerevel Continue to Negotiate and Ultimately Agree that AbbVie Will Acquire Cerevel at Nearly Double the October Offering Price**

61. On October 19, 2023, AbbVie made a written, nonbinding indication of interest to acquire Cerevel for $35.00 per share. The $35 per share offer was at a premium of 53% to the October Offering price set less than week prior.

62. On October 24, 2023, the Cerevel Board met to consider AbbVie's $35 per share proposal. According to the Proxy, after discussion with Centerview and legal counsel, the Cerevel Board determined to respond to AbbVie that the $35 per share offer was insufficient and that AbbVie would need to meaningfully increase its offer for the Board to consider a strategic transaction.

63. Cerevel and Bain continued to hide AbbVie's interest and the real reason for the October Offering during Cerevel's November 1, 2023 earnings call. Specifically, when asked "what drove the decision to proactively raise equity capital ahead of your multiple clinical data events in 2024," CEO Renaud responded "on the capital raise . . . I think largely, this was one thing that we have been talking to a number of investors about over the last few months. And there was significant amount of interest in doing the raise from outside investors. And so we thought it was a good time to do that so that we could really be focused on execution in 2024." Cerevel CFO

Altschuller added to Renaud's response on the capital raise, reiterating that the purpose of the cash raise was to "get[] us into 2026."

64. Despite again omitting from investors the interest from AbbVie, internally Defendants continued to push full force ahead on a sale of the Company. On November 6, 2023, Bain Senior Advisor and Cerevel CEO Renaud met with Richard Gonzalez, chairman of the AbbVie Board and AbbVie's Chief Executive Officer, regarding potential next steps following AbbVie's October 19, 2023 proposal.

65. The next day, November 7, 2023, AbbVie made a revised indication of interest to acquire Cerevel for $40 per share.

66. On November 10, 2023, Renuad again met with representatives from AbbVie to discuss the latest $40 per share proposal.

67. On November 11, 2023, the Cerevel Board determined to advise AbbVie that its offer of $40.00 per share was insufficient and that AbbVie would need to increase its offer to a price per Company Share in the mid-$40 range to justify Cerevel providing confidential information to AbbVie.

68. On November 17, 2023, AbbVie increased its offer to $41.50 per share, which Renuad immediately advised was insufficient. AbbVie then indicated it would be willing to increase its offer to $45 per share, subject to the completion of due diligence and being able to announce the transaction prior to the Christmas holiday.

69. On December 6, 2023, at about 4:34 p.m. eastern time, *Reuters* reported that AbbVie and Cerevel were nearing a potential transaction.

70. About an hour later, AbbVie and Cerevel issued a joint press release announcing the companies had reached an agreement where AbbVie would acquire Cerevel for $45 per share.

71. On December 7, 2023, AbbVie held an investor call to discuss its strategic rationale for the Cerevel acquisition.

72. The price of Cerevel's stock increased from $36.93 per share at close on December 6, 2023 (the end of the trading day prior to the deal announcement) to $41.13 per share at close on December 7, 2023.

**G. Bain and Pfizer Cause Cerevel To Issue a False and Misleading Proxy Statement Misleads Investors In Order To Garner Shareholder Support for the Merger**

73. Cerevel issued its Definitive Merger Proxy on January 18, 2024. Cerevel's Board recommended in the Proxy that shareholders vote to approve the merger with AbbVie. The Proxy also indicated that Defendant Bain had entered into a support agreement and would vote for the proposed merger.

74. Bain and Pfizer were in full control of Cerevel at the time of the Proxy. Indeed, the Proxy disclosed that as of January 8, 2024, Bain held voting power over 65,679,781 Company shares (approximately 36.2% of the outstanding Company shares). Bain also appointed half the Board and installed one of its former partners, Renaud, as CEO of the Company and had Renaud personally meet with AbbVie's CEO multiple times to discuss the merger transaction.

75. Significantly, the Proxy misled investors regarding the timing of AbbVie's interest in a whole-company acquisition. For example, the Proxy indicated that on September 25, 2023, that "[t]he conversation focused on Cerevel's retention of commercial rights in Japan and AbbVie did not indicate that an offer to acquire Cerevel would be forthcoming." Likewise, the Proxy stated that AbbVie's initial offer on October 19, 2023 was an "unsolicited offering," misleadingly implying it was the first indication of interest.

76. However, in reality, no later than September 23, 2023 AbbVie had indicated to Cerevel that it was interested in a whole-company acquisition, and on September 27, 2023 the Cerevel Board met to discuss the AbbVie offer and start a sales process.

