**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION | 1:25-cv-030417-GBW |

**OPENING BRIEF AND JOINDER IN SUPPORT OF**
**PERCEPTIVE ADVISORS LLC AND DOUG GIORDANO'S**
**MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

POTTER ANDERSON & CORROON LLP
   J. Matthew Belger (#5707)
   Daniel M. Rusk, IV (#6323)
   1313 N. Market Street
   Hercules Plaza, 6th Floor
   Wilmington, Delaware 19801
   (302) 984-6000
   mbelger@potteranderson.com
   drusk@potteranderson.com

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP

   Robert A. Fumerton (*pro hac vice*)
   Alexander C. Drylewski (*pro hac vice*)
   One Manhattan West
   New York, New York 10001
   Phone: (212) 735-3000

   *Counsel for Defendants Perceptive Advisors*
   *LLC and Doug Giordano*

DATED: October 30, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ........................................................................... 1

SUMMARY OF THE ARGUMENT .......................................................................................... 2

STATEMENT OF FACTS .......................................................................................................... 4

    A.    Perceptive and Giordano ........................................................................... 4

    B.    The October Offering .................................................................................. 5

    C.    The AbbVie Merger .................................................................................... 5

    D.    Other Plaintiffs File Suit in the Delaware Court of Chancery ................... 6

ARGUMENT ............................................................................................................................... 6

I.    PLAINTIFFS FAIL TO PLEAD A 20A CLAIM AGAINST PERCEPTIVE ................... 6

    A.    Plaintiffs Fail to Plead a Predicate Exchange Act Violation ..................... 7

    B.    Plaintiffs Fail to Plead Perceptive Was in Possession of MNPI ............... 12

    C.    Plaintiffs Cannot Allege That They Traded Contemporaneously with Perceptive ............................................................................................... 14

II. PLAINTIFFS FAIL TO PLEAD A 20(A) CLAIM AGAINST DOUG GIORDANO ............ 17

    A.    Plaintiffs Fail to Plead a Predicate Exchange Act Violation ................... 17

    B.    Plaintiffs Fail to Plead Giordano Actually Controlled Cerevel ............... 17

    C.    Plaintiffs Fail to Plead That Giordano Was a Culpable Participant ...................... 19

CONCLUSION .......................................................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

### CASES

*In re Advance Auto Parts, Inc., Securities Litigation*,
  2020 WL 599543 (D. Del. Feb. 7, 2020).................................................................. 18, 19

*In re Allergan Erisa Litigation*,
  975 F.3d 348 (3d Cir. 2020).......................................................................................14

*In re Alpharma Inc. Securities Litigation*,
  372 F.3d 137 (3d Cir. 2004).......................................................................................11

*Arbitrage Event-Driven Fund v. Tribune Media Co.*,
  2020 WL 60186 (N.D. Ill. Jan. 7, 2020),
  *aff'd sub nom. Water Island Event-Driven Fund, LLC v. Trib. Media Co.*,
  39 F.4th 402 (7th Cir. 2022) ................................................................................ 10, 13

*In re Archegos 20A Litig.*,
  2025 WL 2652262 (2d Cir. Sept. 16, 2025) ........................................................ 8, 9, 10

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*,
  28 F.4th 343 (2d Cir. 2022)........................................................................................12

*In re AST Research Securities Litigation*,
  887 F. Supp. 231 (C.D. Cal. 1995)..............................................................................16

*Belmont v. MB Investment Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013)........................................................................................20

*In re Bernard L. Madoff Investment Securities LLC*,
  818 F. App'x 48 (2d Cir. 2020)....................................................................................18

*In re BioScrip, Inc. Securities Litigation*,
  95 F. Supp. 3d 711 (S.D.N.Y. 2015) ...........................................................................18

*Buban v. O'Brien*,
  1994 WL 324093 (N.D. Cal. June 22, 1994) ...............................................................16

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014)............................................................6, 7, 8, 11, 12, 17

*In re Digital Island Securities Litigation*,
  223 F. Supp. 2d 546 (D. Del. 2002),
  *aff'd,* 357 F.3d 322 (3d Cir. 2004) ..................................................................... 17, 18, 20

*D.M. ex rel. Ray v. Philadelphia Housing Authority*,
  613 F. App'x 187 (3d Cir. 2015)...................................................................................4

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
    594 F.3d 783 (11th Cir. 2010)....................................................................................8

*In re Federal National Mortgage Ass'n Securities, Derivative, & ERISA Litigation*,
    503 F. Supp. 2d 25 (D.D.C. 2007) ...................................................................... 15, 16

*In re Garrett Motion Inc. Securities Litigation*,
    2022 WL 976269 (S.D.N.Y. Mar. 31, 2022)…….........................................................12

*Gillis v. QRX Pharma Ltd.*,
    197 F. Supp. 3d 557 (S.D.N.Y. 2016)…. ...................................................................12

*In re Global Crossing, Ltd. Securities Litigation*,
    2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)..............................................................14

*In re Global Crossing, Ltd. Securities Litigation*,
    2005 WL 2990646 (S.D.N.Y Nov. 7, 2005)...............................................................10

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
    620 F. Supp. 3d 167 (D.N.J. 2022).............................................................................8

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
    2021 WL 4191467 (D.N.J. Sept. 15, 2021) ...............................................................11

*Laventhall v. General Dynamics Corp.*,
    704 F.2d 407 (8th Cir. 1983).....................................................................................11

*In re Lehman Bros. Securities & Erisa Litigation*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011) .......................................................................13

*Lemar v. American Trading Corps.*,
    643 F. App'x 79 (3d Cir. 2016)..................................................................................13

*In re Merck & Co. Securities, Derivative, & ERISA Litig.*,
    2011 WL 3444199 (D.N.J. Aug. 8, 2011) ..................................................................13

*In re Ocugen, Inc. Securities Litigation*,
    2024 WL 1209513 (3d Cir. Mar. 21, 2024)............................................................ 7, 12

