## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION | Case No. 25-cv-417-GBW<br><br>**PUBLIC VERSION**<br>**E-FILED:  November 6, 2025** |

## DEFENDANT PFIZER INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

OF COUNSEL:

**SIMPSON THACHER & BARTLETT LLP**
Lynn K. Neuner
George S. Wang
Anthony C. Piccirillo
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
lneuner@stblaw.com
gwang@stblaw.com
anthony.piccirillo@stblaw.com

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
John P. DiTomo (#4850)
Alec F. Hoeschel (#7066)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 351-9329
jditomo@morrisnichols.com
ahoeschel@morrisnichols.com

*Attorneys for Defendant Pfizer Inc.*

Dated: October 30, 2025

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ............................................................... 3

SUMMARY OF ARGUMENT .............................................................................................. 3

STATEMENT OF FACTS .................................................................................................... 4

ARGUMENT ....................................................................................................................... 8

    I.    Legal Standard ............................................................................................. 8

    II.    Plaintiffs Fail To State A Claim Against Pfizer Under Section 20(a)
    Of The Exchange Act ................................................................................... 9

        A.    Plaintiffs Have Not Adequately Pleaded Primary Violations
        Of The Exchange Act ...................................................................... 9

        B.    Plaintiffs Have Not Adequately Pleaded That Pfizer Was A
        Control Person Of Cerevel ............................................................ 10

        C.    Plaintiffs Have Not Adequately Alleged That Pfizer Was A
        Culpable Participant In The Alleged Primary Violations Of
        The Exchange Act ........................................................................ 16

            1.    The Complaint Is Devoid Of Any Non-Conclusory
            Allegations That Pfizer "Participated" In The Alleged
            Misstatements and Omissions ........................................... 17

            2.    The Complaint Does Not Allege That Pfizer Acted
            With Scienter ................................................................... 20

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*AJZN, Inc. v. Yu*,
2015 WL 331937 (D. Del. Jan. 26, 2015) ................................................................. 10

*Alta Fundamental Advisers LLC v. Bisaro*,
2025 WL 1793691 (D.N.J. Jun. 30, 2025) ................................................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 8

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ................................................................................. 9, 16

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
686 F. Supp. 2d 404 (D. Del. 2009) ......................................................................... 10

*Copland v. Grumet*,
1998 WL 256654 (D.N.J. Jan. 9, 1998) ................................................................... 17

*Dartley v. ErgoBilt Inc.*,
2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ........................................................... 12

*Davis v. Wells Fargo*
824 F.3d 333 (3d Cir. 2016) ..................................................................................... 8

*Doe v. Princeton Univ.*,
30 F.4th 335 (3d Cir. 2022) ...................................................................................... 8

*Doe v. Univ. of Scis.*,
961 F.3d 203 (3d Cir. 2020) ..................................................................................... 8

*In re Advance Auto Parts, Inc., Sec. Litig.*,
2020 WL 599543 (D. Del. Feb. 7, 2020) ................................................. 11, 16, 19, 20

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ..................................................... 13, 15

*In re Digital Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002) ....................................................... 8, 9, 17, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
352 F. Supp. 2d 429 (S.D.N.Y. 2005) ...................................................................... 11

ii

*In re Kosmos Energy Ltd. Secs. Litig.*,
   955 F. Supp. 2d 658 (N.D. Tex. 2013)..................................................................14

*LLDVF, L.P. v. Dinicola*,
   2010 WL 3210613 (D.N.J. Aug. 12, 2010)............................................................12

*Martin v. GNC Holdings, Inc.*,
   757 F. App'x 151 (3d Cir. 2018)......................................................................17, 20

*Nash v. Qualtrics Int'l Inc.*,
   2024 WL 231870 (D. Del. Jan. 22, 2024) .............................................................16

*Pelham v. Vbit Techs. Corp.*,
   2025 WL 947867 (D. Del. Mar. 28, 2025)..............................................................16

*Rosenberg v. XM Ventures*,
   274 F.3d 137 (3d Cir. 2001) ..................................................................................13

*Schaper v. Lensar, Inc.*,
   2024 WL 4817656 (D. Del. Nov. 18, 2024) .............................................................4

*Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*,
   739 F. Supp. 2d 686 (D. Del. 2010) ................................................................10, 16

*Stichting Pensioenfonds ABP v. Merck & Co.*,
   2012 WL 3235783 (D.N.J. Aug. 1, 2012)........................................................16, 20

*Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*,
   176 F. Supp. 3d 387 (D. Del. 2016) ................................................................16, 18

*Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*,
   61 F. Supp. 3d 391 (D. Del. 2014) .........................................................................16

*Williams v. Globus Media, Inc.*,
   869 F.3d 235 (3d Cir. 2017)................................................................................9, 10

## STATUTES

15 U.S.C. § 78t(a)......................................................................................................9

## RULES AND SECONDARY SOURCES

17 C.F.R. § 240.13d-5 .............................................................................................13

17 C.F.R. § 240.13d-101 .........................................................................................14

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 8

NASDAQ Rule 5615(a)(7)........................................................................................14

