**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION | Case No. 25-cv-417-GBW <br><br> **FILED UNDER SEAL** |

**ANSWERING BRIEF IN OPPOSITION TO DEFENDANT PFIZER INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT (D.I. 40)**


Dated: December 17, 2025

Brian E. Farnan (Bar No.  4089)
Michael J. Farnan (Bar No.  5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel.: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

***Counsel for Lead Plaintiffs and the Class***

[Additional counsel listed on signature block]

**TABLE OF CONTENTS**

I.      NATURE AND STAGE OF THE PROCEEDINGS ............................................................1

II.     SUMMARY OF ARGUMENT ........................................................................................2

III.    STATEMENT OF FACTS ..............................................................................................4

        A.      Pfizer and Bain Form Cerevel Therapeutics in 2018...................................4

        B.      Cerevel Goes Public Through a De-SPAC Transaction and Enters into
                Shareholder Rights Agreements .................................................................4

        C.      Pfizer and Bain Maintain Control of Cerevel Following the De-SPAC
                Transaction Through the October Offering and AbbVie Merger ...........................6

IV.     ARGUMENT..................................................................................................................8

        A.      Cerevel Committed a Primary Securities Law Violation ........................................9

        B.      Pfizer Had Control of Cerevel ...............................................................10

        C.      Pfizer Culpably Participated in the Section 10(b) Violation .................................14

CONCLUSION...........................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013)........................................................................................... 14

*City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*,
No. 2:23-CV-04146 (WJM), 2025 WL 1577315 (D.N.J. June 4, 2025).......................... 12

*Dutton v. Harris Stratex Networks, Inc.*,
270 F.R.D. 171 (D. Del. 2010) ...................................................................................... 14

*In re Advance Auto Parts, Inc., Sec. Litig.*,
No. 18-212-RGA, 2020 WL 599543 (D. Del. Feb. 7, 2020).......................................... 14

*In re Am. Apparel, Inc. S'holder Litig.*,
No. CV 10-06352 MM (RCx), 2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) .......... 11, 12

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
No. 05-232, 2007 WL 81937 (E.D. Pa. Jan. 9, 2007)...................................................... 9

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015)............................................................................... 15

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. H-14-3428, 2016 WL 215476 (S.D. Tex. Jan. 19, 2016) ......................................... 13

*In re Digital Island Securities Litigation*,
223 F. Supp. 2d 546 (D. Del. 2002)................................................................................ 16

*In re Nat'l Media Sec. Litig.*,
No. 93-2977, 1994 WL 397398 (E.D. Pa. July 27, 1994) ................................................ 9

*In re Reliance Sec. Litig.*,
135 F. Supp. 2d 480 (D. Del. 2001)................................................................................ 10

*In re SolarWinds Corp. Sec. Litig.*,
595 F. Supp. 3d 573 (W.D. Tex. 2022),
*order clarified*, 2022 WL 3699429 (W.D. Tex. Aug. 19, 2022)...................................... 13

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ........................................................................... 12

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)......................................................................................... 2, 9

*LLDVF, L.P. v. Dinicola*,
No. 09-1280 (JLL), 2010 WL 3210613 (D.N.J. Aug. 12, 2010)..................................... 13

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ................................................................................. 13

*Palladin Partners v. Gaon*,
  No. 05-CV-2203 (WJM), 2006 WL 2460650 (D.N.J. Aug. 22, 2006) .............................. 9

*Rochez Bros. v. Rhoades,*
  527 F.2d 880 (3d Cir. 1975) ................................................................................. 10

*Stanley Black & Decker, Inc. v. Gulian*,
  70 F. Supp. 3d 719 (D. Del. 2014) .......................................................................... 9

*Strougo v. Mallinckrodt Pub. Ltd. Co.*,
  No. CV 20-10100 (MAS) (TJB), 2022 WL 17740482 (D.N.J. Dec. 16, 2022) .............. 14

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................... 12

**Statutes**

17 C.F.R. Section 240 ............................................................................................ 10

**Other Authorities**

H.R. REP. No. 1383, 73rd Cong., 2d Sess. 26 (1934) ................................................. 10

Nasdaq Listing Rule 5615, Controlled Companies § 7(A) ........................................... 12

NYSE Listed Company Manual § 303A.00 ............................................................... 12

I.      **NATURE AND STAGE OF THE PROCEEDINGS**[1]

The case arises from misstatements and omissions in connection with Cerevel's offering of $500 million of stock in October 2023 (the "October Offering") and AbbVie's subsequent acquisition of the Company. Undisclosed to investors, the October Offering was orchestrated to allow Cerevel's inside shareholders Bain and Perceptive to acquire more than six million shares of Cerevel common stock at a deep discount while in possession of material nonpublic information regarding AbbVie's merger interest. These insiders unlawfully profited more than $140 million when AbbVie announced just 51 days later that it was acquiring Cerevel for nearly double the offering price.

