**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION | Case No. 25-cv-417-GBW<br><br>**FILED UNDER SEAL** |

## ANSWERING BRIEF IN OPPOSITION TO DEFENDANT PERCEPTIVE ADVISORS LLC AND DOUG GIORDANO'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT (D.I. 53)

Dated: December 17, 2025

Brian E. Farnan (Bar No.  4089)
Michael J. Farnan (Bar No.  5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel.: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Lead Plaintiffs and the Class*

[Additional counsel listed on signature block]

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF ARGUMENT ..................................................................................... 2

III.    STATEMENT OF FACTS ........................................................................................... 4

      A.    A Perceptive-Sponsored SPAC Merges with Cerevel............................................. 4

      B.    Through Giordano, Perceptive Learns of AbbVie's Interest in a Merger .............. 5

      C.    Bain and Perceptive Increase Their Positions Through the October Offering in Advance of the Lucrative AbbVie Merger .............................................................. 6

      D.    Cerevel Agrees to be Acquired by AbbVie for Nearly Double the October Offering Price, Locking in a $19 Million Profit for Perceptive ............................. 6

IV.    LEGAL STANDARD .................................................................................................. 7

V.    ARGUMENT ............................................................................................................... 7

      A.    Plaintiffs Plead a Predicate Violation of the Exchange Act .................................. 8

            1.    Perceptive Was a Corporate Insider ............................................................... 9

            2.    Perceptive Possessed Material Nonpublic Information ............................. 10

            3.    Perceptive Traded Contemporaneously with Public Shareholders ........... 11

            4.    The Complaint Pleads Perceptive's Scienter ........................................... 12

      B.    Plaintiffs Plead the Remaining Elements of Section 20A ................................... 14

      C.    Plaintiffs Plead a Section 20(a) Control Claim Against Defendant Giordano ...... 17

VI.    CONCLUSION.......................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Arbitrage Event-Driven Fund v. Trib. Media Co.*,
  No. 18 C 6175, 2020 WL 60186 (N.D. Ill. Jan. 6, 2020),
  *aff'd sub nom.*, *Water Island Event-Driven Fund, LLC v. Trib. Media Co.*,
  39 F.4th 402 (7th Cir. 2022) ...................................................................... 10, 15

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) .................................................................. 4, 11, 15

*BrandRep, LLC v. Ruskey*,
  No. 2018-0541, 2019 WL 117768 (Del. Ch. Jan. 7, 2019) .............................. 15

*Buban v. O'Brien*,
  No. C 94–0331, 1994 WL 324093 (N.D. Cal. June 22, 1994)........................... 16

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014) ............................................................................ 9

*Dutton v. Harris Stratex Networks, Inc.*,
  270 F.R.D. 171 (D. Del. 2010) ...................................................................... 19

*Fujisawa Pharm. Co. v. Kapoor,*
  115 F.3d 1332 (7th Cir. 1997) (J. Posner) ................................................. 11, 16

*Gillis v. QRX Pharma Ltd.*,
  197 F. Supp. 3d 557 (S.D.N.Y. 2016) ............................................................. 13

*Gordon v. Sonar Cap. Mgmt. LLC*,
  92 F. Supp. 3d 193 (S.D.N.Y. 2015) ............................................................... 11

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004) ............................................................................ 7

*In re Advance Auto Parts, Inc., Sec. Litig.*,
  No. 18-212-RGA, 2020 WL 599543 (D. Del. Feb. 7, 2020) ............................ 19

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021)............................................................. 16

*In re Allergan Erisa Litig.*,
  975 F.3d 348 (3d Cir. 2020) .......................................................................... 15

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
  No. 05-232, 2007 WL 81937 (E.D. Pa. Jan. 9, 2007)..................................... 17

*In re Archegos 20A Litig.*,
 156 F.4th 108 (2d Cir. 2025) .................................................................................. 10

*In re AST Rsch. Sec. Litig.*,
 887 F. Supp. 231 (C.D. Cal. 1995) .......................................................................... 16

*In re BioScrip, Inc. Sec. Litig.*,
 95 F. Supp. 3d 711 (S.D.N.Y. 2015) ........................................................................ 20

*In re Campbell Soup Co. Sec. Litig.*,
 No. 18-14385 (NLH/JS), 2020 WL 7022655 (D.N.J. Nov. 30, 2020) .............................. 17

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
 No. H–14–3428, 2017 WL 2599327 (S.D. Tex. June 15, 2017) ................................. 3, 8, 9

*In re Digital Island Sec. Litig.*,
 223 F. Supp. 2d 546 (D. Del. 2002) ........................................................................ 19

*In re Garret Motion Inc. Sec. Litig.*,
 No. 20 Civ. 7992, 2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) .................................... 13

*In re Glob. Crossing, Ltd. Sec. Litig.*
 No. 02 Civ. 910, 2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005) ..................................... 11

*In re Glob. Crossing, Ltd. Sec. Litig.*,
 No. 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) ..................................... 15

*In re Lehman Bros. Sec. & Erisa Litig.*,
 799 F. Supp. 2d 258 (S.D.N.Y. 2011) ...................................................................... 15

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
 No. 05–1151, 2015 WL 2250472 (D.N.J. May 13, 2015) ..................................... 4, 12, 16

*In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*,
 No. CIV.A. 05-1151 SRC, 2011 WL 3444199 (D.N.J. Aug. 8, 2011) ............................. 15

*In re Nat'l Media Sec. Litig.*,
 No. 93-2977, 1994 WL 397398 (E.D. Pa. July 27, 1994) ............................................ 17

*In re Openwave Sys. Sec. Litig.*,
 528 F. Supp. 2d 236 (S.D.N.Y. 2007) ....................................................................... 7

*In re Oxford Health Plans, Inc.*,
 187 F.R.D. 133 (S.D.N.Y. 1999) .............................................................................. 8

*In re Reliance Sec. Litig.*,
 135 F. Supp. 2d 480 (D. Del. 2001) ......................................................................... 18

iii

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,*
    311 F.3d 198 (3d Cir. 2002) ...................................................................................... 7

*In re Silver Lake Grp., LLC Sec. Litig.,*
    108 F.4th 1178 (9th Cir. 2024) ............................................................................... 12

*In re Suprema Specialties, Inc. Sec. Litig.,*
    438 F.3d 256 (3d Cir. 2006) .................................................................................... 13

*In re Valeant Pharms. Int'l, Inc., Sec. Litig.,*
    No. 15-7658, 2019 WL 2724075 (D.N.J. June 30, 2019) ................................... 3, 8

*In re. Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.,*
    503 F. Supp. 2d 35 (D.D.C. 2007) ......................................................................... 16

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.,*
    620 F. Supp. 3d 167 (D.N.J. 2022) .......................................................................... 9

