**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION | Case No. 25-cv-417-GBW<br><br>**FILED UNDER SEAL** |

## ANSWERING BRIEF IN OPPOSITION TO DIRECTOR DEFENDANTS DEVAL PATRICK, DEBORAH BARON, SUNEET VARMA, AND RUTH MCKERNAN'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT (D.I. 55)

Dated: December 17, 2025

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel.: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

***Counsel for Lead Plaintiffs and the Class***
[Additional counsel listed on signature block]

**TABLE OF CONTENTS**

I.     NATURE AND STAGE OF THE PROCEEDING ............................................................. 1

II.    SUMMARY OF ARGUMENT ......................................................................................... 2

III.   STATEMENT OF FACTS ............................................................................................... 4

     A.    The Director Defendants were Each Affiliated with Bain and/or Pfizer ................ 4

     B.    The Director Defendants Approve the October Offering Facilitating Bain and Perceptive's Inside Sales ...................................................................................... 5

     C.    The Director Defendants Allow the Issuance of Misleading Statements about the October Offering ........................................................................................... 7

     D.    The Director Defendants Issue a Misleading Proxy Regarding the Merger ........... 7

IV.   LEGAL STANDARD ...................................................................................................... 9

V.    ARGUMENT ................................................................................................................. 10

     A.    The Complaint Adequately Pleads a Predicate Exchange Act Violation .............. 10

     B.    Plaintiffs Plausibly Plead the Director Defendants' Control of Cerevel ............... 10

     C.    Plaintiffs Plead Culpable Participation with Particularized Facts ....................... 13

VI.   CONCLUSION .............................................................................................................. 16

i

## TABLE OF AUTHORITIES

**Cases**

*Belmont v. MB Inv. Partners*, *Inc.*,
    708 F.3d 470 (3d Cir. 2013) ........................................................................... 13

*Brody v. Zix Corp.*,
    No. 3:04-CV1931-K, 2006 WL 2739352 (N.D. Tex. Sept. 26, 2006) .............................. 12

*Dutton v. Harris Stratex Networks, Inc.*,
    270 F.R.D. 171 (D. Del. 2010) ...................................................................... 13

*In re Advance Auto Parts, Inc., Sec. Litig.*,
    No. 18-212-RGA, 2020 WL 599543 (D. Del. Feb. 7, 2020) .................................... 13, 15

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
    No. 05-232, 2007 WL 81937 (E.D. Pa. Jan. 9, 2007) .......................................... 9

*In re BioScrip, Inc. Sec. Litig.*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015) ..................................................... 12, 13, 14

*In re Digital Island Sec. Litig.*,
    223 F. Supp. 2d 546 (D. Del. 2002) .................................................................. 14

*In re Initial Public Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) .............................................................. 9

*In re MBIA, Inc., Sec. Litig.*,
    700 F. Supp. 2d 566 (S.D.N.Y. 2010) .............................................................. 14

*In re Merck & Co., Inc. Sec., Derivative & Erisa Litig.*,
    No. CIV.A. 05-1151 SRC, 2012 WL 3779309 (D.N.J. Aug. 29, 2012) ........................... 14

*In re Nat'l Media Sec. Litig.*,
    No. 93–2977, 1994 WL 397398 (E.D. Pa. July 27, 1994) ........................................ 10

*In re Reliance Sec. Litig.*,
    135 F. Supp. 2d 480 (D. Del. 2001) .......................................................... 11, 14

*In re Shanda Games Limited Sec. Litig.*,
    128 F.4th 26 (2d Cir. 2025) ....................................................................... 16

*Institutional Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ...................................................................... 2, 15

*Jackson v. Fischer*,
    931 F. Supp. 2d 1049 (N.D. Cal. 2013) ............................................................ 9

*Palladin Partners v. Gaon,*
No. 05-CV-3305 (WJM), 2006 WL 2460650 (D.N.J. Aug. 22, 2006)........................ 9, 13

*Rochez Bros., Inc. v. Rhoades*,
527 F.2d 880 (3d Cir. 1975)......................................................................... 11

*Stanley Black & Decker, Inc. v. Gulian,*
70 F. Supp. 3d 719 (D. Del. 2014)................................................................ 10

*Strougo v. Mallinckrodt Pub. Ltd. Co.*,
No. CV 20-10100 (MAS) (TJB), 2022 WL 17740482 (D.N.J. Dec. 16, 2022). .............. 13

