## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION | Case No. 25-cv-417-GBW<br><br>**FILED UNDER SEAL** |

### ANSWERING BRIEF IN OPPOSITION TO DEFENDANT RON RENAUD'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT (D.I. 57)

Dated: December 17, 2025

Brian E. Farnan (Bar No.  4089)
Michael J. Farnan (Bar No.  5165)
**FARNAN LLP**
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel.: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Lead Plaintiffs and the Class*

[Additional counsel listed on signature block]

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II.    SUMMARY OF ARGUMENT ...................................................................................... 2

III.    STATEMENT OF FACTS ........................................................................................... 4

IV.    LEGAL STANDARD ................................................................................................. 7

V.    ARGUMENT ............................................................................................................ 8

    A.    The Complaint Pleads a Strong Inference of Scienter as to Renaud ...................... 8

        1.    Renaud's Contemporaneous Knowledge of the Nonpublic AbbVie Negotiations and AbbVie's Interest Establishes Scienter ........................... 8

        2.    Renaud's Dual Loyalties and Financial Stake Establish Motive and Opportunity ................................................................................................ 11

        3.    Defendant Renaud's Alternate Explanation for his Conduct Fails to Defeat the Complaint's Allegations ........................................................... 11

    B.    Plaintiffs Have Adequately Pled Control Person Liability Under Section 20(a).. 14

VI.    CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Belmont v. MB Inv. Partners*, *Inc.*,
    708 F.3d 470 (3d Cir. 2013)............................................................................................ 14

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
    270 F.3d 645 (8th Cir. 2001) ......................................................................................... 12

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004) ............................................................................................. 8

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ............................................................................................. 7

*Institutional Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ............................................................................... 2, 8, 9, 10

*Palladin Partners v. Gaon*,
    No. 05-CV-3305, 2006 WL 2460650 (D.N.J. Aug. 22, 2006) ......................................... 14

*Shaev v. Saper*,
    320 F.3d 373 (3d Cir. 2003) ............................................................................................. 7

*Stanley Black & Decker, Inc. v. Gulian*,
    70 F. Supp. 3d 719 (D. Del. 2014)................................................................................... 14

*Strougo v. Mallinckrodt Pub. Ltd. Co.*,
    No. 20-10100, 2022 WL 17740482 (D.N.J. Dec. 16, 2022)........................................ 9, 14

*Tellabs, Inc. v Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).......................................................................................... 8, 12, 13

*Zhengyu He v. China Zenix Auto Int'l Ltd.*,
    No. 2:18-15530, 2020 WL 3169506 (D.N.J. June 12, 2020)........................................... 14

**Statutes**

15 U.S.C. § 78u................................................................................................................ 8

## I.    NATURE AND STAGE OF THE PROCEEDINGS[1]

The case arises from misstatements and omissions in connection with Cerevel's offering of $500 million of stock in October 2023 (the "October Offering") and AbbVie's subsequent acquisition of the Company. Undisclosed to investors, the October Offering was orchestrated to allow Cerevel's inside shareholders Bain and Perceptive to acquire more than six million shares of Cerevel common stock at a deep discount while in possession of material nonpublic information regarding AbbVie's merger interest. These insiders unlawfully profited more than $140 million when AbbVie announced just 51 days later that it was acquiring Cerevel for nearly double the offering price.

The Complaint asserts violations of Sections 10(b), 14(a), 20A, and 20(a) of the Exchange Act against, variously, Cerevel, Cerevel's controlling shareholders Bain and Pfizer, inside shareholder Perceptive, Cerevel CEO Renaud, and certain members of Cerevel's Board:

| Defendant(s) | Summary of Claims |
|---|---|
| Cerevel (D.I. 46) | Cerevel is liable under Sections 10(b) and 14(a) for making misstatements and omitting material facts in various public statements from the October Offering through the Proxy regarding the timing of AbbVie's merger interest and the fairness of the Merger. |
| Bain, Gordon, Koppel (the "Bain Defendants") (D.I. 45) | Bain is liable under Section 20A for purchasing more than five million Cerevel shares while in possession of material, nonpublic information regarding AbbVie's merger interest. Bain, Cerevel's largest shareholder, is also liable under Section 20(a) as a control person of Cerevel and Renaud. Defendants Gordon and Koppel, senior executives at Bain, served as Cerevel Board members and are liable under Section 20(a) as control persons of Cerevel. |
| Perceptive, Giordano (D.I. 53) | Perceptive is liable under Section 20A for purchasing 876,808 Cerevel shares while in possession of material nonpublic information regarding AbbVie's merger interest. Defendant |

