# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION** | C.A. No. 25-cv-417-GBW |

## CEREVEL THERAPEUTICS HOLDINGS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

RICHARDS LAYTON & FINGER
Robert L. Burns (#5314)
Alexandra M. Ewing (#6407)
One Rodney Square
920 North King Street
Wilmington, DE 19801
302.651.7618
burns@rlf.com
ewing@rlf.com

Of Counsel:

HUESTON HENNIGAN LLP
John C. Hueston, CA SBN 164921
jhueston@hueston.com
Moez M. Kaba, CA SBN 257456
mkaba@hueston.com
Thomas A. Zaccaro, CA SBN 183241
tzaccaro@hueston.com
523 West 6th Street, Ste. 400
Los Angeles, CA 90014
213.788.4340

Hagan Scotten, NY SBN 4909719
hscotten@hueston.com
1 Little W 12th Street
New York, NY 10014
646.930.4046

Attorneys for Defendant
Cerevel Therapeutics Holdings, Inc.

Dated:  January 23, 2026

## TABLE OF AUTHORITIES

**Page(s)**

I.    Introduction ............................................................................................................... 1

II.   Argument .................................................................................................................. 2

    A.    Plaintiffs Fail to Plead a Section 10(b) Claim as to Cerevel .................................. 2

        1.    Plaintiffs Fail to Plead Scienter as to Cerevel ............................................ 2

        2.    Plaintiffs Fail to Plead a Duty to Disclose .................................................. 5

        3.    Plaintiffs Fail to Plead Materiality .............................................................. 6

        4.    Loss Causation .......................................................................................... 9

    B.    Plaintiffs' Section 14(a) Claim Fails for the Same Reasons ................................... 9

III.  Conclusion .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
464 F.3d 338 (2d Cir. 2006)........................................................................................4

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)......................................................................................................7

*Blanchard v. EdgeMark Fin. Corp.*,
1999 WL 59994 (N.D. Ill. Feb. 3, 1999) ...................................................................5

*Cambium Ltd. v. Trilantic Cap. Partners III L.P.*,
36 A.3d 348 (Del. 2012) ..............................................................................................7

*In re Cambrex Corp. Sec. Litig.*,
2005 WL 2840336 (D.N.J. Oct. 27, 2005).................................................................2

*Carmignac Gestion, S.A. v. Perrigo Co. PLC*,
2019 WL 3451523 (D.N.J. July 31, 2019).................................................................2

*Castellano v. Young & Rubicam, Inc.*,
257 F.3d 171 (2d Cir. 2001).........................................................................................6

*Chiarella v. United States*,
445 U.S. 222 (1980).....................................................................................................5

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*,
908 F.3d 872 (3d Cir. 2018).....................................................................................2, 10

*Dower v. Mosser Indus., Inc.*,
648 F.2d 183 (3d Cir. 1981).........................................................................................9

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004).........................................................................................2

*Handal v. Innovative Indus. Props., Inc.*,
157 F.4th 279 (3d Cir. 2025) ...................................................................................3, 4

*Hurtado v. Gramercy Prop. Tr.*,
425 F. Supp. 3d 496 (D. Md. 2019)............................................................................9

*Healey v. Catalyst Recovery of Pennsylvania, Inc.*,
616 F.2d 641 (3d Cir. 1980).........................................................................................9

*In re Focus Fin. Partners*,
2025 WL 961488 (D. Del. Mar. 31, 2025) ..................................................................................3

*In re Gen. Motors Class E Stock Buyout Sec. Litig.*,
694 F. Supp. 1119 (D. Del. 1988)..............................................................................................5

*In re Hertz Glob. Holdings Inc.*,
905 F.3d 106 (3d Cir. 2018)......................................................................................................3

*In re KnowBe4, Inc. Sec. Litig.*,
2025 WL 3718352 (S.D. Fla. Dec. 23, 2025) ......................................................................4, 10

