**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION | ) ) ) ) ) ) |

   Case No. 25-cv-417-GBW

**PUBLIC VERSION FILED
JANUARY 30, 2026**

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

OF COUNSEL:

Peter L. Welsh
Daniel V. McCaughey
Elena W. Davis
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Martin J. Crisp
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000

A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
Clara E. Hubbard (#7320)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19801
(302) 778-1000

*Counsel for Defendants Bain Capital Investors,
LLC, Christopher Gordon, and Adam Koppel*

Dated: January 23, 2026

# TABLE OF CONTENTS

**Page**

I.    PLAINTIFFS IGNORE—AND CANNOT MEET—THE STRINGENT REQUIREMENTS TO PLEAD A SECTION 20A CLAIM (COUNT II)...................................1

    A.    Plaintiffs Cannot Rewrite Well-Established Insider Trading Law. .........................1

    B.    Plaintiffs Do Not—And Cannot—Plead a Deceptive Breach of a Duty.................................................................................................................4

    C.    Plaintiffs Fail to Plead the Required Strong Inference of Scienter. .........................6

    D.    Plaintiffs Fail to Plead That Bain Possessed Material Non-Public Information. ...............................................................................................8

II.   THE COMPLAINT FAILS TO STATE A SECTION 20(a) CLAIM (COUNT IV)...................................................................................................9

CONCLUSION.............................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Auto Parts, Inc., Sec. Litig.*,
2020 WL 599543 (D. Del. Feb. 7, 2020) ....................................................................10

*Alta Fundamental Advisers LLC v. Bisaro*,
2025 WL 1793691 (D.N.J. June 30, 2025) ................................................................10

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ................................................................3

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ............................................................................... 3, 4, 6

*DeMarco v. Robertson Stephens Inc.*,
318 F. Supp. 2d 110 (S.D.N.Y. 2004) .........................................................................3

*In re Digit. Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002) ...........................................................................10

*Dirks v. SEC*,
463 U.S. 646 (1983) .....................................................................................................6

*In re Flag Telecom, Ltd. Sec. Litig*,
308 F. Supp. 2d 249 (S.D.N.Y. 2004) .......................................................................10

*Handal v. Innovative Indus. Properties, Inc.*,
157 F.4th 279 (3d Cir. 2025) .......................................................................................7

*Love v. Alfacell Corp.*,
2010 WL 11570268 (D.N.J. Sept. 22, 2010) ...............................................................9

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
2008 WL 2178150 (N.D. Ill. May 22, 2008) ...............................................................3

*Melcher v. Fried*,
2018 WL 6326334 (S.D. Cal. Dec. 4, 2018) ...............................................................8

*In re Openwave Sys. Sec. Litig.*,
528 F. Supp. 2d 236 (S.D.N.Y. 2007) .........................................................................4

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007) ......................................................................2, 3

*Rizzo v. MacManus Group, Inc.*,
  158 F. Supp. 2d 297 (S.D.N.Y. 2001)......................................................................9

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  335 F.R.D. 276 (N.D. Cal. 2020)............................................................................4

*Shupe v. Rocket Cos., Inc.*,
  348 F.R.D. 431 (E.D. Mich. 2004) .........................................................................5

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008).....................................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................1, 6, 7

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................10

*In re Under Armour Sec. Litig.*,
  631 F. Supp. 3d 285 (D. Md. 2022) .........................................................................4

*United States v. O'Hagan*,
  521 U.S. 642 (1997)............................................................................................3, 5

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  2019 WL 2724075 (D.N.J. June 30, 2019) ..............................................................3

*Winshall v. Viacom Int'l, Inc.*,
  76 A.3d 808 (Del. 2013) ..........................................................................................9

## Statutes, Rules, and Other Authorities

15 U.S.C. § 78t-1(a)................................................................................................2

134 Cong. Rec. H7465-02 (1988), 1988 WL 180346................................................2

H.R. Rep. No. 100-910 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 6043 ................1, 2

