# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION, | Civil Action No. 25-417-GBW |

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Andrew J. Entwistle, Callie Crispin, ENTWISTLE & CAPPUCCI LLP, Austin, TX; Vincent R. Cappucci, Robert N. Cappucci, Andrew M. Sher, Jessica A. Margulis, ENTWISTLE & CAPPUCCI LLP, New York, NY.

*Counsel for Plaintiffs SM Merger/Arbitrage, LP, Associated Capital Group, Inc. and Atlas Diversified Master Fund, Ltd.*

John P. DiTomo, Alec F. Hoeschel, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Lynn K. Neuner, George S. Wang, Anthony C. Piccirillo, SIMPSON THACHER & BARTLETT LLP, New York, NY.

*Counsel for Defendant Pfizer Inc.*

Robert L. Burns, Alexandra M. Ewing, RICHARDS LAYTON & FINGER, Wilmington, DE; John C. Hueston, Moez M. Kaba, Thomas A. Zaccaro, HUESTON HENNIGAN LLP, Los Angeles, CA; Hagan Scotten, HUESTON HENNIGAN LLP, New York, NY.

*Counsel for Defendant Cerevel Therapeutics Holdings, Inc.*

David E. Ross, Roger S. Stronach, Holly E. Newell, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE.

*Counsel for Defendant Ron Renaud*

1

J. Matthew Belger, Daniel M. Rusk, POTTER ANDERSON & CORRON LLP, Wilmington, DE; Robert A. Fumerton, Alexander C. Drylewski, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, New York, NY.

*Counsel for Defendants Perceptive Advisors LLC and Doug Giordano*

A. Thompson Bayliss, Christopher F. Cannataro, Clara Hubbard, ABRAMS & BAYLISS LLP, Wilmington, DE; Peter L. Welsh, Daniel V. McCaughey, Elena W. Davis, ROPES & GRAY LLP, Boston, MA; Martin J. Crisp, ROPES & GRAY LLP, New York, NY.

*Counsel for Defendants Bain Capital Investors, LLC, Adam Koppel, and Christopher Gordon*

Robert L. Burns, Alexandra M. Ewing, RICHARDS LAYON & FINGER, Wilmington, DE; John C. Hueston, Moez M. Kaba, Thomas A. Zaccaro, HUESTON HENNINGAN LLP, Los Angeles, CA; Haggan Scotten, HUESTON HENNINGAN LLP, New York, NY.

*Counsel for Defendants Deval Patrick, Deborah Baron, Suneet Varma and Ruth McKernan*

## MEMORANDUM OPINION

March 30, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court are six motions to dismiss Plaintiffs SM Merger/Arbitrage, LP, Associated Capital Group, Inc. and Atlas Diversified Master Fund, Ltd. ("Plaintiffs") Amended Consolidated Class Action Complaint ("Amended Complaint") (D.I. 19) filed by Defendants Pfizer Inc. (D.I. 39), Cerevel Therapeutics Holdings, Inc. (D.I. 41), Bain Capital Investors, LLC, Adam Koppel, and Christopher Gordon (the "Bain Defendants") (D.I. 43), Perceptive Advisors LLC and Doug Giordano (D.I. 49), Ron Renaud (D.I. 50), and Deval Patrick, Deborah Baron, Suneet Varma, and Ruth McKernan's (the "Director Defendants") (D.I. 51). For the reasons set forth below, the Court denies-in-part and grants-in-part Defendants' motions.

## I.    BACKGROUND

Plaintiffs bring this class action alleging violations of federal securities law against Cerevel and its major shareholders. Plaintiffs allege that insider trading, misleading and false statements, and omissions, in connection with a secondary stock offering, subsequent merger discussions, an acquisition, and a proxy statement filed with the SEC, caused harm to shareholders.

### A.    Formation of Cerevel

The following are factual allegations taken as true for the purpose of resolving the pending motions to dismiss.[1] On July 23, 2018, Bain Capital Investors, LLC ("Bain") and Pfizer Inc. ("Pfizer") formed Cerevel, a biopharmaceutical company focused on developing pharmaceuticals to treat disorders of the central nervous system. D.I. 19 ¶ 38. Pfizer contributed a portfolio of pre-

---

[1] Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

commercial neuroscience assets to Cerevel and Bain committed $350 million, with an expressed indication of its willingness to provide additional capital as may be required. *Id.* ¶ 39. At inception, Bain held 75% equity interest and Pfizer held 25% equity interest in Cerevel. *Id.* ¶ 40. Cerevel's initial board included Defendants Adam Koppel ("Koppel") and Christopher Gordon ("Gordon"), appointed by Bain, and Dr. Morris Birnbaum ("Birnbaum") and Defendant Doug Giordano ("Giordano"), appointed by Pfizer. *Id.* ¶ 41.

On October 27, 2020, Cerevel went public after a de-SPAC transaction with Arya Sciences Acquisition Corp II ("Arya II"), a SPAC[2] sponsored by Defendant Perceptive Advisors ("Perceptive"). *Id.* ¶¶ 42-44. From the transaction, Cerevel received approximately $467 million, which included $147 million from Arya II's trust account and $320 million from a private investment in public equity ("PIPE"). *Id.* ¶ 45. The PIPE occurred alongside the transaction and included investors Bain, who contributed $100 million; Perceptive, who contributed $30 million; and Pfizer, who contributed $12 million. *Id.* Thus, the prior Cerevel owners (Bain, Pfizer, and certain Cerevel management) owned approximately 68.63% of the outstanding Cerevel publicly traded stock and Perceptive owned about 6% of Cerevel's publicly traded stock. *Id.* ¶ 46.

In connection with the transaction, Cerevel entered into multiple shareholder agreements, including an agreement that provided Bain and Pfizer with the right to purchase their *pro rata* proportion of any newly issued Cerevel common stock and nominate directors based on their percentage of ownership to the Cerevel Board (the "Board"). *Id.* ¶¶ 48-51. As a result, Bain had the right to nominate six representatives[3], and Pfizer had the right to nominate two representatives,

---

[2] A SPAC is a blank check company that raises money from public investors for the purpose of acquiring or merging with another company. D.I. 19 ¶ 42.

[3] Two of the six representatives were required to be independent and subject to Pfizer's prior written consent. D.I. 19 ¶ 48.

4

to the twelve person Board. *Id.* ¶ 48. Bain and Pfizer obtained majority ownership of Cerevel's outstanding stock and board nomination, thereby collectively controlling Cerevel. *Id.* ¶ 53. Cerevel's 2023 Form 10-K filed on February 27, 2024 confirmed that Bain and Pfizer "have the ability to strongly influence all corporate actions." *Id.* ¶ 54.