77. The misleading statements regarding the timing of AbbVie's indication of interest are material because they hid from investors the fraudulent purpose of the October Offering and that Bain purchased shares from the October Offering with material nonpublic information regarding an anticipated sale of the Company.

78. The misleading statements regarding the timing of AbbVie's indication of interest also hid from investors that AbbVie was significantly ahead of other potential bidders, who Cerevel did not start reaching out to until October 24, 2023, and that as a result the Cerevel Board did not fairly and fully explore all potential strategic options.

## V. ADDITIONAL ALLEGATIONS RELATING TO DEFENDANTS' SCIENTER (RELATING TO THE FRAUD CLAIMS ONLY)

79. In addition to the facts set forth above the following paragraphs set forth additional indicia of Defendants' scienter relating to the fraud alleged in this complaint.

80. Defendant Bain was highly motivated to identify and close a sale to exit its position in Cerevel. Bain's investment in Cerevel totaled about $475 million – the $250 million initial investment, the $100 million PIPE investment, and the $125 million to purchase shares from the October offering. At the $45 per share merger price, Bain received approximately $2.7 billion, ***more than five times its investment***.

81. Notably, the $125 million Bain acquired from the October Offering was acquired essentially without risk. At the time, Bain had material nonpublic information regarding AbbVie acquisition interest and thus Bain knew the shares it was purchasing were shortly thereafter going to be acquired at a premium.

## VI. FALSE AND MISLEADING STATEMENTS

### A. October 11, 2023 Press Release

82. On October 11, 2023 Cerevel issued a press releasing announcing it had commenced a secondary offering of $400 million of shares of its common stock.

83. The October 11, 2023 press release was misleading and omitted material facts regarding (a) AbbVie's interest in a whole-company acquisition; (b) Cerevel's launch of a related sales process; and (c) that the offering was being conducted to allow Bain to increase its position in advance of the anticipated AbbVie merger.

### B. October 11, 2024 Preliminary Prospectus Supplement

84. Also on October 11, 2024, Cerevel filed with the SEC a Preliminary Prospectus Supplement to its Prospectus dated November 18, 2024.

85. In a section titled "Use Of Proceeds" the October 11, 2023 Preliminary Prospectus Supplement stated "We currently intend to use the net proceeds from this offering, together with our existing cash, cash equivalents and marketable securities, to support our ongoing and planned clinical trials and other research and development activities, and for working capital and other general corporate purposes, including to extend our cash runway into 2026."

86. The Preliminary Prospectus Supplement, including the language in the "Use of Proceeds" section, was false and misleading and omitted material facts regarding (a) AbbVie's interest in a whole-company acquisition; (b) Cerevel's launch of a related sales process; and (c) that the offering was being conducted to allow Bain to increase its position in advance of the anticipated AbbVie merger.

**C. October 12, 2023 Form 8-K and Press Release**

87. On October 12, 2023 Cerevel issued a Form 8-K announcing it had entered into an underwriting agreement with Goldman Sachs & Co. LLC in connection with the offering and that it was offering 19,729,189 shares at a public offering price of $22.81 per share.

88. The October 12, 2023 Form 8-K also attached a press release issued late on October 11, 2023 announcing the pricing of the offering was $22.81 per share.

89. The Form 8-K and attached press release were both misleading and omitted material facts regarding (a) AbbVie's interest in a whole-company acquisition; (b) Cerevel's launch of a related sales process; and (c) that the offering was being conducted to allow Bain to increase its position in advance of the anticipated AbbVie merger.

90. The pricing of the October Offering at $22.81 per share was also misleading because at the time Cerevel already knew that AbbVie was interested in acquiring the Company at a significant premium to the offering price.

**D. October 12, 2023 Prospectus**

91. October 12, 2023, Cerevel filed a Prospectus Supplement regarding the offering.

92. The October 12, 2023, Prospectus Supplement repeated the October 11, 2023 statement in the Preliminary Prospectus Supplement regarding "Use Of Proceeds," which stated "We currently intend to use the net proceeds from this offering, together with our existing cash, cash equivalents and marketable securities, to support our ongoing and planned clinical trials and other research and development activities, and for working capital and other general corporate purposes, including to extend our cash runway into 2026."

93. The October 12, 2023 Prospectus Supplement similarly failed to disclose the ongoing discussions with AbbVie and related Board meeting with Centerview.

94. The Prospectus Supplement, including the language in the "Use of Proceeds" section, was false and misleading and omitted material facts regarding (a) AbbVie's interest in a whole-company acquisition; (b) Cerevel's launch of a related sales process; and (c) that the offering was being conducted to allow Bain to increase its position in advance of the anticipated AbbVie merger.