*Onel v. Top Ships, Inc.*,
    806 F. App'x 64 (2d Cir. 2020)....................................................................................8

*Orient Plus International Ltd. v. Baosheng Media Group Holdings Ltd.*,
    2025 WL 2613530 (S.D.N.Y. Sept. 10, 2025)............................................................19

*Sandoval v. Uphold HQ Inc.*,
    2025 WL 1268291 (S.D.N.Y. May 1, 2025),
    *appeal dismissed*, (2d Cir. Aug. 28, 2025) .............................................................14

iii

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014)..........................................................................................4

*In re Shanda Games Ltd. Securities Litigation*,
  2022 WL 992794 (S.D.N.Y. Mar. 31, 2022) ...................................................................15

*Steamfitters Local 449 Pension Fund v. Alter*,
  2011 WL 4528385 (E.D. Pa. Sept. 30, 2011) ...........................................................8, 15

*Universal American Corp. v. Partners Healthcare Solutions Holdings, L.P.*,
  176 F. Supp. 3d 387 (D. Del. 2016) ...................................................................17, 19, 20

*Wilson v. Comtech Telecommunications Corp.*,
  648 F.2d 88 (2d Cir. 1981)…....................................................................................16

iv

Defendants Perceptive Advisors LLC ("Perceptive") and Doug Giordano respectfully submit this opening brief in support of their motion to dismiss the Consolidated Class Action Complaint ("Complaint" or "Compl.") (D.I. 19) pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]  Perceptive and Giordano also join Defendants Cerevel Therapeutics Holdings, Inc. ("Cerevel"), Bain Capital Investors, LLC ("Bain"), Pfizer, Inc. ("Pfizer"), and the other Director Defendants (together with Perceptive and Giordano, "Defendants") in their motions to dismiss the Consolidated Complaint and incorporate their arguments by reference herein.

## **NATURE AND STAGE OF PROCEEDINGS**

On April 3, 2025, Plaintiffs SM Merger/Arbitrage, LP and Associated Capital Group, Inc. filed this putative class action against Cerevel, Bain, and Pfizer.  (D.I. 1.)  SM Merger/Arbitrage, LP, Associated Capital Group, Inc., and Atlas Diversified Master Fund (collectively, "Plaintiffs") were appointed Lead Plaintiffs on June 23, 2025.  (Order, July 9, 2025.)  On August 13, 2025, Plaintiffs filed the Complaint, adding Perceptive and Giordano, among others, as defendants.  (D.I. 19.)  The Complaint contains four counts.  Count I alleges a violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against Cerevel and Ron Renaud, Cerevel's President, CEO, and Board member.  (Compl. ¶¶ 169-79.)  Count II alleges a violation of Section 20A of the Exchange Act against Bain and Perceptive.  (*Id.* ¶¶ 180-86.)  Count III alleges a violation of Section 14(a) of the Exchange Act against Cerevel.  (*Id.* ¶¶ 187-92.)  Count IV alleges a violation of Section 20(a) of the Exchange Act against Bain, Pfizer and the Director Defendants.

---

[1]  Exhibits are cited herein as "Ex.__."  Pincites for all exhibits reference the original pagination at the bottom of the page.  All internal quotation marks and citations are omitted, and all emphases in quotations are added, unless otherwise indicated.

(*Id*. ¶¶ 193-98.)  Defendants Perceptive and Giordano now move to dismiss Counts II and IV as pled against them with prejudice.

## SUMMARY OF THE ARGUMENT

1.       Through this action, Plaintiffs attempt to shoehorn Perceptive and Giordano into a federal securities complaint concerning Cerevel's October 16, 2023 secondary public offering (the "October Offering") and AbbVie's subsequent acquisition of Cerevel.  But the allegations pled against Perceptive and Giordano are wholly conclusory and fail to establish any of the necessary elements of the claims.  For several independent reasons, Plaintiffs' allegations fail to state a 20A claim against Perceptive and a 20(a) claim against Giordano.

2.       First, Plaintiffs have not pled a Section 20A claim against Perceptive.  Courts routinely dismiss 20A claims where, as here, Plaintiffs have failed to plead a predicate Exchange Act violation as to that defendant.  The Complaint only *even attempts* to allege a violation of Section 10(b) of the Exchange Act against Cerevel and Renaud—*not* Perceptive.  Plaintiffs have also failed to plead any non-conclusory facts that would establish an underlying Section 10(b) claim against Perceptive, particularly given that Perceptive (1) is neither an insider nor a controlling shareholder and thus owed no duty to Cerevel (let alone a duty that was breached by allegedly purchasing shares from Cerevel), and (2) could not have acted with scienter as the October Offering had a dilutive effect on the ownership interest of non-party Perceptive Life Sciences Master Fund Ltd. (the "Master Fund")—the entity that actually purchased Cerevel stock in the October Offering.

3.       This alone forecloses any 20A claim against Perceptive as a matter of law.  And even if it were enough to plead a predicate Exchange Act violation against parties *other than* Perceptive (and it is not), Plaintiffs have failed to plead such violations against any Defendant in this case.

2

4.       Moreover, Plaintiffs' conclusory allegation that Perceptive was in possession of material non-public information ("MNPI") is patently insufficient.  This claim is based entirely on Plaintiffs' allegation that Giordano, just one of Perceptive's Managing Directors, acted as just one of twelve members of the Cerevel Board.  And while Plaintiffs attempt to impermissibly lump Defendants together through vague and conclusory allegations, any theory that Giordano learned MNPI in his capacity as a Cerevel Board member does not and cannot provide any basis to impute that information to Perceptive.

5.       Finally, Plaintiffs do not allege that they traded contemporaneously with Perceptive, as they must.  It is beyond dispute that the Master Fund purchased Cerevel stock in the October Offering—not Perceptive.  Because Perceptive is not adequately alleged to be a "purchaser," Plaintiffs' Section 20A claim cannot survive dismissal.  Moreover, because **all** shares in the October Offering were sold by Cerevel, and the Master Fund purchased those shares directly from Cerevel, it is impossible that Plaintiffs (or anyone else other than Cerevel) traded with the Master Fund, an indisputable fact that prevents Plaintiffs from pleading contemporaneousness.