Defendant Pfizer Inc. ("Pfizer") respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (the "Complaint") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Pfizer does not belong in this case. Plaintiffs' securities fraud claims are based on alleged misstatements and omissions made by Cerevel Therapeutics Holdings, Inc. ("Cerevel") and its former CEO related to Cerevel's acquisition by AbbVie Inc. ("AbbVie"), as well as stock purchases of Bain Capital Investors, LLC ("Bain") and Perceptive Advisors LLC ("Perceptive"). Plaintiffs do not and cannot allege that Pfizer made any misleading statements to the public or that Pfizer participated in any insider stock transactions. Instead, the sole claim against Pfizer is for liability as a "control person" under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") with respect to the allegedly misleading statements of Cerevel and its former CEO, Ron Renaud. But Pfizer was at all relevant times a minority shareholder of Cerevel with the ability to nominate only one-sixth of Cerevel's board of twelve directors (the "Board"). The Complaint is devoid of a single non-conclusory allegation that Pfizer, despite its status as a minority shareholder, had the ability to control Cerevel, much less that Pfizer actually exercised control over the specific statements that the Complaint challenges. In fact, the Complaint supports the opposite conclusion, as it expressly acknowledges that the two Pfizer nominees on Cerevel's Board recused themselves from Board discussions related to the topics about which Plaintiffs claim Cerevel later misled investors. The Complaint is equally devoid of any particularized allegations that Pfizer culpably participated in any of the allegedly misleading statements of Cerevel and its former CEO.

Pfizer is entitled to dismissal on any one of three independent bases. *First*, the Complaint fails to plead a primary violation of the Exchange Act. Pfizer hereby joins in and incorporates by

1

reference Cerevel Therapeutics Holdings, Inc.'s Opening Brief in Support of its Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (the "Cerevel Brief"). Because Plaintiffs fail to state a claim for primary violations of the Exchange Act, the related Section 20(a) control person claim against Pfizer must also be dismissed.

*Second*, the Complaint fails to plead with substantiation that Pfizer was a control person of Cerevel. Plaintiffs concede that Pfizer held only a 15%-17% stake in Cerevel and had nominated only two of Cerevel's twelve directors at the time of the alleged misstatements and omissions. Courts have repeatedly found that minority stock ownership of a company and the power to nominate a minority of the board of directors are insufficient to establish control under Section 20(a). To avoid these dispositive facts, Plaintiffs try to conflate the distinct ownership and board nomination rights of Pfizer and Bain, another minority shareholder. But the Complaint is devoid of any non-conclusory allegations that Pfizer and Bain combined their minority stakes to exercise control over Cerevel during the Class Period.

*Third*, Plaintiffs do not adequately plead that Pfizer culpably participated in the misstatements and omissions allegedly made by Cerevel and its former CEO. The Complaint contains nothing more than conclusory allegations that Pfizer "participated in" and was "involved in" the alleged misrepresentations. In reality, Plaintiffs' own allegations demonstrate that Pfizer played no role in making or approving the alleged misstatements and omissions, as the Complaint recognizes that Pfizer's Board nominees were recused from participating in deliberations related to the subject matter of Cerevel's alleged misstatements and omissions. Moreover, Plaintiffs do not and cannot meet their burden of alleging culpable participation with particularity, *i.e.*, that Pfizer knowingly and substantially participated in the alleged underlying securities violation with the intent to further it or prevent its discovery. Plaintiffs' recitation of

2

the legal standard for culpable participation—supported by no particularized allegations regarding when, how, or in what manner Pfizer supposedly participated in Cerevel's alleged securities fraud—renders the Complaint irredeemably deficient. And Plaintiffs do not even attempt to plead, as they must, that Pfizer acted with a culpable state of mind.

For these reasons and those that follow, Plaintiffs' control person claim against Pfizer under Section 20(a) of the Exchange Act must be dismissed with prejudice for failure to state a claim upon which relief should be granted.

## NATURE AND STAGE OF THE PROCEEDINGS

On August 13, 2025, Plaintiffs filed the Consolidated Class Action Complaint. Compl., D.I. 19. The Complaint includes only one count against Pfizer, Count IV, which alleges a violation of Section 20(a) of the Exchange Act. *Id.* ¶¶ 193-98. Pfizer submits this memorandum of law in support of its Motion to Dismiss the Complaint.

## SUMMARY OF ARGUMENT

1.      Plaintiffs contend that Pfizer is liable under Section 20(a) for having acted as a control person of Cerevel with respect to certain alleged material omissions and false statements made by Cerevel and its former CEO regarding Cerevel's merger with AbbVie and its October 2023 secondary stock offering. Plaintiffs identify seven allegedly false and misleading statements made by Cerevel and/or its former CEO between October 11, 2023 and January 18, 2024. *Id.* ¶¶ 121-48. Because the Complaint contains no well-pleaded facts or inferences plausibly alleging that Pfizer is liable under Section 20(a) of the Exchange Act, Count IV of the Complaint against Pfizer must be dismissed as a matter of law.

2.      Plaintiffs' Section 20(a) control person claim against Pfizer should be dismissed because Plaintiffs fail to state a claim for primary violations of the Exchange Act.

3

3.      Plaintiffs' Section 20(a) control person claim against Pfizer should also be dismissed because Plaintiffs have not adequately pleaded that Pfizer was a control person of Cerevel.

4.      Plaintiffs' Section 20(a) control person claim against Pfizer should also be dismissed because Plaintiffs have not adequately pleaded that Pfizer was a culpable participant in the alleged primary violations of the Exchange Act.