The Complaint asserts violations of Sections 10(b), 14(a), 20A, and 20(a) of the Exchange Act against, variously, Cerevel, Cerevel's controlling shareholders Bain and Pfizer, inside shareholder Perceptive, Cerevel CEO Renaud, and certain members of Cerevel's Board:

| Defendant(s) | Summary of Claims |
|---|---|
| Cerevel (D.I. 46) | Cerevel is liable under Sections 10(b) and 14(a) for making misstatements and omitting material facts in various public statements from the October Offering through the Proxy regarding the timing of AbbVie's merger interest and the fairness of the Merger. |
| Bain, Gordon, Koppel (the "Bain Defendants") (D.I. 45) | Bain is liable under Section 20A for purchasing more than five million Cerevel shares while in possession of material, nonpublic information regarding AbbVie's advanced merger interest. Bain, Cerevel's largest shareholder, is also liable under Section 20(a) as a control person of Cerevel and Renaud. Defendants Gordon and Koppel, senior executives at Bain, served as Cerevel Board members and are liable under Section 20(a) as control persons of Cerevel. |
| Perceptive, Giordano (D.I. 53) | Perceptive is liable under Section 20A for purchasing 876,808 Cerevel shares while in possession of material nonpublic |

---

[1] Capitalized terms undefined herein shall have the same meaning as in the Consolidated Class Action Complaint ("Complaint") [D.I. 19]. Citations to "¶__" refer to paragraphs in the Complaint. All emphasis is added and internal citations omitted unless otherwise noted.

| Defendant(s) | Summary of Claims |
|---|---|
|  | information regarding AbbVie's advanced merger interest. Defendant Giordano, a Perceptive Managing Director, served as a Cerevel Board member and is liable under Section 20(a) as a control person of Cerevel. |
| Pfizer (D.I. 40) | Pfizer is liable as a control person under Section 20(a) of Cerevel because Pfizer and Bain at all times jointly controlled Cerevel. |
| Renaud (D.I. 57) | Renaud, who served both as Cerevel's CEO and a Senior Advisor at Bain during the Class Period, is liable under Section 10(b) for making misstatements and omitting facts regarding the October Offering and the timing of AbbVie's merger interest. Renaud is also liable under Section 20(a) as a control person of Cerevel. |
| Patrick, Baron, Varma, and McKernan (the "Director Defendants") (D.I. 55) | Each of the Director Defendants was a member of the Cerevel Board, had some affiliation with Bain and/or Pfizer, and are liable under Section 20(a) as control persons of Cerevel. |

In an apparent effort to induce the Court to look at the claims in the Complaint on a fractionalized (rather than holistic) basis as required by operative Third Circuit law,[2] Defendants made six separate motions to dismiss. This opposition addresses the motion filed by Defendant Pfizer (D.I. 40). While this opposition focuses on the facts and arguments related to Pfizer, Plaintiffs incorporate by reference herein each of the other opposition briefs.

## II.     SUMMARY OF ARGUMENT

1.      Far from being a passive minority investor who "does not belong in this case," Pfizer was—together with Bain—a member of a coordinated control group that held majority voting power, dominated Cerevel's Board, and possessed extensive contractual rights over corporate governance and equity offerings. Pfizer co-founded Cerevel, contributing intellectual property, assets, and strategic direction. From inception, Pfizer and Bain structured and controlled the governance of Cerevel jointly and were at all times considered a "group." Indeed, Cerevel's SEC filings concede it was a "controlled company" under applicable NASDAQ rules.

---

[2] *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009).

2

2.      Pfizer attempts to evade liability by isolating its own minority stake in Cerevel, ignoring the reality of its coordinated rights with Bain (and the eleven of twelve Cerevel Board members the two of them collectively appointed, currently or formerly employed and/or had some affiliation with). Courts have repeatedly held that minority shareholders who collectively hold majority voting power and appoint a majority of directors—particularly those who act jointly – may constitute a control group under Section 20(a). That is exactly what Plaintiffs' allegations demonstrate here. Pfizer and Bain together owned over 50% of Cerevel's stock, selected or were affiliated with eleven of twelve directors, exercised joint rights under the Shareholder Rights Agreements, publicly acknowledged they can be treated as a "group" and that they together had the ability to "strongly influence all corporate actions requiring stockholder approval." ¶¶47-52, 54-55, 87. Taken together, these facts are overwhelming evidence of control.

3.      Pfizer's arguments that it did not culpably participate in the wrongdoing fare no better. While the "overwhelming trend" in the Third Circuit is that culpable participation allegations need not be pled to survive a motion to dismiss, the Complaint easily establishes culpable participation here. In addition to Pfizer's *actual knowledge* of AbbVie's whole-company interest in Cerevel and the Centerview September 2023 analysis presented to the Board valuing Cerevel at $53 per share, Pfizer's Board designees approved the October Offering that enabled Bain and Perceptive's unlawful trades. Moreover, culpable participation is demonstrated by Pfizer and its designees' willful inaction despite access to and knowledge of material nonpublic information and illicit trades. While Pfizer points to its Board designees' recusal from a limited portion of the Board meetings regarding the Merger negotiations themselves, that recusal only underscores its awareness of the ongoing material merger discussions. Indeed, the Pfizer directors

3

*agreed* to be recused because Pfizer itself was potentially considering becoming an acquiror of the Company in this process.