*Institutional Invs. Grp. v. Avaya, Inc.,*
    564 F.3d 242 (3d Cir. 2009) ...................................................................................... 2

*Johnson v. Aljian,*
    490 F.3d 778 (9th Cir. 2007) ............................................................................... 8, 13

*Laventhall v. Gen. Dynamics Corp,*
    704 F.2d 407 (8th Cir. 1983) .................................................................................. 12

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.,*
    320 F.3d 920 (9th Cir. 2003) .................................................................................... 9

*Onel v. Top Ships, Inc.,*
    806 F. App'x 64 (2d Cir. 2020) ............................................................................... 9

*Palladin Partners v. Gaon,*
    No. 05-CV-2203 (WJM), 2006 WL 2460650 (D.N.J. Aug. 22, 2006) .................... 17

*Rochez Bros., Inc. v. Rhoades,*
    527 F.2d 880 (3d Cir. 1975) .................................................................................... 18

*S.E.C. v. Pardue,*
    No. CIV.A. 02-8048, 2005 WL 736884 (E.D. Pa. Apr. 1, 2005) ........................... 12

*Sandoval v. Uphold HQ Inc.,*
    No. 1:21-CV-7579, 2025 WL 1268291 (S.D.N.Y. May 1, 2025) ........................... 15

*Shaev v. Saper,*
    320 F.3d 373 (3d Cir. 2003) ...................................................................................... 7

*Stanley Black & Decker, Inc. v. Gulian*,
   70 F. Supp. 3d 719 (D. Del. 2014)................................................................. 17, 18

*Steamfitters Loc. 449 Pension Fund v. Alter*,
   No. 09-4730, 2011 WL 4528385 (E.D. Pa. Sept. 30, 2011) ................................................. 9

*Stewart v. Wilmington Tr. SP Servs., Inc.*,
   112 A.3d 271 (Del. Ch.),
   *aff'd*, 126 A.3d 1115 (Del. 2015)........................................................................ 4

*Strougo v. Mallinckrodt Pub. Ltd. Co.*,
   No. CV 20-10100 (MAS) (TJB), 2022 WL 17740482 (D.N.J. Dec. 16, 2022) ............... 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................................ 12

*Thomas v. Magnachip Semiconductor Corp.*,
   167 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................ 9

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
   176 F. Supp. 3d 387 (D. Del. 2016)...................................................................... 19

*Wilson v. Comtech Telecomms. Corp.*,
   648 F.2d 88 (2d Cir. 1981) ................................................................................ 16

*Winfield v. Eloxx Pharms., Inc.*,
   No. 19-447-RGA, 2020 WL 1333008 (D. Del. Mar. 23, 2020)...................................... 19

*Winfield v. Eloxx Pharms., Inc.*,
   No. 19-447-RGA, 2020 WL 340567 (D. Del. Jan. 21, 2020).......................................... 19

*Xiaojiao Lu v. Align Tech., Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019) ............................................................... 8

**Statutes**

17 C.F.R. § 240 ................................................................................................ 18

**Rules**

Fed. R. Civ. P. 15............................................................................................. 17

## I.    NATURE AND STAGE OF THE PROCEEDINGS[1]

The case arises from misstatements and omissions in connection with Cerevel's offering of $500 million of stock in October 2023 (the "October Offering") and AbbVie's subsequent acquisition of the Company. Undisclosed to investors, the October Offering was orchestrated to allow Cerevel's inside shareholders Bain and Perceptive to acquire more than six million shares of Cerevel common stock at a deep discount while in possession of material nonpublic information regarding AbbVie's merger interest. These insiders unlawfully profited more than $140 million when AbbVie announced just 51 days later that it was acquiring Cerevel for nearly double the offering price.

The Complaint asserts violations of Sections 10(b), 14(a), 20A, and 20(a) of the Exchange Act against, variously, Cerevel, Cerevel's controlling shareholders Bain and Pfizer, inside shareholder Perceptive, Cerevel CEO Renaud, and certain members of Cerevel's Board:

| Defendant(s) | Summary of Claims |
|---|---|
| Cerevel (D.I. 46) | Cerevel is liable under Sections 10(b) and 14(a) for making misstatements and omitting material facts in various public statements from the October Offering through the Proxy regarding the timing of AbbVie's merger interest and the fairness of the Merger. |
| Bain, Gordon, Koppel (the "Bain Defendants") (D.I. 45) | Bain is liable under Section 20A for purchasing more than five million Cerevel shares while in possession of material nonpublic information regarding AbbVie's merger interest. Bain, Cerevel's largest shareholder, is also liable under Section 20(a) as a control person of Cerevel and Renaud. Defendants Gordon and Koppel, senior executives at Bain, served as Cerevel Board members and are liable under Section 20(a) as control persons of Cerevel. |
| Perceptive, Giordano (D.I. 53) | Perceptive is liable under Section 20A for purchasing 876,808 Cerevel shares while in possession of material nonpublic information regarding AbbVie's merger interest. Defendant Giordano, a Perceptive Managing Director, served as a Cerevel |

---

[1] Capitalized terms undefined herein shall have the same meaning as in the Consolidated Class Action Complaint ("Complaint") [D.I. 19]. Citations to "¶__" refer to paragraphs in the Complaint. All emphasis is added and internal citations omitted unless otherwise noted.

1

| | Board member and is liable under Section 20(a) as a control person of Cerevel. |
|---|---|
| Pfizer (D.I. 40) | Pfizer is liable as a control person under Section 20(a) of Cerevel because Pfizer and Bain at all times jointly controlled Cerevel. |
| Renaud (D.I. 57) | Renaud, who served both as Cerevel's CEO and a Senior Advisor at Bain during the Class Period, is liable under Section 10(b) for making misstatements and omitting facts regarding the October Offering and the timing of AbbVie's merger interest. Renaud is also liable under Section 20(a) as a control person of Cerevel. |
| Patrick, Baron, Varma, and McKernan (the "Director Defendants") (D.I. 55) | Each of the Director Defendants was a member of the Cerevel Board, had some affiliation with Bain and/or Pfizer, and are liable under Section 20(a) as control persons of Cerevel. |

In an apparent effort to induce the Court to look at the claims in the Complaint on a fractionalized (rather than holistic) basis as required by operative Third Circuit law,[2] Defendants made six separate motions to dismiss. This opposition addresses the motion filed by Defendants Perceptive and Doug Giordano (D.I. 53), which raises many of the same arguments made by Perceptive and rejected at the motion to dismiss stage in *SEIU Pension Plans Master Trust v. Bain Capital Investors, LLC*, No. 2024-1274-JTL (Del. Ch.).[3] While this opposition focuses on facts and arguments relevant to Perceptive and Giordano, Plaintiffs incorporate herein each of the other opposition briefs.