*The Winer Fam. Tr. v. Queen*,
No. CIV.A. 03-4318, 2004 WL 2203709 (E.D. Pa. Sept. 27, 2004),
*aff'd* 503 F.3d 319 (3d Cir. 2007) ...................................................................... 9

*Zhengyu He v. China Zenix Auto Int'l Ltd.,*
No. CV 2-18-15530(KM-JAD), 2020 WL 3169506 (D.N.J. June 12, 2020) ................... 12

**Statutes**

17 C.F.R. § 240.12(b) .................................................................................. 11

**Other Authorities**

H.R. REP. No. 1383,
73rd Cong., 2d Sess. 26 (1934)...................................................................... 11

## I.    NATURE AND STAGE OF THE PROCEEDING[1]

The case arises from misstatements and omissions in connection with Cerevel's offering of $500 million of stock in October 2023 (the "October Offering") and AbbVie's subsequent acquisition of the Company. Undisclosed to investors, the October Offering was orchestrated by Cerevel's Board—comprised of the very Director Defendants Deval Patrick, Deborah Baron, Suneet Varma, and Dr. Ruth McKernan who move to dismiss by, remarkably, insisting there is nothing connecting them to the wrongdoing—and inside shareholders Bain and Perceptive, to allow Bain and Perceptive to acquire more than six million shares of Cerevel common stock at a deep discount while in possession of material nonpublic information regarding AbbVie's merger interest. These insiders unlawfully profited more than $140 million when AbbVie announced just 51 days later that it was acquiring Cerevel for nearly double the offering price.

The Complaint asserts violations of Sections 10(b), 14(a), 20A and 20(a) of the Exchange Act against, variously, Cerevel, Cerevel's controlling shareholders Bain and Pfizer, inside shareholder Perceptive, Cerevel CEO Renaud, and certain members of Cerevel's Board:

| Defendant(s) | Summary of Claims |
|---|---|
| Cerevel (D.I. 46) | Cerevel is liable under Sections 10(b) and 14(a) for making misstatements and omitting material facts in various public statements from the October Offering through the Proxy regarding the timing of AbbVie's merger interest and the fairness of the Merger. |
| Bain, Gordon, Koppel (the "Bain Defendants") (D.I. 45) | Bain is liable under Section 20A for purchasing more than five million Cerevel shares while in possession of material, nonpublic information regarding AbbVie's merger interest. Bain, Cerevel's largest shareholder, is also liable under Section 20(a) as a control person of Cerevel and Renaud. Defendants Gordon and Koppel, senior executives at Bain, served as Cerevel Board members and are liable under Section 20(a) as control persons of Cerevel. |

---

[1] Capitalized terms undefined herein shall have the same meaning as in the Consolidated Class Action Complaint ("Complaint") [D.I. 19]. Citations to "¶__" refer to paragraphs in the Complaint. All emphasis is added and internal citations omitted unless otherwise noted.

| | |
|---|---|
| Perceptive, Giordano (D.I. 53) | Perceptive is liable under Section 20A for purchasing 876,808 Cerevel shares while in possession of material nonpublic information regarding AbbVie's merger interest. Defendant Giordano, a Perceptive Managing Director, served as a Cerevel Board member and is liable under Section 20(a) as a control person of Cerevel. |
| Pfizer (D.I. 40) | Pfizer is liable as a control person under Section 20(a) of Cerevel because Pfizer and Bain at all times jointly controlled Cerevel. |
| Renaud (D.I. 57) | Renaud, who served both as Cerevel's CEO and a Senior Advisor at Bain during the Class Period, is liable under Section 10(b) for making misstatements and omitting facts regarding the October Offering and the timing of AbbVie's merger interest. Renaud is also liable under Section 20(a) as a control person of Cerevel. |
| Patrick, Baron, Varma, and McKernan (the "Director Defendants") (D.I. 55) | Each of the Director Defendants was a member of the Cerevel Board, had some affiliation with Bain and/or Pfizer, and are liable under Section 20(a) as control persons of Cerevel. |

In an apparent effort to induce the Court to look at the claims in the Complaint on a fractionalized (rather than holistic) basis as required by operative Third Circuit law,[2] Defendants made six separate motions to dismiss. This opposition addresses the Director Defendants' Motion (D.I. 55). While this opposition focuses on the facts and arguments related to the Director Defendants, Plaintiffs incorporate by reference herein each of the other opposition briefs.

## II.   SUMMARY OF ARGUMENT

1.   The Director Defendants urge dismissal of the control person claims asserted against them by insisting Plaintiffs offer "nothing" connecting them to the misconduct. In reality, the Complaint alleges in detail the Director Defendants' knowledge of the omitted material facts, approval of the October Offering that is the foundation of the wrongdoing, and direct involvement in the very misstatements at issue in the Proxy. This goes well above and beyond the requirements for pleading a Section 20(a) control person claim.