---

[1] Capitalized terms undefined herein shall have the same meaning as in the Consolidated Class Action Complaint ("Complaint") [D.I. 19]. Citations to "¶__" refer to paragraphs in the Complaint. All emphasis is added and internal citations omitted unless otherwise noted.

|  | Giordano, a Perceptive Managing Director, served as a Cerevel Board member and is liable under Section 20(a) as a control person of Cerevel. |
|---|---|
| Pfizer (D.I. 40) | Pfizer is liable as a control person under Section 20(a) of Cerevel because Pfizer and Bain at all times jointly controlled Cerevel. |
| Renaud (D.I. 57) | Renaud, who served both as Cerevel's CEO and a Senior Advisor at Bain during the Class Period, is liable under Section 10(b) for making misstatements and omitting facts regarding the October Offering and the timing of AbbVie's merger interest. Renaud is also liable under Section 20(a) as a control person of Cerevel. |
| Patrick, Baron, Varma, and McKernan (the "Director Defendants") (D.I. 55) | Each of the Director Defendants was a member of the Cerevel Board, had some affiliation with Bain and/or Pfizer, and are liable under Section 20(a) as control persons of Cerevel. |

In an apparent effort to induce the Court to look at the claims in the Complaint on a fractionalized (rather than holistic) basis as required by operative Third Circuit law,[2] Defendants made six separate motions to dismiss. This opposition addresses the motion filed by Ron Renaud, which raises many of the same arguments already rejected at the motion to dismiss stage in *SEIU Pension Plans Master Trust v. Bain Capital Investors, LLC*, No. 2024-1274-JTL (Del. Ch.). While this opposition focuses on the facts and arguments related to Renaud, Plaintiffs incorporate by reference herein each of the other opposition briefs.

## II.    SUMMARY OF ARGUMENT

1.    Defendant Renaud portrays himself as a distant bystander to the other Defendants' misconduct in this case. But the facts prove this is not even close to the truth. As Cerevel's CEO and a sitting director, and while simultaneously serving as a Senior Advisor to Bain, Renaud was at the center of the scheme that allowed Bain and its allies to exploit nonpublic information about Cerevel's merger discussions with AbbVie to make insider purchases in violation of Section 20A of the Exchange Act. There is no dispute that Defendant Renaud: (i) knew of AbbVie's "whole-

---

[2] *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009).

co" acquisition interest; (ii) discussed AbbVie's interest and Centerview's $53 per share valuation of the Company with the Cerevel Board; (iii) based on the Cerevel Board meeting, worked with Centerview to prepare talking points for responding to AbbVie; (iv) approved offering materials that he knew omitted the ongoing merger discussions; (v) did nothing to prevent Bain and Perceptive from trading with material nonpublic information; and (vi) as a director of Cerevel, ordered the issuance of the false and misleading Proxy statement.

2.      Renaud's challenges to the Complaint's allegations of his scienter—the only basis on which he independently seeks dismissal of the claims asserted against him—cannot possibly succeed in the face of the Complaint's detailed, contemporaneous facts establishing Renaud's actual knowledge of the wrongdoing, the most tried and true way to establish scienter. In addition to his actual knowledge, Renaud's scienter is also established by his financial motive and opportunity to assist Bain's scheme to conceal and profit from AbbVie's merger interest. Through Renaud's dual roles as CEO of Cerevel and as Senior Advisor at Bain, Renaud's approval of the October Offering and concealing of AbbVie's Merger interest facilitated Bain's illicit inside purchases and resulting $120 million profit. The scheme also personally benefitted Renaud, who knew that, after the October Offering, Bain would be motivated to quickly close a merger, which would in the near term drastically increase the value of Renaud's personal Cerevel shares and provide an opportunity for Renaud to be cashed out. Taken together, the Complaint's allegations give rise to a strong inference that Renaud acted with intent to deceive investors or, at minimum, with reckless disregard for the truth.

3.      Finally, Renaud is liable pursuant to Section 20(a) as a control person as Cerevel's CEO and a Board member who approved the October Offering, made statements during the Class

3

Period, negotiated and approved the Merger with AbbVie, and ordered the issuance of the Proxy. Accordingly, Renaud's Motion to Dismiss should be denied in its entirety.