*In re Robbins & Myers, Inc.*,
969 F. Supp. 2d 850 (S.D. Ohio 2013) ...................................................................................10

*Jackvony v. RIHT Fin. Corp.*,
873 F.2d 411 (1st Cir. 1989)..................................................................................................1, 8

*Lane v. Page*,
581 F. Supp. 2d 1094 (D.N.M. 2008) .....................................................................................10

*Lane v. Page*,
649 F. Supp. 2d 1256 (D.N.M. 2009) .....................................................................................10

*McCormick v. Fund Am. Companies, Inc.*,
26 F.3d 869 (9th Cir. 1994) ......................................................................................................6

*Melcher v. Fried*,
2018 WL 6326334 (S.D. Cal. Dec. 4, 2018).............................................................................8

*Merritt v. Colonial Foods, Inc.*
499 F. Supp. 910 (D. Del. 1980)...............................................................................................9

*Mill Bridge V, Inc. v. Benton*,
496 F. App'x 170 (3d Cir. 2012) ...............................................................................................7

*Prime Victor Int'l Ltd. v. Simulacra Corp.*,
682 F. Supp. 3d 428 (D. Del. 2023).........................................................................................7

*Rahman v. Kid Brands, Inc.*,
736 F.3d 237 (3d Cir. 2013)...................................................................................................1, 2

*Redus-Tarchis v. New York Life Inv. Mgmt. LLC*,
2015 WL 6525894 (D.N.J. Oct. 28, 2015)................................................................................4

*Ret. Sys. v. Horizon Lines, Inc.*,
713 F. Supp. 2d 378 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011) ..........................2

*Rich v. Shrader*,
   2010 WL 3717373 (S.D. Cal. Sept. 17, 2010) ...........................................................................7

*Rizzo v. MacManus Grp., Inc.*,
   158 F. Supp. 2d 297 (S.D.N.Y. 2001) ........................................................................................8

*Rothberg v. Rosenbloom*,
   771 F.2d 818 (Cir. 1985) ............................................................................................................8

*S.E.C. v. Geon Indus., Inc.*,
   531 F.2d 39 (2d Cir. 1976) .........................................................................................................5

*S.E.C. v. Wyly*,
   788 F. Supp. 2d 92 (S.D.N.Y. 2011) ..........................................................................................8

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
   351 F. Supp. 3d 874 (E.D. Pa. 2018) .........................................................................................2

*In re Shanda Games*,
   128 F.4th 26, 52-53 (2d Cir. 2025) .........................................................................................4, 9

*Shaw v. Digital Equip. Corp.*,
   82 F.3d 1194 (1st Cir. 1996) ......................................................................................................6

*Taylor v. First Union Corp. of S.C.*,
   857 F.2d 240 (4th Cir. 1988) .....................................................................................................8

*Techniek v. Verizon Commc'ns, Inc.*,
   775 F. Supp. 3d 826 (D.N.J. 2025) ............................................................................................4

*Vladimir v. Bioenvision Inc.*,
   606 F. Supp. 2d 473 (S.D.N.Y. 2009) ........................................................................................5

*Zhengyu He v. China Zenix Auto Int'l Ltd.*,
   2020 WL 3169506 (D.N.J. June 12, 2020) .................................................................................2

## I.    INTRODUCTION

Plaintiffs' opposition confirms that their claims rest on an implausible narrative that collapses under the PSLRA's pleading standards. Plaintiffs begin with the supposition that Cerevel's former CEO, Ron Renaud, acted under Bain's direction and against Cerevel's interests in the October Offering, and then pile on speculation that a merger—then uncertain—would inevitably follow. None of those assumptions is supported by particularized allegations, and none comes close to raising the "strong and cogent" inference of fraud the PSLRA requires.