Fed. R. Civ. P. 9(b) ..............................................................................................4, 9

iii

To avoid dismissal of their Section 20A claim against Bain, Plaintiffs' opposition brief (the "Opposition," D.I. 68)[1] attempts to rewrite insider-trading law and distort the limited purpose of Congress's enactment of Section 20A. Section 20A did not alter the definition of insider trading under Section 10(b) or any of its required elements. *See* H.R. Rep. No. 100-910, at 11 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 6043, 6048 ("[T]he Committee does not intend to alter the substantive law with respect to insider trading with this legislation."). Instead, the plain language of Section 20A confirms that Plaintiffs must plead as a "predicate violation" the elements of an actual insider trading violation under the federal securities laws—not some other disclosure-based violation having nothing to do with insider trading. That eviscerates Plaintiffs' theory. Binding Supreme Court authority also dictates that a viable insider trading violation requires a deceptive breach of a duty of trust or confidence. There is no deceptive breach here given the complete informational parity between Bain and Cerevel—Bain's sole counterparty in the Offering. Nor does Section 20A alter the requirement to allege an inference of scienter that is "cogent and at least as compelling as any opposing inference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007), which independently disposes of Plaintiffs' Section 20A claim. The Court should accordingly dismiss the claims against the Bain Defendants with prejudice.[2]

## I.    **PLAINTIFFS IGNORE—AND CANNOT MEET—THE STRINGENT REQUIREMENTS TO PLEAD A SECTION 20A CLAIM (COUNT II).**

### A.    **Plaintiffs Cannot Rewrite Well-Established Insider Trading Law.**

In an attempt to salvage their Section 20A claim, Plaintiffs would have the Court rewrite

---

[1] Unless otherwise noted, emphases are added and internal citations and quotations omitted. "Ex. _" refers to exhibits to the Transmittal Affidavit of Christopher Fitzpatrick Cannataro, Esq., filed with Bain's Opening Brief In Support of Motion to Dismiss ("Br.," D.I. 45) on October 30, 2025.

[2] Bain joins in full and incorporates Cerevel's concurrently filed reply brief in support of its motion to dismiss, as well as the reply briefs of Pfizer, Perceptive, Renaud, and the Director Defendants.

the plain language of the statute and undo decades of Supreme Court insider trading decisions in multiple ways, including by (i) eliminating the requirement of a deceptive breach of duty in connection with the challenged trades; (ii) eliminating the requirement that the defendant acted with scienter, and (iii) vastly expanding the definition of the "predicate violation" required for a Section 20A claim to be based on *any* alleged violation of the Exchange Act, *regardless of whether it involves allegations of insider trading*. Opp. at 4-5.

But Section 20A is an insider trading statute. Its very title is "Liability to contemporaneous traders for **insider trading**." And although it expanded the universe of investors who may have standing to bring an insider trading lawsuit beyond those in direct privity with the defendant, its plain text *still* requires that the underlying violation involve "purchasing or selling a security while in possession of material, nonpublic information." 15 U.S.C. § 78t-1(a). Section 20A's legislative history also confirms that its enactment was specifically intended *not* to disturb the underlying insider trading law. *See* H.R. Rep. No. 100-910, at 11 (1988) *as reprinted in* U.S.C.C.A.N. 6043, 6048 ("[T]he Committee does not intend to alter the substantive law with respect to insider trading with this legislation."); 134 Cong. Rec. H7465-02 (1988), 1988 WL 180346 ("The bill makes no change to the substantive law of insider trading. That body of law should continue to evolve without any influence from this bill."). The plain language and express purpose of the statute—as well as the relevant federal precedents—readily dispose of Plaintiffs' attempts to rewrite the law.

*Section 20A requires a predicate **insider trading** violation*. "[T]he predicate violation [for Section 20A] must be an act of insider trading." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 664 (S.D.N.Y. 2007);[3] *see In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309

---

[3] Plaintiffs suggest the *Refco* court found "the required 'predicate violation' may be of any section of the Exchange Act," Opp. at 15, but Plaintiffs misleadingly omit the rest of the court's sentence, which explains: "provided the violation was effected *by purchasing or selling a security* while in

2

(S.D.N.Y. 2008) (same). Plaintiffs are wrong that their separate disclosure-related claims can function as the "predicate violation" because those claims—including "Bain's alleged violations of Section 20(a) as a control person"—have nothing to do with trading at all.[4] Opp. at 5; *see Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at \*27 (C.D. Cal. July 1, 2008) (Section 20(a) may serve as Section 20A predicate "only where the [20(a)] claim . . . relates to insider trading"); *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 2008 WL 2178150, at \*2 (N.D. Ill. May 22, 2008) (no 20A claim predicated on Section 20(a) where defendant "[was] not alleged to have violated Section 20(a) *by* engaging in insider trading (or by controlling someone who did)") (emphasis in original).