### B.    AbbVie's Origin

In early 2023, Cerevel sought regional partnerships for development of its lead drug, emraclidine. *Id.* ¶ 57. Cerevel contacted several potential partners, including AbbVie. *Id.* Cerevel and AbbVie executed a confidentiality agreement on March 18, 2023, and continued forward with discussions. *Id.*

In May 2023, Cerevel appointed Defendant Ron Renaud ("Renaud") as its new president, Chief Executive Officer, and Board member. *Id.* ¶ 58. Prior to his appointment, Renaud was a partner at Bain and remained as a senior advisor following his appointment. *Id.* In May 2023, AbbVie made an initial proposal to serve as Cerevel's Japanese partner. *Id.* Following discussions extending through August 2023, Cerevel determined and communicated that AbbVie's terms were inadequate. *Id.* ¶ 64. Around this time, specifically on August 31, 2023, the Board created a special transaction committee (the "Special Committee"), which was "established for the express purpose of overseeing the process and considering the terms and conditions associated with a potential royalty or royalty-like financing transaction . . . with respect to the Company's emraclidine program." *Id.* ¶ 65. Among the members of the Special Committee are Defendants Koppel and Giordano. *Id.*

At some point, AbbVie's interest evolved from a partnership to a whole company acquisition. *Id.* ¶ 66. An email dated September 23, 2023, from Cerevel's Chief Business Development & Strategic Operations Officer to Centerview, Cerevel's financial advisor, shows

5

that the Cerevel Board was aware of AbbVie's interest in an acquisition and awaiting a term sheet. *Id.* ¶¶ 66-67. On September 25, 2023, AbbVie formally notified Cerevel that it was withdrawing its interest in partnership. *Id.* ¶ 68. Two days later, on September 27, 2023, the Board held a meeting with Centerview, where it discussed potential strategic paths forward, including M&A themes and trends. *Id.* ¶ 69. During the meeting, the Board acknowledged that Pfizer could be an interested party in a potential acquisition, leading to the recusal of Pfizer's two directors, Defendants Deborah Baron ("Baron") and Suneet Varma ("Varma"), from a portion of the meeting. *Id.* ¶ 70. Centerview advised the Board that a sale of Cerevel would be challenging due to the emraclidine results expected in December 2024; however, a significant number of merger and acquisition transactions have resulted from partnership discussions. *Id.* ¶ 71. Centerview also presented a preliminary scenario that assumed Cerevel would raise $400 million in equity financing before being acquired, resulting in an acquisition price of $53 per share. *Id.* ¶ 72. Two days later, on September 29, 2023, Centerview emailed Renaud talking points for an upcoming discussion with AbbVie, which included noting that AbbVie's interest in a "wholeco proposal" was discussed with the Board. *Id.* ¶ 74. By October 5, 2023, Cerevel had started to build a data room for a potential acquisition by AbbVie. *Id.* ¶ 75.

## C.    The October Offering

On October 10, 2023, the Board approved a secondary public offering of approximately 22.68 million shares for $22.81 per share (the "October Offering"). *Id.* ¶¶ 77, 79. The October Offering was publicly announced on October 11, 2023, and closed on October 16, 2023. *Id.* ¶¶ 79, 85. Bain purchased approximately 5.48 million shares from the October Offering, investing around $124.99 million. *Id.* ¶ 86. Bain's purchase increased its shares from approximately 60.2 million shares to approximately 65.7 million shares (36.4% of Cerevel's stock). *Id.* ¶ 87.

However, while Bain's total shares increased, the October Offering reduced Bain's ownership percentage from 38.2% to 36.4%. *Id.* The shares Pfizer held remained the same at approximately 27.35 million shares. *Id.* However, Pfizer's ownership percentage fell from 17.4% to 15.2%. *Id.* Bain and Pfizer maintained control of Cerevel, together owning approximately 51.6% of Cerevel's stock. *Id.* Perceptive also purchased 876,808 shares, investing approximately $20 million. *Id.* ¶ 91.

### D.    Cerevel's Acquisition by AbbVie

One day after the October Offering closed, on October 17, 2023, AbbVie emailed Cerevel to "follow[] up" regarding their previous discussions. *Id.* ¶ 92. Centerview advised Cerevel to remain consistent with the prior talking points discussed earlier on September 29. *Id.* On October 19, 2023, AbbVie proposed acquiring Cerevel for $35 per share, a 53% premium to the October Offering price of $22.81, less than a week prior. *Id.* ¶ 93. The Board discussed the offer on October 24, 2023. *Id.* ¶ 93.

During a November 1 earnings call, an individual asked Cerevel, "What drove the decision to proactively raise equity capital ahead of your multiple clinical data event in 2024?" *Id.* ¶ 95. Renaud responded that Cerevel had been talking to a number of investors with a significant amount of interest in raising the capital from outside investors. *Id.* They thought it was a "good time", so focus could be on execution in 2024. *Id.*

On November 6, 2023, Renaud met with AbbVie's CEO regarding next steps after the October 19th proposal. *Id.* ¶ 96. On November 7, 2023, AbbVie increased its offer to $40 per share. *Id.* ¶ 97. On November 8, 2023, the Board met with Centerview to discuss the sale process. *Id.* ¶ 98. Centerview presented a discounted cash flow analysis, based on management's model, that implied Cerevel was worth between $50 to $62 per share. *Id.* On November 10, 2023, Renaud

met with AbbVie to discuss the November 7th proposal of $40 per share. *Id.* ¶ 99. The Board met again the next day and determined that AbbVie would need to increase its proposal to a price per share in the mid-$40s to justify further discussions. *Id.* ¶ 100. During the meeting, Centerview estimated that AbbVie had the ability to pay up to $67 per share. *Id.*

On November 17, 2023, AbbVie increased its proposal once more to $41.50 per share, which was immediately advised as insufficient by Renaud. *Id.* ¶ 101. AbbVie indicated that, subject to the completion of diligence and a transaction announcement prior to Christmas, it would be willing to increase its proposal to $45 per share. *Id.* On December 6, 2023, AbbVie and Cerevel announced that AbbVie was to acquire Cerevel for $45 per share. *Id.* ¶ 103. Following the announcement, Cerevel's stock price increased from $36.93 to $41.13 per share and created a profit for Bain of more than $23 million on the shares purchased through the October Offering. *Id.* ¶ 105.

### E.      The Proxy

On January 18, 2024, Cerevel issued its Definitive Merger Proxy (the "Proxy"), which Plaintiffs allege misrepresents and omits material facts concerning the timeline of AbbVie's interest, Cerevel's sales process, and the actual reason for the October Offering. *Id.* ¶¶ 14, 107-9. For example, the Proxy states that, during the September 25, 2023 exchange, AbbVie did not indicate its interest in a whole-company acquisition and "focused on Cerevel's retention of commercial rights in Japan." *Id.* ¶¶ 68, 108. Additionally, the Proxy states that, at the September 27, 2023 Board meeting, the Board directed Cerevel management to continue to execute on its strategic plan developing options to extend cash runway in 2026 and inform AbbVie that "Cerevel was focused on a potential regional partnership in Japan and was not considering other strategic

transactions." *Id.* ¶¶ 73-74. The Proxy also states that AbbVie's initial offer on October 19, 2023 was unsolicited. *Id.* ¶ 108.

Plaintiffs allege that the omissions and misleading statements in the Proxy, concerning the timing of AbbVie's interest and Cerevel's response of launching a sales process, are material because they hid from investors that Bain and Perceptive purchased shares from the October Offering with material non-public information regarding an anticipated sale of Cerevel. *Id.* ¶ 110. Plaintiffs further allege that the misleading statements hid from investors that AbbVie was significantly ahead of other potential bidders and, as a result, the Board did not fairly and fully explore all potential strategic options. *Id.* ¶ 111.

Plaintiffs also allege that the Proxy contains misstatements and omitted material facts regarding Centerview's financial analysis. *Id.* ¶ 112. The Proxy includes a discounted cash flow analysis, which includes a range of implied equity values per Cerevel share of $35.20 to $43.45. *Id.* Additionally, the Proxy includes other Centerview analyses, such as historical stock trading price, analyst price target, and precedent premium paid. *Id.* However, the Proxy omits the "Illustrative M&A Scenario," which Centerview presented to the Board in September 2023 that valued Cerevel at $53 per share. *Id.* The Proxy also omits the financial analysis presented to the Board on November 8, 2023, which included a discounted cash flow model based on management's financial projection implying the Cerevel was worth between $50 to $62 per share. *Id.* Lastly, the Proxy omits that, on November 11, 2023, Centerview calculated a "Preliminary Management Case," which suggested that AbbVie has the ability to pay up to $67 per share for Cerevel. *Id.*

Plaintiffs filed this action on April 3, 2025. On August 13, 2025, Plaintiffs filed an amended class action complaint seeking to recover damages caused by Cerevel and its major

9

shareholders for violations of federal securities law.  D.I. 19.  All Defendants have moved to dismiss.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)6) Motion to Dismiss

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)).  Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, No. 23-1078, 2024 WL 4103719, at *2 (D. Del. Sept. 6, 2024).  "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).  The complaint must contain facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).  While this plausibility standard requires more of the complaint than allegations supporting the mere possibility that the defendant is liable as alleged, plausibility should not be taken to mean probability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 23-239, 2024 WL 2804703, at *1 (D. Del. May 31, 2024).