**E. November 1, 2023 Earnings Call**

95. Cerevel held its third quarter 2023 earnings call on November 1, 2023. During the call, an analyst asked "what drove the decision to proactively raise equity capital ahead of your multiple clinical data events in 2024"?

96. Cerevel CEO Renaud responded "on the capital raise… I think largely, this was one thing that we have been talking to a number of investors about over the last few months. And there was significant amount of interest in doing the raise from outside investors. And so we thought it was a good time to do that so that we could really be focused on execution in 2024." Cerevel CFO Altschuller added to Renaud's response on the capital raise, reiterating that the cash "gets us into 2026."

97. Renaud and Altschuller's response was false and misleading and omitted material facts regarding (a) AbbVie's interest in a whole-company acquisition; (b) Cerevel's launch of a related sales process; and (c) that the offering was being conducted to allow Bain to increase its position in advance of the anticipated AbbVie merger.

**F. December 6, 2023 Merger Announcement**

98. On December 6, 2023, Cerevel filed a Form 8-K announcing it had entered into an Agreement and Plan of Merger with AbbVie whereby AbbVie would acquire all outstanding shares of Cerevel's common stock for $45 per share. The Form 8-K also stated that BC Perception

Holdings, LC, a subsidiary of Bain, entered into a Voting and Support Agreement where it agreed to support the Merger and adoption of the Merger Agreement.

99. Also on December 6, 2023, Cerevel and AbbVie jointly issued a press release regarding the proposed transaction.

100. Both the December 6, 2023 Form 8-K and press release were false and misleading and omitted material facts the process whereby Cerevel agreed to be sold to AbbVie. Specifically, Cerevel hid from investors that AbbVie was interested in a whole-company acquisition prior to the October Offering, thereby obscuring the real reason for the fraudulent October Offering and misleading investors regarding the timeline of the transaction and Cerevel's efforts to reach out to other potential bidders for the Company.

**G. January 18, 2024 Proxy Statement**

101. Cerevel's January 18, 2024 Proxy Statement indicated that on September 25, 2023, AbbVie and Cerevel had a conversation and that "[t]he conversation focused on Cerevel's retention of commercial rights in Japan and AbbVie did not indicate that an offer to acquire Cerevel would be forthcoming."

102. The Proxy stated that AbbVie's initial offer on October 19, 2023 was an "unsolicited offering."

103. The above two statements misled investors regarding the timeline of AbbVie's interest in a whole company acquisition of Cerevel. By no later than September 23, 2033 AbbVie had indicated to Cerevel that it was interested in a whole-company acquisition, and on September 27, 2023 the Cerevel Board met to discuss the AbbVie offer and start a sales process.

104. The Proxy omitted the material fact that AbbVie's initial interest in a whole company acquisition came *prior* to the October Offering. Note only did the lack of disclosure regarding the true timing of AbbVie's interest mislead investors about the real reason for the

October Offering, but it also created the false impression that AbbVie was on a level playing field with other bidders, when in reality it had an unfair head-start that made is extremely difficult for other bidders to compete.

**VII. LOSS CAUSATION**

105. Defendants' wrongful conduct, as alleged herein, directly and proximately caused Plaintiffs and the Class to suffer substantial losses. During the Class Period, Plaintiffs and the Class sold Cerevel common stock at artificially deflated prices and were damaged thereby when the price of Cerevel common stock increased when the truth was revealed. The price of Cerevel common stock significantly increased when Defendants' misrepresentations, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, and/or the risks that had been fraudulently concealed by the Defendants materialized.

106. Specifically, Defendants' materially false and misleading statements and omissions misrepresented, inter alia, that AbbVie was interested in a whole company acquisition prior to the October Offering. On December 6, 2023, the omission was partially corrected when AbbVie and Cerevel jointly announced the proposed transaction at $45 per share.

107. However, the whole truth continued to be concealed in the Proxy through the closing of the Merger, thereby depriving investors of an informed vote on the transaction. Had investors known the full truth regarding AbbVie's timing advantage in the sales process, investors may have voted against the merger and/or sought appraisal rights.

108. Accordingly, as a result of their sales of Cerevel's publicly traded common stock during the Class Period, Plaintiffs and other members of the Class suffered economic loss and damages.

## VIII. CLASS ACTION ALLEGATIONS

109. Plaintiffs bring this Action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all sellers of Cerevel common stock during the Class Period, as well as holders of Cerevel stock on the Record Date. Excluded from the Class are Defendants and their families and affiliates, and directors and officers of Cerevel and their families and affiliates.

110. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of the Record Date, Cerevel had tens of millions of shares of common stock issued and outstanding. Upon information and belief, there are thousands of members of the Class.

111. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to members of the Class that predominate over questions that may affect individual Class members include:

i. Whether Defendants violated the Exchange Act;

ii. Whether Defendants misrepresented material facts;

iii. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

iv. Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

v. Whether Bain possessed material nonpublic information at the time of the October Offering;

vi. Whether the price of Cerevel common stock was artificially deflated during the Class Period;

vii. Whether Defendants' conduct caused the members of the Class to sustain damages; and

viii. The extent of damage sustained by Class members and the appropriate measure of damages.

112. Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

113. Plaintiffs will adequately protect the interests of the Class and have retained counsel experienced in class action securities litigation. Plaintiffs have no interests that conflict with those of the Class.

114. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IX. APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

115. The market for Cerevel's common stock was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Cerevel's common stock traded at artificially deflated prices during the Class Period. On October 11, 2023, the Company's stock closed at $22.81 per share. Plaintiffs and the other members of the Class sold or otherwise disposed the Company's common stock relying upon the integrity of the market price of Cerevel's common stock and market information relating to Cerevel, and have been damaged thereby.

116. During the Class Period, the artificial deflation of Cerevel's common stock was caused by the material misrepresentations and/or omissions particularized in this Complaint, causing the damages sustained by Plaintiffs and the other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about AbbVie's interest in a whole company acquisition. These material misstatements and/or omissions caused the Company's stock price to be artificially deflated at all relevant times, and when the truth was disclosed, positively affected the value of the

Company's common stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and the other members of the Class sold the Company's common stock at such artificially deflated prices, and each of them has been damaged as a result.

117. At all relevant times, the market for Cerevel's common stock was an efficient market for the following reasons, among others:

(a) Cerevel stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Cerevel filed periodic public reports with the SEC and/or the NASDAQ;

(c) Cerevel regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Cerevel was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

118. As a result of the foregoing, the market for Cerevel's common stock promptly digested current information regarding Cerevel from all publicly available sources and reflected such information in Cerevel's stock price. Under these circumstances, all sellers of Cerevel's common stock during the Class Period suffered similar injury through their purchase of Cerevel's common stock at artificially deflated prices and a presumption of reliance applies.

119. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material information identified above, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the material undisclosed facts, i.e. that Cerevel was likely to be acquired, that requirement is satisfied.

## X. NO SAFE HARBOR

120. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Cerevel or Bain who knew that the statement was false when made.

**COUNT I**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against Cerevel**

121. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

122. During the Class Period, Cerevel carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and the other Class members, as alleged herein; and (ii) cause Plaintiffs and the other members of the Class to sell Cerevel's common stock at artificially deflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

123. Cerevel: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially low market prices for Cerevel's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

124. Cerevel, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal Cerevel's merger prospects, as specified herein.

125. Cerevel employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Cerevel's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue

statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Cerevel and its merger prospects not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the sellers of the Company's common stock during the Class Period.

126. Cerevel had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Cerevel's material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Cerevel's merger prospects and supporting the artificially deflated price of its common stock.

127. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Cerevel's common stock was artificially deflated during the Class Period. In ignorance of the fact that market prices of the Company's common stock was artificially deflated, and relying directly or indirectly on the false and misleading statements made by Cerevel, or upon the integrity of the market in which the common stock trades, and/or in the absence of material information that was known to or recklessly disregarded by Cerevel, but not disclosed in public statements by Cerevel during the Class Period, Plaintiffs and the other members of the Class sold Cerevel's common stock during the Class Period at artificially deflated prices and were damaged thereby.

128. At the time of said misrepresentations and/or omissions, Plaintiffs and the other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding AbbVie's interest in acquiring Cerevel, which was not disclosed by Cerevel, Plaintiffs and the other members

of the Class would not have sold or otherwise disposed their Cerevel common stock, or, if they had sold such common stock during the Class Period, they would not have done so at the artificially deflated prices which they paid.

129. By virtue of the foregoing, Cerevel violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

130. As a direct and proximate result of Cerevel's wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective sales of the Company's common stock during the Class Period.

**COUNT II**
**Violation of Section 20A of**
**The Exchange Act Against Bain**

131. Plaintiffs repeat, incorporate, and reallege each and every allegation set forth above (other than disclaimers of fraud claims) as if fully set forth herein. Bain's purchasing of Cerevel common stock while in possession of material nonpublic information about AbbVie's interest in a whole company acquisition violated Section 20A of the Exchange Act. *See* 15 U.S.C § 78t-1(a).