6.       Second, Plaintiffs' "control person" claim under Section 20(a) of the Exchange Act against Giordano likewise fails.  Plaintiffs have not pled an underlying securities law violation for which Giordano could be held liable as a control person.  Moreover, Plaintiffs nowhere allege that Giordano—just one member of the twelve-member Cerevel Board—did or could exercise control over Cerevel.  Again attempting to lump Defendants together, the Complaint merely offers generic allegations regarding the roles and responsibilities of Cerevel Board members generally, but fails to offer any other facts specific to Giordano's purported control person status.  This is fatal, as it is well-settled that merely being a director of a company is insufficient to establish control person liability.  Plaintiffs also fail to plead any facts—much less particularized facts—that Giordano

3

actively participated in the alleged fraud.  These myriad failures compel dismissal of Plaintiffs' 20(a) claim against Giordano.

7.      For these reasons, and as detailed further below, Counts II and IV of the Consolidated Complaint against Perceptive and Giordano, respectively, should be dismissed with prejudice.

## STATEMENT OF FACTS[2]

### A.      Perceptive and Giordano

Perceptive is an investment advisor specializing in the life sciences industry and has approximately $8 billion in assets under management.  (Compl. ¶¶ 28, 43.)  On October 27, 2020, Cerevel became a public company through a merger with a Special Purpose Acquisition Company, Arya Sciences Acquisition Corp. II, which was sponsored by affiliates of Perceptive.  (*Id.* ¶¶ 42-44; *see also* Ex. A, Cerevel Amended and Restated Registration and Shareholder Rights Agreement, Oct. 27, 2020 at 1-2.)  Following the transaction, two of Perceptive's funds, non-party Master Fund and non-party C2 Life Sciences, LLC, together owned 10,088,385 shares of Cerevel common stock, which represented approximately 6% of Cerevel's outstanding shares.  (*Id.* ¶ 46; *see also* Ex. B, Perceptive Form 4, Oct. 17, 2023; Ex. C, Perceptive Schedule 13D, Apr. 21, 2023.)

---

[2]     The facts set forth herein are drawn from allegations in the Complaint, documents incorporated by reference or integral to the Complaint, and matters of which judicial notice may be taken. *See D.M. ex rel. Ray v. Phila. Hous. Auth.*, 613 F. App'x 187, 189 n.6 (3d Cir. 2015) ("We consider the pleading, 'any document integral or explicitly relied upon' by the plaintiff in framing the pleading, any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document,' 'any matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record.'").  The Court may also take judicial notice of documents filed with the SEC. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Perceptive serves as the investment manager to both funds. (*Id.* ¶ 28; *see also* Ex. B, Perceptive Form 4, Oct. 17, 2023 at 2.)

Giordano has served as a member of Cerevel's twelve-person Board of Directors from the company's formation in 2018 until its merger with AbbVie in August 2024. (*Id.* ¶¶ 36, 41.) In 2021, Giordano joined Perceptive from Pfizer. (*Id.* ¶ 36; *see also* Ex. C, Perceptive Schedule 13D, Apr. 21, 2023 at 7 ("*Following his appointment to the Issuer's board* of directors, Mr. Giordano joined Perceptive and is currently a Managing Director of Perceptive Advisors.").) He serves as one of Perceptive's eight Managing Directors. (https://www.perceptivelife.com/team.) Importantly, "Mr. Giordano d[id] not have voting or dispositive power over [Perceptive's Cerevel] shares." (Ex. D, Excerpt of Cerevel Definitive Proxy Statement, Jan. 18, 2024 at 118 n.3.)

## B.    The October Offering

On October 10, 2023, Cerevel initiated the October Offering, which ultimately consisted of 22,687,417 shares at a price of $22.81 per share. (Compl. ¶ 8.) The October Offering closed on October 16, 2023. (*Id.*) The Master Fund acquired 876,808 shares in the October Offering for approximately $20 million. (*Id.* ¶ 91; *See* Ex. E, Schedule 13D/A, Oct. 17, 2023 at 5 ("On October 16, 2023, the Master Fund purchased 876,808 shares of Common Stock at a purchase price of $22.81 per share from the Issuer in an underwritten public offering.").) Instead of purchasing 6% (or more) of Cerevel's newly issued shares, the 876,808 shares represented only 3.9% of the October Offering. (*See Id.* at ¶ 79.) Thus, after the October Offering, the Master Fund owned less than 6% of Cerevel's outstanding shares, *diluting* Perceptive's beneficial ownership in Cerevel. (*See* Ex. B, Perceptive Form 4, Oct. 17, 2023.)

## C.    The AbbVie Merger

On December 6, 2023, AbbVie and Cerevel issued a joint press release announcing the companies had reached an agreement whereby AbbVie would acquire Cerevel for $45 per share.

(Compl. ¶¶ 103-04.)  Like all Cerevel shareholders, the Master Fund and C2 Life Sciences, LLC received $45 dollars per share for the 10,965,193 shares.  (*Id.* ¶ 13.)  Because the Master Fund acquired less than its *pro rata* portion of shares in the October Offering, it received millions of dollars *less* from the AbbVie acquisition than it otherwise stood to gain.