## STATEMENT OF FACTS

Cerevel, a pharmaceutical company, was formed in 2018 following the contribution of pre-commercial neuroscience assets from Pfizer and a monetary investment by Bain.  Compl. ¶¶ 38-39.  When Cerevel was formed, Pfizer held a 25% equity interest in Cerevel, while Bain held the remaining 75%.  *Id*. ¶ 40.  In 2020, Cerevel announced a merger with Arya Sciences Acquisition Corp II, a special purpose acquisition company sponsored by Defendant Perceptive. *Id*. ¶ 42.  Upon the closing of the merger, the company was renamed Cerevel Therapeutics Holdings, Inc., and Pfizer retained approximately 21.5% of the outstanding shares of common stock.  *Id*. ¶ 44; Declaration of Anthony C. Piccirillo, dated October 30, 2025 ("Piccirillo Decl."), Ex. 2 (Form 8-K, Cerevel Therapeutics Holdings, Inc. (Nov. 2, 2020)), at 11.[1]

In connection with the 2020 merger, Cerevel entered into a Shareholder Rights Agreement with Pfizer and certain other shareholders.  *Id.* ¶ 47.  This agreement provided Pfizer and the other shareholders the right to require Cerevel to offer additional shares to the public and the right to purchase their pro rata proportion of any newly issued stock.  *Id.* ¶¶ 49-50.  Under the Shareholder Rights Agreement, Bain and Pfizer also had the right to nominate directors to the

---

[1] It is "well-established" that "SEC filings . . . are matters of public record of which the court can take judicial notice" when considering a motion to dismiss.  *Schaper v. Lensar, Inc.*, 2024 WL 4817656, at *2 (D. Del. Nov. 18, 2024).

Cerevel Board based on their respective ownership percentages (two for Pfizer and six for Bain) and were required to vote for the other's director nominees. *See* Piccirillo Decl. Ex. 1 (Amended and Restated Registration and Shareholder Rights Agreement, dated Nov. 2, 2020), Art. IV. Other than the voting agreement for director nominees, the Shareholder Rights Agreement does not require Pfizer and Bain to agree with or otherwise act in concert with each other on any other matters. *See id.*

At the start of October 2023, just before the earliest alleged misstatements and omissions referenced in the Complaint, Pfizer owned 17.4% of the outstanding shares of common stock in Cerevel and had nominated two of Cerevel's twelve directors. Compl. ¶¶ 55, 87. Pfizer's two director nominees, Deborah Baron and Suneet Varma, were Pfizer employees at the time. *Id.* ¶ 55; *see* Piccirillo Decl. Ex. 5 (Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, Cerevel Therapeutics Holdings, Inc. (Apr. 28, 2023)), at 52.[2]

The Complaint alleges that on or about September 23, 2023, an unnamed employee of AbbVie—which had previously engaged in discussions with Cerevel regarding a potential regional partnership—informed certain Cerevel employees of AbbVie's potential interest in a whole-company acquisition of Cerevel. *Id.* ¶¶ 66-68. The Cerevel Board met on September 27, 2023 to discuss "potential strategic paths forward, including M&A themes and trends." *Id.* ¶ 69 (internal quotations omitted). The two directors nominated by Pfizer, Ms. Baron and Mr. Varma,

---

[2] The Complaint alleges that two other Board members had connections with Pfizer, although Plaintiffs do not appear to allege that Pfizer exercised control over Cerevel through these directors. Douglas Giordano was a Pfizer employee when he was first nominated to Cerevel's Board in 2018. *Id.* ¶¶ 36, 41. In 2021, he left Pfizer to become a Managing Director of Perceptive, and the Complaint alleges that he "became Perceptive's nominee to the Cerevel Board" in that same year. *Id.* ¶ 36. Ruth McKernan was a "former Pfizer executive" who was nominated to the board by Bain in December 2020. *Id*. ¶ 55.

were recused from the meeting because Pfizer "could be an interested party if Cerevel were to engage in a strategic process for the potential acquisition of Cerevel." *Id.* ¶ 70.[3]

On October 10, 2023, the Cerevel Board approved an offering of common stock to raise capital (the "October Offering"). *Id.* ¶¶ 77-78. The October Offering was publicly announced the following day, offering 22,687,417 shares at a price of $22.81 per share and generating a total of just under $500 million in proceeds. *Id.* ¶ 79. Plaintiffs allege that neither the preliminary prospectus supplement nor the press release for the October Offering disclosed, among other things, that Cerevel was in discussions with AbbVie regarding a whole-company sale. *Id.* ¶ 82. Bain acquired 5,480,052 shares of common stock from the offering for $124,999,986 and disclosed this purchase in its Schedule 13D filing on October 18, 2023. *Id.* ¶ 86. Pfizer did not participate in the offering and maintained its preexisting ownership of 27,349,211 shares in Cerevel, resulting in a 2% reduction in its minority stake in the company. *Id.* ¶¶ 86-87. Following the October Offering, which closed on October 16, 2023, Pfizer held a 15.4% ownership interest in Cerevel. *Id.*; *see* Piccirillo Decl. Ex. 6 (Schedule 13D, Cerevel Therapeutics Holdings, Inc. & Pfizer Inc. (Oct. 18, 2023)), at 3.