4.      Because the Complaint adequately alleges a primary violation by Cerevel and its CEO Renaud, Pfizer's control, and—to the extent required at this stage—Pfizer's culpable participation, Pfizer's motion should be denied.

## III.    STATEMENT OF FACTS

### A.    Pfizer and Bain Form Cerevel Therapeutics in 2018

On July 23, 2018, Pfizer and Bain formed Cerevel as a biopharmaceutical company focused on developing drug candidates to treat disorders of the central nervous system ("CNS"). ¶38.

Cerevel was created by the contribution of pre-commercial neuroscience assets from Pfizer and a monetary investment by Bain. ¶39. Specifically, Pfizer contributed a portfolio of pre-commercial neuroscience assets to Cerevel, which included three clinical-stage compounds and several pre-clinical compounds designed to target a broad range of CNS disorders, including Parkinson's, Alzheimer's, epilepsy, schizophrenia, and addiction. ¶39. Funds affiliated with Bain Capital Private Equity and Bain Capital Life Sciences committed $350 million to Cerevel. ¶39.

At its inception, Bain held a 75% equity interest in Cerevel, and Pfizer held a 25% equity interest in Cerevel. ¶40. Cerevel's initial Board consisted of four directors, two appointed by Bain (Defendants Koppel and Gordon) and two appointed by Pfizer (Dr. Morris Birnbaum and Defendant Giordano). ¶41.

### B.    Cerevel Goes Public Through a De-SPAC Transaction and Enters into Shareholder Rights Agreements

On July 30, 2020, Cerevel announced it would merge with Arya Sciences Acquisition Corp II ("Arya II"), a SPAC sponsored by Defendant Perceptive Advisors. A SPAC is a "blank-check" company that raises money from public investors for the purpose of acquiring or merging with

another company. ¶42. Merging with a SPAC is widely considered an alternative method for private companies to go public without conducting an initial public offering. ¶42.

Upon the closing of the transaction on October 27, 2020 (the "De-SPAC Transaction"), Arya II redomiciled as a Delaware corporation, was renamed Cerevel Therapeutics Holdings, Inc., and Arya II's common stock was listed on NASDAQ under the ticker symbol "CERE." ¶44.

Cerevel received proceeds of approximately $467 million from the De-SPAC Transaction, which included cash proceeds of about $147 million from Arya II's trust account and $320 million from a private investment in public equity ("PIPE") conducted alongside the De-SPAC Transaction. ¶45. The PIPE investors included Bain, Perceptive, Pfizer and other institutional investors. Pfizer contributed $12 million through the PIPE. ¶45.

Immediately following the De-SPAC Transaction, the prior owners of Cerevel (Bain, Pfizer, and certain Cerevel management) owned approximately 68.63% of the outstanding Cerevel publicly traded stock. Pfizer and Bain's collective ownership of Cerevel's outstanding stock at all times remained above 50% through the Merger with AbbVie. ¶46.

In connection with the De-SPAC Transaction, Cerevel entered into an Amended and Restated Registration and Shareholder Rights Agreement, dated October 27, 2020, as well as certain other related shareholder agreements (collectively, the "Shareholder Rights Agreements"). ¶47. The Shareholder Rights Agreements provided Pfizer and Bain with the right to nominate directors to the Cerevel Board based on their percentage ownership of Cerevel's securities (with decreasing rights if Pfizer and Bain's ownership percentages decreased). ¶48. In effect, Bain had the right to nominate six representatives to Cerevel's 12-person Board of Directors (with two such representatives required to be independent and subject to Pfizer's prior written consent), while Pfizer had the right to nominate two additional representatives to the Board. ¶48.

5

The Shareholder Rights Agreements also provided Pfizer and Bain with the right to require Cerevel to offer additional stock. ¶49. Specifically, the Shareholder Rights Agreement provided Pfizer and Bain with the right to direct Cerevel to file a registration statement and use reasonable best efforts to cause the registration of all or part of their registrable securities. ¶49. The Shareholder Rights Agreements also provided Pfizer and Bain with the right to cause Cerevel to file a shelf registration statement pursuant to Rule 415 of the Securities Act and use reasonable best efforts to cause the registration of all or a portion of their registrable securities. ¶49.

The Shareholder Rights Agreements further provided Pfizer and Bain with preemptive rights to purchase their *pro rata* proportion of any newly issued Cerevel common stock. ¶50. This effectively guaranteed Pfizer and Bain could maintain their control of Cerevel. ¶50.