## II.    SUMMARY OF ARGUMENT

The Complaint's claims against Perceptive are remarkably straightforward. Perceptive, through its Managing Director and Cerevel Board designee, Doug Giordano, learned no later than September 27, 2023 that AbbVie was interested in acquiring Cerevel. Perceptive and Giordano knew AbbVie's interest was credible because (1) AbbVie and Cerevel had been discussing a

---

[2] *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009).

[3] The Chancery Court's October 2, 2025 Telephonic Rulings are cited herein as "Chancery Tr. __". The full transcript is attached as Exhibit A to the Declaration of Michael J. Farnan in Support of Plaintiffs' Oppositions to Defendants' Motions to Dismiss.

strategic partnership since March 2023 and AbbVie had already completed "meaningful" diligence; and (2) Cerevel immediately shared AbbVie's interest with its bankers, who presented at a Board meeting days later, prepared talking points for Cerevel CEO Renaud to respond to AbbVie, and started to put together a whole-company data room for a merger transaction. Perceptive and Giordano also knew about the September 2023 Centerview Board presentation valuing Cerevel at $53 per share and had access to other material nonpublic valuation, financial, and operational information presented about the Company.

With this material nonpublic information and understanding that Cerevel's stock price was much lower than the anticipated Merger price, on October 16, 2023, Perceptive purchased 876,808 shares in the October Offering, constituting an insider trading violation under Section 10(b) of the Exchange Act and a predicate act as required for Section 20A liability. When the Merger was announced just 51 days after the October Offering, Perceptive profited more than $19 million on those unlawful purchases. None of these key facts are in dispute. Instead, Perceptive makes a series of erroneous form-over-substance arguments that completely fail to defeat Plaintiffs' well-pleaded Section 20A claim.

1. Perceptive argues that the Section 20A claim fails because Plaintiffs do not allege a predicate violation against Perceptive, but this wholly ignores the Complaint pleads facts supporting a Section 10(b) insider trading claim that is a predicate violation supporting the Section 20A claim against Perceptive. *In re Valeant Pharms. Int'l, Inc., Sec. Litig.*, 2019 WL 2724075, at *6 (D.N.J. June 30, 2019).[4]

---

[4] Perceptive incorrectly argues that the Complaint fails to plead a predicate act under Section 20A because the Complaint does not denominate a formal Section 10(b) insider claim against Perceptive. But the law is clear that Plaintiffs need not assert a formal cause of action for Section 10(b) insider trading. *See, e.g., In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2599327, at *3 (S.D. Tex. June 15, 2017).

2. Perceptive argues it did not possess material nonpublic information, but information learned by Perceptive Managing Director Giordano as a Cerevel Board member is properly imputed to Perceptive itself as Giordano's employer. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013); *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 302-03 (Del. Ch.), *aff'd*, 126 A.3d 1115 (Del. 2015). Notably, there is no dispute here that Giordano received the material nonpublic information regarding the Cerevel-AbbVie merger discussions and the September 2023 $53 per share Centerview valuation presentation to the Board (in addition to other board-level financial and operational information not available to the public).

3. Perceptive argues Plaintiffs did not trade contemporaneously with Perceptive because the illicit purchases were between Perceptive's "Master Fund" and Cerevel. But Perceptive confuses transaction privity (with each other) and contemporaneity (at the same time). *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 2015 WL 2250472 (D.N.J. May 13, 2015) (rejecting privity requirement for 20A claims). And Perceptive's argument that the Master Fund is the proper defendant is contrary to the plain language of its own Schedule 13-D.

4. The Complaint adequately pleads a Section 20(a) control person claim against Perceptive's Giordano, who was a Cerevel Board member at all relevant times and is alleged to have approved the October Offering, the Merger, and the Proxy.

For the reasons set forth herein, the Motion should be denied in its entirety.

III. **STATEMENT OF FACTS**

A. **A Perceptive-Sponsored SPAC Merges with Cerevel**

Perceptive is an investment advisor specializing in the life sciences industry with approximately $8 billion in assets under management. ¶¶28, 43. The New York-based Perceptive Advisors LLC serves as the investment advisor to Perceptive Life Sciences Master Fund Ltd. ¶28.

4

Perceptive sponsored a series of SPACs, or "blank check" companies, created to use money raised from public investors for the purpose of merging with or acquiring private companies. ¶42.[5] On July 30, 2020, Cerevel announced it would go public through a merger with Perceptive-sponsored SPAC Arya II. ¶42. Upon the closing of the transaction on October 27, 2020, Arya II redomiciled as a Delaware corporation, was renamed Cerevel Therapeutics Holdings, Inc., and the newly rebranded Cerevel's common stock was listed on NASDAQ under the ticker symbol "CERE." ¶44.

In 2021, Perceptive hired Defendant Giordano as a Managing Director. ¶36. Giordano previously was a Senior Vice President at Defendant Pfizer (which co-founded Cerevel with Defendant Bain) and was already a member of the Cerevel Board of Directors. ¶36. Defendant Giordano remained on the Cerevel Board at all times through the AbbVie Merger.

**B.        Through Giordano, Perceptive Learns of AbbVie's Interest in a Merger**

Starting in early 2023, Cerevel engaged in discussions with other companies to potentially work together as regional partners to help produce and market its lead asset, emraclidine. ¶57. These discussions included AbbVie, who executed a confidentiality agreement with Cerevel on March 28, 2023 and conducted what Cerevel described as "meaningful" due diligence. ¶¶57, 64.

Cerevel's Board, including Giordano and by imputation Perceptive, knew no later than the end of September 2023 that AbbVie had shifted its interest from a regional partnership to a whole-company acquisition of Cerevel. ¶66. On September 23, 2023, a Cerevel officer emailed Centerview (Cerevel's financial advisor) an "Updated Tracker" that indicated AbbVie had "completed meaningful diligence, more than any other party" and AbbVie had "Indicated interest

---

[5] In 2002, the SEC charged Perceptive with wrongdoing related to the management of its SPACs, including failing to disclose conflicts of interests, making material misstatements and omitting material facts, and improper practices relating to investing client assets in affiliated SPACs. ¶43.

in whole co." ¶67. The tracker indicated the "Next Steps" were "Await term sheet, discuss next steps once received." ¶67.

On September 27, 2023, Cerevel's Board met with Centerview to discuss "potential strategy paths forward." ¶69. Pfizer's Board designees, Director Defendants Baron and Varma, agreed to be recused from certain discussions because Pfizer could be an "interested party" regarding a "potential acquisition of Cerevel." ¶70. Centerview advised that in the last few years a "significant majority of M&A transactions have been initiated through partnership discussions," such as the AbbVie-Cerevel Japanese partnership discussions. ¶71.

Following the Board meeting, Centerview prepared proposed talking points for Renaud to respond to AbbVie, which included stating that Renaud was "Flattered by interest in Cerevel" and that he had "***Discussed your communication of a whole co proposal with the board***." ¶74. By October 5, 2023, Cerevel started to put together a whole-company data room for AbbVie. ¶75.