---

[2] *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009).

2

2.      Notably, the Director Defendants are not just ordinary independent directors caught in the middle of a securities fraud case. The Complaint pleads that each of the Director Defendants were affiliated with controlling shareholders Defendants Bain and/or Pfizer and that their corporate role was approving the stock offering and issuing the Proxy that contained many of the key misstatements giving rise to the primary liability violations. The Director Defendants' motion begs the question, if such allegations are not enough to culpably connect them to the misconduct, are board members who do the bidding of controlling shareholders immune from liability just because there are bigger fish to fry?

3.      Tellingly, the Director Defendants' motion largely ignores the Complaint's repeated allegations that Bain and Pfizer, through the Director Defendants (as well as their fellow Board members Defendants Renaud, Koppel, and Gordon, who were senior employees of Bain at the time), orchestrated the October Offering that allowed the primary wrongdoing at the heart of this case: Bain and Perceptive's illicit insider trading. Because it is pled based on internal Cerevel documents obtained in the Chancery proceedings, the Director Defendants do not—and cannot— dispute that they knew of the Merger discussions with AbbVie at the time of the October Offering, nor that Bain and Perceptive also knew of this nonpublic information. As Board members, the Director Defendants also had knowledge of additional material nonpublic valuations, as well as financial and operational information about Cerevel, including that in September 2023 Centerview valued the Company at $53 per share (more than double the $22.81 per share October Offering price). The Director Defendants likewise cannot dispute that they facilitated the insider trading at issue through their approval of the October Offering subject to offering materials that did not disclose the truth, or relatedly, by failing to prevent Bain and Perceptive from trading while in possession of material nonpublic information.

3

4.      In short, the Complaint easily pleads each element of the Section 20(a) claims against the Director Defendants: a predicate Exchange Act violation, control by the Director Defendants, and, while not necessary at this stage, particularized facts showing the Director Defendants' culpable participation. Accordingly, the Director Defendants' Motion to Dismiss should be denied.

## III.    STATEMENT OF FACTS

### A.    The Director Defendants were Each Affiliated with Bain and/or Pfizer

Each of the Directors Defendants were affiliated with the entities that founded and controlled Cerevel, Defendants Bain and Pfizer, and each had a critical role in the wrongdoing alleged here. ¶55. Specifically:

- Prior to joining the Cerevel Board, Defendant Patrick was a Managing Director at Bain Capital (¶32). Defendant Patrick approved the October Offering and the issuance of the Proxy (¶¶77, 141);

- While serving on the Cerevel Board, Defendant Baron was a Senior Vice President, Worldwide Business Development at Defendant Pfizer (¶33). Defendant Baron approved the October Offering and the issuance of the Proxy (¶¶77, 141);

- While serving on the Cerevel Board, Defendant Varma was Global President, Rare Diseases at Pfizer. Prior to that, Defendant Varma served as Global President, Hospital Business Unit at Pfizer (¶34). Defendant Varma approved the October Offering and the issuance of the Proxy (¶¶77, 141); and

- Prior to joining the Cerevel Board in 2020, Defendant Dr. McKernan held various roles at Pfizer from 2005 to 2015, most recently as Chief Scientific Officer (¶35). Defendant Dr. McKernan approved the October Offering and the issuance of the Proxy (¶¶77, 141).

Through their current or former employment at Bain or Pfizer, each of the Director Defendants was loyal to Bain and/or Pfizer. Overall, the Cerevel Board was dominated by Bain, Pfizer, and Perceptive, who had some affiliation with eleven of the twelve directors:

4

| Director | Affiliation |
|---|---|
| 1.  Direct Defendant Deborah Baron | Pfizer employee |
| 2.  Director Defendant Suneet Varma | Pfizer employee |
| 3.  Director Defendant Dr. Ruth McKernan | Bain nominee and former Pfizer executive |
| 4.  Director Defendant Deval Patrick | Former Bain employee |
| 5.  Douglas Giordano | Managing Director of Perceptive (former Pfizer employee) |
| 6.  Ron Renaud | Former Bain employee and current Bain Senior Advisor |
| 7.  Chris Gordon | Bain employee |
| 8.  Adam Koppel | Bain employee |
| 9.  Gabrielle Sulzberger | Bain nominee and worked at Bain as an associate |
| 10. Marijn Dekkers | Bain nominee and has served as a director for other Bain-funded companies, such as Gingko Bioworks Holdings, Inc. and Soaring Eagle Acquisition Corp. |
| 11. Norbert Riedel | Bain nominee |
| 12. N. Anthony Coles | N/A |

¶55.