## III.    STATEMENT OF FACTS

In May 2023, Bain installed its partner, Defendant Ron Renaud, as Cerevel's CEO and a member of its Board. ¶5. Renaud maintained a simultaneous advisory relationship with Bain while leading a public company over which Bain exercised controlling influence. ¶58. Renaud was at all times affiliated with Bain through the Class Period and incentivized to maximize Bain's profit from its investment in Cerevel. ¶120.

By September 2023, Cerevel's Board, including Renaud, knew that AbbVie had shifted from pursuing a Japanese regional partnership with Cerevel to an outright acquisition of the Company. ¶66. On September 27, 2023, Cerevel's Board, including Renaud, met with their financial advisor Centerview to discuss "potential strategy paths forward" and "M&A themes and trends." ¶69. At the meeting, Centerview advised that, in recent years, a "significant majority of M&A transactions have been initiated through partnership discussions," such as the AbbVie-Cerevel Japanese partnership discussions. ¶71. At the Board meeting, Centerview presented a "Illustrative M&A Scenario" that calculated if Cerevel completed a follow-on equity offering, Cerevel's implied M&A value would be $53 per share. ¶72.

Following that Board meeting, on September 29, 2023, Centerview emailed Renaud "talking points" for a follow up meeting with AbbVie, and Centerview recommended for Renaud to acknowledge that he was "Flattered by interest in Cerevel" and had "[d]iscussed your communication of a whole co proposal with the board." ¶¶7, 74. As Vice Chancellor Laster concluded in the related Chancery Court action, "***That's more evidence that the proposal was***

4

*inbound*." Chancery Tr. 10:2-8 (emphasis added).[3] Significantly, that Cerevel was planning to have Renaud—and not the Special Committee (which was formed to negotiate partnerships for emraclidine)—respond to AbbVie indicates that Cerevel fully understood that AbbVie was focused on a whole-company acquisition, not just a regional partnership. ¶74.

Despite the ongoing Merger negotiations, on October 11, 2023, Cerevel issued a Prospectus and Press Release (both filed with the SEC) announcing a $500 million public offering of Cerevel stock, with no mention of the ongoing AbbVie merger discussions. ¶¶80, 121. On October 16, 2023, Bain and Perceptive purchased over six million shares at $22.81 per share. ¶9.

The day after the October Offering closed, on October 17, 2023, AbbVie's chief business and strategy officer emailed Paul Burgess, Cerevel's Chief Business Development & Strategic Operations Officer, "following up" regarding their previous discussions. ¶92. Burgess forwarded the email to Centerview and Renaud, and Centerview advised Burgess and Renaud that, for their discussion with AbbVie regarding a potential deal, they recommend the "script mostly stays the same" as Centerview had advised in the September 29th "talking points" email. ¶92. The Chancery Court's reaction to this correspondence—from "*literally the day after the offering closed*"—was, "***That is obviously consistent with the idea that everyone knew an offer was coming***." Chancery Tr. 12:23-13:5 (emphasis added).

Just two days later, on October 19, 2023, AbbVie sent a letter to Renaud offering to acquire Cerevel for $35 per share in cash. ¶93. As the Chancery Court noted, "AbbVie framed the letter as

---

[3] Citations herein to "Chancery Tr. __" are to the October 2, 2025 Telephonic Rulings of the Court on Defendants' Motion to Dismiss in *SEIU Pension Plans Master Trust v. Bain Capital Investors, LLC*, No. 2024-1274-JTL (Del. Ch.) which is attached as Exhibit A to the Declaration of Michael J. Farnan in Support of Plaintiffs' Oppositions to Defendants' Motions to Dismiss.

following up on previous conversations regarding AbbVie's interest in [the company]." Chancery Tr. 13:6-10. The $35 per share offer was a premium of 53% to the October Offering price. ¶93.

Following the October Offering, Renaud continued to hide AbbVie's interest and the real reason for the October Offering. During Cerevel's November 1, 2023 earnings call, Renaud responded to a question regarding "what drove the decision to proactively raise equity capital ahead of your multiple clinical data events in 2024," he responded that "on the capital raise . . . I think largely, this was one thing that we have been talking to a number of investors about over the last few months. And there was significant amount of interest in doing the raise from outside investors. And so we thought it was a good time to do that so that we could really be focused on execution in 2024." ¶95. Renaud wholly omitted that the October Offering was also conducted to provide Bain and Perceptive the opportunity to purchase shares and to remove the "finance overhang," increasing Cerevel's value for a potential whole-company transaction and leverage in ongoing Merger negotiations. ¶95.