Plaintiffs' theory of scienter is at best, speculative, and at worst, incoherent. Plaintiffs contend that Cerevel's knowledge of AbbVie's preliminary outreach is sufficient to establish scienter. But knowledge of undisclosed information is not scienter, which requires "intent to deceive, manipulate, or defraud." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 (3d Cir. 2013) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)). Plaintiffs offer the conclusory assertion that Renaud was controlled by and acted under the direction of Bain. But they identify no facts making that plausible: no personal benefit, no conflicted transaction, no communications reflecting improper influence, and no conduct suggesting bad faith. And even if Plaintiffs had plausibly alleged Renaud's scienter (they have not), their own allegations would foreclose imputing that scienter to Cerevel under the adverse-interest exception. Plaintiffs do not allege "dual loyalties"; they allege that Renaud acted exclusively for Bain to the detriment of Cerevel, suppressing information so Bain could purchase shares from Cerevel at a discount.

Nor do Plaintiffs identify any duty requiring Cerevel to disclose confidential merger discussions: Cerevel did not trade in its own stock, made no statements placing mergers "in play," and was under no statutory disclosure obligation. Plaintiffs' theory would require public companies to disclose every tentative overture they receive, no matter how preliminary. That is not the law. *Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411, 415 (1st Cir. 1989) (no duty to disclose "tentative feelers"). Plaintiffs' theory thus attempts to transform ordinary corporate discretion, routine financing, and speculative business discussions into securities fraud—exactly the type of

- 1 -

hindsight pleading the PSLRA was enacted to prevent. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 883 (3d Cir. 2018) ("Hindsight . . . is not a cause of action.").

Plaintiffs' failure to plead loss causation is equally fatal. The forfeiture of appraisal rights, without more, does not constitute economic loss; Plaintiffs must allege facts plausibly showing that an appraisal would have produced a higher value than the merger consideration. They have not. Plaintiffs identify no flawed financial models, no suppressed valuations, no alternative offers, and no facts suggesting that any buyer would have paid more than AbbVie's $45-per-share price. Because Plaintiffs fail to plead scienter, duty, materiality, and loss causation, their Section 10(b) and Section 14(a) claims against Cerevel fail as a matter of law and should be dismissed.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Plead a Section 10(b) Claim as to Cerevel

#### 1.    Plaintiffs Fail to Plead Scienter as to Cerevel

Plaintiffs repeatedly conflate Renaud and the Board's "knowledge of AbbVie's interest" with scienter. Opp. 12. But knowledge of undisclosed facts alone cannot establish scienter; defendants must have had an "*intent to deceive.*" *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 395 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011); *see also Rahman*, 736 F.3d at 242 ("Scienter" means an "intent to deceive, manipulate, or defraud.").

Plaintiffs' cases confirm that scienter requires more than mere "knowledge of the allegedly omitted facts." Opp. 13; *see Zhengyu He v. China Zenix Auto Int'l Ltd.*, 2020 WL 3169506, at *10 (D.N.J. June 12, 2020) (requiring "conscious wrongdoing"); *Carmignac Gestion, S.A. v. Perrigo Co. PLC*, 2019 WL 3451523, at *13 (D.N.J. July 31, 2019) (requiring "intentional fraud," "other deliberate illegal behavior," or "extreme departure from the standards of ordinary care"); *In re Cambrex Corp. Sec. Litig.*, 2005 WL 2840336, at *13 (D.N.J. Oct. 27, 2005) (requiring knowledge that there was "no reasonable basis" for the alleged statements); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 905 (E.D. Pa. 2018) (requiring awareness of both the statement's materiality and the nondisclosure would mislead investors); *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004) (requiring "knowledge of *the falsity* of their

statements" (emphasis added)). Indeed, the Third Circuit has expressly rejected the overbroad definition of scienter that Plaintiffs advance. *See Handal v. Innovative Indus. Props., Inc.*, 157 F.4th 279, 302 (3d Cir. 2025) ("[G]eneralized imputations of knowledge do not suffice, regardless of a defendant's position within the company." (citation modified)).