   *Section 20A did not alter Section 10(b)'s requirements of breach of a duty or scienter.* The only remaining "predicate violation" identified by Plaintiffs is of Section 10(b) for alleged insider trading. A violation of Section 10(b)—the most commonly utilized insider-trading statute and the subject of extensive federal case law—depends on the use of a "deceptive device," and accordingly requires alleged insider trading to have been made in breach of a duty of trust and confidence. *See United States v. O'Hagan*, 521 U.S. 642, 652 (1997); *Refco*, 503 F. Supp. 2d at 665 ("Section 20A . . . does not create a new definition of insider trading."); *DeMarco v. Robertson Stephens Inc.*, 318 F. Supp. 2d 110, 126 (S.D.N.Y. 2004) (same and dismissing claim that failed to allege insider

---

possession of material, nonpublic information." 503 F. Supp. 2d at 665 (emphasis in original). The *Refco* court concluded, "[T]here can only be § 20A liability if the predicate violation of the Exchange Act was an act of insider trading." *Id.* And while Plaintiffs cite to language in *In re Valeant Pharms. Int'l, Inc. Securities Litigation* suggesting that this conclusion is "directly contradicted by Third Circuit precedent [*City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 175-76 (3d Cir. 2014)]," Opp. at 15 (citing 2019 WL 2724075, at \*6 (D.N.J. June 30, 2019)), Defendants respectfully submit that this statement in *Valeant*, which is not binding, overstates the import of *Edinburgh*. The *Edinburgh* court did not address or decide whether a predicate violation for Section 20A must involve insider trading.

[4] The Opposition also references supposed violations of Section 10(b) for "omitting material facts" from Offering documents, but that is not a claim that Plaintiffs actually allege against Bain, which did not sign or issue any "Offering documents" in the first place, and similarly has nothing to do with trading even if it had.

3

breached duty).  Additionally, the PSLRA and Rule 9(b) apply to insider trading claims under Section 10(b)—the only possible "predicate violation" here.  *Edinburgh,* 754 F.3d at 175-76 (applying PSLRA to reject predicate insider trading allegations for Section 20A claim).[5]

## B.        Plaintiffs Do Not—And Cannot—Plead a Deceptive Breach of a Duty.

Bain's Opening Brief explained that, to plead a Section 10(b) insider trading violation on which Plaintiffs may predicate Section 20A liability, Plaintiffs must allege a deceptive breach of a duty owed to either an "insider's" transactional counterparty or a trader's source of confidential information; it further explained that no such breach is alleged here.  Br. at 12-13.  Cerevel possessed all the same information as Bain, including information about Bain's participation in the Offering.  The Opposition's sole response is that "[w]hen enacting Section 20A, Congress removed the privity requirement underlying Defendants' pre-Section 20A enactment cases, making completely irrelevant that Bain's purchases were directly from Cerevel and not from Class members."  Opp. at 16.  But that claim incorrectly conflates (i) the breach-of-a-duty element of a predicate insider trading violation under Section 10(b) with (ii) the contemporaneity element of Section 20A.  Plaintiffs must plead *both* distinct elements for their Section 20A claim to survive.

Courts routinely describe Section 20A's contemporaneity requirement not as a substantive element of an insider trading claim, but as "a statutory standing requirement that delineate[s] the scope of the cause of action."  *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 299 n.3 (D. Md. 2022); *see also SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 285 (N.D. Cal. 2020) (contemporaneity element is a "standing requirement [that] is simply a statutory limit on the scope

---

[5] Though Plaintiffs suggest that Section 20A claims are not subject to the strict requirements of the PSLRA and Rule 9(b), Opp. at 10, the lone out-of-circuit decision they cite confirms the opposite.  *See In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 255 n.10 (S.D.N.Y. 2007) ("[I]t would appear that under Second Circuit law the heightened pleading requirements of the PSLRA and Rule 9(b) would apply to claims brought under Section 20A.").

of the express claim for relief provided by the statute"); *Shupe v. Rocket Cos., Inc.*, 348 F.R.D. 431, 442 (E.D. Mich. 2004) ("[Section] 20A does not proscribe unlawful conduct—it merely provides a private right of action for those harmed by conduct violating other sections of the Exchange Act."). For this same reason, Plaintiffs' attempt to discredit Bain's reliance on "a series of Second Circuit cases" decided before Section 20A's enactment, Opp. at 16, falls flat.