B.    **The Securities Exchange Act of 1934 ("Exchange Act")**

1.    **Section 10(b)**

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities. Under § 10(b), it is unlawful "[t]o use or employ . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange] Commission may prescribe as necessary or appropriate in the public interest or of rate protection of the investors." 15 U.S.C. § 78j(b). To implement the statute, the SEC enacted Rule 10b-5, violation of which gives rise to a private cause of action. *Ernest & Ernst v. Hochfelder*, 425 U.S. 185 (1976); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). That Rule, in turn, deems it unlawful: (1) "To employ any device, scheme, or artifice to defraud," (2) "[t]o make any untrue statement of a material fact" or to omit to state a material fact so that the statements made, "in light of the circumstances," are misleading, and (3) "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5.

A complaint alleging securities fraud must satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "'[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F. 3d 126, 144 (3d Cir. 2004) (quoting Fed. R. Civ. P. 9(b)). This particularity requirement is "rigorously applied in securities fraud cases." *Id.* In addition, the Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires that the plaintiff "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is

11

formed." 15 U.S.C. § 78u-4(b)(1).  To the extent that the requirements of 9(b) conflict with the PSLRA, "the PSLRA supersedes Rule 9(b) as it relates to Rule 10b-5 actions." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F. 3d 256, 277 (3d. Cir. 2006) (internal quotations omitted).

### 2.    Section 20A

Section 20A creates an explicit private cause of action against any "an insider who trades stock while in possession of material, nonpublic information [and] is liable to any person who traded contemporaneously with the insider." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 541 (3d Cir. 1999); *see also* 15 U.S.C. § 78t-1(a).  To state a claim under Section 20A for insider trading, "a plaintiff must plead a predicate violation of the Exchange Act." *In re Cedant Corp. Litg.*, 60 F. Supp. 2d 354, 378 (D.N.J. 1999).  In addition, a plaintiff must allege "(1) trading by a corporate insider; (2) a plaintiff who traded contemporaneously with the insider; and (3) that the insider traded while in possession of material nonpublic information, and thus is liable for an independent violation of the Exchange Act." *Id.* at 378.

### 3.    Section 14(a)

Section 14(a) prohibits the solicitation of a proxy "in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a)(1).  "The purpose is to prevent management or others from obtaining authorization for corporate actions by means of deceptive or inadequate disclosure in proxy solicitations." *Jaroslawicz v. M&T Bank Corp.*, 962 F. 3d 701, 709 (3d Cir. 2020) (quoting *Seinfeld v. Becherer*, 461 F. 3d 365, 369 (3d Cir. 2006)).  To state a claim under 14(a), plaintiff must allege that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the

particular defect in the solicitation materials, was an essential link to the accomplishment of the transaction." *Id.* at 710.

### 4.    Section 20(a)

Section 20(a) creates liability for "controlling persons" in corporations, and imposes joint and several liability upon anyone who "controls any person liable under any provision of" the Securities Exchange Act of 1934. 15 U.S.C. § 78(t)(a). To maintain a claim, plaintiff must establish (1) an underlying violation by a controlled person or entity, (2) that the defendants are controlling persons, and that they were "in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Rochez Brothers, Inc. v. Rhoades*, 527 F. 2d 880, 885 (3d Cir. 1975).

## III.    DISCUSSION

In their Amended Complaint, Plaintiffs allege four cause of actions: (I) violation of Section 10(b) of The Exchange Act and Rule 10b-5 against Cerevel and Renaud; (II) violation of Section 20A of the Exchange Act against Bain and Perceptive; (III) violation of Section 14(a) of the Exchange Act against Cerevel and; (IV) violation of Section 20(a) of the Exchange Act against Bain, Pfizer and the Director Defendants. *See generally* D.I. 19. Defendants moved to dismiss each count, and the Court addresses each in turn.

### A.    The Court Does Not Dismiss Count I

In Count I, Plaintiffs, on behalf of themselves and the Fraud Claim Class, allege that Cerevel and Renaud violated § 10(b) of the Exchange Act and SEC Rule 10b-5 by knowingly making misleading statements and omissions in connection with the October Offering, merger, and Proxy, which caused harm to Plaintiffs and the Fraud Claim Class. To adequately plead a violation of § 10(b) and Rule 10b-5, the complaint must allege: "(1) a material representation or

omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (quoting *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

Plaintiffs allege that certain statements, in connection with the AbbVie merger, acquisition and sale process, contained material misrepresentations and omissions, and that Cerevel and Renaud had actual knowledge of those misrepresentations and omissions. Specifically, Plaintiffs allege that Cerevel and Renaud made false and misleading statements, and omissions in, during, and as part of: (1) the October 11, 2023 Press Release announcing the October Offering (D.I. 19 ¶¶ 121-22); (2) the October 11, 2023 Preliminary Prospectus Supplement (*Id.* ¶¶ 123-26); (3) the October 12, 2023 Form 8-K and Press Release (*Id.* ¶¶ 127-30); (4) the October 12, 2023 Prospectus Supplement (*Id.* ¶¶ 131-35); (5) the November 1, 2023 Earnings Call (*Id.* ¶¶ 136-37); (6) the December 6, 2023 Merger Announcement and Form 8-K (*Id.* ¶¶ 138-40); and (7) the Proxy (*Id.* ¶¶ 141-48). Moreover, Plaintiffs allege that Cerevel and Renaud had a duty to disclose the truth concerning the merger and the sales process when conducting the October Offering. *Id.* ¶ 174. Plaintiffs further allege that the statements and omissions were made knowingly or recklessly for the purpose and effect of concealing merger prospects and artificially deflating the price of Cerevel's common stock. *Id.* ¶ 175-76.

Defendants Cerevel and Renaud move to dismiss Count I on the grounds that the Amended Complaint fails to identify any material misstatements or omissions that require a duty to disclose, fails to plead scienter, and fails to identify any material misstatements or omissions made after the

merger announcement. For the reasons stated below, the Court denies the request to dismiss Count I.