132. Bain possessed material nonpublic information regarding AbbVie's interest in a whole company acquisition at the time it purchased more than five million of shares of Cerevel common stock in the October Offering

133. Simply put, Bain created and controlled Cerevel, possessed nonpublic knowledge about ongoing merger negotiations that they knew or recklessly disregarded would cause the Company's share price to skyrocket when publicly disclosed, and used the October Offering to purchase shares at deflated prices before the nonpublic information was revealed.

134. Due to Bain's conduct in purchasing shares while in possession of material nonpublic information, which is a violation of Section 10(b) and Rule 10b5 thereunder, Bain is

liable under Section 20A of the Exchange Act to all Class members who sold Cerevel's common stock at deflated prices contemporaneously with purchases by Bain in the October Offering.

**COUNT III**
**Violation of Section 14(a) of**
**The Exchange Act Against Cerevel**

135. Plaintiffs' Proxy Claims do not sound in fraud and Plaintiffs expressly disavow and disclaim any allegations of fraud, scheme or intentional conduct as part of their Proxy Claims. Any allegations of fraud, fraudulent conduct, or motive are specifically disclaimed from the following allegations for the purposes of Plaintiffs' claims under the Proxy Claim, which do not have scienter, fraudulent intent or motive as required elements. To the extent that these allegations incorporate factual allegations elsewhere in this Complaint, those allegations are incorporated only to the extent that such allegations do not allege fraud, scienter, or intent of the Defendants to defraud Plaintiffs or members of the Class

136. As alleged herein, Cerevel made a series of materially untrue statements and omissions of material facts in Cerevel's Proxy. Cerevel abdicated its duty to file and distribute to Plaintiff and the Class a Proxy that was not misleading. Accordingly, Cerevel violated §14(a) of the Exchange Act.

137. As a direct result of the Cerevel's negligent preparation, review and dissemination of the false and/or misleading Proxy, Plaintiffs and the Class were induced to vote their shares and accept inadequate consideration in connection with the AbbVie Merger. The false and misleading Proxy used to obtain shareholder approval of the acquisition deprived Plaintiffs and the Class of their right to a fully informed shareholder vote in connection therewith and the full and fair value for their Cerevel shares.

138. At all times relevant to the dissemination of the materially false and/or misleading Proxy, the Cerevel was aware of and/or had access to the true facts concerning the timing of

AbbVie's interest in a whole company acquisition. Thus, as a direct and proximate result of the dissemination of the false and misleading Cerevel used to obtain shareholder approval of and thereby consummate the AbbVie Merger, Plaintiffs and the Class have suffered damage and actual economic losses in an amount to be determined at trial

139. The omissions and false and misleading statements in the Proxy were material in that a reasonable stockholder would have considered them important in deciding how to vote on the Business Combination. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders

**COUNT IV**
**Violation of Section 20(a) of**
**The Exchange Act Against Bain and Pfizer**

140. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

141. Defendants Bain and Pfizer acted as controlling persons of Cerevel within the meaning of Section 20(a) of the Exchange Act as alleged herein.

142. By virtue of Bain and Pfizer's individual and collective ownership of Cerevel stock, Bain's appointment of six members of the Cerevel Board of Directors, Pfizer's appointment of two additional members of the Cerevel Board of Directors, contractual rights, and installment of one of a Bain partner as Cerevel's CEO, Bain and Pfizer participated in and/or had specific awareness of the Company's merger prospects and was involved in Cerevel's false documents filed by the Company with the SEC and disseminated to the investing public. Bain and Pfizer had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. Bain and Pfizer were provided with or had unlimited access to

copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

143. As set forth above, Cerevel violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. Cerevel also violated Section 14(a) of the Exchange Act in connection with false and misleading statements and omissions of material facts in the Proxy. By virtue of their positions as controlling persons, Bain and Pfizer are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiffs and the other Class members against Cerevel, Bain and Pfizer, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

144. Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: April 3, 2025

Respectfully submitted,

**FARNAN LLP**

By: /s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Emails: bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

***Counsel for Plaintiffs***

**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci (*pro hac vice forthcoming*)
Robert N. Cappucci (*pro hac vice forthcoming*)
230 Park Avenue, 3rd Floor
New York, New York 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7272
Emails: vcappucci@entwistle-law.com
rcappucci@entwistle-law.com

***Counsel for Plaintiffs***