### D.       Other Plaintiffs File Suit in the Delaware Court of Chancery

In December 2024, a suit was filed in the Delaware Court of Chancery alleging breach of fiduciary duty claims arising out of the same underlying events against Bain, Renaud, certain of Cerevel's Directors, Perceptive Advisors LLC and the Master Fund.  *See SEIU Pension Plans Master Trust v. Bain Capital Investors, et al.*, C.A. No. 2024-1274-JTL.  On October 2, 2025, Vice Chancellor Laster denied defendants' motions to dismiss.  However, none of the Vice Chancellor's holdings impact the arguments in this motion since the federal Exchange Act claims have distinct statutory elements and pleading requirements.[3]

## ARGUMENT

### I.       PLAINTIFFS FAIL TO PLEAD A 20A CLAIM AGAINST PERCEPTIVE

"[S]ection 20A of the Exchange Act provides that a corporate insider who trades stock 'while in possession of material, nonpublic information' is liable to any person who traded contemporaneously with the insider, provided there is an independent Exchange Act violation." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 177 (3d Cir. 2014) (dismissing 20A claim

---

[3]   The claims pled against Perceptive were aiding and abetting breach of fiduciary duty (the basis of which was a *Brophy* insider trading claim) and unjust enrichment.  There are several critical differences between the elements of the claims alleged in the Chancery Court and the claims alleged here, and different pleading standards apply as well.  For example, unlike here, where Plaintiffs must meet the PSLRA's heightened pleading standard when alleging scienter, *see City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 176 (3d Cir. 2014), for the fiduciary duty claims plaintiffs needed only to raise a "reasonable inference of scienter."  *See* Oct. 2, 2025 Telephonic Ruling at 21, 34 (nonetheless noting it was a "close call").

where plaintiffs failed to adequately allege defendants made a material misrepresentation or omission in violation of the Exchange Act).  Plaintiffs cannot plead a Section 20A violation against Perceptive for several independently dispositive reasons.  First, Plaintiffs have failed to plead a predicate Exchange Act violation *against Perceptive*, and in any event, have failed to plead a predicate violation against any Defendant in this case.  Second, Plaintiffs' allegation that Perceptive was in possession of MNPI is wholly conclusory and any information that Giordano allegedly learned in his capacity as a Cerevel Board member cannot be imputed to Perceptive.  Finally, Plaintiffs do not allege that they traded contemporaneously with Perceptive.

### A.    Plaintiffs Fail to Plead a Predicate Exchange Act Violation

"Section 20A[] provides an express private cause of action for insider trading against contemporaneous traders [and] requires *the alleged insider trader* to have committed an *independent* violation of the Exchange Act or SEC rules and regulations promulgated under that law."  *Pfizer*, 754 F.3d at 175 (citing 15 U.S.C. § 78t-1(a)); *see also In re Ocugen, Inc. Sec. Litig.*, 2024 WL 1209513, at *6 (3d Cir. Mar. 21, 2024).  The Section 20A claim against Perceptive— the "alleged insider trader"—should be dismissed because Plaintiffs have not alleged any predicate Exchange Act claim against Perceptive.

The Complaint only even attempts to allege predicate violations of Section 10(b) of the Exchange Act against defendants Cerevel and Renaud—not Perceptive.  (Compl. ¶¶ 169-79.) Plaintiffs do not even attempt to plead that Perceptive "committed an independent violation of the Exchange Act or SEC rules and regulations promulgated under that law."  *Pfizer*, 754 F.3d at 175- 76 (dismissing 20A claim where plaintiffs "have not adequately alleged that Martin and Ruggolo committed such an independent violation").  Nor can Plaintiffs rely on allegations that *other defendants* committed Exchange Act violations to satisfy the predicate violation requirement as to Perceptive.  *See Onel v. Top Ships, Inc.*, 806 F. App'x 64, 69 (2d Cir. 2020) (affirming dismissal

7

of 20A claim against certain defendants where the complaint did "not allege any specific conduct by either defendant sufficient to support a claim that *they themselves* violated the securities laws"); *see also Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 200 (D.N.J. 2022) (dismissing 20A claim against an individual defendant where the predicate 10(b) violation against that defendant was dismissed); *Steamfitters Loc. 449 Pension Fund v. Alter*, 2011 WL 4528385, at *13 (E.D. Pa. Sept. 30, 2011) (plaintiff failed to bring Section 10(b) claims against two individual defendants, which alone warranted dismissal of the 20A claim).  This alone ends the inquiry and warrants dismissal of the 20A claim with prejudice.

Moreover, in addition to not pleading any predicate 10(b) violation as to Perceptive, the Complaint lacks any facts—much less particularized facts—that would otherwise establish any such violation against Perceptive.  To plead a Section 10(b) insider trading claim, Plaintiffs must allege with particularity that "a corporate insider" traded "based on material non-public information in violation of the duty of trust and confidence insiders owe to shareholders."  *In Re Archegos 20A Litig.*, 2025 WL 2652262, at *5 (2d Cir. Sept. 16, 2025).  "Scienter is a component of section 10(b) and Rule 10b-5 insider trading claims" which "necessarily requires that the insider have possession of material nonpublic information at the time the insider trades."  *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 793 (11th Cir. 2010).  Indeed, "[t]he PSLRA requires [plaintiffs] to allege facts giving rise to a 'strong inference' of scienter, which 'must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'"  *Pfizer*, 754 F.3d at 176.

Plaintiffs have not pled any non-conclusory facts demonstrating that Perceptive (1) was a corporate insider that owed a fiduciary duty to Cerevel shareholders, (2) was in possession of MNPI, (3) violated any (non-existent) duty to Cerevel by failing to disclose that alleged MNPI, or

(4) acted with scienter.  Instead, Plaintiffs conclusorily allege that Perceptive was an "[i]nside and controlling shareholder[]," "cho[se] to trade while in possession of material non-public information," and therefore "had a duty to disclose" the alleged MNPI.  (Compl. ¶ 184.)