On October 19, 2023, AbbVie submitted a non-binding indication of interest to acquire Cerevel at $35 per share. *Id.* ¶ 93. The Cerevel Board met on October 24, 2023 to consider the

---

[3] *See* Piccirillo Decl. Ex. 8 (Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, Cerevel Therapeutics Holdings, Inc. (January 18, 2024)) ("Proxy"), at 42 ("On September 27, 2023, the Board met, along with representatives of Cerevel management, at a regularly scheduled meeting to discuss Cerevel's strategic plan, clinical program updates, financial outlook and cash needs, enterprise risk management and business development options. . . . Given the assessment of Cerevel management that Pfizer could be an interested party if Cerevel were to engage in a strategic process for the potential acquisition of Cerevel, the Board (inclusive of the directors nominated by Pfizer) determined that Deborah Baron and Suneet Varma, directors nominated to serve on the Board by Pfizer, should be recused from the executive session, and Ms. Baron and Mr. Varma then recused themselves from the meeting.").

offer.  *Id.* ¶ 94.  Once again, the two directors nominated by Pfizer were recused from this meeting.  *See* Piccirillo Decl. Ex. 8 (Proxy), at 43.  The remaining directors rejected AbbVie's offer, informing AbbVie that it would need to meaningfully increase its offer for the Board to consider it.  Compl. ¶ 94.

On November 8, 2023, "the Board was informed that Pfizer had confirmed . . . that it would not pursue a strategic opportunity," and the Board determined that the two Pfizer-nominated members "would participate in further Board discussions regarding a potential strategic transaction."  *See* Piccirillo Decl. Ex. 8 (Proxy), at 44.  AbbVie submitted two additional offers, which the Board considered on November 10, 2023 and November 17, 2023.  Compl. ¶¶ 92-102.  On December 6, 2023, AbbVie and Cerevel issued a joint press release announcing that AbbVie would acquire Cerevel for $45 per share.  Compl. ¶ 103.  The next month, on January 18, 2024, Cerevel issued a Definitive Merger Proxy, in which the Board recommended that shareholders vote to approve the acquisition.  *Id.* ¶ 106.

Plaintiffs allege that Cerevel and its former CEO made false or misleading statements on seven different occasions ranging from October 11, 2023 to January 18, 2024.  *Id.* ¶¶ 121-48.  According to Plaintiffs, these seven statements contained misstatements and/or omitted material information regarding AbbVie's interest in a whole-company acquisition, Cerevel's response of launching a sales process, and the purpose of the October Offering (which, Plaintiffs allege, was to increase Bain and Perceptive's positions in Cerevel before a potential sale to AbbVie).  *See id*. ¶¶ 121-155.  Plaintiffs also claim that the Proxy induced investors to vote for the adoption of the merger agreement by allegedly omitting and inaccurately describing details regarding communications between AbbVie representatives and Cerevel representatives on September 23 and 25, 2023, and by allegedly omitting details about Cerevel's subsequent internal

communications and analyses, as well as analyses of Cerevel's financial advisor, Centerview Partners ("Centerview"), in late September and October 2023. *See id.* ¶¶ 108-113.

**ARGUMENT**

## I.    Legal Standard

Rule 12(b)(6) requires dismissal of a complaint that fails to "'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While the Court must "accept as true all factual allegations in the complaint," *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020), the Court must "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   In assessing the allegations in a complaint, the Court is required to "draw on its judicial experience and common sense" to determine whether Plaintiffs' factual allegations and inferences are plausible. *Id.* at 679.  A complaint containing allegations about the "*mere possibility* of misconduct" fails to state a claim upon which relief may be granted. *Id.* (emphasis added).

Claims made under Section 20(a) of the Exchange Act must also meet the higher pleading requirements of the Private Securities Litigation Reform Act ("PSLRA").  *See In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002); *see also Alta Fundamental Advisers LLC v. Bisaro*, 2025 WL 1793691, at *11 (D.N.J. Jun. 30, 2025) (dismissing plaintiffs' Section 20(a) claim for failure to meet the PSLRA's particularity standard).  "[T]he heightened standard of the PSLRA requires that a claim under Section 20(a) state with particularity the

circumstances of both the defendants' control of the primary violator, as well as of the defendants' culpability as controlling persons." *Id.* Here, Plaintiffs' Complaint contains no well-pleaded facts or inferences plausibly alleging that Pfizer is liable under Section 20(a) of the Exchange Act, much less particularized allegations sufficient to satisfy the heightened pleading standard of the PSLRA. Accordingly, Plaintiffs' claim against Pfizer must be dismissed as a matter of law.

## II.  Plaintiffs Fail To State A Claim Against Pfizer Under Section 20(a) Of The Exchange Act

Section 20(a) of the Exchange Act imposes liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a); *see also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013). "In order to maintain a cause of action for control person liability under Section 20(a), the plaintiffs must establish: (1) an underlying violation by a controlling person or entity; (2) that the defendants are 'controlling persons;' and (3) that the defendants were in some meaningful sense culpable participants in the fraud." *In re Digital Island*, 223 F. Supp. 2d at 560; *Belmont*, 708 F.3d at 485.

### A.  Plaintiffs Have Not Adequately Pleaded Primary Violations Of The Exchange Act

Plaintiffs' control person claims are subject to dismissal because the Complaint fails to state a claim for primary violations of the Exchange Act. For the reasons set forth in the Cerevel Brief, which Pfizer joins and incorporates herein by reference, Plaintiffs fail to adequately allege (1) that Cerevel or any of its officers made misstatements or omissions of material fact, or (2) that any such alleged misstatements and omissions were made with scienter. As the Third Circuit stated in *Williams v. Globus Media, Inc.*, 869 F.3d 235, 246 (3d Cir. 2017), "[l]iability

9

under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person.  Because we affirm the dismissal of plaintiffs' claims under Section 10(b), we also affirm the District Court's dismissal of their Section 20(a) claims." *See also City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 428 (D. Del. 2009) ("Accordingly, plaintiffs have failed to plead facts showing an underlying violation of § 10(b) . . . . and we must therefore dismiss plaintiffs['] § 20(a) claim against Horizon Lines, Inc. in its entirety.").  Here, the control person claims against Pfizer should be dismissed on this basis alone.