For these reasons, Arya II's proxy statement seeking shareholder approval of the De-SPAC Transaction warned that "The Bain Investor and Pfizer will have significant influence over us after completion of the Business Combination." ¶52.

### C. Pfizer and Bain Maintain Control of Cerevel Following the De-SPAC Transaction Through the October Offering and AbbVie Merger

Pfizer and Bain collectively controlled newly public Cerevel following the De-SPAC Transaction based on their majority ownership of Cerevel's outstanding stock and the nomination of the majority of Cerevel's Board of Directors. ¶53. On October 10, 2023, Cerevel's Board, still controlled by Pfizer and Bain, approved the October Offering of $500 million in common stock. ¶77. According to the Proxy, "the Board determined that extending the cash runway for Cerevel into 2026 by way of a public equity offering would best position Cerevel for future success." ¶77.

Pfizer and Bain's control of Cerevel continued at all relevant times from Cerevel's formation through the close of the August 1, 2024 Merger with AbbVie. ¶54. Indeed, Cerevel disclosed in its SEC filings that it was a "controlled company" under the applicable NASDAQ

6

rules. ¶54. Cerevel's 2023 Form 10-K (filed February 27, 2024) also conceded that Bain Investors and Pfizer had significant influence over Cerevel through their controlling ownership:

> As of December 31, 2023, Bain Investors and Pfizer own, collectively, approximately 51.3% of the outstanding shares of our common stock. Furthermore, so long as they own certain specified amounts of our equity securities, Bain Investor and Pfizer have certain rights to nominate our directors. As long as such entities each own or control a significant percentage of outstanding voting power, they will have the ability to strongly influence all corporate actions requiring stockholder approval, including the election and removal of directors and the size of our board of directors, any amendment of our certificate of incorporation or bylaws, or the approval of the Merger or any other merger or other significant corporate transaction, including a sale of substantially all of our assets. ¶54.

Eleven members of the twelve-person Cerevel Board at the time of the Proxy were nominated by, currently or formerly employed by, or otherwise affiliated with Pfizer and Bain:

| Director | Affiliation |
|---|---|
| 1. Deborah Baron | Pfizer employee |
| 2. Suneet Varma | Pfizer employee |
| 3. Douglas Giordano | Managing Director of Perceptive (former Pfizer employee) |
| 4. Dr. Ruth McKernan | Bain nominee and former Pfizer executive |
| 5. Ron Renaud | Former Bain employee and current Bain Senior Advisor |
| 6. Chris Gordon | Bain employee |
| 7. Adam Koppel | Bain employee |
| 8. Deval Patrick | Former Bain employee |
| 9. Gabrielle Sulzberger | Bain nominee and worked at Bain as an associate |
| 10. Marijn Dekkers | Bain nominee and has served as a director for other Bain-funded companies, such as Gingko Bioworks Holdings, Inc. and Soaring Eagle Acquisition Corp. |

| Director | Affiliation |
|---|---|
| 11. Norbert Riedel | Bain nominee |
| 12. N. Anthony Coles | N/A |

¶55.

Bain's October 18, 2023 Schedule 13-D disclosed that, following the October Offering, Bain held 65,679,781 shares of Cerevel, representing approximately 36.2% of Cerevel's outstanding stock, and Pfizer owned 27,349,211 shares of Cerevel, or 15.1% of the Cerevel's outstanding stock. ¶87. The Schedule 13D noted that, as a result of certain "voting arrangements," Pfizer and Bain "may be deemed to be a group for purposes of Section 13(d) under the Securities Exchange Act of 1934, as amended." ¶87. Together, Pfizer and Bain continued to control the Company, including together owning approximately 51.6% of Cerevel's outstanding stock. ¶87.

| | Shares Held Before October Offering | Percent Ownership | Shares Held After October Offering | Percent Ownership |
|---|---|---|---|---|
| **Bain** | 60,199,729 | 38.2% | 65,679,781 | 36.4% |
| **Pfizer** | 27,349,211 | 17.4% | 27,349,211 | 15.2% |
| **Total Bain + Pfizer** | 87,548,940 | 55.6% | 93,028,992 | 51.6% |
| **Total Cerevel Shares Outstanding** | 157,487,636 | | 180,278,078 | |

¶87.

## IV.    ARGUMENT

Section 20(a) of the Exchange Act provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this [Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to whom such controlled person is liable." 15 U.S.C. §78t(a). Section 20(a) requires Plaintiffs to

8

prove (i) a primary securities law violation by the controlled entity (Cerevel), (ii) the Section 20(a) defendant's control of Cerevel, and (iii) the Section 20(a) defendant's culpable participation in the securities law violation. *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 731 (D. Del. 2014).[3]

Section 20(a) "[c]ontrol person claims are not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) or the Reform Act." *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2007 WL 81937, at *5 (E.D. Pa. Jan. 9, 2007). "The pleading of facts that 'support a reasonable inference that [defendants] had the potential to influence and direct the activities of the primary violator' will survive a motion to dismiss." *Palladin Partners v. Gaon*, 2006 WL 2460650, at *16 (D.N.J. Aug. 22, 2006). Whether defendants are controlling persons is a "question of fact which cannot ordinarily be resolved at the pleading stage." *In re Nat'l Media Sec. Litig.*, 1994 WL 397398, at *5 (E.D. Pa. July 27, 1994).