**C.     Bain and Perceptive Increase Their Positions Through the October Offering in Advance of the Lucrative AbbVie Merger**

On October 10, 2023, the Cerevel Board approved the October Offering. ¶¶77-78. Cerevel issued two press releases and the Preliminary Prospectus Statement regarding the October Offering but did not mention AbbVie's indication of interest in a whole company transaction. ¶¶79-84.

With knowledge of AbbVie's interest and the Cerevel Board's reaction, Perceptive acquired 876,808 shares of common stock from the October Offering. ¶91. The October Offering was conducted at $22.81 per share, approximately half of the ultimate $45 per share Merger price. ¶85.

**D.     Cerevel Agrees to be Acquired by AbbVie for Nearly Double the October Offering Price, Locking in a $19 Million Profit for Perceptive**

On October 19, 2023, ***3 days after*** the October Offering closed, AbbVie made a written, nonbinding indication of interest to acquire Cerevel for $35 per share. ¶¶92-93. The offer represented a 53% premium to the October Offering price. ¶93. Renaud and the Cerevel Board

quickly negotiated a sale of the Company to AbbVie locking in an enormous profit on the discounted shares Bain and Perceptive had just acquired in the October Offering.

On December 6, 2023, AbbVie and Cerevel issued a joint press release announcing the companies had reached an agreement in which AbbVie would acquire Cerevel for $45 per share. ¶¶102-103. The price of Cerevel's stock increased to $41.13 per share immediately upon the announcement. ¶105. On August 1, 2024, AbbVie closed its acquisition of Cerevel, netting Perceptive $19 million in profit just from its insider purchases in the October Offering. ¶13.

## IV.    LEGAL STANDARD

In assessing the sufficiency of the Complaint under Rule 12(b)(6), the Court must consider and accept all well-pled allegations and draw all inferences in Plaintiffs' favor. *See Shaev v. Saper*, 320 F.3d 373, 378 (3d Cir. 2003). "A court may not dismiss the complaint unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 236 (3d Cir. 2004) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215-16 (3d Cir. 2002)).

"There is some dispute as to whether causes of action under Section 20A are subject to the pleading requirements of Federal Rule of Civil Procedure 8, or the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA." *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 255 (S.D.N.Y. 2007). But here, the Complaint's particularized allegations establish the required predicate insider trading violation and Section 10(b) attendant scienter to the extent required under either standard.

## V.    ARGUMENT

To state a claim for a violation of Section 20A, plaintiffs must allege "(1) a predicate violation of the Exchange Act; (2) that the plaintiff traded contemporaneously with the insider; and

(3) that the insider was in possession of material nonpublic information." *Valeant*, 2019 WL 2724075, at *5. Plaintiffs easily do so.[6]

### A.      Plaintiffs Plead a Predicate Violation of the Exchange Act

Perceptive's core argument that Plaintiffs have failed to allege a predicate violation for Section 20A fails because "insider trading in violation of § 10(b) and Rule 10b-5 may serve as the predicate violation for a private section 20A claim." *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1282 (N.D. Cal. 2019); *Valeant*, 2019 WL 2724075, at *6 (sufficient plaintiffs alleged defendants "violated Section 20A with the predicate violation being an insider trading violation"). A Section 10(b) claim does not need to be asserted as a formal cause of action to qualify as a predicate violation. *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2599327, at *3 (S.D. Tex. June 15, 2017) (sustaining Section 20A claim against defendants not sued under Section 10(b)); *Johnson v. Aljian*, 490 F.3d 778, 783 (9th Cir. 2007) ("That the predicate violation need not itself be actionable is . . . supported by the statutory language of other provisions of the Exchange Act").[7]

The claim against Perceptive that it purchased 876,808 while in possession of material nonpublic information regarding AbbVie's merger interest is more than sufficient to make a *prima facia* case for Section 10(b) insider trading liability. *Cobalt*, 2017 WL 2599327, at *3 (a plaintiff makes a *prima facie* case for insider trading liability merely "by showing that the defendant was 'aware of the material nonpublic information' when he made the purchase or sale of the securities."); *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 143 (S.D.N.Y. 1999) ("an insider trading violation 'occurs when a trade is conducted in 'knowing possession' of material nonpublic

---

[6] Attached as Appendix A is a chart summarizing the allegations and facts supporting each claim.

[7] Plaintiffs further plead enough for a separate, misstatement-based Section 10(b) violation against Perceptive for violating its duty to disclose material facts when it engaged in insider trades. This claim is discussed in Plaintiffs' Opposition to Cerevel's Motion to Dismiss, which Plaintiffs fully incorporate herein.

information.'") (citation omitted); *see also No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 937 (9th Cir. 2003) ("the fact that neither [defendant] made any of the allegedly misleading statements does not shield them from liability"). [8]

Perceptive's challenges to certain elements of the predicate Section 10(b) insider trading violation are incorrect.

### 1.      Perceptive Was a Corporate Insider

Perceptive argues that, as a minority shareholder, it was not an insider (D.I. 53 at 9-10), entirely missing the point that Perceptive, through its Board designee Defendant Giordano, "had non-public information regarding AbbVie's interest in a whole-company acquisition and Cerevel's launch of a sales process when it purchased hundreds of thousands of shares of Cerevel stock through the October Offering." ¶183. Insider trading is plead where a defendant "through the individuals they designated to be members of the [company's] Board of Directors [] had actual knowledge of material, undisclosed information." *See Cobalt*, 2017 WL 2599327, at *3 (sustaining Section 20A claim where plaintiffs alleged that major shareholders learned material nonpublic information about the company through individuals they appointed to the company's board); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1050-1051 (N.D. Cal. 2016)

---

[8] None of Perceptive's cases on predicate violations are helpful because they involve situations where the underlying claims were dismissed on substantive grounds. In *City of Edinburgh Council v. Pfizer, Inc.*, the court found there was no predicate violation because there was no duty to disclose and the facts did not give rise to a strong inference of scienter. 754 F.3d 159, 176 (3d Cir. 2014). In *Onel v. Top Ships, Inc.*, 806 F. App'x 64, 69 (2d Cir. 2020), the court dismissed the underlying market manipulation and misstatement claims because the allegedly concealed information was fully disclosed. In *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, the court sustained the 20A claim against one defendant that violated Section 10(b) but dismissed the 20A claim against another defendant where plaintiffs failed to adequately plead scienter for the underlying claim. 620 F. Supp. 3d 167, 200 (D.N.J. 2022). Finally, in *Steamfitters Local 449 Pension Fund v. Alter*, the court dismissed the underlying control person violations for failure to plead culpable participation. 2011 WL 4528385, at *12 (E.D. Pa. Sept. 30, 2011).