**B.    The Director Defendants Approve the October Offering Facilitating Bain and Perceptive's Inside Sales**

In late September and early October 2023, contemporaneous documents demonstrate that the Cerevel Board, including the Director Defendants, knew that AbbVie was interested in a whole-company acquisition. Specifically:

- An internal Cerevel document attached to a September 23, 2023 email from Cerevel Chief Business Development & Strategic Operations Officer Paul Burgess to a Managing Director at Cerevel's financial advisor, Centerview, stated that AbbVie had informed Cerevel that it was interested in a whole-

5

company acquisition of Cerevel, and Cerevel had noted the "next step" was "await term sheet." ¶¶7, 67.

- On September 27, 2023, the Cerevel Board—including each of the Director Defendants—met with Centerview to discuss strategic options, including merger and acquisition opportunities. At the meeting, Centerview advised that in the biopharmaceutical industry, a "significant majority of M&A transactions have been initiated through partnership discussions in the last few years" (such as the Japanese partnership conversations Cerevel was having with AbbVie). ¶¶7, 69, 71. Centerview also presented at the meeting an "Illustrative M&A Scenario" that implied Cerevel's M&A value was $53 per share. ¶72.

- The discussions at the September 27, 2023 Board meeting regarding strategic alternatives were serious enough that the Pfizer-appointed Board members (Defendants Baron and Varma) agreed to be recused from that portion of the meeting because Pfizer could also be interested in a potential transaction. ¶¶7, 70.

- On September 29, 2023, Centerview emailed Cerevel CEO (and Bain Senior Advisor) Defendant Renaud "talking points" for a follow-up meeting with AbbVie, and Centerview recommended for Renaud to acknowledge that he had "[d]iscussed your communication of a whole co proposal with the board." ¶¶7, 74.

- By October 5, 2023, Cerevel employees were "starting to pull together whole co data room structure" to allow AbbVie to conduct additional due diligence. ¶¶7, 75.

On October 10, 2023, the Director Defendants approved the October Offering. ¶77. According to the Proxy, "the Board determined that extending the cash runway for Cerevel into 2026 by way of a public equity offering would best position Cerevel for future success." ¶77. But this representation in the Proxy was inconsistent with the Board's internal discussion. Just over a month earlier at an August 31, 2023 meeting, the Board, including these Director Defendants, discussed that Cerevel did not urgently need cash and that it had a capital runway until May 2025. ¶77.

6

In reality, the October Offering was orchestrated by Bain, through its loyal directors on the Cerevel Board, so Bain and Perceptive could increase their investment in Cerevel at a deeply discounted price in advance of the AbbVie Merger. Bain and Perceptive collectively purchased 6,356,860 shares of Cerevel common stock in the October Offering for just $22.81 per share, reaping over ***$141 million in illicit profits***. ¶2.

### C.    The Director Defendants Allow the Issuance of Misleading Statements about the October Offering

Cerevel issued two press releases, a Preliminary Prospectus Supplement and a Prospectus Statement regarding the October Offering, all of which omitted any mention of the merger discussions between AbbVie and Cerevel. ¶¶79-84. The omission was material because Bain and Perceptive were trading on the information and by that point: (i) AbbVie had engaged in months of "meaningful" due diligence related to a potential regional partnership and had informed Cerevel that it had shifted its interest to a whole-company acquisition; (ii) Cerevel was awaiting a term sheet from AbbVie; (iii) Cerevel's Board had met with its financial advisors to discuss AbbVie's interest and to discuss launching a sales process and, at that meeting, even recused the Pfizer-affiliated Board members because Pfizer could also be interested in a potential transaction with Cerevel; (iv) based on the Board discussion, Centerview had emailed Renaud suggested "talking points" to respond to AbbVie's interest; and (v) Cerevel was pulling together a whole-company data room for AbbVie to perform additional due diligence. ¶10.

### D.    The Director Defendants Issue a Misleading Proxy Regarding the Merger

On January 18, 2024, the Board—including the Director Defendants—caused Cerevel to issue the Definitive Proxy Statement on Schedule 14A. ¶141. The Proxy was issued "By Order of the Board of Directors." ¶141. In the Proxy, the Board recommended voting "FOR" the adoption of the Merger agreement. ¶141.