While continuing to conceal from investors the interest from AbbVie, Renaud and Cerevel internally continued to pursue the sale. On November 6, 2023, Renaud met with Richard Gonzalez, chairman of the AbbVie Board and AbbVie's CEO, regarding potential next steps following AbbVie's October 19, 2023 proposal. ¶¶95-96. On November 10, 2023, Renaud again met with representatives from AbbVie to discuss the then-current $40 per share proposal. ¶99. On November 17, 2023, AbbVie increased its offer to $41.50 per share, which Renaud immediately advised was insufficient. ¶101. AbbVie then indicated it would be willing to increase its offer to $45 per share, subject to the completion of due diligence and being able to announce the transaction prior to the Christmas holiday. ¶101. On December 6, 2023, AbbVie and Cerevel issued a joint press release

6

announcing that the companies had reached an agreement where AbbVie would acquire Cerevel for $45 per share. ¶¶102-103.

On January 18, 2024, Cerevel issued the Definitive Proxy Statement on Schedule 14A "By Order of the Board of Directors"—including Renaud, who signed the cover letter accompanying the Proxy—in which the Board recommended voting "FOR" the adoption of the Merger agreement. ¶141. Renaud signed and approved for dissemination the misleading Proxy despite having access to and understanding the true timing of AbbVie's interest in a whole-company acquisition (*i.e.*, before the October Offering) and despite having received and reviewed the Centerview valuation analyses that were excluded from the Proxy. ¶196.

Despite only serving as Cerevel's CEO from June 2023 until August 1, 2024, Renaud received nearly $74 million in compensation from Cerevel and the sale of the Company, consisting of approximately $1.8 million in cash, $47.8 million in equity, $43,000 in benefits, and $24.3 million in tax reimbursement. ¶120. Renaud was also at all times affiliated with Bain and incentivized to maximize Bain's profit from its investment in Cerevel. ¶120.

In short, Renaud acted to advance Bain's interests at the expense of public investors, including concealing material facts to enable Bain's insider trades and to secure a swift sale that delivered him personally millions in accelerated equity compensation. ¶120.

## IV.    LEGAL STANDARD

In assessing the sufficiency of the Complaint under Rule 12(b)(6), courts must accept all well-pled allegations and draw all inferences in Plaintiffs' favor. *See Shaev v. Saper*, 320 F.3d 373, 377-78 (3d Cir. 2003). A court may not dismiss the complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215-16 (3d Cir. 2002).

## V.    ARGUMENT

To state a claim for violation of Section 10(b) of the Exchange Act and Rule 10b-5(b), a plaintiff must plead "(1) a material misrepresentation or omission by the defendant . . . ; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Wilmington Tr. Sec. Litig.*, 29 F. Supp. 3d 432, 444 (D. Del. 2014). Renaud's motion only challenges the scienter element.

### A.    The Complaint Pleads a Strong Inference of Scienter as to Renaud[4]

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Third Circuit defines this inquiry as "a comparative evaluation" in which the inference of scienter must be "at least as compelling as any opposing inference." *Avaya*, 564 F.3d at 267 (quoting *Tellabs, Inc. v Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). Under *Tellabs* and the PSLRA, the Court must consider whether the allegations, viewed collectively, give rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 324. Plaintiffs easily meet the standard. When the allegations are considered collectively, the inference that Renaud acted with scienter is overwhelming.

#### 1.    Renaud's Contemporaneous Knowledge of the Nonpublic AbbVie Negotiations and AbbVie's Interest Establishes Scienter

Renaud's scienter is established through his actual knowledge of the mispresented and omitted facts. *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004) ("In a non-disclosure situation, any required element of scienter is satisfied where . . . the defendant had actual knowledge of the material information."); *Strougo v. Mallinckrodt Pub. Ltd. Co.*, 2022 WL

---

[4] Attached as Appendix A is a chart summarizing the allegations and facts relevant for each claim.

17740482, at *7 (D.N.J. Dec. 16, 2022) (scienter where defendants had "knowledge of facts…contradicting their public statements"). Here, the Complaint includes direct, documentary evidence of Renaud's contemporaneous awareness of AbbVie's imminent acquisition offer. Indeed, Renaud personally received Centerview's September 29, 2023 email outlining "talking points," acknowledging his discussion of AbbVie's "whole co proposal with the board." ¶¶7, 74. Days later, as CEO and a Cerevel Board member, he authorized the October Offering that omitted any reference to AbbVie's interest and forthcoming term sheet. ¶¶7-10. Under *Avaya*, such allegations—where a defendant was in possession of facts at odds with public statements—are quintessential indicia of scienter. 564 F.3d at 242.