That AbbVie had informed Cerevel it was "interested in a whole co." acquisition or that Cerevel "start[ed] to pull together whole co data room" before the October Offering do not render *any* of Cerevel's later statements false or misleading. *See* Cerevel Mot. to Dismiss ("Mot.") 4. But even assuming that these details were in tension with the later statements, Cerevel's knowledge of the preliminary indications of interest does not give rise to a "strong, cogent, and at least an equally compelling inference" that Cerevel "intend[ed] to defraud" investors. *Handal*, 157 F.4th at 301; *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018). Plaintiffs rely upon speculative and unsupported inferences that Cerevel, through Renaud, controlled by Bain, "knowingly allowed" Bain to place a discounted bet on a merger. Opp. 13, 15. But the nonculpable inference is far more coherent: Cerevel maintained customary confidentiality around preliminary M&A interest while raising capital to extend its runway for clinical trials. This was consistent with routine corporate practice and the company's own stated objectives. *See* Mot. 9.

Plaintiffs' theory that Renaud was controlled by Bain rests on even shakier ground. *See id.* at 8-9. There are no particularized facts to support Plaintiffs' unwarranted inference that Renaud was "incentivized to maximize Bain's profit" as an outside senior advisor to Bain. Opp. 13-14. Plaintiffs do not dispute that Renaud did not purchase shares in the October Offering, and they fail to address why, as a result, he would have deflated the price of his own stock. Mot. 8. Officers and directors routinely have positions with other companies without compromising their independence and thus plaintiffs must allege with particularity "how these inter-director relationships 'likely influenced [defendants'] decision-making on the [m]erger.'" *In re Focus Fin. Partners*, 2025 WL 961488, at *7 (D. Del. Mar. 31, 2025) (a director's personal or business relationships, "even when coupled with [strong] voting power, are insufficient, without more, to rebut the presumption of

- 3 -

independence" (citation omitted)).[1] Unlike *In re Shanda Games*, on which Plaintiffs rely, Renaud was not a Bain insider, did not reap any "concrete, financial benefit" (but rather indisputably lost money) from increasing Bain's stock position, and did not participate in Bain's purchasing decisions. 128 F.4th 26, 52-53 (2d Cir. 2025)).

Instead of offering any rational, let alone compelling, explanation for Renaud's intent to defraud, Plaintiffs punt, arguing "financial motive is not strictly required." Opp. 13-15. But Plaintiffs' failure to identify *any* plausible motive "*counters* an inference of scienter." *Stichting Pensioenfonds Metaal en Techniek v. Verizon Commc'ns, Inc.*, 775 F. Supp. 3d 826, 848 (D.N.J. 2025) (emphasis added); *Handal*, 157 F.4th at 303 (it is "significant" that the plaintiffs failed to allege "what would have motived [the company] or its agents to bury their heads in the sand about the company's own victimization.").

Moreover, the adverse interest exception forecloses imputation of Renaud's scienter to Cerevel. Mot. 9-10. Plaintiffs' opposition says that Renaud acted with "dual loyalties," Opp. 15, but that is not what the Complaint says. The Complaint claims he acted for Bain and *against* Cerevel, by purportedly concealing information to allow Bain to purchase shares at a discount. *See* Compl. ¶¶ 89, 115-16, 120. Such conduct would have harmed Cerevel by reducing the capital it would have otherwise raised, a point explained in Cerevel's motion to dismiss, Mot. 15-16, and not rebutted by Plaintiffs. That is paradigmatic adverse conduct, not "dual loyalties." *See id.* at 10 (collecting cases). Plaintiffs cannot have it both ways: if Renaud acted in Bain's interest, then he necessarily acted against Cerevel's interest; if Renaud acted in Cerevel's interest, Plaintiffs have no coherent theory of a motive to defraud. Either way, Plaintiffs fail to plead corporate scienter, which alone requires dismissal of their Section 10(b) claims. *See* Mot. 6-7 (collecting cases).