The Opposition ignores the seminal Supreme Court precedent addressed in the Opening Brief, which makes clear that insider trading is about "conduct involving manipulation or deception," *O'Hagan*, 521 U.S. at 655, and therefore requires a deceptive breach of a duty of trust or confidence, Br. at 12. Plaintiffs cite no authority suggesting that those Section 10(b) cases are no longer good law or that Section 20A changed anything about their interpretation.

The Opposition does not dispute that there was no informational disadvantage between Bain and its counterparty, Cerevel, and therefore no deception in connection with Bain's purchase in the October Offering. That concession is dispositive. Given that Cerevel (i) was Bain's counterparty, (ii) possessed all of the same alleged information that Bain had regarding AbbVie's passing comments about an interest in a "whole co transaction," and (iii) authorized and endorsed Bain's participation in the Offering, Plaintiffs cannot plead any deceptive breach of duty as required to state a Section 10(b) predicate claim.[6]

---

[6] For similar reasons, Plaintiffs do not plead contemporaneity. Br. at 11-13, 22. Plaintiffs cite only one case involving a defendant transacting with the issuing company itself, *In re Aegean Marine Petroleum Network, Inc. Securities Litigation*, in which the company's founder and then-CEO engineered a repurchase of his shares despite the company's impending liquidity crisis. Opp. at 17; 529 F. Supp. 3d 111 (S.D.N.Y. 2021). In ruling that the plaintiff pled contemporaneity, the court noted "immediate" harm to the plaintiff caused by the repurchase itself, including that the company's stock dropped 48%. *Id.* at 177. Plaintiffs make no similar allegations of independent harm to shareholders arising from the Offering here. *Aegean* also confirms that a viable Section 20A claim "requires that an underlying violation of § 10(b) occurred," and illustrates the central requirement of a deceptive breach of duty: in that case, a fraudulent scheme (of which the share

5

### C.   Plaintiffs Fail to Plead the Required Strong Inference of Scienter.

In yet another attempt to minimize Plaintiffs' pleading burden, the Opposition asserts that Section 20A claims do not require scienter. Opp. at 17. But the Opposition's own cases say otherwise. *See Valeant*, 2019 WL 2724075, at \*8 ("The PSLRA requires plaintiffs bringing Section 20A claims to allege facts giving rise to a strong inference of scienter."). In any event, Plaintiffs do not dispute that scienter is required to allege the only conceivable "predicate violation": a Section 10(b) insider trading claim. *See Edinburgh*, 754 F.3d at 175-76 (no insider trading violation pled where insider trading allegations were insufficient under PSLRA's standard for scienter); *Dirks v. SEC*, 463 U.S. 646, 663 n.23 (1983) (scienter "is an independent element").

Plaintiffs say that the Complaint pleads scienter and assert that Bain's dilution analysis is flawed. Opp. at 19-20.[7] But the Opposition does not dispute that the Offering diluted Bain; nor could it. The Complaint affirmatively admits that fact. ¶ 87. That dilution negates any supposed "financial motive" on Bain's part, Opp. at 18-19, because it would be economically irrational for Bain to dilute its interests by orchestrating the Offering if Bain supposedly knew AbbVie was waiting in the wings. Br. at 16-17, 20. Bain's undisputed dilution, combined with other facts pled in the Complaint, confirm that the much more compelling inference is that Bain supported and participated in the Company-endorsed Offering because of Cerevel's need to raise capital and extend its cash runway. Br. at 16; *see Tellabs,* 551 U.S. at 314.

---

repurchase was part) perpetrated chiefly by the founder and former CEO himself. *Id.* at 126. That is precisely the type of deceptive breach that is not alleged here.

[7] None of these arguments has merit. Plaintiffs fault Bain's assumption that the $499 million Offering increased Cerevel's value by the same amount, Opp. at 19-20, but Plaintiffs point to no plausible allegations that the Offering increased Cerevel's value by any amount beyond the cash raised in the Offering. They also claim it is reasonable to assume that AbbVie would have paid precisely $45 per share even absent the Offering, *id.* at 20, but this means that AbbVie would have paid the *same* per-share price to acquire Cerevel as a whole, regardless of whether Cerevel had *over 22 million fewer* shares—an implausible inference.