### 1. Plaintiffs Sufficiently Plead Material Representations or Omissions

Plaintiffs allege that Cerevel and Renaud made misrepresentations and several omissions of material fact. Specifically, Plaintiffs allege that Cerevel and Renaud failed to disclose AbbVie's interest in an acquisition, Cerevel's launch of a related sales process, and the actual reason for the October Offering. D.I. 19 ¶ 122. Cerevel contends that it had no duty to disclose information, and Plaintiffs fail to plead any materially false statement or omission. D.I. 46 at 10.[4]

#### a. Whether a Duty to Disclose Existed

As explained by the Third Circuit, "[e]ven non-disclosure of material information will not give rise to liability under Rule 10b-5 unless the defendant had an affirmative duty to disclose that information." *Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000). That duty may arise "when there is insider trading, a statute requiring disclosure or an inaccurate, incomplete or misleading prior disclosure." *Oran*, 226 F.3d at 285. Plaintiffs allege that a duty to disclose arose due to insider trading. D.I. 19 ¶ 174. Specifically, Plaintiffs allege that Cerevel and Renaud "had a duty to disclose the truth regarding AbbVie's merger interest and Cerevel's related launch of sales process when conducting the October Offering, where inside shareholders Bain and Perceptive collectively purchased millions of shares while in possession of material non-public information." *Id.* Cerevel claims that it had no duty to disclose the facts of its negotiations with AbbVie. Cerevel contends that Plaintiffs fail to allege that Cerevel traded its own securities during the relevant time

---

[4] The Court notes that Cerevel's briefing appears to be noncompliant with this District's Local Rules. In particular, Cerevel's opening and reply briefs appear to not be double spaced, as required by D. Del LR 7.1.3(a)(2). *See also* D. Del. LR 5.1.1(a).

period, instead pointing only to transactions by other companies, such as Bain and Perceptive. D.I. 46 at 11. Cerevel further contends that the fact Cerevel sold its own shares in the October Offering does not trigger disclosure because no allegations exist that suggest trading was based on inside information about the merger. *Id.*

The Court finds that Plaintiffs have sufficiently pleaded that Cerevel and Renaud had a duty to disclose the discussions about the potential merger with AbbVie. "[A] corporate insider must abstain from trading in the shares of his corporation unless he has first disclosed all material information known to him." *Chiarella v. United States*, 445 U.S. 222, 227 (1980). During the October Offering, where Cerevel sold over 22 million of its own shares, inside shareholders Bain and Perceptive purchased millions of shares of Cerevel. Cerevel's sale of its securities triggered a duty to disclose material non-public information to investors. *See McCormick v. Fund American Cos., Inc.*, 26 F. 3d 869, 876 (9th Cir. 1994) ("[T]he corporate issuer in possession of material nonpublic information must, like other insiders in the same situation, disclose that information to its shareholder or refrain from trading with them). Therefore, Plaintiffs have sufficiently alleged that Cerevel had a duty to disclose these transactions in connection with the potential merger with AbbVie.

> **b.    Whether the Merger Discussions with AbbVie were Material**

The Court must next assess whether the alleged merger discussions were material. Material information is "information that would be important to a reasonable investor in making his or her investment decision." *Oran*, 226 F.3d at 282 (internal quotations omitted). Importantly, the Supreme Court has considered this question and held that whether merger discussions are material depends on the facts of the case. *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988). The Supreme Court stated that, "[g]enerally, in order to assess the probability that the [merger] will occur, a

factfinder will need to look at indicia of interest in the transaction at the highest corporate levels." *Id.* "Materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information." *Id.*

Based on Plaintiffs' allegations, by the time the October Offering was announced, Cerevel and Renaud knew of AbbVie's interest in an acquisition and were awaiting a term sheet, as evidenced by a September 23 email. Additionally, the Board conferred with Cerevel's financial advisors, Centerview, regarding what may be required for an acquisition, and Centerview prepared Renaud for a discussion with AbbVie regarding the acquisition. Furthermore, Cerevel took concrete steps toward a potential acquisition by initiating the creation of a data room to facilitate due diligence. While Cerevel may contend that the negotiations were only in their infancy, the allegations suggest that they progressed well beyond mere exploratory talks. *See e.g., Holmes v. Bateson*, 583 F. 2d 542, 558 (1st Cir. 1978) (merger negotiations found to be material even though no discussion of terms had occurred yet); *S.E.C. v. Gaspar*, No. 83-3037, 1985 WL 521, at *1 (S.D.N.Y. Apr. 16, 1985) (merger negotiations found to be material despite no actual tender offer); *Melcher v. Fried*, No. 16-2440, 2018 WL 6326334, at *13 (S.D. Cal. Dec. 4, 2018) (merger negotiations found to be material). The Court finds it reasonable to conclude that the likely prospect of an acquisition would have had significance on each shareholder's assessment of the value of his stock. Thus, Plaintiffs have sufficiently plead that the merger negotiations were material.

c. **Whether Pre-Merger and Post-Merger Statements and Omissions were Misleading**

As previously discussed in Section (B)(1), when analyzing a motion to dismiss a Section 10(b) and Rule 10b-5 claim, the PSLRA requires specificity as to each statement alleged to have

17

been misleading or false, the reason the statement is misleading or false, and scienter plead with particularity. See 15 U.S.C. § 78-u4(b)(1)(B)-2(A). "To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Sec. Litg.*, 306 F. 3d 1314, 1330 (3d Cir. 2002) (citation omitted). "Silence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic Inc.*, 485 U.S. at 239. Moreover, an omission may constitute a violation only where there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *MatriXX Initiatives, Inc.*, 563 U.S. at 38. In this case, where liability is based on alleged misstatements or omissions, "the falsity inquiry must focus on whether each individual statement the plaintiff has identified was, as written or spoke and at the time the statement was made, actually false or misleading by omission." *Handal v. Innovative Indus. Props., Inc.*, 157 F.4th 279, 294 (3d Cir. 2025).

> **i.    Plaintiffs Have Sufficiently Plead that Certain Pre-Merger Statements and Omissions were Misleading**

The Court evaluates each document or statment identified by Plaintiffs prior to the merger announcement[5] to determine whether any of them contain materially misleading statements or omissions.

*October 11 Press Release.* The Court first considers the October 11 press release announcing the October Offering. Based on Plaintiffs' allegations, the press release merely

---

[5] For purposes of this analysis, prior to the merger announcement includes: the October 11, 2023 Press Release, the October 11, 2023 Preliminary Prospectus Supplement, the October 12, 2023 Form 8-K and Press Release, the October 12, 2023 Prospectus Supplement, and the November 1, 2023 Earnings Call.

announced the October Offering.  D.I. 19 ¶ 121.  Plaintiffs did not allege that the press release made any affirmative statements regarding Cerevel. *See Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 487–88 (S.D.N.Y. 2009), *aff'd sub nom., Thesling v. Bioenvision, Inc.*, 374 F. App'x 141 (2d Cir. 2010) ("[s]tatements that do not raise the subject of mergers, even tangentially, cannot impose a duty to disclose all material information concerning merger discussions").  While the Court has found that Plaintiffs have sufficiently pled both the existence of a duty and the materiality of the merger negotiations, the limited content of the press release, as set forth in the Amended Complaint, could not reasonably mislead a reasonable investor.  Therefore, Plaintiffs fail to sufficiently plead that the press release was misleading.[6]

*October 11 Preliminary Prospectus.*  Turning to the October 11 Preliminary Prospectus filed by Cerevel, Plaintiffs allege that statements detailing Cerevel's current intended use of the October Offering proceeds are false and misleading because the statements omit merger discussions and misrepresent the real reason for the October Offering.  D.I. 19 ¶¶ 124, 126.  A review of the Amended Complaint reflects that Cerevel's statements regarding its intended use of proceeds are framed in broad and generalized terms.  *See Burlington Coat Factory*, 114 F.3d at 1427 ("[c]laims of these kinds of vague expressions [that] could dupe the market have been almost uniformly rejected by courts").  Therefore, Plaintiffs fail to sufficiently plead that the prospectus was misleading.

*October 12, 2023 Form 8-K and Press Release.*  The Court next examines the October 12, 2023 Form 8-K and Press Release.  Plaintiffs allege that the Form 8-K announced that Cerevel had entered into an agreement with Goldman Sachs in connection with the October Offering, and that

---

[6] At oral argument, Plaintiffs were asked multiple times to identify what was misleading within this document and Plaintiffs could not. *See* D.I. 105 at 22:24-23:12; 27:22-28:11; 29:1-15.

it was offering approximately 19 million shares at a public offering of $22.81 per share.  D.I. 19 ¶ 127.  The attached press release announced the price of $22.81 per share.  *Id.* ¶ 128.  Plaintiffs claim that the documents are false and misleading because the documents omit merger discussions. *Id.* ¶¶ 129-30.  For the same reasons discussed with respect to the October 11 Press Release, Plaintiffs fail to sufficiently plead that the October 12, 2023 Form 8-K and Press Release were misleading.