First, Plaintiffs have not alleged *any* facts demonstrating that Perceptive was a corporate insider.  "[A] 'corporate insider' is an individual or entity who 'enter[s] into a special confidential relationship in the conduct of the business of the enterprise and [is] given access to information solely for corporate purposes.'" *In Re Archegos 20A Litig.*, 2025 WL 2652262, at *5.  "Corporate insiders include officers [and] directors . . . as well as 'attorneys, accountants, consultants, and others who temporarily become fiduciaries.'" *Id.*  "[C]ontrolling shareholders may be considered corporate insiders where 'they have the same sort of access to information as a result of their position of power as the typical officer and director.'" *Id.*

But here, Plaintiffs admit that Perceptive held only 6% of Cerevel's outstanding shares (Compl. ¶¶ 5, 46) and otherwise merely refer to Perceptive as an "insider" (Compl. ¶ 2 ("insiders Bain and Perceptive"); ¶ 151 ("Perceptive's insider purchases")), without alleging any non-conclusory fact demonstrating Perceptive had access to information as if it were an insider itself.[4] Plaintiffs therefore cannot allege Perceptive had any duty to Cerevel shareholders.  To the contrary, the law is clear that a minority shareholder does not become an insider simply because one of their employees serves on the board.[5] *See Arbitrage Event-Driven Fund v. Trib. Media Co.*, 2020 WL

---

[4]  While the Complaint lumps Perceptive and Bain together in places, (*e.g.*, Compl. ¶ 11 ("Bain and Perceptive purchased more than six million shares"); ¶ 9 ("Bain and Perceptive through their significant ownership of Cerevel stock and Board representatives . . . .")), it elsewhere acknowledges (as it must) their differences, including differences in percentage of shares held and number of affiliated Cerevel directors.  (*See id.* ¶¶ 77-78, 87, 89, 107.)  These admitted differences only serve to emphasize how conclusive the allegations as to Perceptive are.

[5]  Plaintiffs do not allege any facts demonstrating that having one of Perceptive's employees sit on the Cerevel Board turns Perceptive into an insider.  Nor could they, as that would make
*(cont'd)*

9

60186, at *12 (N.D. Ill. Jan. 7, 2020) ("Oaktree maintains that it was not an insider of Tribune because it was only a minority shareholder, and thus, owed no fiduciary duty to Tribune. The Court agrees. Both state and federal courts have held that minority shareholders do not acquire insider status, even if they have a member on the Board, unless they exercise control over the corporation's affairs."), *aff'd sub nom. Water Island Event-Driven Fund, LLC v. Trib. Media Co.*, 39 F.4th 402 (7th Cir. 2022); *see also In Re Archegos 20A Litig.*, 2025 WL 2652262, at *4, *6 (affirming dismissal of insider trading claims where plaintiffs "failed to adequately allege a breach of fiduciary duty or similar relationship" because the "allegations f[e]ll well short of demonstrating that Archegos possessed power or influence over any of the Issuer's day-to-day or long-term operations," and, among other things, Archegos did not own a majority of shares).

Second, as detailed *infra* § I.B., Plaintiffs fail to adequately allege that Perceptive was in possession of MNPI. Rather, they merely conclude that Perceptive had MNPI because one of its Managing Directors sat on Cerevel's Board. Such a conclusory allegation is wholly insufficient to meet Rule 9(b) and the PSLRA's heightened pleading requirements. *See In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 2990646, at *10 (S.D.N.Y. Nov. 7, 2005) (allegations that CIBC designated members of GC board, owned a large block of stock, and provided financial services to GC "do not support a 'strong inference' that CIBC . . . had access to inside information about GC's true financial status [let alone] was in receipt of such information when it sold its GC shares").

Third, even assuming *arguendo* that Perceptive owed a duty to Cerevel and that Perceptive was in possession of MNPI, Plaintiffs still fail to state a claim because they cannot allege that

---

every company that has an employee serving on another company's board a corporate insider. This is not the law.

Perceptive breached any duty to Cerevel shareholders when the Master Fund purchased shares in the October Offering directly from Cerevel. Critically, "no cause of action arises under section 10(b) or rule 10b-5 simply because an insider has information and fails to disclose it." *Laventhall v. Gen. Dynamics Corp.*, 704 F.2d 407, 412 (8th Cir. 1983). There must be a corresponding breach, which cannot arise where, as here, it is impossible for Plaintiffs to have traded with the Master Fund. *See id.* at 412, 414 ("Regardless of General Dynamics' nondisclosure and purchase of stock there was no informational imbalance in the separate transactions performed by the corporation and [plaintiff] because they in no way can be said to have been 'trading' with one another.").

Finally, even if the above fatal deficiencies could be overcome, Plaintiffs have not pled scienter with the requisite particularity. Stock sales can support an inference of scienter only when they are "unusual in scope or timing." *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 152 (3d Cir. 2004), *abrogated on other grounds*. "Whether a sale is 'unusual in scope' depends on factors such as 'the amount of profit made, the amount of stock traded, the portion of stockholdings sold, or the number of insiders involved.'" *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 2021 WL 4191467, at \*20 (D.N.J. Sept. 15, 2021). "The mere fact that [defendants] sold stock is insufficient to establish scienter." *Pfizer*, 754 F.3d at 176.

The only allegation even conceivably related to a potential motive by Perceptive is that Perceptive purchased shares in the October Offering and "knew [its] profits . . . were baked in if the Merger closed." (Compl. ¶ 110.) Not only did Perceptive not purchase the shares, *see infra* § I.C., but the Master Fund submitted a request for, and ultimately purchased less than, its *pro rata* share in the October Offering. This *diluted* Perceptive's ownership in Cerevel and resulted in it earning approximately *$11.6 million dollars less* from the AbbVie acquisition than it otherwise

11

stood to gain, negating any inference of scienter. *See Pfizer*, 754 F.3d at 176.[6]  Critically, the more compelling inference is of nonfraudulent intent, because it would make no sense for the Master Fund to have requested *less* than its *pro rata* share (as it did) or decline to make additional open market purchases if it knew the AbbVie acquisition was imminent.  Courts do not hesitate to reject theories of fraud that, like this one, make no sense. *In re Garret Motion Inc. Sec. Litig.*, 2022 WL 976269, at *13 (S.D.N.Y. Mar. 31, 2022) (noting "motive problem" with plaintiffs' scienter theory); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (plaintiffs' alleged "scheme . . . lacks a coherent rational objective").

### B.    Plaintiffs Fail to Plead Perceptive Was in Possession of MNPI

Plaintiffs' Section 20A claim should also be dismissed because (1) Plaintiffs have not alleged that Perceptive actually possessed MNPI and (2) any information Giordano allegedly learned cannot be imputed to Perceptive.