### B.    Plaintiffs Have Not Adequately Pleaded That Pfizer Was A Control Person Of Cerevel

The Complaint fails to plausibly allege that Pfizer was a control person of Cerevel.  To plead control, a plaintiff must allege with particularity that the defendant had the "'power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'"  *AJZN, Inc. v. Yu*, 2015 WL 331937, at *4 (D. Del. Jan. 26, 2015) (quoting *Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 707 (D. Del. 2010)).  Plaintiffs do not and cannot allege that Pfizer had majority economic or voting control of Cerevel.  Plaintiffs do not and cannot allege that Pfizer nominated or otherwise controlled a majority of Cerevel's Board.  Plaintiffs do not and cannot allege that Pfizer—as a minority shareholder—had the power to control the contents of Cerevel's public statements and disclosures, including the alleged misrepresentations and omissions made by Cerevel and its former CEO.  Accordingly, Plaintiffs' Section 20(a) control person claim against Pfizer must be dismissed for failure to state a claim upon which relief may be granted.

Prior to the October Offering, Pfizer held 17.4% of the outstanding shares of common stock in Cerevel.  Compl. ¶ 87.  Pfizer did not participate in the October Offering and

10

maintained its preexisting holdings of 27,349,211 shares in Cerevel, resulting in a reduction in its minority ownership interest in the company to 15.4%. *Id*. ¶¶ 86-87.  During the Class Period (October 11, 2023 to August 1, 2024), only two members of the Cerevel's twelve-member Board had been nominated by Pfizer—Deborah Baron and Suneet Varma, in 2021 and 2022 respectively. *Id*. ¶ 55.   Plaintiffs also allege that two other Board members were former Pfizer employees or executives: Douglas Giordano, who was originally nominated to Cerevel's board of directors in 2018 by Pfizer (while he was still an employee there) and "became Perceptive's nominee to the Cerevel Board" in 2021, and Dr. Ruth McKernan, who was nominated to the Board by Bain in 2020. *Id.* ¶¶ 36, 41, 55.   But the Complaint includes no allegations that Mr. Giordano or Dr. McKernan were representatives of Pfizer during the Class Period, were acting in Pfizer's interests, or were at all influenced by Pfizer.  Accordingly, Plaintiffs cannot and do not allege that Pfizer exercised control over Cerevel through Mr. Giordano and Dr. McKernan.

Minority shareholders with the ability to nominate a minority of board directors, like Pfizer here, do not have the ability to control a corporation. *See In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at \*10 (D. Del. Feb. 7, 2020) (dismissing Section 20(a) claim for failure to plead control where entity was a minority shareholder and nominated a minority of board directors); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 457-59, 469 (S.D.N.Y. 2005) (granting motion to dismiss Section 20(a) claim against Verizon because it did not have control over a company's board where it only owned 30% of stock and only had the power to nominate three of nine board members).  Thus, Pfizer's stock ownership and two director nominees are insufficient as a matter of law to make Pfizer a control person.

Recognizing that Pfizer lacked the power to control Cerevel, the Complaint alleges that Cerevel was "controlled by Bain and Pfizer" because Bain's and Pfizer's *combined* minority

11

ownership stakes exceeded 50% of Cerevel's outstanding common stock and Bain's and Pfizer's *combined* director nominees composed a majority of Cerevel's Board. *See* Compl. ¶¶ 5, 87, 195. However, nothing in Section 20(a) or in the cases applying it creates control person liability based on the aggregated stock ownership or board representation of two separate entities. Rather, "each defendant's control must be evaluated separately unless there is some basis on which to consider their collective action" because otherwise "any shareholder, no matter how small, could be grouped with others to form a majority control group." *LLDVF, L.P. v. Dinicola*, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010).

Plaintiffs do not allege any additional facts to suggest that Pfizer and Bain—despite being separate companies—acted together to exert majority control over Cerevel. While Bain, Pfizer, and certain other shareholders were subject to a Shareholder Rights Agreement, nothing in that agreement erases the corporate separateness of Pfizer and Bain. Compl. ¶¶ 47-51. The Shareholder Rights Agreement required Pfizer and Bain to agree with each other in only one circumstance: Pfizer was required to vote for Bain's director nominees, and Bain was required to vote for Pfizer's director nominees. *Id.* ¶ 87; Piccirillo Decl. Ex. 3 (Schedule 13D, Cerevel Therapeutics Holdings, Inc. & Pfizer Inc. (Nov. 6, 2020)), at 4. In all other circumstances, Pfizer and Bain were free to agree or disagree with each other as they saw fit. Accordingly, the Shareholder Rights Agreement has no bearing on Pfizer's ability to control Cerevel or its management and policies, including the specific alleged misstatements and omissions in the Complaint. *See Dartley v. ErgoBilt Inc.*, 2001 WL 313964, at *1 (N.D. Tex. Mar. 29, 2001) ("The Court finds that [defendant's] status as a major shareholder and a party to the voting agreement at issue does not, without more, create control person liability. [Defendant's] . . . obligation to vote for designated directors, with other parties to the voting agreement, did not

12

constitute that control which would automatically trigger . . . § 20(a) liability."); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *35 n.257 (C.D. Cal. Aug. 8, 2013) ("The mere fact that such a voting agreement exists is insufficient to demonstrate control.").