### A.  Cerevel Committed a Primary Securities Law Violation

As shown in Plaintiffs' Opposition to Cerevel's Motion to Dismiss and Plaintiffs' Opposition to Renaud's Motion to Dismiss (both of which Plaintiffs fully incorporate herein), the detailed Complaint more than adequately pleads that Cerevel and Renaud committed primary violations of Section 10(b). *See Stanley Black & Decker, Inc.*, 70 F. Supp. 3d at 731 (finding Plaintiff had adequately pled "an underlying violation by a controlling person or entity" where "Defendants have not successfully attacked the sufficiency of pleadings as to Plaintiff's § 10(b) claims"); *Avaya*, 564 F.3d at 280.

---

[3] Attached as Appendix A is a chart summarizing the allegations and facts relating to the claim.

### B.    Pfizer Had Control of Cerevel

Plaintiffs have sufficiently alleged Pfizer's control of Cerevel in the Complaint. There is

no statutory definition of "control," as Congress envisioned a broad interpretation:

> [W]hen reference is made to "control," the term is intended to include actual control as well as what has been called legally enforceable control . . . It was thought undesirable to attempt to define the term. It would be difficult if not impossible to enumerate or to anticipate the many ways in which actual control may be exerted. A few examples of the methods used are stock ownership, lease, contract, and agency.

H.R. REP. No. 1383, 73rd Cong., 2d Sess. 26 (1934). However, the SEC has defined "control" as

"the possession, directly or indirectly, of the power to direct or cause the direction of the

management and policies of a person, whether through the ownership of voting securities, by

contract, or otherwise." 17 C.F.R. § 240.12(b)—2(f); *see Rochez Bros. v. Rhoades,* 527 F.2d 880,

890 (3d Cir. 1975) (citing the SEC definition while assessing Section 20(a) claims). "[T]he courts

have given heavy consideration to the power or potential power to influence and control the

activities of a person, as opposed to the actual exercise thereof." *Id*. Thus, "plaintiffs must show

that defendants exercised control over the accused operations, ***but need not show that defendants***

***exercised control over the specifically accused transaction or activity*.**" *In re Reliance Sec. Litig.,*

135 F. Supp. 2d 480, 518 (D. Del. 2001).

The Complaint alleges that Pfizer and Bain collectively controlled Cerevel following the

De-SPAC Transaction based on their majority ownership of Cerevel's outstanding stock and the

nomination of or affiliation with the majority of Cerevel's Board of Directors. ¶53. Specifically,

eleven of the twelve-person Cerevel Board at the time of the Proxy were nominated by or had

some affiliation with Pfizer and/or Bain, with four Directors being current or former Pfizer

employees and eight Directors being Bain nominees and/or employees (with one Bain nominee

being a former Pfizer executive). ¶55. Board memberships play a crucial role in establishing

control liability. *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *34 (C.D. Cal. Aug. 8, 2013).

Pfizer and Bain together owned approximately 51.6% of Cerevel's outstanding stock following the October Offering. ¶87. As of October 18, 2023, Bain held 65,679,781 shares of Cerevel, representing approximately 36.2% of Cerevel's outstanding stock, and Pfizer owned 27,349,211 shares of Cerevel, or 15.1% of the Cerevel's outstanding stock. ¶87.

As such, Cerevel acknowledged in its SEC filings that it is a "controlled company" under the applicable NASDAQ rules. ¶54. Cerevel's 2023 Form 10-K (filed February 27, 2024) also conceded that Bain and Pfizer had significant influence over Cerevel:

> As of December 31, 2023, Bain Investors and Pfizer own, collectively, approximately 51.3% of the outstanding shares of our common stock. Furthermore, so long as they own certain specified amounts of our equity securities, Bain Investor and Pfizer have certain rights to nominate our directors. As long as such entities each own or control a significant percentage of outstanding voting power, they will have the ability to strongly influence all corporate actions requiring stockholder approval, including the election and removal of directors and the size of our board of directors, any amendment of our certificate of incorporation or bylaws, or the approval of the Merger or any other merger or other significant corporate transaction, including a sale of substantially all of our assets. ¶54.

Similarly, Bain's October 18, 2023 Schedule 13D noted that, as a result of certain "voting arrangements," Pfizer and Bain "may be deemed to be a group for purposes of Section 13(d) under the Securities Exchange Act of 1934, as amended." ¶87. And indeed, Pfizer admits that it used to include the same disclosure in some of its Schedule 13D filings. *See* D.I. 40 at 13, n.4.