(holding the complaint sufficiently pleaded that majority shareholder had inside information as required to state a Section 20A claim by alleging that shareholder's appointees to the corporation's board, who were its employees, had knowledge).

Perceptive's own case, *In re Archegos 20A Litig.*, makes Plaintiffs' point, as that case turned on the fact that the defendant was only "the beneficial owner of large quantities of each issuer's stock" and there was no allegation defendant "had access to any Issuer's internal corporate information." 156 F.4th 108, 117-18 (2d Cir. 2025). Indeed, the *Archegos* court noted the defendant "did not obtain confidential information by reason of its position with the issuers in the way that an officer or director of a corporation would do." *Id.* (cleaned up). By contrast, here, Plaintiffs allege that Perceptive's knowledge is imputed through its Managing Director Giordano, who as a Cerevel Board member knew confidential information regarding AbbVie's Merger interest. ¶183. Defendants' reliance on *Arbitrage Event-Driven Fund v. Tribune Media Co.* fails for a similar reason; in that case, the court found it was purely "speculation" the insider trading-shareholder's board designees received the material nonpublic information. 2020 WL 60186, at *12 (N.D. Ill. Jan. 6, 2020), *aff'd sub nom.*, *Water Island Event-Driven Fund, LLC v. Trib. Media Co.*, 39 F.4th 402 (7th Cir. 2022). Here, internal documents unequivocally confirm Renaud "*Discussed [AbbVie's] communication of a whole co proposal with the board.*" ¶74.

### 2. <u>Perceptive Possessed Material Nonpublic Information</u>

The Complaint alleges "at the time of the October 16, 2023 purchases, Bain and Perceptive, through their ownership of Cerevel and Board designees, knew that: AbbVie had already conducted meaningful due diligence into Cerevel and was interested in a whole-company acquisition; Cerevel was 'awaiting a term sheet' from AbbVie; Cerevel's Board had already met with Centerview to discuss AbbVie's interest and strategic alternatives; Defendant Renaud had discussed 'talking points' for responding to AbbVie; and Cerevel had begun pulling together a data

10

room for a whole-company transaction." ¶182. Plaintiffs' allegation that the Cerevel Board, including Perceptive's Managing Director Giordano, knew about AbbVie's merger interest are confirmed by Centerview's proposed talking points for Renaud dated September 29, 2023, recommending that Renaud acknowledge to AbbVie that he had "*Discussed your communication of a whole co proposal with the board*." ¶74. Giordano and the rest of the Cerevel Board also knew that a recent Centerview analysis valued the Company at $53 per share. ¶72. Possession of the information is properly imputed from Perceptive Managing Director Giordano to Perceptive itself. *Belmont*, 708 F.3d at 496 ("imputation to an employer is proper based on 'acts committed by one of its agents within his actual or apparent scope of authority'") (citation omitted); *see Magnachip*, 167 F. Supp. 3d at 1050.[9]

### 3.   Perceptive Traded Contemporaneously with Public Shareholders

Perceptive argues it did not breach any duty to Cerevel shareholders because it purchased shares directly from Cerevel, meaning "it is impossible for Plaintiffs to have traded with the Master Fund" (D.I. 53 at 11). But Congress enacted Section 20A to provide a private right of action to "contemporaneous" purchasers or sellers. 15 U.S.C. § 78t-1. Indeed, "the purpose of section 20A was to extend the protections of the existing insider-trading prohibition to persons not in privity with the insider." *See Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1337 (7th Cir. 1997) (J. Posner); *Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 203 (S.D.N.Y. 2015) ("Section 20A defines those who may sue as anyone who traded contemporaneously with, and opposite to,

---

[9] Perceptive relies on *In re Global Crossing, Ltd. Securities Litigation*, but the allegation there relied solely on inferences that a large shareholder with board designees must have known of the alleged truth. 2005 WL 2990646, at *9 (S.D.N.Y. Nov. 7, 2005). As noted previously, here there is an internal Cerevel document confirming Renaud shared AbbVie's whole-company proposal with the entire Board, including Perceptive's Giordano.

the defendant, even if they traded on an impersonal market and therefore cannot prove that they actually bought shares from the defendant or sold shares to the defendant.").

Perceptive relies on *Laventhall v. General Dynamics Corp*, 704 F.2d 407, 412 (8th Cir. 1983), which found traders in stock *options* did not have an insider trading claim against the corporation that repurchased its own common stock while in possession of material nonpublic information. But *Laventhall* was based on a finding that the plaintiff was "not investing in the defendant's company." Here, both Perceptive and the Insider Trading Class were transacting in Cerevel common stock. Accordingly, the situation is analogous to *In re Silver Lake Group, LLC Sec. Litig.*, where the defendant sold shares in an "after-hours private block trade" while the plaintiff "traded on the public market." 108 F.4th 1178, 1189 (9th Cir. 2024). The Ninth Circuit held that, although the plaintiff did not trade with the defendant, the plaintiff had standing because the law "merely requires that the seller and buyer engaged in transactions close in time, not with each other." *Id*. at 1190; *Merck*, 2015 WL 2250472.

### 4.        The Complaint Pleads Perceptive's Scienter

Plaintiffs easily plead with particularity Perceptive's scienter through its knowledge at the time of its illicit purchases and its financial motive. "In an insider trading case, scienter is established by proof that the defendant was aware of his duty of confidentiality and had actual knowledge of the material, non-public information." *S.E.C. v. Pardue*, 2005 WL 736884, at *6 (E.D. Pa. Apr. 1, 2005). Here, Plaintiffs allege that Perceptive knew of AbbVie's merger interest at the time of the October Offering and that the merger interest was not disclosed. ¶¶182-184.

In addition, Perceptive had a clear financial motive to engage in its insider trades. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007). Perceptive purchased 876,808 Cerevel shares for just $22.81 per share while knowing that AbbVie was interested in acquiring Cerevel for a significant premium. ¶¶9, 13. These purchases were shortly after credible merger

12

negotiations began, just *three days* before AbbVie made a formal offer to acquire Cerevel for $35 per share and *51 days* before the Merger was announced at $45 per share. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 278 (3d Cir. 2006) (finding scienter where "[t]he timing of the sales was also suspect in that they occurred just six weeks before [the corrective disclosure]."). At the $45 per share Merger price, Perceptive profited ***more than $19 million*** just on the shares it purchased in the October Offering. ¶13. Perceptive cites *In re Garrett Motion Inc. Sec. Litig.*, which was dismissed because defendants allegedly inflated Garrett's stock price when they knew the company was doomed to fail but plaintiffs failed to articulate any financial motive. 2022 WL 976269, at *13 (S.D.N.Y. Mar. 31, 2022).[10] However, the *Garrett* court recognized "[t]hat theory might work if the Garrett Defendants had sought to profit from this scheme in the interim." *Id.* Here, Perceptive (i) knew Cerevel's stock price was depressed because the market did not know of AbbVie's merger interest; and (ii) sought to (and did) profit by purchasing shares at a discount.