The Proxy misled investors regarding the timing of AbbVie's interest in a whole-company acquisition and the timing of Cerevel's launch of a sales process. ¶108. Despite that AbbVie had already indicated it was interested in a whole-company acquisition and that Cerevel was awaiting a term sheet, the Proxy indicated that the September 25, 2023 conversation between Cerevel and AbbVie "focused on Cerevel's retention of commercial rights in Japan and AbbVie did *not* indicate that an offer to acquire Cerevel would be forthcoming." ¶108 (emphasis added). Likewise, the Proxy stated that AbbVie's initial offer on October 19, 2023 was an "unsolicited offer," misleadingly implying that it was the first indication of interest. ¶108. The misleading statements regarding the timing of AbbVie's indication of interest hid from investors the extent of AbbVie's timing advantage over other potential acquirors, who Cerevel did not begin reaching out to until October 24, 2023. ¶111.

The Proxy also contained misstatements and omitted material facts regarding Centerview's financial analyses. ¶112. Pages 58-59 of the Proxy included a Discounted Cash Flow Analysis that "calculated a range of implied equity values per Company Share" of $35.20 to $43.45 per share. ¶112. The Proxy also included other analyses by Centerview, including a "Historical Stock Trading Price Analysis," "Analyst Price Target Analysis," and "Precedent Premium Paid Analysis." ¶112. The Proxy also attached as Appendix B a four-page letter from Centerview opining that "the Agreement is fair, from a financial point of view." ¶147.

However, the Director Defendants excluded from the Proxy important financial analyses Centerview presented to the Board that did not support the Merger price. ¶113. First, the Proxy omitted that in September 2023—days before the October Offering—Centerview had presented to the Board an "Illustrative M&A Scenario" that valued the Company at $53 per share. ¶113. Second, the Proxy omitted that, on November 8, 2023 when discussing with the Board AbbVie's $40 per

share proposal, Centerview presented a financial analysis to the Board that included a discounted cash flow model based on management's financial projection implying the Company was worth between $50 and $62 per share. ¶113. Third, the Proxy omitted that on November 11, 2023, Centerview calculated that, based on the Company's "Preliminary Management Case," which implied the Company's value of $38 per share, a large pharmaceutical company like AbbVie had the ability to pay up to $67 per share for Cerevel. ¶113.

## IV.    LEGAL STANDARD

Section 20(a) of the Exchange Act provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this [Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to whom such controlled person is liable." 15 U.S.C. §78t(a).

Contrary to the Director Defendants' suggestion, the majority of courts have held that Section 20(a) "[c]ontrol person claims are not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) or the Reform Act." *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2007 WL 81937, at *5 (E.D. Pa. Jan. 9, 2007); *The Winer Fam. Tr. v. Queen*, No. CIV.A. 03-4318, 2004 WL 2203709, at *22 (E.D. Pa. Sept. 27, 2004), *aff'd* 503 F.3d 319 (3d Cir. 2007) (same); *see also In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 352 (S.D.N.Y. 2003) ("[n]aked allegations of control, however, will typically suffice to put a defendant on notice of the claims against her."); *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1073 (N.D. Cal. 2013) ("the tendency among district court in recent years appears to be that pleading § 20 claims in conformance with Rule 8 is sufficient.").

Accordingly, "[t]he pleading of facts that 'support a reasonable inference that [defendants] had the potential to influence and direct the activities of the primary violator' will survive a motion to dismiss." *Palladin Partners v. Gaon*, 2006 WL 2460650, at *16 (D.N.J. Aug. 22, 2006). Whether

9

defendants are controlling persons is a "question of fact which cannot ordinarily be resolved at the pleading stage." *In re Nat'l Media Sec. Litig.*, 1994 WL 397398, at *5 (E.D. Pa. July 27, 1994).

## V.      ARGUMENT

To state a claim under Section 20(a), Plaintiffs must show (i) a primary securities law violation by the controlled entity (Cerevel), (ii) the Section 20(a) defendant's control, and (iii) the Section 20(a) defendant's culpable participation in the securities law violation. *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 731 (D. Del. 2014). The Complaint more than adequately pleads each element.[3]

### A.      The Complaint Adequately Pleads a Predicate Exchange Act Violation

The Complaint pleads compelling violations of Sections 10(b) and Section 14(a) by Defendants Cerevel, including omissions of material facts concerning: the true timing of AbbVie's acquisition interest; the Board's discussions of a sale to AbbVie before the October Offering; and the Centerview valuation analyses presented to the Board but withheld from stockholders. ¶¶169-179, 187-192. As detailed in Plaintiffs' Oppositions to Defendant Cerevel and Renaud's motions to dismiss (which Plaintiffs fully incorporate herein), the Complaint's allegations easily meet the standard for pleading primary violations of Sections 10(b) and 14(a).