The Complaint details contemporaneous communications and internal documents establishing that by late September 2023, Renaud personally knew AbbVie had indicated interest in a "whole co" acquisition and that Cerevel was "await[ing a] term sheet." ¶¶7, 10. Cerevel's financial advisor, Centerview—who had just days earlier presented to the Board a presentation valuating Cerevel at $53 per share in a hypothetical M&A transaction—emailed Renaud proposed "talking points" to acknowledge his discussion of AbbVie's proposal with the Board. ¶72. Despite this, Cerevel issued the October 11, 2023 Preliminary Prospectus, which falsely represented that the offering proceeds would merely "extend the cash runway into 2026" and omitted any mention of AbbVie's acquisition interest. ¶¶7, 10, 81. Such contemporaneous contradictions between known facts and public disclosures are quintessential evidence of scienter. *See Avaya*, 564 F.3d at 268 (scienter inferred where defendant possessed knowledge contradicting public statements). Renaud also approved the October Offering despite his knowledge that the $22.81 per share price was grossly inadequate given, among other things, that the September 2023 Centerview

presentation valued Cerevel at $53 per share and the progressing AbbVie Merger discussions would cause Cerevel's stock price to skyrocket. ¶72.

Renaud continued to hide AbbVie's interest and the real reason for the October Offering during Cerevel's November 1, 2023 earnings call. When asked "what drove the decision to proactively raise equity capital ahead of your multiple clinical data events in 2024," Renaud responded, "on the capital raise . . . I think largely, this was one thing that we have been talking to a number of investors about over the last few months. And there was significant amount of interest in doing the raise from outside investors. And so we thought it was a good time to do that so that we could really be focused on execution in 2024." ¶¶95, 136.

In other words, Renaud was not only aware of facts at odds with public statements, but he flatly contradicted the information he had in response to direct and pointed questions from analysts regarding the purpose of the October Offering. The facts are similar to the situation the *Avaya* court found supported scienter:

> But it is another thing when a defendant chief financial officer is specifically asked, directly and repeatedly, whether the company's pricing has held steady despite the competitiveness of the market… Shareholders' central allegation is that Avaya engaged in massive discounting on an unusually large scale during the class period, and this McGuire flatly denied in statements evincing certitude… focused questions do mark an important distinction between this case and those in which defendants win dismissal on a showing that defendants were most likely simply ignorant of the facts that made their statements false.

564 F.3d at 270.

There is no real dispute that Renaud had actual knowledge of the omitted facts and that those facts were omitted when he approved the October Offering. This alone is enough to plead scienter.

### 2. Renaud's Dual Loyalties and Financial Stake Establish Motive and Opportunity

Renaud incorrectly argues that Plaintiffs rely solely on conclusory allegations of motive. The Complaint alleges detailed contemporaneous facts showing that Renaud knew AbbVie was pursuing an imminent acquisition and that this material information was omitted from public filings and investor communications in order to facilitate Bain—an entity to which he was a Senior Advisor—to purchase millions of shares at a deep discount.

Renaud was a Bain Partner immediately prior to becoming Cerevel's CEO and remained a Senior Advisor at Bain at all times during the Class Period. ¶¶29, 120. In other words, Renaud was Bain's inside man at Cerevel. Renaud was clearly conflicted because he remained financially and professionally tied to Bain (which installed Renaud precisely to further its interests in maximizing its control and profits) while at the same time he owed fiduciary obligations to Cerevel's public shareholders as the Company's CEO and a Board member. Renaud's position as both Cerevel CEO and Bain Senior Advisor placed him squarely in the center of Bain's trading in the October Offering, an offering that he approved as a member of the Cerevel Board.

Moreover, Renaud's compensation—approximately $74 million—*including $47.8 million in accelerated equity*—gave him a direct financial stake in consummating a merger. ¶120. As alleged in the Complaint, based on their combined control of the majority of Cerevel's voting power and domination of the Cerevel Board, Bain and Pfizer alone could determine whether Cerevel proceeded with a merger. ¶116. Accordingly, in order to recognize the $47.8 million in accelerated equity, Renaud's financial interests were also tied to Bain's and Pfizer's interests.