---

[1] *See cf. Redus-Tarchis v. New York Life Inv. Mgmt. LLC*, 2015 WL 6525894, at *11 (D.N.J. Oct. 28, 2015) ("Directors may serve on other boards and keep other employment without compromising their independence."); *In re KnowBe4, Inc. Sec. Litig.*, 2025 WL 3718352, at *8 (S.D. Fla. Dec. 23, 2025) (membership in the controlling stockholder was insufficient to infer a lack of independence); *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345 (2d Cir. 2006) (compensation and benefits received while serving on other boards do not demonstrate lack of independence).

### 2.    Plaintiffs Fail to Plead a Duty to Disclose

Plaintiffs' argument that Bain's purchases of shares in the October Offering triggered Cerevel's duty to disclose early merger discussions with AbbVie, (Opp. 14, 15), is fundamentally flawed. Under this theory, Bain is considered the alleged insider, and thus, any duty to disclose would have fallen on Bain, not Cerevel. *See Chiarella v. United States*, 445 U.S. 222, 227 (1980). That is because the duty to disclose falls on the insider that trades using such information—not the company whose securities are traded.[2] Mot. 11; *see In re Gen. Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1129 (D. Del. 1988) ("An insider who trades on material information has a duty to disclose that information."). Plaintiffs' cited authorities support the same. *See Blanchard v. EdgeMark Fin. Corp.*, 1999 WL 59994, at *9 (N.D. Ill. Feb. 3, 1999) (director defendants owed a duty to disclose); *S.E.C. v. Geon Indus., Inc.*, 531 F.2d 39, 48 (2d Cir. 1976) (corporate officer owed a duty not to disclose).

Next, Plaintiffs' fallback theory—that Cerevel itself "traded" by issuing shares in the October Offering and therefore assumed a duty to disclose merger discussions—is also unsupported. Cerevel did not trade its own stock by issuing a dilutive public offering. *See Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 480-81 (S.D.N.Y. 2009). In *Vladimir*, the court squarely rejected the argument that a company has a duty to disclose early merger discussions before conducting a dilutive public offering, even where the company's largest shareholder possessed inside information about the potential transaction. *Id.* at 479-80, 486, 489. The issuer's act of raising capital did not constitute insider trading, did not trigger a disclosure obligation, and did not convert shareholder knowledge into a corporate duty to disclose. *Id.* at 488. Nor did the company's announcement of the offering trigger any duty owed by the company to disclose these merger discussions. *See id.* at 488. Here, Plaintiffs' allegations are nearly identical: No Cerevel insiders traded on merger information, and only stockholders purchased shares in a public offering while allegedly possessing nonpublic information. By contrast, none of Plaintiffs' cited cases addressed

---

[2] To the extent Plaintiffs are relying on an implicit suggestion that Cerevel board members affiliated with Bain provided inside information to Bain in violation of their fiduciary duties to Cerevel, the Complaint contains no such allegations, much less plausible or particularized ones.

whether the issuance of securities constitutes "insider trading"; all involved a company buying or selling securities (which Cerevel did not). *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1203-04 (1st Cir. 1996) (contemplating the selling or purchase of shares); *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 175 (2d Cir. 2001) (involving a company's purchase of its shares from its former CEO); *McCormick v. Fund Am. Companies, Inc.*, 26 F.3d 869, 873-74, 876 (9th Cir. 1994) (same).

Next, Plaintiffs argue that Cerevel's statements were "half-truths," triggering an obligation to disclose. Opp. 15-17. First, none of the pre-Merger challenged statements even referenced AbbVie, strategic partnerships, or acquisitions and therefore, could not have triggered an obligation to disclose any merger discussions with AbbVie. *See* Mot. 11-12. Second, Cerevel's statement that it "currently intend[s] to use the net proceeds from [the October Offering] . . . for working capital and other general corporate purposes, including to extend our cash runway into 2026" is a forward-looking statement about the company's *intended use* of the funds, not, as Plaintiffs say, an assertion about "the real reason" for the offering. Compl. ¶ 124; Opp. 17, 22. And Plaintiffs do not dispute that Cerevel *did* intend to use these proceeds for working capital and extending its cash runway. Thus, even if the Court were compelled to credit Plaintiffs' speculative theory that Cerevel orchestrated the October Offering for Bain's benefit (it should not, *supra* Section II.A.1), they have made no plausible allegations that this statement was misleading.