6

Plaintiffs suggest that "even if the reason for the October Offering were well-intentioned," Bain's decision to trade in the Offering still supports scienter because it allegedly did so while in possession of material nonpublic information. Opp. at 19. But knowledge of AbbVie's interest alone does not amount to "scienter," which is a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319. As a matter of pure math, Bain's support for an offering that would *reduce* its pro rata ownership of the Company is the opposite of an intent to defraud, even assuming it was aware of AbbVie's indication of interest. Such allegations come nowhere near supporting the required strong inference of scienter under *Tellabs*. This claim also ignores the non-fraudulent inference generated by the Complaint's own allegations that Bain participated in the Offering—which diluted Bain's ownership—out of a desire to support the Company's capital raise and long-term outlook in light of Bain's already-existing significant investment. Br. at 16.[8] This inference is far more compelling than Plaintiffs' theory that Bain attempted to take advantage of its supposed knowledge of AbbVie's indication of interest but botched it by orchestrating a dilutive offering.

The Opposition also argues that the Complaint pleads Bain's scienter through Koppel, Gordon, and Renaud's supposed "personal knowledge" of the Company's misstatements and omitted facts. Opp. at 18. This theory, and the facts that could support it, are not pled. The Complaint does not adequately allege what Koppel or Gordon knew about AbbVie's alleged indication of interest—nor does it have any allegations specifically addressing Koppel and Gordon's supposed involvement in the allegedly misleading statements or Bain's decision-making around the Offering. *See Handal v. Innovative Indus. Properties, Inc.*, 157 F.4th 279, 303 (3d Cir.

---

[8] Plaintiffs also tout the *SEIU* court's decision on scienter. Opp. at 20. But this ignores that the court repeatedly concluded it was a "close call" even under the lower pleading standard. Br. at 17-18.

2025) (given lack of specific facts, appellants "failed to plead that any individual had scienter" or "that anyone's scienter may be imputed to [the corporate entity]").  As to Renaud, even if the Complaint pled an actionable misstatement (and it does not), Plaintiffs admit Renaud was a *former* Bain employee and alleges no details about his supposed role as a "Senior Advisor" that support imputing his alleged scienter to Bain.  ¶¶ 55, 58.

### D.    Plaintiffs Fail to Plead That Bain Possessed Material Non-Public Information.

Plaintiffs claim the Complaint pleads that the AbbVie expression of interest was material because it alleges that "AbbVie was a credible bidder, its expression of interest came after months of 'meaningful' diligence, Cerevel's banker advised a significant amount of M&A activity in the pharmaceutical space start as similar partnership discussions, and discussions were serious enough that Cerevel was already awaiting a term sheet."  Opp. at 10-11.  But the Opposition (i) points to no facts indicating that AbbVie ever disclosed any price, deal structure, or timeline for a potential acquisition before the Offering, *see* Br. at 8-9; (ii) cites no particularized facts that comments about any "meaningful" diligence or "term sheet" related to anything but the Japanese Partnership; and (iii) ignores Centerview's contemporaneous advice that "a sale of the Company would be difficult prior to the Company's highly anticipated emraclidine results" in December 2024 (more than a year *after* the Offering).  ¶ 71; Br. at 10-11; Ex. 4 at -1020.  And Plaintiffs' suggestion that the Board "immediately" convened the September 27, 2023 meeting to discuss AbbVie's indication of interest, *see* Opp. at 3, 11-12, is entirely unpled and unsupported.[9]

Plaintiffs' cited cases about the materiality of merger discussions are distinguishable.  Opp. at 11; *Melcher v. Fried*, 2018 WL 6326334, at *3, *13 (S.D. Cal. Dec. 4, 2018) (before relevant

---

[9] Plaintiffs similarly suggest that Centerview's September 27, 2023 "detailed Board presentation" was about AbbVie's indication of interest.  Opp. at 3.  The presentation does not even mention AbbVie's alleged indication of interest.  *See* Ex. 4.