*October 12, 2023 Preliminary Prospectus.*  With respect to the October 12, 2023 Preliminary Prospectus, Plaintiffs assert the same allegations raised concerning the October 11 Preliminary Prospectus.  *Id.* ¶¶ 131-36.  Therefore, the same analysis applies, and Plaintiffs fail to sufficiently plead that the October 12, 2023 Prospectus was misleading.

*November 1, 2023 Earnings Call.*  Lastly, the Court evaluates the November 1, 2023 earnings call.  Plaintiffs allege that, during the call, an analyst inquired about the decision to raise equity capital ahead of the multiple clinical data events in 2024.  *Id.* ¶ 136.  Renaud responded that, after talking to several investors, there was "a significant amount of interest in doing a raise from outside investors" and "[t]hey thought it was good time, so focus could be on execution in 2024."  *Id.*  Plaintiffs allege that Renaud's response was misleading because he omitted the existence of merger discussions and the actual reason for the October Offering, which bore directly on capital needs.  *Id.* ¶ 137.

The Court finds that the allegations concerning the November 1 earnings call present a close question.  By November 1, merger discussions were underway with at least one formal offer, and Board discussions occurred regarding the offer.  Since the discussions had progressed beyond mere exploratory talks and Centerview had advised the Board in September about a prospective pathway towards a merger, the omission could plausibly have altered the "total mix" of

20

information available to investors. *See MatriXX Initiatives, Inc.*, 563 U.S. at 38; *Williams v. Globus Med., Inc.*, 869 F. 3d 235, 241 (3d Cir. 2017) ("Once a company has chosen to speak on an issue – even an issue it had no independent obligation to address – it cannot omit material facts related to the issue so as to make its disclosure misleading.") However, it is also plausible that Renaud's explanation was not misleading at the time. But, at the pleading stage, and drawing all reasonable inferences in Plaintiffs' favor, the Court cannot conclude that the omission was immaterial or that the statements were not misleading. *See Semerenko v. Cendant Corp.*, 223 F. 3d 165, 178 (3d Cir. 2000) ("the issue of materiality typically presents a mixed question of law and fact"). Therefore, Plaintiffs have plausibly alleged that Renaud's statements on the November 1, 2023 earnings call were misleading.

> ## ii. Plaintiffs Have Sufficiently Plead that the Merger Announcement and Form 8-K Contained Statements and Omissions Rendering the Documents Misleading

Plaintiffs allege that Cerevel's December 6, 2023 Form 8-K and accompanying press release announcing the merger with AbbVie at $45 per share are materially false, misleading, and omit several material facts. D.I. 19 ¶¶ 138-39. Specifically, Plaintiffs allege that the documents omitted material facts about "the process whereby Cerevel agreed to be sold to AbbVie," which obscured from investors the timing of AbbVie's acquisition interest prior to the October Offering and the actual reason for the October Offering. D.I. 19 ¶ 140. Cerevel contends that the Amended Complaint fails to identify any material misstatement or omission. D.I. 46 at 16. Cerevel contends that "it is impossible to see" how any alleged misstatement or omission could be material once investors were informed of the mutually agreed upon offer. *Id.* at 16-17. Plaintiffs respond that the misstatements and omissions were material because "they created a false impression that AbbVie was on a level playing field with other bidders and that Centerview's financial analyses

21

supported the $45 Merger price." D.I. 69 at 22. Additionally, Plaintiffs contend that the misstatements and omissions "concealed the real reason for the October Offering" and "obfuscated Bain and Perceptive's motivation to quickly sell Cerevel." *Id.* at 21.

Plaintiffs' allegations sufficiently allege that Cerevel had not fully disclosed information related to the sale process with AbbVie. Thus, Plaintiffs have sufficiently alleged that the omissions in the Form 8-K were misleading.

### iii.    Plaintiffs Have Sufficiently Plead that the Post-Merger Statements and Omissions were Misleading

Plaintiffs allege that the Proxy, issued by the Board and signed by Renaud, states that Cerevel's discussion with AbbVie on September 25, 2023 "focused on Cerevel's retention of commercial rights in Japan and AbbVie did not indicate that an offer to acquire Cerevel would be forthcoming". D.I. 19 ¶¶ 141-42. The Proxy also states that AbbVie's initial offer on October 19, 2023 was an "unsolicited offer." *Id.* ¶ 144. Plaintiffs also allege that the Proxy's statements concerning the timing of AbbVie's interest are misleading in light of the September 27, 2023 email indicating AbbVie's interest and that a term sheet was coming. *Id.* ¶¶ 144-45. Importantly, the Proxy presents a chronology that suggests AbbVie's interest arose later. *Id.* The Court agrees that, drawing all reasonable inferences in Plaintiffs' favor, the Amended Complaint sufficiently alleges that the omission renders the statements misleading.

Plaintiffs also allege that the Proxy contained misstatements and omissions regarding Centerview's financial analysis. *Id.* ¶ 146. Specifically, Plaintiffs allege that the Proxy excluded important financial analyses presented to the Board that did not support the merger price of $45 per share. *Id.* ¶ 146. The analyses included a scenario valuing Cerevel at $53 per share, a discounted cash flow model implying Cerevel was valued at $50 to $63 per share, and calculations

22

stating that AbbVie had the ability to pay up to $67 per share. *Id.* The Court again agrees, drawing all reasonable inferences in Plaintiffs' favor, that the Amended Complaint sufficiently alleges that the omissions render the statements misleading. It is reasonable to conclude that the omissions of the analyses altered the "total mix" of information available to investors because the Proxy created a distorted view of Cerevel, thereby limiting shareholders' ability to make informed decisions. *See MatriXX Initiatives, Inc.*, 563 U.S. at 38. Therefore, Plaintiffs have sufficiently alleged that the omissions in the Proxy regarding the financial analyses were misleading.

For the foregoing reasons, the Court finds that Plaintiffs have sufficiently plead that the omission of merger discussions in Renaud's statements during the November 1, 2023 earnings call, and the omission of the timing of merger discussions and the financial analyses in the December 6, 2023 Form 8-K and Proxy constitute material representations or omissions.

### 2.    Plaintiffs Sufficiently Plead Scienter

To survive a motion to dismiss, Plaintiffs must adequately plead scienter, which is "the defendant's intention to deceive, manipulate, or defraud," *Tellabs*, 551 U.S. at 313 (internal citation and quotation omitted), requiring "a knowing or reckless state of mind." *Institutional Investors Group v. Avaya, Inc.*, 564 F. 3d 242, 267 (3d Cir. 2009). "Under the PSLRA's second pleading requirement, a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* at 267 (quoting 15 U.S.C. § 78u-4(b)(2)). The standard is met "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Moreover, a court's analysis entails "whether all the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.*

23

at 322. "To determine whether the plaintiff has alleged facts that give rise to requisite strong inference of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.*

When a claim for a violation under § 10(b) of the Exchange Act and SEC Rule 10b-5 is brought against a corporate defendant, this Court must first determine whether Plaintiffs "adequately pleaded the requisite state of mind on the part of an individual officer alleged to have made, or participated in the making of, false or misleading statements on behalf of the corporation." *City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 421 (D. Del. 2009). "[The] corporate defendant will not be held liable absent a showing that at least one individual officer who made, or participated in the making of, a false or misleading statement did so with scienter." *Id.* Considering this, the Court first considers Plaintiffs' scienter allegations against Renaud.