First, Plaintiffs have not alleged that Perceptive actually possessed MNPI.  Instead, Plaintiffs merely assume Perceptive had knowledge of the alleged MNPI because one of its eight Managing Directors, Giordano, served as a director on Cerevel's Board.  (*See* Compl. ¶ 91 ("Perceptive [] knew about the imminent AbbVie acquisition and Cerevel's launch of a sales

---

[6]    Even if Plaintiffs could satisfy the predicate violation element of Section 20A by alleging violations by Defendants other than Perceptive (and they cannot), Plaintiffs have failed to plead such violations as to any Defendant in this case.  For the reasons set forth in Cerevel and Renaud's Motions to Dismiss, which Perceptive adopts and incorporates by reference herein, Plaintiffs' Section 10(b) claims against those Defendants fail.  Given this lack of viable predicate violation, Plaintiffs' Section 20A claim against Perceptive should also be dismissed. *See, e.g.*, *In re Ocugen, Inc. Sec. Litig.*, 2024 WL 1209513, at *6 (dismissing insider trading claims against company's CEO and Chief Medical Officer with prejudice because plaintiffs "failed to plead a predicate securities fraud claim" which "was necessary to support" the insider trading claim); *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 356–57 (2d Cir. 2022) (affirming dismissal under Section "20A of the Exchange Act for failure to allege a primary violation," "such as one under Section 10(b) and Rule 10b-5").

process through its Managing Director and Cerevel Board member, Defendant Giordano."); ¶ 183

("Perceptive nominated one of its managing directors, Defendant Giordano, to the Cerevel Board,

and thus had non-public information regarding AbbVie's interest in a whole-company acquisition

and Cerevel's launch of a sales process."); ¶ 117 (Perceptive had, "through its Board designee,

material non-public information that AbbVie was imminently going to provide a term sheet to

acquire Cerevel at a significant premium."); *see also id.* ¶ 9.)[7]

These allegations demonstrate that Plaintiffs simply restate the Section 20A element that a

defendant be in possession of MNPI and summarily conclude Perceptive did because one of its

managing directors sat on the Cerevel Board. Such conclusory allegations are patently insufficient.

*See In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 308 (S.D.N.Y. 2011) (dismissing

20A claim against CEO where plaintiffs "pointed to nothing in the complaint that supports the

assertion that [the CEO] possessed material non-public information at the time of the sales"); *In

re Merck & Co., Sec., Derivative, & ERISA Litig.*, 2011 WL 3444199, at *37 (D.N.J. Aug. 8, 2011)

("supposition" or "[]conclusory allegations of knowledge" are not sufficient to state a claim under

Section 20A which "expressly requires that the insider have traded stock 'while in possession of

material nonpublic information.'"); *Arbitrage Event-Driven Fund v. Trib. Media Co.*, 2020 WL

60186, at *12 ("[A] position on the Board is not sufficient to allege the possession of MNPI.");

*see also Lemar v. Am. Trading Corp.*, 643 F. App'x 79, 82 (3d Cir. 2016) ("Conclusory allegations

are insufficient to survive a motion to dismiss."); *In re Allergan Erisa Litig.*, 975 F.3d 348, 353

---

[7]    The primary allegation concerning the Board's purported knowledge of a whole-co acquisition comes from Centerview's proposed talking points, sent to Renaud only, which noted only that Renaud purportedly discussed a whole co proposal with the Board. (*See* Compl. ¶¶ 74, 76.) Even taking this allegation as true, it is not pled with the requisite particularity, as it says nothing about how imminent the transaction was, what the proposed terms would be, or provide *any* other specifics that would indicate a firm offer to acquire all of Cerevel.

n.9 (3d Cir. 2020) ("[W]e disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements.").

Second, even assuming *arguendo* that Giordano learned MNPI in his capacity as a board member, his alleged knowledge cannot be imputed to Perceptive. The crux of Plaintiffs' Section 20A claim is that because Giordano was a Perceptive managing director, Perceptive "knew about the imminent AbbVie acquisition and Cerevel's launch of a sales process." (Compl. ¶ 91; *see also id.* ¶ 183.) But "it is well established that 'a director's knowledge may not properly be imputed to a corporation unless it is gained within the scope of his activity with respect to that corporation.'" *See Sandoval v. Uphold HQ Inc.*, 2025 WL 1268291, at *8 (S.D.N.Y. May 1, 2025), *appeal dismissed*, (2d Cir. Aug. 28, 2025). Here, information regarding Cerevel's business and potential strategic options was information Giordano learned as a Cerevel Board member, when he was acting as a fiduciary to Cerevel's shareholders—*not* Perceptive. *See In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *3 (S.D.N.Y. Aug. 8, 2005) (When board appointees "acted as directors of AGC, they were not acting within the scope of their employment with Microsoft and Softbank" because they "had fiduciary duties to act on behalf of the shareholders of AGC itself, not on behalf of the entities that appointed them."). Thus, Giordano's alleged knowledge was not learned with respect to Perceptive and cannot be imputed to it.

Because there are no well-pled, non-conclusory allegations that Perceptive possessed MNPI, Plaintiffs' Section 20A claim against Perceptive should be dismissed with prejudice.

## C.    Plaintiffs Cannot Allege That They Traded Contemporaneously with Perceptive

Finally, Plaintiffs' Section 20A claim against Perceptive must be dismissed for the independent reason that Plaintiffs do not plead that they traded contemporaneously with Perceptive, as they must. *See Alter*, 2011 WL 4528385, at *13. Although Section 20A "does not

14

define the term 'contemporaneous,' and the Third Circuit has not spoken on this issue . . . [D]istrict courts within the Third Circuit have required plaintiffs to plead that they purchased stock on the same dates on which the defendant's sales took place." *Id.* at *12. Moreover, courts have dismissed 20A claims for failing to plead the contemporaneous requirement where "it is apparent that the parties could not have actually traded with each other." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*, 503 F. Supp. 2d 25, 46 (D.D.C. 2007).