Plaintiffs allege that Bain disclosed in an October 18, 2023 SEC filing that Bain and Pfizer "*may* be deemed to be a group" for purposes of Section 13(d)—an entirely different section of the Exchange Act. *See id.* ¶ 87.[4]  However, this does not help them plead the control person claim.  The Third Circuit has described Section 13(d) as "essentially a reporting provision that requires the disclosure of certain information" regarding stock ownership.  *Rosenberg v. XM Ventures*, 274 F.3d 137, 143 (3d Cir. 2001).  SEC rules provide that a "group" is formed when two or more persons "agree to act together for the purpose of acquiring, holding, *voting* or disposing of equity securities of an issuer."  17 C.F.R. § 240.13d-5 (emphasis added).  Bain's October 18, 2023 Schedule 13D filing stated that Pfizer and Bain "*may be deemed* to be a group" under Section 13(d) "[a]s a result of the *voting* arrangements described under Item 6 of this Section 13D," which refers back to Bain's initial Schedule 13D filing, which disclosed that Bain and "Pfizer agreed [in the Shareholder Rights Agreement] to cast all votes to which such entities are entitled for each such entity's director nominees as set forth below."  Piccirillo Decl. Ex. 7, (Schedule 13D, Cerevel Therapeutics Holdings, Inc. & Bain Capital Investors, LLC (Oct. 18, 2023)), at 3 (emphasis added); Piccirillo Decl. Ex. 3 (Schedule 13D, Cerevel Therapeutics Holdings, Inc. & Pfizer Inc. (Nov. 6, 2020)), at 4.  Bain's October 18 filing did not concede that

---

[4] Pfizer's October 18, 2023 Schedule 13D filing did not disclose that Pfizer and Bain may be deemed a "group."  *See* Piccirillo Decl. Ex. 6 (Schedule 13D, Cerevel Therapeutics Holdings, Inc. & Pfizer Inc. (Oct. 18, 2023)).  Pfizer's earlier Schedule 13D filings included such disclosures, the latest of which is dated April 7, 2022 and pre-dates the alleged Class Period.  *See, e.g.*, Piccirillo Decl. Ex. 4 (Schedule 13D, Cerevel Therapeutics Holdings, Inc. & Pfizer Inc. (Apr. 7, 2022)), at 4.

13

Pfizer and Bain were in fact a "group." Indeed, Bain's October 18, 2023 Schedule 13D filing selected box 2(b), which indicates that "the reporting person disclaims membership in a group or describes a relationship with another person but does not affirm the existence of a group." *See* 17 C.F.R. § 240.13d-101 (instructions regarding information to be included in Schedule 13D filings). Accordingly, Bain's Schedule 13D filing adds nothing to Plaintiffs' allegations. It simply reiterates that Pfizer was required to vote for Bain's director nominees and Bain was required to vote for Pfizer's director nominees. In all other circumstances—including with respect to the alleged primary securities violations alleged in the Complaint—Pfizer and Bain, like any other separate shareholders, were under no obligations to act as a group.

For similar reasons, Plaintiffs cannot premise their allegations of control on certain disclosures in Cerevel's February 27, 2024 Form 10-K. *See* Compl. ¶ 54. Cerevel disclosed that it was a "'controlled company' under the applicable NASDAQ rules." *Id.* The NASDAQ rule defines "Controlled Company" as "a Company of which more than 50% of the *voting power for the election of directors* is held by an individual, a group or another company." NASDAQ Rule 5615(a)(7) (emphasis added). A company's "statement that it [is] a controlled company" under stock exchange rules is "largely irrelevant in determining whether the complaint alleges control person liability." *In re Kosmos Energy Ltd. Secs. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013) (dismissing control person claims notwithstanding the company's disclosure that it was a "controlled company" under New York Stock Exchange rules). Cerevel's 10-K made the "controlled company" disclosure in the context of explaining that Cerevel was eligible for an exemption from certain corporate governance requirements[5]—it was not a concession that Pfizer

---

[5] Cerevel's 10-K stated that a "controlled company" was exempt from NASDAQ rules requiring, among other things, a board consisting of a majority of independent directors, a nominating/corporate governance committee composed entirely of independent directors, or a

and Bain collectively controlled Cerevel for purposes of Section 20(a). *See* Piccirillo Decl. Ex. 9 (Form 10-K, Cerevel Therapeutics Holdings, Inc. (Feb. 27, 2024)), at 43. Moreover, like the language in the Schedule 13D filing, the "controlled company" disclosure—consistent with the NASDAQ rule's reference to "voting power for the election of directors"—was based on Bain's and Pfizer's agreement to vote for each other's Board nominees and did not indicate that Bain and Pfizer had agreed to or could exercise majority control collectively for any other purposes.

Plaintiffs also allege that Cerevel's 10-K stated that Bain and Pfizer "will have the ability to strongly influence all corporate *actions requiring stockholder approval*." Compl. ¶ 54 (emphasis added). This statement has no relevance to Plaintiffs' allegations because it relates to hypothetical corporate actions that are subject to a shareholder vote. None of the alleged primary violations of the securities law in this case arise out of "corporate actions requiring stockholder approval." *See In re Am. Apparel*, 2013 WL 10914316, at *35 n.257 (dismissing Section 20(a) claims where significant minority stockholders "agreed to vote his or its shares in favor of the other's reelection to the board" because Plaintiffs did not allege that the minority stockholder defendant "had exercised its power under the voting agreement to manipulate or control [the company's] management or policies").