Courts routinely recognize that minority shareholders may be treated as a single controlling group when they act in coordination and hold substantial ownership. For example, in *City of Southfield Fire & Police Retirement System v. Hayward Holdings, Inc.*, No. 2:23-CV-04146

11

(WJM), 2025 WL 1577315 (D.N.J. June 4, 2025), the court held that two separate minority shareholders, who collectively owned a majority of the outstanding shares, could plausibly be treated as a single controlling group for purposes of Section 20(a) and that such allegations were sufficient to survive a motion to dismiss. Like here, the SEC filings in *Hayward Holdings* reflected that the company was a controlled company (under NYSE listing standards),[4] with its sponsors collectively holding a majority of voting power and maintaining significant influence over corporate decisions. Because the SEC filings acknowledged collective control, the court found that whether the defendants were controlling persons was a factual determination not appropriate for resolution at the pleading stage. *Id*.

Other courts have likewise found disclosures in SEC filings that significant shareholders have influence over the Company's shares sufficient for pleading control. *See*, *e.g.*, *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 979 (N.D. Cal. 2009) (admission in Form 10-Ks that defendant minority shareholder and related entities "have significant influence over our management and affairs' raised "intensely factual questions" rendering dismissal inappropriate); *Am. Apparel*, 2013 WL 10914316, at *37 (statement in SEC filing that minority shareholder intended to "influence" corporation's "management or the [b]oard with respect to [its] business and affairs" was probative of control); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1048-49 (N.D. Cal. 2016) (refusing to dismiss control person claim against minority

---

[4] Both the NYSE and NASDAQ define a "controlled company" as a "company of which more than 50% of the voting power for the election of directors is held by an individual, a group or another company." NYSE Listed Company Manual § 303A.00, https://nyse.wolterskluwer.cloud/listed-company-manual/09013e2c8503fca9 (last visited Dec. 12, 2025); Nasdaq Listing Rule 5615, Controlled Companies § 7(A), https://listingcenter.nasdaq.com/rulebook/nasdaq/rules/nasdaq-5600-series (last visited Dec. 12, 2025).

shareholder where SEC filing stated shareholder "will continue to have significant influence over [company's] affairs").

Courts also routinely find that allegations of minority shareholders with collective majority stakes working together are sufficient to plead control. *See In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 592 (W.D. Tex. 2022), order clarified, 2022 WL 3699429 (W.D. Tex. Aug. 19, 2022) (two private equity firms that each owned 40% of the company's stock acted in concert to control the primary defendant); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476, at *11 (S.D. Tex. Jan. 19, 2016) (group of five private equity sponsors "together controlled [the company] based, inter alia, on their significant stock ownership and ability to elect a majority of [the company]'s Board of Directors"). *LLDVF, L.P. v. Dinicola*, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010) ("each defendant's control must be evaluated separately unless there is some basis on which to consider their collective action."); *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945-46 (9th Cir. 2003) (allegations that two outside entities that together controlled approximately 57.4% of company's total voting power, had the power to elect a majority of company's directors and committees established by the Board, and had some of their own officers seated on the Board were sufficient to show that they were "controlling persons").

Here, Plaintiffs more than plausibly allege that Pfizer exercised the requisite power to direct, or at minimum co-direct, Cerevel's management and policies. Pfizer held a significant ownership stake, possessed contractual rights to nominate directors, and installed Pfizer-affiliated representatives on the Board—four of whom were current or former Pfizer employees. Combined with Bain, Pfizer belonged to a coordinated control group that together owned a majority of Cerevel's outstanding shares and selected or were affiliated with eleven of Cerevel's twelve

directors. Additionally, Cerevel's own SEC filings confirm Pfizer's and Bain's controlling influence—expressly identifying Cerevel as a "controlled company" under NASDAQ rules and conceding that Pfizer and Bain "have significant influence" and "the ability to strongly influence all corporate actions requiring stockholder approval." ¶¶53-55.

In short, Pfizer's liability under Section 20(a) is a fact question inappropriate for resolution on a motion to dismiss because the Complaint plausibly alleges ownership, board influence, contractual rights, coordinated action, and SEC-recognized indicia of control. Those allegations more than satisfy the Section 20(a) control person pleading standard.

### C.      Pfizer Culpably Participated in the Section 10(b) Violation

While culpable participation is a required element for a Section 20(a) claim for purposes of summary judgment (*Belmont v. MB Investment Partners*, *Inc.*, 708 F.3d 470, 484 n.20 (3d Cir. 2013)), "the 'overwhelming trend' in the Third Circuit is that culpable participation need not be pled to survive a motion to dismiss." *Strougo v. Mallinckrodt Pub. Ltd. Co.*, No. CV 20-10100 (MAS) (TJB), 2022 WL 17740482, at *11 (D.N.J. Dec. 16, 2022). Consistent with that trend, courts in this circuit have recognized that culpable participation facts are typically within the defendant's exclusive possession and therefore need not be pled before discovery. *Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171, 180-81 (D. Del. 2010).