Perceptive also argues that it cannot be held liable because the trades were made by the Master Fund, not Perceptive. But courts have rejected the notion that insider trading liability can be avoided by trading through different legal entities. *See*, *e.g.*, *Johnson*, 490 F.3d at 779-81 (holding owner and executive liable for trades conducted through corporation).

Perceptive further argues there is no scienter because it did not purchase its *pro rata* share from the October Offering and was thus "diluted." As explained in Plaintiffs' Opposition to the Bain Defendants' Motion to Dismiss (which Plaintiffs fully incorporate herein), as well as the Chancery Court's decision on the same issue (Chancery Tr. 26:13-27:4), the "dilution" argument

---

[10] *Gillis v. QRX Pharma Ltd.*, also turned on that no defendant attempted to profit on the alleged fraud. 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016).

is too simplistic because it is based on a number of unsupported and hypothetical assumptions.[11]

### B.       Plaintiffs Plead the Remaining Elements of Section 20A

The Complaint plainly alleges "at the time of the October 16, 2023 purchases, Bain and Perceptive, through their ownership of Cerevel and Board designees, knew that: AbbVie had already conducted meaningful due diligence into Cerevel and was interested in a whole-company acquisition; Cerevel was 'awaiting a term sheet' from AbbVie; Cerevel's Board had already met with Centerview to discuss AbbVie's interest and strategic alternatives; Defendant Renaud had discussed 'talking points' for responding to AbbVie; and Cerevel had begun pulling together a data room for a whole-company transaction." ¶182. Bain and Perceptive also knew that the $22.81 per share October Offering price grossly undervalued the Company in relation to the September 2023 Centerview Board presentation that valued the Company at $53 per share. ¶72.

Plaintiffs' allegation that the Cerevel Board, including Perceptive's Managing Director Giordano, knew about AbbVie's merger interest are confirmed by Centerview's proposed talking points for Renaud dated September 29, 2023 suggesting that Renaud acknowledge to AbbVie that he had "***Discussed your communication of a whole co proposal with the board***." ¶74. Based on this unrefuted Cerevel internal document, there can be no dispute that Defendant Giordano possessed the material nonpublic information as a Board member. In stark contrast to the facts here, Perceptive's cases all involve situations where there is no well-plead allegation that the

---

[11] The Chancery Court also rejected Perceptive's argument that it had no scienter because it could have bought more from the October Offering: "Now, the defendants say that, oh, well, if that was the plan, then Bain and Perceptive should have bought more. That's the argument that was trotted out and credited in *Clovis*, which is if somebody is going to insider trade, they are going to insider trade big. That's just not what we see. When you insider trade really big, you get caught. So what people generally do with insider trading is they engage in a pattern of skimming. They trade enough to make profits, but not enough so that it looks really bad. And here, I can at least infer that one possibility for Bain and Perceptive to participate in this offering was that they knew that the offering materially undervalued the company and wanted their share." Chancery Tr. 28:7-21.

defendant or its employees possessed the material nonpublic information. For example, in *In re Lehman Brothers Sec. & Erisa Litig.*, that complaint failed to state "when [the defendant] allegedly possessed that information or the subject of the information allegedly possessed." 799 F. Supp. 2d 258, 308 (S.D.N.Y. 2011).[12]

Because Giordano was a Perceptive Managing Director, possession of the information is properly imputed from Giordano to Perceptive. *Belmont*, 708 F.3d at 496 ("imputation to an employer is proper based on 'acts committed by one of its agents within his actual or apparent scope of authority'") (citation omitted); *BrandRep, LLC v. Ruskey*, 2019 WL 117768, at *5 (Del. Ch. Jan. 7, 2019) ("[w]here a defendant secondary actor is an entity, the knowledge of an individual fiduciary or agent may be imputed to that entity"); *see also Magnachip*, 167 F. Supp. 3d at 1051 (holding that complaint sufficiently pleaded that majority shareholder had inside information as required to state a Section 20A claim by alleging that shareholder's appointees to the corporation's board of directors, who were also shareholder's employees, had knowledge).[13]

The Complaint likewise alleges that Plaintiff Atlas Diversified Master Fund, Ltd. sold shares on the same day (the narrowest of the commonly used definitions of "contemporaneous")

---

[12] Perceptive's other cases fail for the same reason. *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, 2011 WL 3444199, at *37 (D.N.J. Aug. 8, 2011) (plaintiffs "rely heavily on supposition" to support defendants' knowledge of truth); *Arbitrage Event-Driven Fund*, 2020 WL 60186 (no allegations that the defendant director and other defendants actually possessed any material nonpublic information). Finally, *In re Allergan Erisa Litig.*, 975 F.3d 348 (3d Cir. 2020) has nothing to do with insider trading.

[13] Perceptive relies on *In re Global Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *3 (S.D.N.Y. Aug. 8, 2005), but that case concerns whether a corporation can be liable under respondent superior or control person liability theories for actions by its employees it designated as directors. Here, the issue is simply whether Giordano's *knowledge* can be imputed to Perceptive. Perceptive also relies on *Sandoval v. Uphold HQ Inc.*, 2025 WL 1268291 (S.D.N.Y. May 1, 2025), but that case involved a plaintiff's attempt to input knowledge *from* a director *to* the corporation he served on the board of. In other words, *Uphold* is analogous to if plaintiffs here alleged Giordano's knowledge is imputed *to* Cerevel. By contrast, here plaintiffs allege Giordano's knowledge about Cerevel is imputed to his employer, Perceptive.

with Perceptive's October 16, 2023 purchases. ¶24. Nothing else is required.

Perceptive's argument that Plaintiffs have not alleged that they traded contemporaneously is wrong on all accounts. As explained in Plaintiffs' Opposition to the Bain Defendants' Motion to Dismiss (which Plaintiffs fully incorporate herein), it is irrelevant that the purchases were "from Cerevel" and not directly from Plaintiffs or the Insider Trading Class. Congress specifically provided Section 20A claims to investors that transacted "contemporaneously" with inside traders, rejecting a privity requirement.[14] *See Silver Lake Grp.*, 108 F.4th at 1190 (the contemporaneous trading rule "merely requires that the seller and buyer engaged in transactions close in time, not with each other,"); *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 177 (S.D.N.Y. 2021) (public shareholder plaintiff harmed and able to pursue claims under Section 20A where defendant's stock sales were in a buyback transaction directly with the company and not with public shareholders); *Merck*, 2015 WL 2250472.[15]

Perceptive's other argument, that it was the Perceptive Life Sciences Master Fund Ltd. that engaged in the illicit purchases and not Defendant Perceptive Advisors LLC, is belied by its own Schedule 13D/A (attached to Perceptive's Motion as Exhibit E), which lists "Perceptive Advisors LLC" as the first "Reporting Person" for the transactions. As Perceptive notes, the Schedule 13D

---

[14] As explained in *Fujisawa Pharmaceutical*, "Suppose that *A,* an insider, buys stock from *B,* an outsider, knowing that the price of the stock will rise when the inside information becomes public, and at approximately the same time [] outsider *C* sells shares of the same stock [] to *D,* another outsider, presumably at the same low price at which *B* sold to *A.* Section 20A makes *A* in our hypothetical case liable to *C* as well as to *B.*" 115 F.3d at 1337.