### B.      Plaintiffs Plausibly Plead the Director Defendants' Control of Cerevel

Plaintiffs have sufficiently alleged Director Defendants' control of Cerevel in the Complaint. ¶¶193-198. There is no statutory definition of "control" as Congress envisioned a broad interpretation:

> [W]hen reference is made to "control," the term is intended to include actual control as well as what has been called legally enforceable control . . . It was thought undesirable to attempt to define the term. It would be difficult if not impossible to enumerate or to anticipate the many ways in which actual control may be

---

[3] Attached as Appendix A is a chart summarizing the allegations and facts supporting the claim.

> exerted. A few examples of the methods used are stock ownership, lease, contract, and agency.

H.R. REP. No. 1383, 73rd Cong., 2d Sess. 26 (1934). However, the SEC has defined "control" as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12(b)—2(f); *see Rochez Bros. v. Rhoades*, 527 F.2d 880, 890 (3d Cir. 1975) (citing the SEC definition while assessing Section 20(a) claims). "[T]he courts have given heavy consideration to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof." *Id*. Thus, "plaintiffs must show that defendants exercised control over the accused operations, ***but need not show that defendants exercised control over the specifically accused transaction or activity***." *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 518 (D. Del. 2001).

The Director Defendants' motion treats Plaintiffs' allegations as if they rest solely on the Director Defendants' board titles, entirely ignoring the alleged actual conduct of the Director Defendants as members of the Cerevel Board that facilitated the wrongful conduct. As detailed in the Complaint, Bain and Pfizer controlled Cerevel at all times from its founding through the AbbVie Merger. ¶¶27, 46. Cerevel was a "controlled" company under NASDAQ listing rules, and Cerevel repeatedly acknowledged to investors in SEC filings that Bain and Pfizer (which conceded they can be considered a "group" as a result of certain "voting arrangements") had significant influence over the Company. ¶¶54, 87. The way Bain and Pfizer's control over Cerevel existed in practice was through the Cerevel Board, including each of the Director Defendants who had an affiliation with Bain and/or Pfizer:

- Defendant Deval Patrick was a Managing Director at Bain Capital prior to serving on the Cerevel Board (¶32);

11

- Defendant Deborah Baron was Senior Vice President, Worldwide Business Development at Defendant Pfizer while serving on the Cerevel Board (¶33);

- Defendant Suneet Varma was Global President, Rare Diseases at Pfizer while serving on the Cerevel Board (¶34); and

- Defendant Dr. Ruth McKernan was a Bain-nominated member of Cerevel's Board of Directors and prior to serving on the Board held various roles at Pfizer from 2005 to 2015, most recently as Chief Scientific Officer. ¶35.

The Complaint alleges the Director Defendants touched nearly every aspect of the wrongdoing that permitted Bain to unlawfully purchase discounted shares while in possession of material nonpublic information. Specifically, the Director Defendants: (a) knew of AbbVie's merger interest in late September 2023 (a fact not reasonably disputed given Renaud's suggested talking points confirmed he "[d]iscussed [AbbVie's] communication of a whole co proposal with the board") (¶74); (b) approved the October Offering (¶77); (c) negotiated Cerevel's sale to AbbVie (¶¶92-105); (d) knew certain Centerview financial analyses valued Cerevel significantly higher than $45 per share (¶113); and (e) ordered the issuance of the false and misleading Proxy and recommended that shareholders vote FOR the merger (¶141).

This is exactly the type of influence and control required to state a Section 20(a) control person claim. *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741 (S.D.N.Y. 2015); *Brody v. Zix Corp.*, 2006 WL 2739352, at *9 (N.D. Tex. Sept. 26, 2006) (finding control where defendants had "access to certain internal information" and "sufficient control over the information which was disseminated to the public and given to the SEC").

Perhaps most importantly, as members of the Cerevel Board, the Director Defendants caused the issuance of the false and misleading Proxy. ¶196 (Proxy issued "By Order of the Board of Directors"); *Zhengyu He v. China Zenix Auto Int'l Ltd.*, 2020 WL 3169506, at *13 (D.N.J. June 12, 2020) (individuals with "control over the Company's SEC filings ... easily place[ ] them within

12

the definition of control persons"); *Palladin Partners,* 2006 WL 2460650, at *16 (finding control well-pled where plaintiffs alleged that defendants served as directors and signed the SEC filings at issue in the case).