### 3. Defendant Renaud's Alternate Explanation for his Conduct Fails to Defeat the Complaint's Allegations

Renaud argues that it is implausible that he would engage in deceit that diluted his personal holdings. But the Complaint alleges that Renaud's own interests were at all times aligned with

11

Bain's, and the fraud benefited Bain by allowing Bain to purchase more than five million shares at a deep discount that generated a profit of more than $120 million. ¶181. The inference that, as a Bain Senior Advisor, Renaud acted in Bain's interest is far more cogent than any self-serving explanation he offers. *See Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 652 (8th Cir. 2001) (rejecting "irrational" motive argument where insider acted to aid controlling shareholders).

The fact that Renaud personally owned Cerevel shares does not undermine the inference of Renaud's scienter because Renaud knew that the October Offering would have a positive impact on Cerevel's overall valuation and, critically, that after the October Offering Bain would be motivated to consummate a transaction quickly, likely drastically increasing the value of his personal shares. ¶¶115, 118-119. In other words, Renaud knew that, by temporarily depressing the price of his Cerevel shares to facilitate Bain's purchases, in the not-too-distant future, his Cerevel shares would be significantly more valuable and that the anticipated Merger would enable him to realize that value. Indeed, Centerview had presented to the Cerevel Board (including Renaud) on September 27, 2023 that, after a similar follow-on equity offering, Cerevel's acquisition value would be $53 per share. ¶72.

When viewed holistically, Plaintiffs' allegations are at least as compelling as any opposing inference one could draw. *Tellabs*, 551 U.S. at 324. The competing inference proposed by Renaud—that he innocently overlooked AbbVie's acquisition efforts while approving the October Offering—is implausible. It would require the Court to believe that the CEO and Board member of a biotech firm in active negotiations with a Fortune 100 acquirer was unaware of the single most material event affecting his Company's value. By contrast, the inference that Renaud acted knowingly, with Bain's interests foremost in mind, is consistent with his conduct, his incentives,

12

and the documentary record. When the allegations are viewed collectively, as the Supreme Court requires, the inference of scienter is overwhelming. *Tellabs*, 551 U.S. at 323-24.

In denying Renaud's motion to dismiss the Chancery Plaintiffs' claim for breach of fiduciary duty against Renaud in his capacity as an officer of the company (Count III), the Chancery Court found the following:

> The other big part of the case is the disclosure claims. As you probably gathered from my discussion of the facts, ***I think that the complaint adequately states disclosure claims against the director defendants and against Renaud***. Directors have a fiduciary duty to disclose all material information that's within their control when they seek stockholder action. They have to disclose that information fully and fairly. Once they travel down the road of partial disclosure, they have to disclose all of the information. They can't provide a misleading partial disclosure that omits other information, even if it wouldn't be independently material, that is nevertheless necessary to make the information that was disclosed not materially misleading.
>
> Plaintiff in this setting is going to have to establish that the disclosures were made culpably -- ***in other words, with scienter*** -- to be able to recover damages. ***I think it's reasonably conceivable that the folks who signed off on the disclosure here knew that the September disclosures were wrong.*** It's reasonably conceivable that the omission was material. And by the omission, I mean a candid discussion about AbbVie's approach. It's reasonably conceivable that the omission would have been material because its inclusion would have suggested that the fast sale process was an effort to capture value through the October offering. It's inferable that this disclosure would have revealed a conflict about the defendants and their decision to approve the merger and recommend it to stockholders, which is something that stockholders should have known.
>
> I don't buy the defendants' arguments that the disclosures that were given were such that a reasonable stockholder should have inferred from the language that an approach was made. I think that requires far too much reading between the lines. ***And at a minimum, at the pleading stage, it's reasonably conceivable that a material omission was made and that it was done knowingly***.

Chancery Tr. 31:8-33:1 (emphasis added).

There is simply no reason for the Court to reach a different result here.

13

**B.      Plaintiffs Have Adequately Pled Control Person Liability Under Section 20(a)**

Renaud is also liable under Section 20(a) for controlling Cerevel. To prove a Section 20(a) claim, Plaintiffs must show (i) a primary securities law violation by the controlled entity, (ii) the Section 20(a) defendant's control, and (iii) the Section 20(a) defendant's culpable participation in the securities law violation. *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 731 (D. Del. 2014).