### 3. Plaintiffs Fail to Plead Materiality

#### (a) Pre-Merger Statements and Omissions Were Immaterial

Plaintiffs' arguments regarding materiality fare no better. Opp. 20-21. Even if Cerevel had a duty, there was nothing to disclose. First, the "meaningful due diligence" and confidentiality agreement on which Plaintiffs heavily rely concerned an unrelated matter: a potential Japanese regional partnership for two drug products, *not* a whole-company acquisition. Compl. ¶¶ 6, 57. Plaintiffs' attempt to recharacterize these project-specific events as M&A diligence is contradicted by their own pleadings. *Compare id.*, *with* Opp. 7. Second, there were no CEO- or board-level

- 6 -

negotiations. Plaintiffs allege no meetings, calls, or discussions between the parties' respective CEOs. *See* Compl. ¶¶ 66-76.

Plaintiffs also cannot rely on the Chancery Court's opinion to explain away Cerevel's rejection of AbbVie's tentative expression of interest in September 2023. That opinion, applying Delaware law, rests on Delaware's uniquely lenient "reasonable conceivability" standard, not the plausibility standard under *Twombly/Iqbal*. *See Cambium Ltd. v. Trilantic Cap. Partners III L.P.*, 36 A.3d 348 (Del. 2012). "Reasonable conceivability" is a "minimal" threshold, "more akin to possibility," not plausibility. *Id.*; Mot. 14-15. As explained in Cerevel's Motion—and not disputed by Plaintiffs[3]—Plaintiffs cannot rely on conclusions reached under Delaware's permissive pleading standard to satisfy the far more demanding plausibility standard required here. *See* Mot. 14-15. The divergence between the Delaware and PSLRA pleading standards is aptly demonstrated by the Chancery Court's inference that Cerevel's rejection of AbbVie's initial expression of interest in "wholeco acquisition" was not actually "sincere." Opp. 19 n.6. Although Plaintiffs never alleged that Cerevel's rejection was pretextual, the court nonetheless characterized it as a possible "negotiation dance," and discounted it when assessing the materiality of AbbVie's interest. Opp. 19 n.6. Even if such an inference were permissible under Delaware law, it is not permissible under the PSLRA, given that the stated reason—that Centerview advised against it, believing later the passage of time would improve the market—is far more plausible. Ex. A at 42.

The mere "idea" that a term sheet "might" arrive, even from a credible bidder, Opp. 19-20, does not rise to the level that a reasonable investor would consider in making an investment decision under *Basic Inc. v. Levinson*, 485 U.S. 224, 234 (1988). *See Mill Bridge V, Inc. v. Benton*, 496 F. App'x 170, 171 (3d Cir. 2012) (a "potential[] interest[]" in a merger was immaterial); *cf. Rich v. Shrader*, 2010 WL 3717373, at *20 (S.D. Cal. Sept. 17, 2010) ("mere intention" to "pursue" or "explore" a merger "at some time in the future is not material"); *see also* Bain Reply 8-9. As courts have long recognized, "[a]ny reasonably sophisticated investor" would expect that "from

---

[3] *Prime Victor Int'l Ltd. v. Simulacra Corp.*, 682 F. Supp. 3d 428, 447-48 (D. Del. 2023) ("When a party files an opposition brief and fails to contest an issue raised in the opening brief, the issue is considered waived or abandoned by the non-movant.") (internal quotation marks omitted).