stock purchase, acquirer had already sent target a draft merger term sheet including a price); *Rizzo v. MacManus Group, Inc.*, 158 F. Supp. 2d 297, 304 (S.D.N.Y. 2001) (company "had reached an advanced stage of negotiations with [one potential acquirer]"). And Plaintiffs' reliance on the Court of Chancery decision in the related *SEIU* case is unpersuasive. In that case, the plaintiff needed to plead only a "reasonably conceivable" inference that AbbVie's indication of interest was material. More is required here. *See Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 813 & n.12 (Del. 2013), as corrected (Oct. 8, 2013) ("The *Twombly/Iqbal* plausibility standard is more rigorous than Delaware's counterpart pleading standard."). Nor does the fact that Bain traded prove materiality here, as Plaintiffs claim. Opp. at 11-12. The Opposition ignores that Cerevel began considering the Offering, which Plaintiffs allege Bain orchestrated, *before* AbbVie's alleged indication of interest in September. Br. at 16; Ex. 3 at -0639.

Moreover, the Opposition cannot point to any well-pled allegations that the Board knew anything about a supposed forthcoming term sheet for a whole-company acquisition (which allegations were based on a tracking spreadsheet exchanged between Cerevel management and Centerview, *see* ¶ 7) or the supposed opening of a "data room" (which was discussed among "Cerevel employees," *id.*, not Board members). Br. at 10. The Opposition's sole support for what was discussed with the Board is one line in draft "talking points" that were not even prepared by the Company. Opp. at 13. There is no indication from the Complaint that the Board discussed any specifics. The Complaint therefore fails to plead with specificity that Gordon and Koppel had the knowledge Plaintiffs claim should be imputed to Bain. The same goes for Renaud, who Plaintiffs admit was not a Bain employee at the time. *See* ¶ 55.

## II.    THE COMPLAINT FAILS TO STATE A SECTION 20(a) CLAIM (COUNT IV)

Contrary to Plaintiffs' claim, "a claim of securities fraud under [Section] 20a must . . . meet the heightened pleading standards of both Rule 9(b) . . . and the [PSLRA]." *Love v. Alfacell Corp.*,

9

2010 WL 11570268 at *2 (D.N.J. Sept. 22, 2010); *see In re Digit. Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002); *Alta Fundamental Advisers LLC v. Bisaro*, 2025 WL 1793691, at *11 (D.N.J. June 30, 2025). The Opposition offers no reason Pfizer would have coordinated with Bain. Instead, it reiterates irrelevant allegations about the Shareholder Agreement, which required Pfizer and Bain to agree with each other only in relation to each other's director nominees. *See* Pfizer Opening Brief (D.I. 40) at 12-13.

The Opposition's cursory claim that Bain alone controlled Cerevel also fails. The only case Plaintiffs cite to support this theory is one where the defendant was a majority stockholder during at least some of the class period. *See Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1049 (N.D. Cal. 2016). Here, the Complaint admits that Bain was a *minority* stockholder with an approximately 36% ownership stake, which is insufficient to establish controlling-stockholder status. ¶ 87; *see, e.g.*, *In re Flag Telecom, Ltd. Sec. Litig,* 308 F. Supp. 2d 249, 273-74 (S.D.N.Y. 2004) (thirty percent of voting stock and three of nine board members did not create inference of control). Plaintiffs also rely on the fact that some Board members *previously* worked for Bain but cite no authority supporting the relevance of this fact. Opp. at 23.

As to the culpable-participation element, which Plaintiffs must plead, *see In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *10 (D. Del. Feb. 7, 2020), Plaintiffs point only to Bain's purchase of shares in an offering it allegedly "orchestrated" and the allegations that Koppel and Gordon "review[ed] allegedly fraudulent SEC filings." Opp. at 25. These generalized allegations do not suffice. *See Digit. Island*, 223 F. Supp. 2d at 563 (no culpable conduct based on "broadly and vaguely allege[d]" participation "utterly lacking in any details").

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

10

OF COUNSEL:

Peter L. Welsh
Daniel V. McCaughey
Elena Weissman Davis
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Martin J. Crisp
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000

*/s/ Christopher Fitzpatrick Cannataro*
A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
Clara E. Hubbard (#7320)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19801
(302) 778-1000
bayliss@AbramsBayliss.com
cannataro@AbramsBayliss.com
hubbard@AbramsBayliss.com

*Counsel for Defendants Bain Capital Investors,
LLC, Christopher Gordon, and Adam Koppel*

Date:  January 23, 2026

11