Defendant Renaud contends that Plaintiffs' allegations stating he was part of an unlawful scheme to facilitate Bain's acquisition of Cerevel stock, at artificially deflated prices, in the October Offering and, subsequently sold that stock at a significantly deflated price, in the Merger, to benefit Bain and obtain change of control compensation fails to rise to a strong inference of scienter. D.I. 57 at 5. First, Renaud contends that Plaintiffs' theory rests on the flawed premise that the October Offering benefitted Bain. *Id.* According to Renaud, Bain did not receive any benefit from the October Offering. *Id.* Second, Renaud contends that, even if the October Offering was beneficial to Bain, Plaintiffs offer no support that Renaud was incentivized to maximize profit for Bain. *Id.* Renaud further contends that the alleged scheme would have caused him harm because the October Offering diluted his equity interest in Cerevel. *Id.* Moreover, Renaud

contends that two-thirds of his compensation was equity; therefore, a significantly deflated price would have been "doubly detrimental" to his "already-diluted equity stake." *Id.* at 6.

Plaintiffs respond that the Amended Complaint shows that Renaud's scienter is established through actual knowledge and participation in the merger negotiations. D.I. 72 at 8; D.I. 105 82:7-13. Specifically, Plaintiffs allege that Renaud knew of the September 23, 2023 email, where a spreadsheet indicated AbbVie's interest and forthcoming term sheet. Moreover, the Board discussed AbbVie's interest and Renaud received talking points on September 29, 2023 in preparation for a discussion with AbbVie about its interest in a merger. Additionally, Plaintiffs contend that Renaud had motive because his financial interests were directly tied to the merger.

After considering the pleaded facts, the Court concludes that Plaintiffs have adequately alleged that Renaud had knowledge of AbbVie's interest at the time of the alleged misleading statements and omissions. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004) ("It is certainly true that in a non-disclosure situation, any required element of scienter is satisfied . . . where the defendant had actual knowledge of the material information.") (internal citations omitted). Plaintiffs' allegations that point to emails regarding AbbVie's interest, preparation materials from Cerevel's financial advisors, and minutes from board meeting, support a reasonable inference that Renaud was aware of a concrete and non-speculative interest from AbbVie. Against that backdrop, Renaud's discussion related to Cerevel's capital raising during the November 1, 2023 earnings call, without disclosing ongoing merger interest, plausibly created a materially misleading impression of Cerevel's financial condition and strategic plan. Considering the timeline related to AbbVie's interest and the omissions, as well as Renaud's role, the inference that Renaud acted with intent to deceive, or at minimum, deliberate recklessness is at least as compelling as the opposing nonculpable inferences offered by Renaud.

25

Plaintiffs' allegations of scienter based on Renaud's motive and opportunity provide some additional support for scienter, but do not, standing alone, suffice to support a strong inference of scienter. *See Avaya, Inc.*, 564 F. 3d at 276-77 (explaining that motive and opportunity allegations are insufficient as a means of independently establishing scienter). Plaintiffs allege that Renaud's compensation of approximately $74 million gave him a direct financial stake in consummating a merger. D.I. 19 ¶ 120. Moreover, Plaintiffs contend that Renaud acted as Cerevel's CEO and a Senior Advisor to Bain, indicating that he was "financially and professionally tied to Bain" and "owed fiduciary obligation to Cerevel's public shareholders." D.I. 72 at 11. While such allegations may suggest a generalized motive, courts have consistently held that, without more, allegations regarding position and increased financial compensation do not give rise to a strong inference of fraudulent intent. *See GSC Partners CDO Fund*, 368 F.3d at 237 ("In every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will reap financial benefits from a successful transaction. Such allegations alone cannot give rise to a strong inference of fraudulent intent."). Since allegations of motive and opportunity may "be considered along with all other allegations in the complaint," the Court considers Plaintiffs' allegations of Renaud's motive and opportunity as part of the Court's collective scienter analysis. *See Avaya, Inc.*, 564 F. 3d at 277-78. However, as stated above, Plaintiffs' allegations regarding Renaud's awareness of AbbVie's interest, together with the timing of the statements and omissions, support a strong inference of scienter.

Having considered all the allegations of scienter, the Court finds that the Amended Complaint sufficiently pleads with "particularity facts giving rise to a strong inference" that Renaud acted consciously or recklessly with respect to the alleged omissions and misstatements. *See supra* (III)(A)(2); *see also* 15 U.S.C. § 78u-4(b)(2). Since Renaud acted as the CEO of

Cerevel, Plaintiffs have also sufficiently plead scienter with respect to Cerevel. *See City of Roseville Employees' Ret. Sys.*, 686 F. Supp. 2d at 421 ("corporate defendant will not be held liable absent a showing that at least one individual officer").

### 3.    Plaintiffs Sufficiently Plead Loss Causation

Cerevel contends that Plaintiffs fail to plead loss causation for any statement or omission. Specifically, Cerevel contends that Plaintiffs do not plead any facts to support the assertion that it suffered losses after the merger announcement on December 6, 2023. D.I. 46 at 21. "Loss causation is a causal connection between the material misrepresentation and the loss." *Adams v. Klein*, No. 18-1330, 2021 WL 4439658, at *15 (D. Del. Sept. 28, 2021) (internal quotations omitted). To prove causation, "the plaintiff must show that the defendant misrepresented or omitted the very facts that were substantial in causing the plaintiff's economic loss." *McCabe v. Ernst & Young, LLP*, 494 F. 3d 418, 426 (3d Cir. 2007).

Plaintiffs rely on the merger announcement that occurred on December 6, 2023 to allege loss causation. On that day, Plaintiffs allege that Cerevel and AbbVie announced its merger at $45 per share, and "partially corrected" misrepresentations and omissions. D.I. 19 ¶ 153. In light of the announcement, Plaintiffs were induced to sell shares at prices "below the actual value of those securities, including by selling their shares into the Merger for inadequate Merger Consideration." *Id.* Plaintiffs allege that the false and misleading statements and omissions caused the price of the shares to be artificially deflated. *Id* ¶ 150. Plaintiffs further allege that, had they not been induced to sell, they could have secured fair value of their shares through appraisal. *Id.* ¶ 153. Cerevel contends that Plaintiffs suffered no loss because there is "no reason to believe those theoretical values could have actually been obtained." D.I 46 at 21.

The Court finds that Plaintiffs have sufficiently alleged loss causation. At the pleading stage, loss causation is governed by Federal Rule of Civil Procedure 8(a), not the heightened standards applicable to falsity or scienter. *See In re Heckmann Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 541 (D. Del. 2012). Plaintiffs allege that the merger announcement did not fully correct earlier omissions, thereby cementing a value deflated by incomplete disclosures. At this stage, the Court cannot conclude that Plaintiffs' claim does not meet the standard of "substantive plausibility." Thus, Plaintiffs are entitled to offer evidence to support their claim.

For the foregoing reasons, the Court denies Cerevel's (D.I. 41) and Renaud's (D.I 50) motions to dismiss with respect to Count I.

## B.   The Court Grants-in-Part and Denies-in-Part Dismissal of Count II

In Count II, Plaintiffs, on behalf of themselves and the Insider Trading Claim Class, allege that Bain and Perceptive violated Section 20A of the Exchange Act. To state a claim, Plaintiffs must allege (1) a predicate violation of the Exchange Act, (2) that Plaintiffs traded contemporaneously with the insider; and (3) that the insider traded while in possession of material nonpublic information. *See In re Cedant Corp. Litg.*, 60 F. Supp. 2d at 378.