Here, Perceptive Advisors LLC[8] is not alleged to have purchased Cerevel common stock in the October Offering. As Plaintiffs acknowledge, "Perceptive Advisors LLC serves as the investment advisor to Perceptive Life Sciences Master Fund Ltd." (Compl. ¶ 28.) But SEC filings make clear that Perceptive Advisors LLC did ***not*** purchase the 876,808 shares in the October Offering—the Master Fund (a separate legal entity) did. (*See* Ex. E, Schedule 13D/A, Oct. 17, 2023 at 5.) Plaintiffs do not plead any facts whatsoever that these two distinct entities should be treated as the same. Thus, because Perceptive Advisors LLC was not the "purchaser," the 20A claim against it should be dismissed. *See In re Shanda Games Ltd. Sec. Litig.*, 2022 WL 992794, at *7-8 (S.D.N.Y. Mar. 31, 2022) (dismissing 20A claim against one defendant because "allegations are inadequate to plead that [defendant] was a purchaser[]" and against another defendant because "merely effectuating a purchase" does not deem defendant "a purchaser itself"); *Alter*, 2011 WL 4528385, at *13 ("Plaintiff did not purchase Advanta stock contemporaneously with the Outside Directors' sale of stock, and so has not satisfied the contemporaneous trading requirement.").

---

[8] As noted in the introduction to the Complaint, Plaintiffs bring claims against "Perceptive Advisors LLC." (*See* D.I. 19.) Although Plaintiffs later allege that Perceptive Life Sciences Master Fund Ltd. and C2 Life Sciences, LLC are included in the definition of "Perceptive," (*id*. ¶ 28), the only entity that waived service of summons was Perceptive Advisors LLC. (D.I. 23.) Neither the Master Fund nor C2 Life Sciences is a defendant in this case.

Regardless, any insider trading claim pled against the Master Fund would likewise fail.[9] Critically, because all of the shares in the October Offering were purchased from Cerevel, it is impossible for Plaintiffs (or anyone other than Cerevel) to have traded *with* the Master Fund, who undisputedly purchased shares directly from Cerevel.  Courts have explained that "[t]he purpose of the 'disclose or abstain' rule is to protect only those who might actually have traded with insiders."  *Buban v. O'Brien*, 1994 WL 324093, at *2, 3 (N.D. Cal. June 22, 1994) ("The requirement of contemporaneousness developed as a proxy for the traditional requirement of contractual privity between plaintiffs and defendants.").  The *Buban* court explained that "[w]hile an actual trade between plaintiff and defendant need not be expressly shown, harm to the plaintiff is a necessary factor.  Such harm may be found where it appears the plaintiff might, in fact, have traded with the defendant."  *Id.* at *3 (dismissing 20A claim where it was "manifest that plaintiff could not have traded with defendant").  Other courts have dismissed 20A claims for this same pleading failure.  *See In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*, 503 F. Supp. 2d at 46-47; *In re AST Rsch. Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995) (granting motion to dismiss 20A claims noting that "there must be some logical limit on those plaintiffs that can bring insider trading claims."); *see also Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 94-95 (2d Cir. 1981) (affirming plaintiff had no standing to assert unlawful trading claim because "non-contemporaneous traders do not require the protection of the 'disclose or abstain' rule because they do not suffer the disadvantage of trading with someone who has superior access to

---

[9]   Plaintiffs also cannot plead a predicate Exchange Act violation against the Master Fund or C2 Life Sciences, nor can they plead that the Master Fund or C2 Life Sciences was actually in possession of MNPI.  Just as such alleged knowledge cannot be imputed from Giordano to Perceptive Advisors LLC, it cannot be imputed to the Master Fund either.

information").[10]

## II.   PLAINTIFFS FAIL TO PLEAD A 20(A) CLAIM AGAINST DOUG GIORDANO

To state a claim under Section 20(a), a plaintiff must show: "(1) an underlying violation by a controll[ed] person or entity; (2) that the defendants are 'controlling persons;' and (3) that the defendants were in some meaningful sense culpable participants in the fraud." *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 397 (D. Del. 2016); *see also In re Digit. Island Sec. Litig.*, 223 F. Supp. 2d 546, 560 (D. Del. 2002), *aff'd,* 357 F.3d 322 (3d Cir. 2004). The PSLRA's heightened pleading standard requires a plaintiff to "state with particularity the circumstances of both the defendants' control of the primary violator [and] defendants' culpability as controlling persons." *Id.* at 398. The Section 20(a) claim against Giordano should be dismissed because Plaintiffs fail to adequately plead with the requisite particularity (i) an Exchange Act violation; (ii) that Giordano controlled Cerevel (or Renaud); and (iii) that Giordano was a culpable participant in the underlying fraud.

### A.   Plaintiffs Fail to Plead a Predicate Exchange Act Violation

Plaintiffs have failed to plead a predicate violation for their 20(a) claim against Giordano. Therefore, "their section 20(a) claim must be dismissed." *Pfizer*, 754 F.3d at 177. (*See supra* § I.A.; Cerevel and Renaud's Motions to Dismiss.)

### B.   Plaintiffs Fail to Plead Giordano Actually Controlled Cerevel

"Control over a primary violator may be established by showing that the defendant possessed 'the power to direct or cause the direction of the management and policies of a person,

---

[10]   In *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159 (3d Cir. 2014), the Third Circuit dismissed plaintiffs' 20A insider trading claim for the independent reason that the insider trading allegations could not "meet the heightened pleading standards for scienter under the PSLRA." *Id.* at 176 ("The mere fact that Martin and Ruffolo sold stock is insufficient to establish scienter."). As noted *supra* § I.A., Plaintiffs have failed to plead scienter here.

17

whether through the ownership of voting securities, by contract, or otherwise.'" *In re Bernard L. Madoff Inv. Sec. LLC*, 818 F. App'x 48, 55-56 (2d Cir. 2020) (rejecting "conclusory and non-specific" allegations of control); *see also In re Digit. Island*, 223 F. Supp. 2d at 561 ("[T]he heightened standard of the PSLRA requires that a claim under Section 20(a) state with particularity the circumstances of [] the defendants' control of the primary violator.").