Accordingly, the Complaint fails to plead that Pfizer was a control person of Cerevel and therefore fails to satisfy the second element of a Section 20(a) claim.

---

compensation committee composed entirely of independent directors. Piccirillo Decl. Ex. 9 (Form 10-K, Cerevel Therapeutics Holdings, Inc. (Feb. 27, 2024)), at 43. Nonetheless, Cerevel noted that it chose not to avail itself of these exemptions: "Currently, 10 of our 12 directors are independent directors, and we have an independent nominating and corporate governance committee and an independent compensation committee." *Id.*

15

### C.    Plaintiffs Have Not Adequately Alleged That Pfizer Was A Culpable Participant In The Alleged Primary Violations Of The Exchange Act

Plaintiffs' Section 20(a) claim against Pfizer must be dismissed for the additional reason that the Complaint fails to plausibly allege that Pfizer was a culpable participant in Cerevel's alleged misstatements and omissions.  In fact, the Complaint contains no particularized allegations at all regarding Pfizer's participation in Cerevel's alleged misrepresentations or omissions, much less that Pfizer participated with a culpable state of mind.

"Culpable participation for purposes of Section 20(a) 'refers to either knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent its discovery.'"  *In re Advance Auto Parts*,  2020 WL 599543, at *10.  "The culpable participation element of a § 20(a) claim mirrors the scienter element of a § 10(b) claim." *Stichting Pensioenfonds ABP v. Merck & Co.*, 2012 WL 3235783, at *11 (D.N.J. Aug. 1, 2012).[6] The PSLRA's "heightened standard" of pleading with particularity applies to the element of culpable participation, and pleading culpability is a "heavy burden."  *In re Digital Island*, 223 F. Supp. at 561, 563; *see also Snowstorm Acquisition Corp.*, 739 F. Supp. 2d at 707 ("[T]he heightened standard of the PSLRA requires that a claim under § 20(a) state with particularity the circumstances of both the defendant's control of the primary violator, as well as of the

---

[6] The Third Circuit has recognized the culpable participation element as a "requirement" of a Section 20(a) claim at the summary judgment stage.  *See Belmont*, 708 F.3d at 484 n.20. Following the Third Circuit's decision in *Belmont*, the significant majority of cases in the District of Delaware have required plaintiffs to plead the "culpable participation" element in their complaint in order to state a Section 20(a) claim.  *See, e.g.*, *In re Advance Auto Parts*, 2020 WL 599543, at *10; *Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 176 F. Supp. 3d 387, 397 (D. Del. 2016); *Universal Am. Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 61 F. Supp. 3d 391, 398 (D. Del. 2014); *Pelham v. Vbit Techs. Corp.*, 2025 WL 947867, at *12 (D. Del. Mar. 28, 2025), *report and recommendation adopted*, 2025 WL 1282321 (D. Del. May 2, 2025); *Nash v. Qualtrics Int'l Inc.*, 2024 WL 231870, at *7 (D. Del. Jan. 22, 2024), *report and recommendation adopted*, 2024 WL 2505911 (D. Del., May 24, 2024) (Wiliams, J.).

defendant's culpability as a controlling person.").  Under this heightened standard, the factual allegations must "give rise to a strong inference of scienter," which means that the "inference of scienter" is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 154 (3d Cir. 2018).

**1.   The Complaint Is Devoid Of Any Non-Conclusory Allegations That Pfizer "Participated" In The Alleged Misstatements and Omissions**

Plaintiffs' Complaint is not just missing allegations of "knowing and substantial participation" in Cerevel's alleged misstatements and omissions by Pfizer; it includes no specific allegations of *any* participation by Pfizer in the alleged misstatements and omissions *at all*.  In fact, the entirety of the Complaint's allegations regarding Pfizer's involvement in the alleged primary violation is found in one paragraph:

> Bain and Pfizer *participated in* and/or had specific awareness of the Company's merger prospects and were involved in Cerevel and Renaud's false documents filed by the Company with the SEC and disseminated to the investing public. Bain and Pfizer had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company and Renaud, including the content and dissemination of the various statements which Lead Plaintiffs contend are false and misleading. Bain and Pfizer were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Lead Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

Compl. ¶ 195 (emphasis added).  Plaintiffs' mere use of the word "participated" is the epitome of insufficient, conclusory pleading.  *See In re Digital Island*, 223 F. Supp. 2d at 563 ("In sum, the court concludes that the complaint 'does nothing more than restate the legal standard for control person liability; it does not provide adequate facts to support these allegations.'" (quoting *Copland v. Grumet*, 1998 WL 256654, at *15 (D.N.J. Jan. 9, 1998)).

17

Equally conclusory and insufficient are Plaintiffs' allegations that Pfizer had "specific awareness of the Company's merger prospects," was "involved in Cerevel and Renaud's false documents," "did influence and control, directly or indirectly, the decision-making of the Company and Renaud, including the content and dissemination of the various statements which Lead Plaintiffs contend are false and misleading," and "had the ability to prevent the issuance of the statements or cause the statements to be corrected." Compl. ¶ 195. Knowledge of the basis for purported misstatements or omissions alone, as Plaintiffs attempt to plead (albeit in conclusory fashion), is insufficient to adequately plead culpable participation under Section 20(a). *See In re Digital Island*, 223 F. Supp. 2d at 563 ("At best, the complaint alleges a factual predicate for the individual defendants' knowledge of the purported misstatements. Such allegations alone are insufficient to establish Section 20(a) culpability.").