Even if the Court were to require such allegations at the pleading stage, Plaintiffs plausibly allege culpable participation here. Culpable participation "refers to either knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent its discovery." *In re Advance Auto Parts, Inc., Sec. Litig.*, No. 18-212-RGA, 2020 WL 599543, at *10 (D. Del. Feb. 7, 2020). Plaintiffs adequately plead both forms.

First, the Complaint demonstrates that Pfizer had actual knowledge of AbbVie's whole-company interest in Cerevel and the $53 per share valuation Centerview presented to the Board in

14

September 2023 which was more than double the $22.81 October Offering price, yet on October 10, 2023, Cerevel's Board, controlled by Pfizer and Bain, approved the October Offering of common stock at a grossly inadequate price and without disclosing AbbVie's merger interest. ¶¶7, 74, 77, 80-84. According to the Proxy, the Pfizer and Bain controlled "Board determined that extending the cash runway for Cerevel into 2026 by way of a public equity offering would best position Cerevel for future success." ¶77. But the Board knew a transaction with AbbVie (or potentially Pfizer) was imminent and that the October Offering being conducted at less than half the value of recent internal presentations was unnecessary given the Company's cash runway at the time. ¶¶63, 72. The Complaint also specifically alleges that the Pfizer and Bain controlled Board issued the false and misleading Proxy. ¶141. Culpable participation is met where plaintiffs allege that defendants were responsible for reviewing allegedly fraudulent SEC filings. *See, e.g.*, *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741 (S.D.N.Y. 2015).

Second, Pfizer's knowing inaction further demonstrates culpable participation. Pfizer was fully aware of AbbVie's whole-company interest in Cerevel, yet intentionally refrained from disclosing it or taking steps to correct the misleading statements. ¶¶7, 74, 82-84. Pfizer also did nothing to prevent Bain and Perceptive from trading while in possession of material nonpublic information. ¶9. By remaining inactive, Pfizer furthered the fraud and prevented its discovery, allowing both the October Offering and the subsequent Merger to proceed.

Pfizer argues that it did not culpably participate in the fraud because its Board nominees agreed to recuse themselves from certain meetings concerning the potential AbbVie transaction, suggesting that Pfizer had no role in or knowledge of the alleged misstatements or omissions. However, Pfizer's recusal actually demonstrates its knowledge of the potential AbbVie transaction and is of no moment with respect to the October Offering its Board designees knowingly approved

15

at a grossly undervalued share price compared to the $53 a share September 2023 Centerview Board presentation. Pfizer's Board nominees agreed to be recused precisely because the Board was aware of, and had access to, material nonpublic information regarding a potential whole-company acquisition and recognized Pfizer had a conflict of interest *as a potential acquirer* itself. ¶70. Also, notably, Pfizer's directors were *not* recused from discussions about the October Offering and indeed the full Board, including Pfizer's directors, approved the October Offering with contemporaneous knowledge of the advanced Merger discussions with AbbVie and grossly undervalued offering price. ¶¶10, 77.

Pfizer relies on *In re Digital Island Securities Litigation*, 223 F. Supp. 2d 546 (D. Del. 2002), but in that case the complaint alleged that individual defendants "must have known" about the alleged misstatements and omissions because of their positions as directors. Here, by contrast, there is no dispute that the full Board, including Pfizer's designees, had *actual knowledge* of AbbVie's whole-company interest in Cerevel and actively participated in negotiating and approving the October Offering, the Merger, and the Proxy. ¶¶7, 74, 77, 138, 196.

Finally, Pfizer argues it cannot be held liable for control person liability because it did not itself participate in the October Offering. This argument would turn control person liability on its head by essentially requiring Pfizer to have primary Section 20A insider trading liability in order to be liable under Section 20(a), wholly making the Section 20(a) control person secondary liability provision meaningless. Moreover, Pfizer's "actual knowledge" is not somehow negated just because it declined to purchase additional shares in the October Offering and risk insider trading liability like private equity Defendants Bain and Perceptive, a move which would have been extremely unusual for Pfizer whose primary business is as a pharmaceutical company. Indeed, Pfizer, who at all times worked with Bain in founding and managing Cerevel, still made an

16

enormous profit when AbbVie purchased Cerevel for $45 per share, which, as explained in the Complaint, was facilitated by and driven by Bain's motives after the October Offering to quickly close a transaction and lock-in its enormous profits. ¶¶115-116.

Pfizer's actual knowledge of AbbVie's whole-company interest, combined with its direct involvement in approving the October Offering, its inaction in disclosing the truth or preventing the unlawful trading, and the issuance of the false and misleading Proxy by the Pfizer and Bain controlled Board, easily gives rise to a strong inference of Pfizer's culpable participation.