[15] Perceptive cites a series of cases that deal with the *time limit* for "contemporaneous," which is not an issue here given that Plaintiff Atlas Diversified Master Fund, Ltd. traded on the *same day* as Perceptive. *Buban v. O'Brien*, 1994 WL 324093 (N.D. Cal. June 22, 1994) (20A claim dismissed where plaintiff traded *three days* after the defendants' transactions); *In re. Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*, 503 F. Supp. 2d 35, 46-47 (D.D.C. 2007) (requiring plaintiffs' trades be on the same day as defendant's trades); *In re AST Rsch. Sec. Litig.*, 887 F. Supp. 231 (C.D. Cal. 1995) (adopting same day standard); *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 94-95 (2d Cir. 1981) (trades one month after inside sales not contemporaneous).

also reports the transaction on behalf of "Joseph Edelman" and "Perceptive Life Sciences Master Fund, Ltd." It is for this reason the Complaint listed "Defendant Perceptive Advisors LLC, which includes Perceptive Life Sciences Master Fund Ltd. and C2 Life Sciences, LLC." *See* ¶28. Indeed, both the Complaint and Proxy note, "Perceptive Advisors LLC serves as the investment advisor to Perceptive Life Sciences Master Fund Ltd." *Id.* In any event, Plaintiffs' 20A claim is valid and not subject to dismissal. If the Court finds the Complaint named the incorrect Perceptive entity based on the labyrinthian corporate structure, Plaintiffs should be entitled to amend the complaint. *See In re Campbell Soup Co. Sec. Litig.*, 2020 WL 7022655, at *12 (D.N.J. Nov. 30, 2020) (granting leave to amend Section 10(b) claim under Rule 15, which directs courts to "freely give leave when justice so requires.") (quoting Fed. R. Civ. P. 15(a)(2)).

### C.    Plaintiffs Plead a Section 20(a) Control Claim Against Defendant Giordano

To prove a Section 20(a) claim, Plaintiffs must show (i) a primary securities law violation by the controlled entity, (ii) the Section 20(a) defendant's control, and (iii) the Section 20(a) defendant's culpable participation in the securities law violation. *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 731 (D. Del. 2014).

Section 20(a) "[c]ontrol person claims are not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) or the Reform Act." *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2007 WL 81937, at *5 (E.D. Pa. Jan. 9, 2007). "The pleading of facts that 'support a reasonable inference that [defendants] had the potential to influence and direct the activities of the primary violator' will survive a motion to dismiss." *Palladin Partners v. Gaon*, 2006 WL 2460650, at *16 (D.N.J. Aug. 22, 2006). Whether defendants are controlling persons is a "question of fact which cannot ordinarily be resolved at the pleading stage." *In re Nat'l Media Sec. Litig.*, 1994 WL 397398, at *5 (E.D. Pa. July 27, 1994).

**Primary Violation.** As shown in Plaintiffs' Opposition to Cerevel's Motion to Dismiss and Opposition to Renaud's Motion to Dismiss (both of which Plaintiffs fully incorporate herein), the developed record more than supports a conclusion by the jury finding primary violations of Section 10(b). *See Stanley Black & Decker*, 70 F. Supp. 3d at 731 (Plaintiff adequately pled "an underlying violation by a controlling person or entity" where "Defendants have not successfully attacked the sufficiency of pleadings as to Plaintiff's § 10(b) claims").

**Control.** In evaluating Section 20(a) claims, "the courts have given heavy consideration to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof." *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 890-91 (3d Cir. 1975). Thus, "plaintiffs must show that defendants exercised control over the accused operations, ***but need not show that defendants exercised control over the specifically accused transaction or activity.***" *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 518 (D. Del. 2001); *see also* 17 C.F.R. § 240.12b-2(f) (defining control as "possession, direct or indirect, of the power to direct or cause the direction of the management and policies *of a person*"—not of the Proxy, as Defendants indicate).

Giordano's argument that he was not a control person ignores that he had direct and supervisory involvement in the day-to-day operations of Cerevel. Giordano has a long history with Cerevel's business from its inception in 2018. ¶¶36, 41. He remained a director on Cerevel's Board from its founding until the Merger even while transitioning from an employee of Defendant Pfizer to Defendant Perceptive. *Id.* During the Class Period, Giordano also served on Cerevel's Special Committee to negotiate partnerships (such as the potential AbbVie regional partnership). ¶65.

Giordano also demonstrated his control over Cerevel by being instrumental in negotiating, reviewing, and approving the Merger Agreement, as a Director of Cerevel, and as a member of Cerevel's Special Committee that negotiated emraclidine partnerships. ¶¶36, 65-75, 92-105; *see*

*also Winfield v. Eloxx Pharms., Inc.*, No. 19-447-RGA, 2020 WL 340567, at \*15 (D. Del. Jan. 21, 2020), *report and recommendation adopted in relevant part, rejected in part,* No. 19-447-RGA, 2020 WL 1333008, at \*5 (D. Del. Mar. 23, 2020) (Defendant's role as CEO, "combined with the Complaint's particularized allegations that he actively coordinated the merger transaction . . . is sufficient to state a [control] claim under Section 20(a)"); *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 398 (D. Del. 2016) (finding control when the Plaintiff "spells out the major role that [the defendant] played in the sale" of the company, including negotiating the terms of the merger).[16]

**Culpable Participation.** "[T]he 'overwhelming trend' in the Third Circuit is that culpable participation need not be pled to survive a motion to dismiss." *Strougo v. Mallinckrodt Pub. Ltd. Co.*, No. CV 20-10100 (MAS) (TJB), 2022 WL 17740482, at \*11 (D.N.J. Dec. 16, 2022). Courts in this circuit have recognized that culpable participation facts are typically within the defendant's exclusive possession and therefore need not be pled before discovery. *Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171, 180-81 (D. Del. 2010). Even if the Court were to require such allegations at the pleading stage, Plaintiffs plausibly allege culpable participation here.