### C.    Plaintiffs Plead Culpable Participation with Particularized Facts

Culpable participation "refers to either knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent its discovery." *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *10 (D. Del. Feb. 7, 2020). While culpable participation is a required element for a Section 20(a) claim for purposes of summary judgment, *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 n.20 (3d Cir. 2013), "the 'overwhelming trend' in the Third Circuit is that culpable participation need not be pled to survive a motion to dismiss." *Strougo v. Mallinckrodt Pub. Ltd. Co.*, 2022 WL 17740482, at *11 (D.N.J. Dec. 16, 2022). Consistent with that trend, courts in this circuit have recognized that culpable participation facts are typically within the defendant's exclusive possession and therefore need not be pled before discovery. *Dutton v. Harris Stratexf Networks, Inc.*, 270 F.R.D. 171, 180-81 (D. Del. 2010).

Even if the Court were to require such allegations at the pleading stage, Plaintiffs plausibly allege culpable participation here for both the October Offering filings and the Proxy, as culpable participation is met where plaintiffs allege that defendants were responsible for reviewing allegedly fraudulent SEC filings. *BioScrip*, 95 F. Supp. 3d at 741.

*First*, the Director Defendants knew the true timing and extent of AbbVie's acquisition interest. ¶¶145, 196. The Complaint alleges that each Director Defendant had access to and understood the true timing of AbbVie's whole-company interest—a fact that is not based on their status as Board members but is confirmed by an internal Cerevel document containing Renaud's

13

proposed talking points that confirmed he shared AbbVie's proposal with the Board. ¶¶7, 74, 76.[4] The Director Defendants either knew or recklessly disregarded that the AbbVie Merger negotiations were not publicly disclosed when they approved the October Offering. *BioScrip*, 95 F. Supp. 3d at 741; *Reliance*, 135 F. Supp. 2d at 519 ("a reasonable juror could conclude that defendants culpably participated in the fraud by approving the allegedly misleading SEC documents.").[5] Each Director Defendant also knew that on September 27, 2023, Centerview valued Cerevel at $53 per share in an M&A scenario and that as a result the $22.81 October Offering price was grossly inadequate. ¶72.

*Second*, the Complaint alleges each Director Defendant received and reviewed the Centerview valuation analyses that were excluded from the Proxy. ¶196. That is—despite the Proxy's inclusion of numerous pages of "financial analyses" performed by Centerview purportedly supporting the $45 Merger price—the Director Defendants knew they had been presented with at least three Centerview analyses indicated that the deal price was inadequate, including: from September 2023 (valuing Cerevel at $53 per share); from November 8, 2023 (valuing Cerevel at $50 to $62 per share); and from November 11, 2023 (indicating a large pharmaceutical company

---

[4] While Defendants Baron and Varma were absent from a portion of the September 27, 2023 Board meeting, it is because they *agreed* to be recused because Pfizer "could be an interested party if Cerevel were engage in a strategic process for the potential acquisition of Cerevel." ¶70. In other words, Defendants Baron and Varma understood—and agreed—they were being recused because of ongoing acquisition discussions.

[5] The majority of the Director Defendants' cases are distinguishable because the allegations merely *assumed* the defendant *must have* had knowledge of the mispresented facts through their position alone, while by contrast here the facts confirm Renaud shared AbbVie's proposal with the Board. *See In re Merck & Co., Inc. Sec., Derivative & Erisa Litig.*, 2012 WL 3779309, at *11 (D.N.J. Aug. 29, 2012) (culpable participation not adequately alleged where "Plaintiffs make the conclusory assertion that given his position and expertise, [Defendant] was reckless in failing to discover the fraud."); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002) (allegation defendants "must have known . . . by virtue of their positions as directors" insufficient"); *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566 (S.D.N.Y. 2010) (allegations "insufficient to show that [defendants] were personally aware of the" omitted truth).

like AbbVie had the ability to pay up to $67 per share for Cerevel). ¶15. This allegation ties each Director Defendant to the precise materials omitted from the Proxy, which was issued by the Board of Directors, including the Director Defendants, and demonstrates knowledge of the falsity of the Proxy's descriptions. Courts in this circuit treat access to and review of omitted financial and valuation materials as quintessential culpable participation. *See Avaya*, 564 F.3d at 267-69 (knowledge of internal metrics inconsistent with public statements supports scienter and Section 20(a)).[6]

*Finally*, as detailed above, each Director Defendant was affiliated with Bain and/or Pfizer. ¶55. Bain required the assistance of the Director Defendants to facilitate its scheme through the orchestration of the October Offering and subsequent rushed sale of Cerevel to AbbVie to unlawfully profit more than $125 million. Facilitating Bain's scheme—or even "inaction" in approving the October Offering but failing to prevent Bain's blatant violation of the disclose-or-abstain rule—is exactly the type of "culpable participation" contemplated by the law. *Advance Auto Parts*, 2020 WL 599543, at *10.