Not only was Renaud Cerevel's CEO and member of its Board but he also signed the Proxy, spoke on earnings calls, approved the October Offering, and personally negotiated the Merger with AbbVie; there is no question that Renaud is a control person of Cerevel. ¶¶7, 62-63, 77, 95, 136, 196; *see, e.g.*, *Zhengyu He v. China Zenix Auto Int'l Ltd*., 2020 WL 3169506 (D.N.J. June 12, 2020) (individuals with "control over the Company's SEC filings ... easily place[ ] them within the definition of control persons"); *Palladin Partners v. Gaon*, 2006 WL 2460650, at *16 (D.N.J. Aug. 22, 2006) (finding control well-pled where plaintiffs alleged that defendants served as directors and signed the SEC filings at issue in the case).

While culpable participation is a required element for a Section 20(a) claim for purposes of summary judgment, *Belmont v. MB Investment Partners*, *Inc.*, 708 F.3d 470, 484 n.20 (3d Cir. 2013), "the 'overwhelming trend' in the Third Circuit is that culpable participation need not be pled to survive a motion to dismiss." *Strougo*, 2022 WL 17740482, at *11. Accordingly, the Court does not need to evaluate Renaud's culpable participation to rule on Renaud's Motion to Dismiss. However, to the extent the Court does reach culpable participation, Plaintiffs submit that the allegations of scienter discussed above also easily satisfies the culpable participation requirement.

## VI.      <u>CONCLUSION</u>

Renaud's Motion should be denied in its entirety.

Dated: December 17, 2025

Respectfully submitted,

**FARNAN LLP**

By: *Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Emails:  bfarnan@farnanlaw.com
        mfarnan@farnanlaw.com

*Counsel for Lead Plaintiffs and the Class*

**ENTWISTLE & CAPPUCCI LLP**
Andrew J. Entwistle (*pro hac vice*)
Callie Crispin (*pro hac vice*)
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 710-5960
Emails:  aentwistle@entwistle-law.com
        ccrispin@entwistle-law.com

**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci (*pro hac vice*)
Robert N. Cappucci (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
Jessica A. Margulis (*pro hac vice*)
230 Park Avenue, 3rd Floor
New York, New York 10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272
Emails:  vcappucci@entwistle-law.com
        rcappucci@entwistle-law.com
        asher@entwistle-law.com
        jmargulis@entwistle-law.com

*Counsel for Lead Plaintiffs and the Class*

15

**Appendix A**

**Summary Chart of Ron Renaud Alleged Wrongdoing**

I.       **Section 10(b) Claim Against Renaud**

To state a claim for violation of Section 10(b) of the Exchange Act and Rule 10b-5(b), a plaintiff must plead "(1) a material misrepresentation or omission by the defendant . . . ; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Wilmington Tr. Sec. Litig.*, 29 F. Supp. 3d 432, 444 (D. Del. 2014).

| Element | Facts Plead |
| --- | --- |
| Misstatements or omissions | Plaintiffs allege Renaud made false and misleading statements and/or omitted material facts regarding (i) the true timing and extent of AbbVie's merger interest; (ii) and the real purpose of the October Offering; and/or (iii) the financial analyses presented to the Board by Centerview, in the following documents: <br><br> • October 11, 2023 Form 8-K and Press Release. ¶121 (omission of AbbVie merger discussions) <br><br> • October 11, 2023 Preliminary Prospectus Supplement. ¶124 (omission of AbbVie merger discussions and misrepresentation of real reason for the October Offering) <br><br> • October 12, 2023 Form 8-K and Press Release. ¶¶127-128 (omission of AbbVie merger discussions and misrepresentation of real reason for the October Offering) <br><br> • October 12, 2023 Prospectus Supplement. ¶¶132-133 (omission of AbbVie merger discussions and misrepresentation of real reason for the October Offering) <br><br> • November 1, 2023 Earnings Call. ¶136. (omission of AbbVie merger discussions and misrepresentation of real reason for the October Offering) <br><br> • December 6, 2023 Form 8-K ¶139 (continued to omit that AbbVie was interested prior to the October Offering) <br><br> • January 18, 2023 Proxy Statement. ¶¶142-147 (misrepresentation of timing of AbbVie's interest, the robustness of the sales process, and omission of critical Centerview analyses). |