time to time," companies will receive expressions of interest. *Jackvony*, 873 F.2d at 415. Requiring disclosures of every "tentative feeler[]" would "more likely confuse, than inform, the marketplace." *Id.* Although Cerevel's motion pointed all this out, Mot. 13-16, Plaintiffs have no answer. They neither dispute the legal standard, nor supply the concrete steps it demands. When stripped of rhetoric, Plaintiffs' allegations amount to this: No terms or term sheet had been conveyed, no price had been communicated (much less an offer), no bankers had been engaged, no special committees were formed, and no acquisition-related due diligence had been exchanged.[4]

Here, only a vague overture had been conveyed, which was promptly rejected by the Board. These are precisely the type of "preliminary, contingent, and speculative" discussions that courts routinely dismiss as immaterial as a matter of law. *Taylor v. First Union Corp. of S.C.*, 857 F.2d 240, 244-45 (4th Cir. 1988). On these facts, no reasonable factfinder would conclude these omitted details were material. Accordingly, Plaintiffs fail to plead materiality as a matter of law.

(b)    **Post-Merger Announcements and Omissions Are Immaterial**

Plaintiffs are incorrect to suggest that "Cerevel does not contest that the[] post-Merger announcements statements were misleading nor that the facts were omitted." Opp. 21. Cerevel has explained, at length, how details about the timing of AbbVie's interest or earlier financial analyses were neither material nor necessary to make any post-December 6 statements accurate and complete. Mot. 16-17. Plaintiffs argue that these statements are actionable because they supposedly "created the false impression that AbbVie was on a level playing field," that the $45 Merger price was supported by Centerview's analyses, and that the October Offering was "reall[y]" for Bain's benefit. Opp. 21-22. But Plaintiffs never explain how disclosures of even

---

[4] Even the cases Plaintiffs cite involved more concrete steps. The parties had shared and finalized a term sheet in *Melcher v. Fried*, 2018 WL 6326334, at *3, 13 (S.D. Cal. Dec. 4, 2018). In *Rizzo v. MacManus Grp., Inc.*, the company had already "reached an advanced stage of negotiations" and had even been "touting the possible merger as a means to induce other employees to remain with the company." 158 F. Supp. 2d 297, 300-01 (S.D.N.Y. 2001). In *Rothberg v. Rosenbloom*, the public was already made aware of a proposed company acquisition. 771 F.2d 818, 821-22 (3d Cir. 1985). And in *S.E.C. v. Wyly*, company insiders had already "agreed and resolved" to pursue a merger, retained investment bankers, and amended employment agreements in anticipation of a change of control. 788 F. Supp. 2d 92, 123 (S.D.N.Y. 2011).

earlier, vague expressions of AbbVie's interest—made well before any proposal, price, or negotiations—would transform AbbVie into an "advantaged" bidder. That is fatal to Plaintiffs' argument, because as Cerevel has already explained, and Plaintiffs have failed to dispute, a Proxy that (like this one) contains a fair summary of its overall analysis need not contain every detail. *See* Mot. 21-23 (collecting cases).

Further, Plaintiffs point to no facts showing that the nondisclosure of prior financial analyses renders statements about Centerview's financial analyses or fairness opinion false or misleading. Opp. 22. Plaintiffs neither dispute that the Proxy disclosed a comparable implied value in Centerview's final analyses, nor explain how the omission of similar earlier analyses could have plausibly "significantly altered the 'total mix' of information available." *Id.* at 17; *compare* Compl. ¶ 72 (implied value of $53 per share), *with* Ex. A at 59 (implied value of $52.75 per share); *see Dower v. Mosser Indus., Inc.*, 648 F.2d 183, 188 (3d Cir. 1981); *Hurtado v. Gramercy Prop. Tr.*, 425 F. Supp. 3d 496, 518 (D. Md. 2019) ("[i]t is not enough that the omission *might have* or *could have* influenced a shareholder's decision.").