Both Perceptive and Bain contend that Plaintiffs fail to plead a predicate exchange violation, and therefore Plaintiffs' claim cannot proceed. D.I. 53 at 7; D.I. 45 at 7. With respect to Perceptive, the Court agrees. "Liability under Section 20A is predicated upon an independent violation . . . requiring proof of a separate underlying violation of the Exchange Act." *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 541. Plaintiffs claim that the predicate violation is the Section 20(a) claim against Giordano. D.I. 105 at 68:12-13; 71:23-25. However, as detailed *infra* § (III)(D)(1), Plaintiffs fail to sufficiently allege a Section 20(a) claim against Giordano, the

28

Managing Director of Perceptive. Therefore, Plaintiffs Section 20A claim against Perceptive also fails.

With respect to Bain, Plaintiffs sufficiently plead a 20(a) claim against Bain. *See infra* § (III)(D)(2). Thus, Plaintiffs allege a predicate violation of the Exchange Act. *See In re Refco, Inc. Litig.*, 503 F. Supp. 2d 611, 665 (S.D.N.Y. 2007) (finding that a violation of §20(a) could serve as a predicate violation under §20A). To satisfy the second element, contemporaneous trading, Plaintiffs allege that, on October 16, 2023, Bain purchased 5,480,052 shares of Cerevel stock valued at over $124 million, and Plaintiff Atlas Diversified Master Fund, Ltd. also traded Cerevel stock. D.I. 19 ¶¶ 24, 86; *see also* D.I. 19-1 at 4. Bain contends that Plaintiffs fail to allege that they traded contemporaneously with Bain. D.I. 45 at 22. However, Bain's argument does not negate Plaintiffs' allegation that the trading at issue occurred on the same day as Bain's purchase. *See In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 379 (D.N.J. 1999) (finding that the contemporaneous requirement was satisfied where complaint alleged that certain class representative traded on one of the days that defendant traded). Therefore, Plaintiffs have sufficiently alleged that Plaintiffs traded contemporaneously with Bain.

Lastly, Plaintiffs allege that Bain purchased shares while in possession of material, non-public information about the prospective AbbVie merger. D.I. 19 ¶ 182. Bain contends that Plaintiffs fail to plead materiality or possession of the alleged material, non-public information. D.I. 45 at 8. Bain's arguments regarding materiality fail for the reasons discussed *supra* § (III)(A)(1)(b). As to possession, Bain contends that Plaintiffs "fail to plead particularized facts showing what, if any, information regarding the alleged expression of interest was actually 'possessed' by Bain itself prior to its purchase." *Id.* at 9. However, Plaintiffs specifically allege that, at the time of Bain's purchase, Bain, through its ownership of Cerevel and Board designees,

29

knew that "AbbVie had already conducted meaningful due diligence into Cerevel and was interested in a whole-company acquisition; Cerevel was 'awaiting a term sheet' from AbbVie; and Cerevel had begun pulling together a data room for a whole-company transaction." D.I. 19 ¶ 182; D.I. 68 at 12. Accepting all factual inferences in Plaintiffs' favor[7], the allegations sufficiently allege that Bain was in possession of material, non-public information at the time of its transaction. Therefore, the Court finds that Plaintiffs have sufficiently alleged a violation of Section 20A with respect to Bain.

For the reasons stated above, the Court grants Perceptive's motion to dismiss Count II (D.I. 49) and denies Bain's motion to dismiss Count II (D.I. 43).

## C.    The Court Does Not Dismiss Count III

In Count III, Plaintiffs, on behalf of themselves and the Proxy Claim Class, allege that Cerevel violated Section 14(a) of the Exchange Act. To state a claim under Section 14(a), Plaintiffs must allege that (1) the Proxy contained a material misrepresentation or omission; (2) which caused the Plaintiffs' injury and (3) the Proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link to the accomplishment of the transaction. *Jaroslawicz*, 962 F. 3d at 710.

Plaintiffs allege that Cerevel made several false statements and omissions of material fact in the Proxy, including the misleading timing of AbbVie's merger interest, Cerevel's launch of a sale process, and omitting critical financial analyses presented to the Board. D.I. 19 ¶ 188. As a

---

[7] The standard on a motion to dismiss "is not whether a plaintiff will ultimately prevail." *Thibault v. Delaware Tech & Cmty. Coll.*, No. 11-1080, 2012 WL 2073847. At *1 (D. Del. June 8, 2012) (citation omitted). Rather, the Court need only be convinced that the complaint present "enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of Plaintiffs' claims. *Phillips v. Cnty of Allegheny*, 515 F. 3d 224, 234 (3d Cir. 2008).

30

result, Plaintiffs were induced to vote their shares, accept inadequate consideration, and forego available appraisal rights. *Id.* ¶ 189. Plaintiffs further allege that Cerevel was aware at the time the Proxy was issued that it was materially false or misleading regarding the timing of AbbVie's interest. *Id.* ¶ 190.

The Court finds that Plaintiffs sufficiently alleged a violation of Section 14(a). Plaintiffs have alleged that Cerevel acted negligently in the issuance of the Proxy, which contained an omission of material fact. *See Gould v. American-Hawaiian S.S. Co.*, 535 F. 2d 761, 777 (3d Cir. 1976) (negligence is the appropriate standard under 14(a)). Additionally, Plaintiffs have alleged that the Proxy omission caused them injury, and the Proxy solicitation itself was a link to the transaction. Cerevel's arguments regarding materiality and loss causation are unavailing. D.I. 46 at 24. The Court has already discussed and concluded above in Sections A(1)(b) and A(3) that the alleged omissions are material and that Plaintiffs sufficiently alleged loss causation. Thus, Plaintiffs have sufficiently plead a violation of Section 14(a) and the Court denies Cerevel's motion to dismiss Count III (D.I. 41).

**D.    The Court Grants-in-Part and Denies-in-Part Dismissal of Count IV**

In Count IV, Plaintiffs, on behalf of themselves and all Class members, allege that Bain, Pfizer, and the Director Defendants[8] are liable under Section 20(a) of the Exchange Act. To state a claim under Section 20(a), Plaintiffs must allege "(1) a primary violation of the federal securities laws by a controlled person or entity; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful way a culpable participant in the primary violation." *Pelham v. VBIT Techs. Corp.*, No. CV 23-162, 2025 WL 947867, at *11 (D. Del. Mar.

---

[8] The Director Defendants are Renaud, Koppel, Gordon, Patrick, Baron, Varma, McKernan and Giordano.

31

28, 2025). The heightened standard of the PSLRA applies to Section 20(a). Thus, such claims must "state with particularity the circumstances of both the defendants' control of the primary violator, as well as of the defendants' culpability as controlling persons." *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d at 560. As discussed above in Section III(A), Plaintiffs have sufficiently alleged a § 10(b) violation, thereby satisfying the requirement of an underlying securities violation.

### 1. Plaintiffs Fail to Sufficiently Plead Control Person Liability for the Director Defendants Koppel, Gordon, Patrick, Baron, Varma, McKernan and Giordano

To support their allegations of control person liability for the Director Defendants, under Section 20(a), Plaintiffs allege that "each of the Director Defendants reviewed and approved the Proxy", "had access to and understood the true timing of AbbVie's interest" and "received and reviewed the valuation analyses that were excluded from the Proxy." D.I. 19 ¶ 196. To establish controlling person liability under Section 20(a), a defendant must possess actual control over the transaction in question. *Sheehan v. Little Switzerland, Inc.*, 136 F. Supp. 2d 301, 315 (D. Del. 2001). "It is well settled that the mere fact that an individual is a director of a firm is not sufficient to show he is a controlling person of the firm." *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002) (cleaned up).