At most, the Complaint recites Giordano's history of his time on Cerevel's Board and generally notes certain roles and responsibilities of all Board members and certain information he may have been privy to as a Board member. (*See* Compl. ¶ 36 ("Defendant Doug Giordano was a member of Cerevel's Board from Cerevel's formation in 2018 until the Merger. . . . In 2021, Defendant Giordano became a Managing Director of Defendant Perceptive, and Defendant Giordano became Perceptive's nominee to the Cerevel Board."); ¶ 41 (Giordano was originally a Pfizer Board appointee); ¶ 196 ("[E]ach of the Director Defendants reviewed and approved the Proxy, which was issued 'By Order of the Board of Directors.'"); *id.* ("The Director Defendants also had access to and understood the true timing of AbbVie's interest in a whole-company acquisition (*i.e.*, before the October Offering) and received and reviewed the Centerview valuation analyses that were excluded from the Proxy.").)

But it is well settled that "[t]he mere fact that an individual is a director of a firm is not sufficient to show he is a controlling person of the firm." *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *9 (D. Del. Feb. 7, 2020); *see also In re Digit. Island*, 223 F. Supp. 2d at 561 (dismissing claims against individual director defendants where only allegation concerning responsibilities with company was "serving as directors"). Plaintiffs have not even alleged that Giordano had the power to influence managerial decisions, which is regardless insufficient to plead actual control of Cerevel. *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015)

18

("The power to influence managerial decisions is not the same as 'power to direct the management and policies of the primary violator.'"); *see also Universal Am. Corp.*, 176 F. Supp. at 399 ("General allegations pertaining to 'management responsibilities fail to allege [control] with the requisite specificity,' as the control person must be shown to 'possess [ ] actual control over the transactions in question.'").

Plaintiffs assert that each Director Defendant "acted as control persons of Cerevel[]" merely because they "review[ed] and approved the Proxy," "had access to" information regarding AbbVie's interests and "received and reviewed the Centerview valuation analyses that were excluded from the Proxy." (Compl. ¶ 196.) But "Plaintiffs' allegations do not plausibly establish that the members of the [Board] had any power to direct . . . the content of [] filings," much less that Giordano, as a single Board member, wielded the power to direct Cerevel. *See Orient Plus Int'l Ltd. v. Baosheng Media Group Holdings Ltd.*, 2025 WL 2613530, at *24 (S.D.N.Y. Sept. 10, 2025) (dismissing claims against independent directors because complaint did not "sufficiently establish for example, that the Audit Committee members 'ha[d] the power to control those who' drafted Baosheng's financial statements, or that the Audit Committee members were 'in a position to approve [Baosheng's] financial statements' or otherwise had control over procedures designed to 'ensur[e] a measure of accuracy in the contents of company reports and SEC registrations'").

Because Plaintiffs fail to plead with the requisite specificity that Giordano had actual control over Cerevel, the Section 20(a) claim against him must fail. *See In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *9 (no control where individual was simply a director, even where that director was present at the firm's offices and allegedly pushed for certain cost cuts).

### C.        Plaintiffs Fail to Plead That Giordano Was a Culpable Participant

"In addition to the statutory elements of controlling person liability, [the Third Circuit has] also held that, in order for secondary liability to attach under § 20(a), the defendant must have been

a 'culpable participant' in the 'act or acts constituting the violation or cause of action.'" *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013).

Here, there are no allegations that Giordano actively participated in the alleged fraud, because the Complaint is devoid of any allegation that Giordano prepared or approved, let alone made, any of the allegedly false and misleading statements. Again, at most, the Complaint generally pleads that—by virtue of his position as a Board member—Giordano "reviewed and approved the Proxy" (though there is no allegation that he signed it), "had access to and understood the timing of AbbVie's interest in a whole-company acquisition," and "received and reviewed the Centerview valuation analysis." (Compl. ¶ 196.) Simply reviewing or having access to certain information is patently insufficient to plead culpable participation.[11] *See Universal Am. Corp.*, 176 F. Supp. at 399 (dismissing Section 20(a) claims, holding that it is insufficient to allege individuals "knew of the many misrepresentations in the Merger Agreement" because "[p]leading knowledge of the facts underlying the fraud, or even knowledge of the fraud itself, is simply not enough to establish culpable participation in the securities violation by an allegedly controlling person"); *In re Digit. Island,* 223 F. Supp. 2d at 563 (dismissing Section 20(a) claims where the complaint was "utterly lacking in any details as to when or how [any participation] occurred," even though the complaint pleaded "a factual predicate for the individual defendants' knowledge of the purported misstatements").

## **CONCLUSION**

For the foregoing separate and independent reasons, Counts II and IV of the Complaint should be dismissed against Perceptive and Giordano, respectively, with prejudice.

---

[11]   The Complaint is also devoid of any allegation that Giordano orchestrated the AbbVie whole-company acquisition or that Perceptive would (or even could) receive several advantages from a secondary offering versus alternative capital raise options. (*Cf.* Compl. ¶ 78.)

Dated: October 30, 2025

Respectfully submitted,

*/s/  Daniel M. Rusk*

POTTER ANDERSON & CORROON LLP
    J. Matthew Belger (#5707)
    Daniel M. Rusk, IV (#6323)
    1313 N. Market Street
    Hercules Plaza, 6th Floor
    Wilmington, Delaware 19801
    (302) 984-6000
    mbelger@potteranderson.com
    drusk@potteranderson.com

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

    Robert A. Fumerton (*pro hac vice*)
    Alexander C. Drylewski (*pro hac vice*)
    One Manhattan West
    New York, New York 10001
    Phone: (212) 735-3000
    Fax: (212) 735-2000
    robert.fumerton@skadden.com
    alexander.drylewski@skadden.com

*Counsel for Defendants Perceptive Advisors
LLC and Doug Giordano*