Moreover, Plaintiffs' vague allegations of Pfizer being "involved in," "influenc[ing] and control[ling]," and having the ability to prevent or correct the alleged misstatements and omissions are also insufficient to plead culpable participation. For example, the court in *In re Digital Island* found that the complaint failed to allege facts sufficient to meet the plaintiffs' "heavy burden" of showing culpable participation because "the complaint merely states that, due to their Board or managerial positions, the defendants actively participated in the alleged fraud and that the defendants knew of the allegedly undisclosed facts," and thus "[i]n light of these conclusory allegations, the court finds that the plaintiffs have failed to adequately plead the control prong of a Section 20(a) claim." *Id.* at 562-63. While the Complaint "broadly and vaguely alleges" that Pfizer "participated" and was involved in the alleged misstatements and omissions, it "is utterly lacking in any details as to when or how this occurred." *Id.* at 563; *see also Universal Am. Corp.*, 176 F. Supp. 3d at 399 (granting motion to dismiss Section 20(a)

18

control claim where complaint only included general allegations about the defendants' positions and failed to plead "actual control over the transactions in question").

As a minority shareholder that nominated a minority of the Board, Pfizer had no ability to—and did not—dictate, control, or participate in any of the alleged misstatements or omissions. *See In re Advance Auto Parts*, 2020 WL 599543, at \*10 (dismissing Section 20(a) claims where the complaint included only "conclusory allegations" and did not allege, for example, that defendants controlled the drafting or publishing of the alleged misstatements at issue, or reviewed or signed them before publication). Moreover, given the Complaint acknowledges Pfizer's recusal from Board discussions about a potential merger with AbbVie, the Complaint actually alleges Pfizer's *non-participation* with more particularity than it does Pfizer's participation. The Complaint concedes that the two Pfizer-nominated Board members were recused from Board discussions related to the potential deal during the early stages of discussions between AbbVie and Cerevel—the time period most central to Plaintiffs' allegations. Compl. ¶ 82. Pfizer's nominees were recused from discussions related to a potential AbbVie deal between September 27, 2023 and November 8, 2023. Piccirillo Decl. Ex. 8 (Proxy), at 43. This means that Pfizer's nominees did not participate in any of the Board-level discussions that Plaintiffs identify during that period related to a potential transaction with AbbVie. *See* Compl. ¶¶ 70 (referencing Sep. 27, 2023 Board meeting), 94 (referencing Oct. 24, 2023 Board meeting).

The core of Plaintiffs' allegations is that Cerevel made misstatements and omissions about the timing and sequence of events related to AbbVie's expression of interest in a whole-company acquisition and Cerevel's consideration of the potential merger—particularly in the period prior to the October 16, 2023 Offering. *See, e.g.*, *id.* ¶¶ 109-111, 144. But the Complaint itself recognizes that Pfizer's Board nominees were excluded from any deal-related discussions

19

from September 27, 2023 until November 8, 2023. Pfizer could not have meaningfully contributed to the preparation of statements about pre-November 8 discussions with AbbVie when the two Pfizer-nominated directors were recused from the relevant Board meetings. Moreover, Pfizer did not participate in the October Offering at issue, and its relative percentage of stock ownership decreased as a result. *See supra*, p. 6. Accordingly, the Complaint not only fails to plead Pfizer's participation in the alleged misstatements or omissions, it actually concedes that Pfizer was not equipped to participate in the alleged misstatements or omissions.

### 2. The Complaint Does Not Allege That Pfizer Acted With Scienter

The Complaint also fails to allege *at all* that Pfizer *culpably* participated in the alleged misstatements and omissions. As discussed above, "[c]ulpable participation for purposes of Section 20(a) 'refers to either *knowing* and substantial participation in the wrongdoing or inaction with the *intent to further the fraud or prevent its discovery*,'" *In re Advance Auto Parts*, 2020 WL 599543, at *10 (citation omitted and emphasis added), and "mirrors the scienter element of a § 10(b) claim," *Stichting Pensioenfonds*, 2012 WL 3235783, at *11. The Complaint is devoid of any allegations regarding Pfizer's state of mind with respect to participation in the alleged misstatements or omissions, much less particularized allegations that would "give rise to a strong inference of scienter" that is "at least as compelling" as any opposing inference. *See Martin*, 757 F. App'x at 154. In particular, Plaintiffs do not and cannot allege that Pfizer participated in or otherwise stood to benefit from the October Offering. Because Plaintiffs do not even attempt to plead scienter, the Complaint does not allege this required element of culpable participation and thus fails to state a Section 20(a) claim against Pfizer.

### CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that Count IV in the Complaint be dismissed with prejudice with respect to Pfizer.

Dated:   October 30, 2025

Respectfully submitted,

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

*/s/ John P. DiTomo*
John P. DiTomo (#4850)
Alec F. Hoeschel (#7066)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 351-9329
jditomo@morrisnichols.com
ahoeschel@morrisnichols.com

SIMPSON THACHER & BARTLETT LLP
Lynn K. Neuner (*pro hac vice*)
George S. Wang (*pro hac vice*)
Anthony C. Piccirillo (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
lneuner@stblaw.com
gwang@stblaw.com
anthony.piccirillo@stblaw.com

*Attorneys for Defendant Pfizer Inc.*

21