## CONCLUSION

For the foregoing reasons, Pfizer's motion should be denied in its entirety.

Dated: December 17, 2025                    Respectfully submitted,

                                            **FARNAN LLP**

                                            By:  *Brian E. Farnan*
                                            Brian E. Farnan (Bar No. 4089)
                                            Michael J. Farnan (Bar No. 5165)
                                            919 North Market Street, 12th Floor
                                            Wilmington, DE 19801
                                            Telephone: (302) 777-0300
                                            Facsimile: (302) 777-0301
                                            Emails:  bfarnan@farnanlaw.com
                                                     mfarnan@farnanlaw.com

                                            *Counsel for Lead Plaintiffs and the Class*

**ENTWISTLE & CAPPUCCI LLP**
Andrew J. Entwistle (*pro hac vice*)
Callie Crispin (*pro hac vice*)
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 710-5960
Emails:  aentwistle@entwistle-law.com
         ccrispin@entwistle-law.com

**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci (*pro hac vice*)
Robert N. Cappucci (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
Jessica A. Margulis (*pro hac vice*)
230 Park Avenue, 3rd Floor
New York, New York 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7272
Emails:  vcappucci@entwistle-law.com
         rcappucci@entwistle-law.com
         asher@entwistle-law.com
         jmargulis@entwistle-law.com

*Counsel for Lead Plaintiffs and the Class*

18

**Appendix A**

**Summary Chart of Pfizer, Inc.'s Alleged Wrongdoing**

**I. Section 20(a) Control Person Claim Against Pfizer**

To prove a Section 20(a) violation, Plaintiffs must show (i) a primary securities law violation by the controlled entity, (ii) the Section 20(a) defendant's control of Cerevel, and (iii) the Section 20(a) defendant's culpable participation in the securities law violation. *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 731 (D. Del. 2014). However, "the 'overwhelming trend' in the Third Circuit is that culpable participation need not be pled to survive a motion to dismiss." *Strougo v. Mallinckrodt Pub. Ltd. Co.*, No. CV 20-10100 (MAS) (TJB), 2022 WL 17740482, at *11 (D.N.J. Dec. 16, 2022).

| Element | Facts Plead |
|---|---|
| Primary securities law violation by controlled entity | • Cerevel violated Section 10(b) and 14(a) of the Exchange Act. (Counts I and III)<br><br>• Renaud violated Section 10(b) of the Exchange Act. (Count 1) |
| Control | Pfizer controlled Cerevel through:<br><br>• Formed Cerevel with Bain in July of 2018. ¶38. Held 25% equity interest in Cerevel at inception. ¶40. Cerevel's initial Board consisted of four directors, two appointed by Pfizer (Dr. Morris Birnbaum and Defendant Giordano) and two appointed by Bain. ¶41.<br><br>• Following the De-SPAC Transaction, Bain, Pfizer, and certain members of Cerevel management collectively held approximately 68.63% of the outstanding shares. ¶46.<br><br>• The Shareholder Rights Agreements granted Pfizer the right to nominate two directors to Cerevel's 12-member Board. The agreements also allowed Bain to nominate six directors, while two of those nominees had to be independent and could only be appointed with Pfizer's prior written consent. ¶48.<br><br>• Under the Shareholder Rights Agreements, Pfizer and Bain could require Cerevel to register and sell their shares to the public, including through a shelf registration. ¶49. |

| Element | Facts Plead |
|---|---|
| | <ul><li>The Shareholder Rights Agreements also provided Pfizer and Bain with preemptive rights to purchase their pro rata proportion of any newly issued Cerevel common stock. This effectively guaranteed Pfizer and Bain could maintain their control of Cerevel. ¶50.</li><li>The Proxy statement seeking shareholder approval of the De-SPAC Transaction warned that "The Bain Investor and Pfizer will have significant influence over us after completion of the Business Combination." ¶52.</li><li>Cerevel disclosed in its SEC filings that it was a "controlled company" under applicable NASDAQ rules. ¶54.</li><li>Cerevel's 2023 Form 10-K warned that Bain Investors and Pfizer "have significant influence over us and may have interests different from yours." ¶54.</li><li>Eleven of the twelve-person Cerevel Board at the time of the Proxy were nominated by or otherwise had some affiliation with Pfizer and/or Bain. ¶55.</li><li>Bain's October 18, 2023 Schedule 13D noted that due to certain "voting arrangements," the two may be deemed a group under Section 13(d) of the Securities Exchange Act of 1934. ¶87.</li><li>Following the October Offering, Pfizer and Bain continued to control Cerevel, including together owning approximately 51.6% of Cerevel's outstanding stock. ¶87.</li></ul>Pfizer controlled Renaud:<ul><li>Pfizer controlled Renaud through its joint control of Cerevel with Bain, who appointed and employed Renaud. ¶¶46-50, 52-55, 87.</li></ul> |

A-2