Culpable participation "refers to either knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent its discovery." *Advance Auto Parts*, 2020 WL 599543, at \*10. Here, the Complaint demonstrates that Giordano had actual knowledge of AbbVie's whole-company interest in Cerevel and both substantially participated in

---

[16] Unlike here, the complaint in *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561-62 (D. Del. 2002) cited by Giordano only alleged control based on defendants' positions as officers of the company and failed to allege how "[they] actively coordinated the merger transaction." *See Winfield v. Eloxx Pharms., Inc.*, 2020 WL 1333008, at \*54 (D. Del. Mar. 23, 2020). The case *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at \*9 (D. Del. Feb. 7, 2020) is distinguishable for the same reasons.

19

the transactions that relied on that nondisclosure and intentionally refrained from disclosing it or taking steps to correct the misleading statements. As a member of Cerevel's Board, Giordano had intimate knowledge of the sales process. ¶36. The Director Defendants, including Giordano, had access to and understood the true timing of AbbVie's interest in a whole-company acquisition before the October Offering and received and reviewed the Centerview valuation analyses that were excluded from the Proxy. ¶196. Each member of the Cerevel Board, including Giordano, also reviewed and approved the Proxy, which was issued "By Order of the Board of Directors." *Id.* Culpable participation is met where, as here, plaintiffs allege that defendants were responsible for reviewing allegedly fraudulent SEC filings. *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741 (S.D.N.Y. 2015). Therefore, Giordano was fully aware of AbbVie's whole-company interest in Cerevel yet intentionally refrained from disclosing it or taking steps to correct the misleading statements (or preventing Perceptive from trading on the information). By remaining inactive, Giordano furthered the fraud and prevented its discovery, allowing both the October Offering and the subsequent acquisition to proceed.

## VI.    CONCLUSION

For the reasons stated herein, the Motion should be denied in its entirety.

20

Dated: December 17, 2025

Respectfully submitted,

**FARNAN LLP**

By: *Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Emails:  bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Lead Plaintiffs and the Class*

**ENTWISTLE & CAPPUCCI LLP**
Andrew J. Entwistle (*pro hac vice*)
Callie Crispin (*pro hac vice*)
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 710-5960
Emails:  aentwistle@entwistle-law.com
ccrispin@entwistle-law.com

**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci (*pro hac vice*)
Robert N. Cappucci (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
Jessica A. Margulis (*pro hac vice*)
230 Park Avenue, 3rd Floor
New York, New York 10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272
Emails:  vcappucci@entwistle-law.com
rcappucci@entwistle-law.com
asher@entwistle-law.com
jmargulis@entwistle-law.com

*Counsel for Lead Plaintiffs and the Class*

21

**Appendix A**

**Summary Charts of Perceptive and Giordano's Alleged Wrongdoing**

I.     **Section 20A Insider Trading Claim**

To state a claim for a violation of Section 20A, plaintiffs must allege "(1) a predicate violation of the Exchange Act; (2) that the plaintiff traded contemporaneously with the insider; and (3) that the insider was in possession of material nonpublic information." *In re Valeant Pharms. Int'l, Inc., Sec. Litig.*, 2019 WL 2724075, at *5 (D.N.J. June 30, 2019)

| Element | Facts Plead |
|---|---|
| Predicate Violation | Although only one is required, two predicate violations are alleged based on factual allegations, though not formally pled:<br><br>• Perceptive's Section 10(b) insider trading violation<br><br>• Perceptive's Section 10(b) violation for omitting material facts in the October Offering documents |
| Contemporaneous purchasing or selling stock | The complaint pleads Perceptive contemporaneously traded with Plaintiffs while in possession of material nonpublic information:<br><br>• On October 16, 2023, Perceptive purchased 876,808 shares of Cerevel common stock. ¶181<br><br>• Plaintiff Atlas Diversified Master Fund, Ltd. sold Cerevel common stock on October 16, 2023. ¶24 |
| Possession | The Complaint pleads Perceptive had possession of material nonpublic information regarding merger discussions with AbbVie through its employee, Giordano, serving on the Cerevel Board:<br><br>• On September 27, 2023, the Cerevel Board met with Centerview to discuss "potential paths forward" and M&A themes and trends" and recused Pfizer's Board members because Pfizer could be interested in an acquisition of Cerevel. ¶¶69-70<br><br>• Centerview's September 29, 2023 "talking points" for Renaud confirmed he "Discussed [AbbVie's] communication of a whole co proposal with the board." ¶74 |

A-1

| Element | Facts Plead |
|---|---|
| | • Perceptive Board member Giordano was an employee of Perceptive. ¶36. Giordano's knowledge is thus imputed to his employer, Perceptive. ¶182 |
| Material Nonpublic Information | The information in Perceptive's possession regarding AbbVie's merger discussions prior to the October Offering was material because:<br><br>• AbbVie executed a confidentiality agreement to commence due diligence in March 2023. ¶57<br><br>• A Cerevel tracker circulated September 23, 2023, indicated AbbVie had "indicated interest in whole co," had conducted "meaningful" due diligence, and Cerevel was "awaiting term sheet." ¶124<br><br>• On September 27, 2023, Cerevel's Board met with Centerview to discuss M&A related issues and recused Pfizer's designees because of a potential conflict. ¶71<br><br>• On September 29, 2023, Centerview sent Renaud "talking points" for a conversation with AbbVie's executive vice president, which confirmed Renaud shared AbbVie's interest with the Board. ¶74<br><br>• On October 5, 2023, Cerevel began putting together a whole company data room. ¶75<br><br>• On October 17, 2023, AbbVie emailed Cerevel "following up." AbbVie sent a formal offer to acquire Cerevel just three days after the October Offering, and the deal was announced just 51 days after the October Offering. ¶¶92-93, 104 |

## II.    Section 20(a) Control Person Claim Against Giordano

To prove a Section 20(a) claim, Plaintiffs must show (i) a primary securities law violation by the controlled entity, (ii) the Section 20(a) defendant's control, and (iii) the Section 20(a) defendant's culpable participation in the securities law violation. *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 731 (D. Del. 2014). However, "the 'overwhelming trend' in the Third Circuit is that culpable participation need not be pled to survive a motion to dismiss." *Strougo v. Mallinckrodt Pub. Ltd. Co*., 2022 WL 17740482, at *11 (D.N.J. Dec. 16, 2022).

| Element | Facts Plead |
|---|---|
| Primary securities law violation by controlled entity | Cerevel violated Section 10(b) and 14(a) of the Exchange Act. (Counts I and III) |
| Control | Giordano had the ability to control and did control Cerevel through: <br><br> • Serving on Cerevel's Board. ¶36 <br><br> • Approving the October Offering without disclosing the Merger discussions with AbbVie and knowing Perceptive was purchasing in the Offering. ¶77 <br><br> • Ordering the issuance of the Proxy. ¶141 <br><br> • Recommending in the Proxy that shareholders vote to approve the Merger with AbbVie. ¶106 |

A-3