The Director Defendants' related argument that it is illogical they would "depress Cerevel's stock price" misses the context of the situation. By temporarily omitting the AbbVie Merger negotiations so that Bain could increase their stock position, the Director Defendants knew that Bain and Pfizer (who each of the Director Defendants were loyal to) would then be motivated to quickly negotiate and close the Merger, which in the near term would dramatically increase the

---

[6] The Director Defendants cite *Advance Auto Parts*, 2020 WL 599543, at *10, but in that case the court found an allegation that the defendants "culpably participated in Defendants' fraud" was too conclusory, while noting the "Complaint does not allege that the [] Defendants controlled the drafting or publishing of the press release at issue, or that the [Defendants] review or signed them before publication." By contrast, here, the Complaint alleges that the Director Defendants approved the October Offering and ordered the issuance of the Proxy, the heart of the alleged wrongdoing in the Complaint.

price of Cerevel's stock, making the shares the Director Defendants held significantly more valuable. *In re Shanda Games Limited Sec. Litig.*, 128 F.4th 26, 52-53 (2d Cir. 2025) (finding allegations that conflicted corporate insiders with loyalties to both the target company and its acquiror were motivated to seek a low purchase price is adequate to allege scienter). Indeed, Centerview presented to the Director Defendants on September 27, 2023 that if Cerevel completed a follow-on equity offering its M&A value would be $53 per share. ¶72.

In short, Plaintiffs plead detailed, particularized facts showing culpable participation, including that the Director Defendants facilitated the October Offering and insider trading and that the Director Defendants knowingly ordered the issuance of a false and misleading Offering Materials and Proxy. ¶¶77, 196.

## VI.   CONCLUSION

For the reasons stated herein, the motion should be denied in its entirety.

Dated: December 17, 2025

Respectfully submitted,

**FARNAN LLP**

By: *Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Emails: bfarnan@farnanlaw.com
         mfarnan@farnanlaw.com

*Counsel for Lead Plaintiffs and the Class*

16

**ENTWISTLE & CAPPUCCI LLP**
Andrew J. Entwistle (*pro hac vice*)
Callie Crispin (*pro hac vice*)
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 710-5960
Emails:  aentwistle@entwistle-law.com
         ccrispin@entwistle-law.com

**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci (*pro hac vice*)
Robert N. Cappucci (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
Jessica A. Margulis (*pro hac vice*)
230 Park Avenue, 3rd Floor
New York, New York 10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272
Emails:  vcappucci@entwistle-law.com
         rcappucci@entwistle-law.com
         asher@entwistle-law.com
         jmargulis@entwistle-law.com

***Counsel for Lead Plaintiffs and the Class***

17

## Appendix A

### Summary Chart of Director Defendants' Alleged Wrongdoing

### I.    Section 20(a) Control Person Claim

To state a Section 20(a) claim, Plaintiffs must show (i) a primary securities law violation by the controlled entity, (ii) the Section 20(a) defendant's control, and (iii) the Section 20(a) defendant's culpable participation in the securities law violation. *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 731 (D. Del. 2014). However, "the 'overwhelming trend' in the Third Circuit is that culpable participation need not be pled to survive a motion to dismiss." *Strougo v. Mallinckrodt Pub. Ltd. Co.*, 2022 WL 17740482, at *11 (D.N.J. Dec. 16, 2022).

| Element | Facts Plead |
|---|---|
| Primary securities law violation by controlled entity | Cerevel violated Sections 10(b) and 14(a) of the Exchange Act. (Counts I and III) |
| Control | The Director Defendants had the ability to control and did control Cerevel through:<br><br>• Serving on Cerevel's Board of Directors. ¶¶32-35<br><br>• Approving the October Offering without the disclosure of the Merger discussions with AbbVie or preventing Bain and Perceptive's insider trading. ¶77<br><br>• Ordering the issuance of the misleading Proxy. ¶141<br><br>• Recommending in the Proxy that shareholders vote to approve the Merger with AbbVie. ¶106 |