| Element | Facts Plead |
|---|---|
| Materiality | The omission of AbbVie's merger discussions prior to the October Offering were material because: <br><br> • AbbVie executed a confidentiality agreement to commence due diligence in March 2023. ¶57 <br><br> • A Cerevel tracker circulated September 23, 2023, indicated AbbVie had "indicated interest in whole co" and Cerevel was "awaiting term sheet." ¶124 <br><br> • On September 27, 2023, Cerevel's Board met with Centerview to discuss M&A related issues and recused Pfizer's designees because of a potential conflict. ¶71 <br><br> • On September 29, 2023, Centerview sent Renaud "talking points" for a conversation with AbbVie's executive vice president, which confirmed Renaud shared AbbVie's interest with the Board. ¶74 <br><br> • On October 5, 2023, Cerevel began putting together a whole company data room. ¶75 <br><br> • On October 17, 2023, AbbVie emailed Cerevel "following up." AbbVie sent a formal offer to acquire Cerevel just three days after the October Offering, and the deal was announced just 51 days after the October Offering. ¶¶92, 93, 103. <br><br> Even after the Merger was announced, the misrepresentations in the Proxy were material because: <br><br> • The Proxy hid from investors that Bain and Perceptive's interests were not aligned with public shareholders because of their baked-in profits from the October Offering if a Merger closed. ¶110 <br><br> • They concealed from investors the extent of AbbVie's timing advantage, creating a misleading impression of the robustness of the outreach to other bidders. ¶153 <br><br> • Centerview's financial analyses omitted from the Proxy indicated Cerevel was more valuable than the deal price. ¶¶148, 154 |

| Element | Facts Plead |
|---|---|
| Scienter | Plaintiffs plead Renaud's scienter through contemporaneous actual knowledge and motive and opportunity: <br><br> • Renaud acted with scienter because he had actual knowledge of the misrepresented and omitted facts. e.g., ¶76 <br><br> • Renaud also had a financial motive as a Senior Advisor at Bain to facilitate Bain's inside purchases. ¶120 <br><br> • Personally, Renaud benefited because after the October Offering Bain pushed through the AbbVie merger which allowed Renaud to cash-out his equity at a large premium. ¶120 |
| In connection with the purchase or sale of a security | • The Fraud Claim Class that brings the Section 10(b) claims "sold or otherwise disposed of the publicly traded common stock during the period from October 11, 2023 through August 1, 2024, inclusive." ¶156 |
| Reliance | • The market for Cerevel's common stock was efficient at all times during the Class Period. ¶¶163-167 <br><br> • Lead Plaintiffs and other members of the Class sold or otherwise disposed of Cervel stock relying on the integrity of the market price of Cerevel's common stock and market information relating to Cerevel. ¶¶163, 176 |
| Economic Loss | • During the Class Period Cerevel's stock traded at artificially deflated prices caused by the material misrepresentations and/or omissions. ¶¶163-164 <br><br> • The Fraud Claim Class suffered economic damages by being induced to sell shares at such artificially deflated prices. ¶¶164, 177-178 |
| Loss Causation | • The price of Cerevel common stock significantly increased when Defendants' misrepresentations and omissions were revealed to the market. ¶152 <br><br> • On December 6, 2023, the misrepresentation and omissions were partially corrected when AbbVie and Cerevel jointly announced the proposed transaction at $45 per share. ¶153 |

| Element | Facts Plead |
|---|---|
|  | • The full truth was not disclosed until after the Merger when Cerevel shares no longer publicly traded. However, had investors known the full truth prior to the Merger they would not have been induced to sell at deflated prices and could have secured fair value of their shares through appraisal. ¶153 |

## II.    Section 20(a) Claim Against Renaud

To prove a Section 20(a) claim, Plaintiffs must show (i) a primary securities law violation by the controlled entity, (ii) the Section 20(a) defendant's control, and (iii) the Section 20(a) defendant's culpable participation in the securities law violation. *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 731 (D. Del. 2014). However, "the 'overwhelming trend' in the Third Circuit is that culpable participation need not be pled to survive a motion to dismiss." *Strougo v. Mallinckrodt Pub. Ltd. Co.*, 2022 WL 17740482, at *11 (D.N.J. Dec. 16, 2022).

| Element | Facts Plead |
|---|---|
| Primary securities law violation by controlled entity | Cerevel violated Section 10(b) and 14(a) of the Exchange Act. (Counts I and III) |
| Control | Renaud controlled Cerevel through: <br><br> • Serving as its CEO, its highest-ranking officer and a member of the Cerevel Board. ¶¶5, 29 <br><br> • Approving the October Offering. ¶77 <br><br> • Speaking on Cerevel earnings conference calls. ¶136 <br><br> • Personally negotiating the merger with AbbVie. ¶¶92-105 <br><br> • Ordering the issuance of the Proxy. ¶141 |

A-4