### 4.    Loss Causation

Plaintiffs argue that loss causation is sufficiently pleaded because they were induced to sell their shares and forgo appraisal rights. Opp. 22-23. But as Plaintiffs' own authority makes clear, Plaintiffs must allege facts that plausibly support they would have "received *greater value* for [their] shares through an appraisal action." *Shanda Games*, 128 F.4th at 58 (emphasis added). Plaintiffs' remaining authorities are also inapposite because none addressed loss causation. *Merritt v. Colonial Foods, Inc.* 499 F. Supp. 910, 914 (D. Del. 1980) (denying summary judgment on materiality); *Healey v. Catalyst Recovery of Pennsylvania, Inc.*, 616 F.2d 641, 648-49 (3d Cir. 1980) (similar). Plaintiffs have not advanced any allegations that suggest an appraisal would have yielded a higher value and thus, have not met their burden of pleading loss causation. *See* Mot. 24.

### B.    Plaintiffs' Section 14(a) Claim Fails for the Same Reasons

Plaintiffs' recycled arguments under Section 14(a) fail for similar reasons. Plaintiffs incorrectly suggest that Cerevel does not dispute that its statements created a "false impression of

the robustness of the deal process." Opp. 24. First, none of the Proxy statements were rendered false or misleading by omitting AbbVie's nascent expression of interest, the "real purpose" of the October Offering, or Centerview's preliminary financial analyses. Second, even if a duty to disclose existed, no reasonable investor would consider these omitted details material. Finally, loss causation cannot be pleaded through the forfeiture of appraisal rights alone; Plaintiffs must plausibly allege that an appraisal action would have yielded a higher value than the merger consideration—which Plaintiffs have not even tried to do here. *See supra* Section II.A.

Plaintiffs' reliance on *Lane v. Page* is misplaced. In *Lane*, a plaintiff's claim that the true value of his shares was substantially greater than the merger price was supported by the company's internal appraisal, the company's rejections of competing offers from other buyers based on higher internal valuations, and the board's failure to obtain an independent, banker fairness opinion to test the transaction price. . 727 F. Supp. 2d 1214, 1231 (D.N.M. 2010); *Lane v. Page*, 649 F. Supp. 2d 1256, 1266 (D.N.M. 2009); *Lane v. Page*, 581 F. Supp. 2d 1094, 1102-03 (D.N.M. 2008). The same is true for *In re Robbins & Myers, Inc. Litig.*, where the company's financial advisor's supporting analyses suffered from "serious flaws," which if corrected, would have yielded a significantly higher valuation. 969 F. Supp. 2d 850, 858-59 (S.D. Ohio 2013). Absent similar, specific factual allegations plausibly showing that Plaintiffs would have received more than the merger consideration, Plaintiffs cannot establish loss causation.

## III.    CONCLUSION

The Opposition confirms that the Complaint rests on a chain of unsupported inferences, reverse-engineered to manufacture an implausible conspiracy in which Cerevel and Renaud would harm themselves to benefit Bain based on then-tentative expressions of interest from AbbVie, all without a plausible theory of motive, any factual allegations showing intent, or any facts showing that Plaintiffs could otherwise have obtained a higher return than AbbVie ultimately paid. That is precisely the type of "speculative fraud by hindsight that the [PSLRA] was intended to eliminate." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 883 (3d Cir. 2018). Because the Complaint fails to state a Section 10(b) or Section 14(a) claim, it must be dismissed.

- 11 -

Dated:  January 23, 2026

Of Counsel:
HUESTON HENNIGAN LLP
Hagan Scotten
1 Little W 12th Street
New York, NY  10014
646.930.4046

John C. Hueston
Moez M. Kaba
Thomas A. Zaccaro
523 West 6th Street, Ste. 400
Los Angeles, CA  90014
213.788.4340

/s/ Robert L. Burns
Robert L. Burns (#5314)
Alexandra M. Ewing (#6407)
RICHARDS LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302.651.7618
burns@rlf.com
ewing@rlf.com


Attorneys for Defendant
Cerevel Therapeutics Holdings, Inc.