Plaintiffs fail to allege, with specificity, that the Director Defendants had control. *See Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 227 (S.D.N.Y. 2009) ("The PSLRA's heightened pleading standards apply to Section 20(a) claims."). Except for Renaud, Plaintiffs do not allege involvement of the Director Defendants beyond their service on the Board. Plaintiffs' theory rests on the assertion that, by virtue of their positions as directors, the Director Defendants necessarily had access to, and therefore must have known, the relevant information. Allegations of access based solely on board membership, without more, are

32

insufficient to support a finding of control under Section 20(a). *See id.* ("Instead, the complaint essentially charges that the individual defendants must have known about the alleged misstatements and omissions because they had access to the statements by virtue of their positions as directors. Such allegations alone clearly cannot support a finding of control under Section 20(a).").

During the oral argument, Plaintiffs argued that the Court should consider the Director Defendants' inaction to stop as the alleged fraud. D.I. 105 at 95:3. However, "[i]naction alone cannot be a basis for liability." *Rochez Brothers, Inc.*, 527 F. 2d at 890. "Section 20(a) liability can only be premised on inaction if the plaintiff proves both knowledge of the underlying fraud and that the inaction was deliberate and done intentionally to further the fraud." *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 61 F. Supp. 3d 391, 397 (D. Del. 2014) (cleaned up). Plaintiffs have failed to sufficiently allege either prong with respect to the Director Defendants. Therefore, Plaintiffs have failed to sufficiently plead a violation under Section 20(a) for Director Defendants Koppel, Gordon, Patrick, Baron, Varma, McKernan and Giordano.

### 2.    Plaintiffs Sufficiently Plead Control Person Liability for Pfizer and Bain

In contrast, the Court finds that Plaintiffs have met the requirements under Section 20(a) for Pfizer and Bain. Plaintiffs allege that, due to Bain and Pfizer's stock ownership, appointment of Board members, contractual rights, and position, Bain and Pfizer had power and influence to control Cerevel. D.I. 19 ¶ 195. Plaintiffs further allege that Bain and Pfizer were provided with or had unlimited access to Cerevel documents. *Id.* Bain contends that Plaintiffs plead no factual basis for grouping Bain and Pfizer together. D.I. 43 at 23. Bain further contends that its stock ownership and board representation are not enough to allege control person liability. *Id.* Pfizer

33

contends that Plaintiffs fail to allege that Pfizer held a majority economic or voting interest in Cerevel, nominated or controlled a majority of Cerevel's Board, or possessed the authority to control the contents of Cerevel's public statements and disclosures. D.I. 40 at 10. In response, Plaintiffs maintain that Pfizer and Bain collectively controlled Cerevel due to their majority ownership of stock and nomination of or affiliation with the majority of the Board after the de-SPAC transaction. D.I. 67 at 10.

Courts generally evaluate each defendant's control separately "unless there is some basis on which to consider their collective action" because "a contrary holding would mean that any shareholder, no matter how small, could be grouped with others to form a majority control group, even absent any allegations or facts supporting that shareholder's actual control." *LLDVF, L.P. v. Dinicola*, No. 09-1280, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010). Contrary to the arguments set forth by Pfizer and Bain, Plaintiffs have alleged a sufficient basis upon which collective action may be considered. Additionally, several factors are involved in determining a controlling person. *See Rochez Brothers, Inc.*, 527 F. 2d at 890. "In making this determination, the courts have given heavy consideration to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof." *Id.*; 17 C.F.R § 240.12b-2 (defining "control" or "controlling" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise.")

First, Plaintiffs allege that, Pfizer and Bain jointly contributed resources to create Cerevel. *See* D.I. 19 ¶¶ 38-39. Second, following the October Offering, Pfizer and Bain together owned 51.6% of Cerevel's outstanding stock. *Id.* ¶ 87 (Bain held 36.4% and Pfizer held 15.2%). Third, eleven out of the twelve board members were either current or former employees of Bain and

34

Pfizer. *Id.* ¶ 55. Fourth, Cerevel's 2023 Form 10-K filed February 27, 2024 disclosed that, "[a]s long as [Bain and Pfizer] each own or control a significant percentage of outstanding voting power, they will have the ability to strongly influence all corporate actions requiring stockholder approval" and Cerevel is a "controlled company" under applicable NASDAQ rules *Id.* ¶ 54. Additionally, Bain filed a Schedule 13D on October 18, 2023 stating that the entities "may be deemed a group for purposes of Section 13(d) under the Securities Exchange Act of 1934." *Id.* ¶ 87. Considering the allegations as a whole, Plaintiffs allege facts sufficient to support a plausible inference of control of Cerevel by Bain and Pfizer under Section 20(a). *See City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, No. 23-04146, 2025 WL 1577315, at *17 (D.N.J. June 4, 2025) (denying dismissal of a 20(a) claim where minority shareholders were viewed collectively); *McKenna v. Smart Techs. Inc.*, No. 11-7673, 2012 WL 1131935, at *20 (S.D.N.Y. Apr. 3, 2012) (analyzing collective control of two shareholders). Moreover, the ultimate determination of whether Pfizer and Bain were controlling persons involves questions of fact that the Court will not resolve at the pleading stage. *See In re Cendant Corp. Litig.*, 60 F. Supp. 2d at 379; *Baker v. MBNA Corp.*, No. 05-272, 2007 WL 2009673, at *8 (D. Del. July 6, 2007).

The parties dispute whether Plaintiffs must also allege culpable participation to withstand a motion to dismiss. Courts in this Circuit are divided on whether culpable participation must be plead to survive a motion to dismiss. *See Pelham v. VBIT Techs. Corp.*, No. 23-162, 2025 WL 947867, at *12 (D. Del. Mar. 28, 2025). Some recent decisions have examined complaints to determine whether allegations of culpable conduct are sufficiently plead. *Id.* However, given the ongoing dispute and "overwhelming trend in the Third Circuit that culpable participation need not be plead to survive a motion to dismiss," the Court concludes that, at the pleading stage, Plaintiffs

have adequately plead a Section 20(a) violation against Bain and Pfizer. *Zhengyu He v. China Zenix Auto Int'l Ltd.*, No. 21815530, 2020 WL 3169506, at *13 (D.N.J. June 12, 2020).

### 3.    Plaintiffs Sufficiently Plead Control Person Liability for Renaud

Plaintiffs allege that Renaud, as Cerevel's CEO, signed the Proxy, spoke during the November 1, 2023 earnings call, approved the October Offering, and was personally involved in the merger discussions with AbbVie. D.I. 19 ¶¶ 7, 62-63, 77, 95, 136, 196. Thus, Plaintiffs contend that Renaud is liable under Section 20(a) for controlling Cerevel. D.I. 72 at 14. Renaud responds that Plaintiffs fail to allege culpable participation as required under Section 20(a). D.I. 85 at 4.

Plaintiffs have adequately plead a primary violation of Section 10(b) against Renaud as discussed above in Section A. Thus, Plaintiffs have plausibly alleged that Renaud is a controlling person, who culpably participated in Section 10(b) violations. *See In re Chemours Co. Sec. Litig.*, 587 F. Supp. 3d 143, 170 (D. Del. 2022) (denying dismissal of a 20(a) claim where CEO "review, approved, signed, and certified" SEC filings alleged to contain false representations).

For the reasons stated above, the Court grants Director Defendants' motion to dismiss Count IV (D.I. 51; D.I. 49) and denies Bain, Pfizer, and Renaud's motion to dismiss Count IV (D.I. 43; D.I. 39; D.I. 50).

## IV.    CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Defendants' motions to dismiss. An Order consistent with this Memorandum Opinion will be entered.