# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE CEREVEL THERAPEUTICS HOLDINGS, INC. SECURITIES LITIGATION | ) ) ) ) ) ) | Case No. 25-cv-417-GBW |

**BAIN CAPITAL INVESTORS, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. §1292(b), OR IN THE ALTERNATIVE, FOR RECONSIDERATION OR REARGUMENT OF THE <u>COURT'S MARCH 30, 2026 ORDER</u>**

OF COUNSEL:

Peter L. Welsh
Daniel V. McCaughey
Elena W. Davis
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Martin J. Crisp
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000

A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
Clara Hubbard (#7320)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19801
(302) 778-1000

*Counsel for Defendant Bain Capital Investors, LLC*

Dated:  April 29, 2026

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ......................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 1

ARGUMENT ...................................................................................................................... 6

I.    The Court Should Certify Questions Arising From Its March 30, 2026 Order Regarding Section 20A For Interlocutory Appeal. ....................................................................... 6

    A.    Substantial Ground for Difference of Opinion Exists as to Whether Section 20A Requires Pleading a Predicate Violation of Insider Trading. ................................. 7

    B.    Substantial Ground for Difference of Opinion Exists as to Whether a Section 20(a) Control-Person Violation That Occurs *After* the Relevant Alleged Insider Trading Can Serve as the Predicate Violation for Section 20A. ................................................................ 11

    C.    Substantial Ground for Difference of Opinion Exists as to Whether There Can Be a Deceptive Breach of a Duty Under Insider Trading Law By a Purchaser When There Is Informational Parity With the Seller. .................................................................... 13

    D.    Substantial Ground for Difference of Opinion Exists as to Whether Plaintiffs Can State a Section 20A Claim Without Having Pled Bain's Scienter. ................................................ 16

    E.    These Issues Are Controlling Questions of Law That Would Materially Advance The Litigation. ........................................................................................................... 18

II.    The Court Should Certify the Question of Whether Culpable Participation Must Be Pled For Section 20(a) Claims. ............................................................................................ 19

III.    In the Alternative, The Court Should Reconsider Its Order Sustaining Plaintiffs' Section 20A and Section 20(a) Claims Against Bain. ......................................................... 20

CONCLUSION ................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Inc. v. Marsh Funding LLC*,
2024 WL 4751426 (D. Del. Nov. 12, 2024) ...............................................................7

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*,
877 F.3d 136 (3d Cir. 2017)......................................................................................16

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008)..............................................................10

*Bell v. Fore Sys.*,
2002 WL 32097540 (W.D. Pa. Aug. 2, 2002) .....................................................13, 20

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................ *passim*

*DeMarco v. Roberston Stephens Inc.*,
318 F. Supp. 2d 110 (S.D.N.Y. 2004).............................................................9, 10, 14

*Dirks v. SEC*,
463 U.S. 646 (1983)...........................................................................................2, 3, 17

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974) (en banc)...................................................................7, 19

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024)..............................................................................................12, 15

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
2008 WL 2178150 (N.D. Ill. May 22, 2008) ............................................................10

*MicroCapital Fund LP v. Conn's Inc.*,
2019 WL 3451153 (S.D. Tex. July 24, 2019)...........................................................11

*Mylan Pharma. Inc. v. Celgene Corp.*,
2015 WL 409655 (D.N.J. Jan. 30, 2015)..................................................................19

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007).............................................................2, 9, 10

*RLI Ins. Co. v. Indian River Sch. Dist.*,
2008 WL 2686242 (D. Del. July 8, 2008) ..................................................................7

*Rotkiske v. Klemm*,
    890 F.3d 422 (3d Cir. 2018)................................................................................13

*Salman v. United States*,
    580 U.S. 39 (2016)...........................................................................................11

*SEC v. Tex. Gulf Sulphur Co.*,
    401 F.2d 833 (2d Cir. 1968)..............................................................................15

*SEIU Pension Plans Master Tr. v. Bain Cap. Invs., LLC*,
    No. 2024-1274-JTL (Del. Ch.) ....................................................................14, 18

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999), *as amended* (Aug. 4, 1999)................................17

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)..................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................5, 16, 18

*Thomson Reuters Enterprise Centre GmbH v. Ross Intelligence*,
    2025 WL 1488015 (D. Del. May 23, 2025).........................................................12

*U.S. v. McGee*,
    763 F.3d 304 (3d Cir. 2014)..............................................................................17

*United States v. Aion Mgmt., LLC*,
    2025 WL 1770791 (D. Del. June 26, 2025)......................................................7, 19

*United States v. O'Hagan*,
    521 U.S. 642 (1997)..................................................................................14, 15, 16

*In re Valeant Pharmaceuticals, Int'l, Inc. Sec. Litig.*,
    2019 WL 2724075 (D.N.J. June 30, 2019).........................................10, 11, 13, 17

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products
    Liability Litig.*,
    328 F. Supp. 3d 963 (N.D. Cal. 2018) ..................................................................9

**Statutes, Rules, and Other Authorities**

28 U.S.C. §1292(b) ................................................................................... iv, 7

15 U.S.C. § 78t-1 ....................................................................................2, 8, 13

H.R. Rep. No. 100-910 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 6043, 6048...........................9

District of Delaware Local Rule 7.1.5 ......................................................................7

Rule 10b-5.................................................................................................................7, 12, 15

## NATURE AND STAGE OF THE PROCEEDINGS

On October 30, 2025, Bain Capital Investors, LLC ("Bain") and other Defendants moved to dismiss Plaintiffs' consolidated amended complaint (the "Complaint"). *See* D.I. 19; D.I. 40, 45, 46, 53, 55, 57. On March 30, 2026, this Court issued an Order and Memorandum Opinion on Defendants' Motions to Dismiss. D.I. 106 and D.I. 107 (together, the "Order"). The Court denied in part Bain's motion to dismiss, holding that Plaintiffs stated claims against Bain under Section 20A and Section 20(a). Bain respectfully submits this brief in support of its motion for certification of interlocutory appeal under 28 U.S.C. §1292(b) or, in the alternative, reconsideration of the Order or reargument.

## SUMMARY OF ARGUMENT

1.      This case presents one of the exceptional circumstances justifying interlocutory review, or in the alternative, reconsideration. In allowing Plaintiffs' Section 20A claim against Bain to proceed, this Court adopted Plaintiffs' formulation of four complex, controlling questions of law concerning Section 20A of the Exchange Act and the application of insider trading law to a Section 20A claim. Bain respectfully submits that the Court's resolution of these issues was contrary to binding, well-settled Supreme Court precedent on the requirements for pleading an insider trading violation.

2.      Section 20A, titled "[l]iability to contemporaneous traders for insider trading," provides contemporaneous traders with a private right of action against persons who violate the Exchange Act "***by purchasing or selling a security*** while in possession of material, nonpublic information." 15 U.S.C. § 78t-1.[1] As the plain language and title of the statute make clear, to

---

[1] Unless otherwise noted, all emphases have been added and all internal citations and quotation marks have been omitted.

plead a viable Section 20A claim, a plaintiff must allege facts sufficient to plead an insider trading violation under the Exchange Act. *See, e.g.*, *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 664-65 (S.D.N.Y. 2007) ("[T]here can only be § 20A liability if the predicate violation of the Exchange Act was an act of insider trading.").

3.      The elements of an insider trading claim are well-established under decades of Supreme Court precedent, and require that a plaintiff plead particularized facts showing, among other things, that the defendant (i) traded securities in breach of a duty of trust or confidence, and (ii) acted with scienter, or fraudulent intent, subject to the exacting pleading standards of the PSLRA. *See, e.g.*, *Dirks v. SEC*, 463 U.S. 646, 653, 663 n.23 (1983) (breach of a duty and scienter are required for insider trading).

4.      The Order adopted a contrary formulation advanced by Plaintiffs, concluding that Plaintiffs had pled a viable Section 20A insider trading claim against Bain based on a predicate violation for Section 20(a) control person liability. But that claim is analytically distinct from, and does not involve, insider trading (or even the purchase or sale of a security)—it relates solely to disclosures made by Cerevel that occurred ***after*** the trades in question. As a result of adopting Plaintiffs' framework, the Order did not evaluate whether Plaintiffs sufficiently alleged facts showing that Bain purchased shares from Cerevel in the October 2023 offering (the "Offering") either (i) in breach of any duty of trust or confidence owed to the source of the information or to Bain's counterparty, or (ii) with scienter.

5.      Although certain decisions from other district courts in the Third Circuit suggest that a Section 20A claim can be based on any "predicate violation" of the Exchange Act, Bain respectfully submits that the predicate violation must be an insider trading violation and that, in order to state a Section 20A claim, a plaintiff must plead each element of such a predicate violation,

***including a deceptive breach of a duty owed either to the source of the information or to Bain's***

***counterparty***.  Although the Third Circuit itself has not yet weighed in on this question, numerous decisions from other federal courts support Bain's position.  After all, Section 20A provides a private right of action ***for insider trading***, and not for disclosure-related violations of the Exchange Act—let alone disclosure violations that occurred after the trading in question.  Permitting a Section 20A claim for insider trading to proceed without particularized allegations sufficient to plead intentional deception would contradict black-letter Supreme Court law rejecting the notion that the securities laws' "antifraud provisions require equal information among all traders" and which provides, instead, that insider trading claims require "manipulation or deception." *Dirks*, 463 U.S. at 654, 657.

6.    All of the elements necessary to justify interlocutory review are satisfied here.  The differing standards from existing case law regarding the nature of a "predicate violation" for purposes of Section 20A reflect substantial ground for difference of opinion, the resolution of which would materially advance the termination of this litigation.  Moreover, at the motion-to-dismiss stage, this case presents a clean opportunity for the Third Circuit to provide precedential guidance on issues it has yet to address.  As explained below, four interrelated and controlling questions of law are appropriate for certification.

7.    ***The first question*** is whether a plaintiff must plead an insider trading violation of the Securities Exchange Act of 1934 (the "Exchange Act") to state a claim under Section 20A. This question of law has been a stumbling block for several district courts.  Bain submits that the plain language of Section 20A requires that the predicate violation involve insider trading, and cannot be a mere disclosure violation, but the Third Circuit has not yet weighed in on this question. Here, if the predicate violation must relate to insider trading, then the Section 20(a) control person

claim against Bain for allegedly controlling disclosure-related violations could not be the predicate violation for Plaintiffs' Section 20A claim against Bain, and the Court should dismiss the Section 20A claim. *See* D.I. 106 at 29, 32.

8.        ***The second question*** is, even if a disclosure violation could serve as the predicate claim for the Section 20A claim, can a Section 20(a) control-person disclosure violation that occurs ***after*** the relevant trade serve as the predicate violation for Section 20A?  Bain respectfully submits that the underlying violation that gives rise to the Section 20A claim cannot have occurred after the relevant trade.  To give rise to a private right of action under Section 20A, the underlying violation of the Exchange Act must have preceded the trade in question; otherwise, there can be no liability for insider trading under Section 20A.  Bain acknowledges that the Third Circuit has not addressed this question.  If a claim for the predicate violation must have accrued ***before*** the relevant trade, then the Section 20(a) claim against Bain for allegedly controlling disclosure violations by Cerevel could not be the predicate for Plaintiffs' Section 20A insider trading claim, as the ***earliest*** predicate disclosure violation that Plaintiffs successfully alleged occurred on November 1, 2023—***after*** Bain's purchase in the Offering.  *See* D.I. 106 at 18-21.

9.        ***The third question*** is whether a predicate violation of insider trading under Section 20A requires a deceptive breach of a duty of trust or confidence by the defendant, consistent with decades of Supreme Court precedent in insider trading cases.  Under well-settled Supreme Court precedent, in order to commit an insider trading violation under the Exchange Act, the defendant in question must have traded in possession of material non-public information ("MNPI") and while committing a deceptive breach of a duty owed either to the source of the alleged MNPI or to the counterparty with whom the defendant traded.  Critically, this required element cannot be satisfied here, because ***Cerevel was both the source of any alleged MNPI and was Bain's counterparty in***

4

*the Offering*, and Cerevel had all of the same alleged MNPI that Bain had.  In other words, there was no deception.  In its decision, the Court suggests that defendants owed a duty to disclose any alleged MNPI publicly to the market as a whole.  D.I. 106 at 15-16. But Section 10(b) does not impose an affirmative duty to disclose to the market or to the trading public, if the trader did not trade with the market or the trading public.  Here, ***Bain purchased shares from Cerevel in the Offering, not from the secondary market, and Cerevel had the exact same information that Bain had***.  The determination in the Order that Bain could nevertheless have committed insider trading—without well-pled facts establishing that Bain deceptively breached any duty (or to whom)—creates a substantial ground for difference of opinion on this issue.

10.    ***The fourth question*** is whether Section 20A requires a plaintiff to plead facts giving rise to a strong inference of the defendant's scienter, subject to the heightened pleading requirements of the PSLRA.  Scienter is an established element of an insider trading violation, and the PSLRA's pleading requirements are specifically intended to serve "to screen out frivolous suits, while allowing meritorious actions to move forward." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  Under the PSLRA, only complaints with a sufficiently strong inference of scienter will survive a motion to dismiss. *Id.* at 323-24.  The Order did not address whether Plaintiffs' allegations of scienter with respect to Bain's purchase in the Offering met the PSLRA's standards.  Nor did it weigh the far more compelling inference of non-fraudulent intent arising from the undisputed fact that the Offering diluted Bain's ownership stake in Cerevel—and therewith its total returns from the merger with AbbVie.  Bain lost money overall.  By allowing the Section 20A claim to proceed without any assessment of scienter, the Order creates a difference of opinion on this issue.

11.    Alternatively, if the Court were to decide these issues are not appropriate for certification, Bain respectfully moves for this Court to reconsider the Order.  Specifically, Bain submits that: (1) the Court misconstrued the plain language of Section 20A when it found that the Section 20(a) control-person claim against Bain, which was based on allegedly false and misleading statements by Cerevel and Renaud, could serve as the predicate violation; (2) the Court erroneously held that Plaintiffs alleged a Section 20A claim based on a disclosure violation that occurred *after* the alleged insider trading; (3) the Court erred by holding that Plaintiffs stated a Section 20A claim without pleading that Bain committed a deceptive breach of a duty to its counterparty or to its information source—which Bain could not have done as a matter of law; and (4) the Court erred by holding that Plaintiffs stated a claim without having pled Bain's scienter. Additionally, Bain joins in the motion filed by Defendant Pfizer, and submits that the Court should certify or reconsider the question of whether culpable participation needs to be pled to state a claim under Section 20(a), or alternatively that the Court erred by holding that Plaintiffs stated a claim against Bain under Section 20(a) without having pled culpable participation.

## ARGUMENT[2]

### I.    The Court Should Certify Questions Arising From Its March 30, 2026 Order Regarding Section 20A For Interlocutory Appeal.

A district court may certify "an order not otherwise appealable" for interlocutory review by the Court of Appeals if such order: "(1) involve[s] a controlling question of law, (2) offer[s] substantial ground for a difference of opinion as to its correctness, and (3) if appealed immediately [would] materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b); *United*

---

[2] Because of the Court's familiarity with this case and in the interest of judicial economy, Bain incorporates by reference the Background in its Opening Brief in support of its Motion to Dismiss. D.I. 45 at 4-7.

*States v. Aion Mgmt., LLC*, 2025 WL 1770791, at *3 (D. Del. June 26, 2025); *see also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc).  Here, all three factors weigh in favor of certification for each of the four issues presented.

Motions to reconsider interlocutory orders invoke "the district court's general discretionary authority to review and revise interlocutory rulings."  *Aion*, 2025 WL 1770791, at *2.  A court should reconsider an interlocutory order when the "previous ruling, even if unambiguous, might lead to an unjust result."  *Id.*; *see Adobe Inc. v. Marsh Funding LLC*, 2024 WL 4751426, at *3 (D. Del. Nov. 12, 2024) (reconsideration warranted if "need[ed] to correct a clear error of law or fact to prevent manifest injustice.").[3]  To the extent the Court determines certification not to be appropriate here, the Court should exercise its discretion to reconsider the Order.  While the four issues presented here are complex, the weight of authority supports Bain's positions.  If these clear errors of law are left uncorrected, they will lead to an unjust result.

**A.    Substantial Ground for Difference of Opinion Exists as to Whether Section 20A Requires Pleading a Predicate Violation of Insider Trading.**

The first question appropriate for certification is whether a plaintiff must plead a viable insider trading violation to state a claim under Section 20A.  In the Order, the Court held that Plaintiffs sufficiently alleged a predicate violation of the Exchange Act based on their Section 20(a) disclosure-based claim against Bain. D.I. 106 at 29.  The Section 20(a) claim sought to hold Bain liable as a control person for allegedly false and misleading statements made by Cerevel and Renaud.  *See* D.I. 106 at 13 (Plaintiffs alleged that "Cerevel and Renaud violated § 10(b) of the Exchange Act and SEC Rule 10b-5 by knowingly making misleading statements and omissions in

---

[3] In the alternative to reconsideration, this Court should allow for reargument under District of Delaware Local Rule 7.1.5.  *See RLI Ins. Co. v. Indian River Sch. Dist.*, 2008 WL 2686242, at *1 (D. Del. July 8, 2008) (reargument should be granted if: (1) the court has patently misunderstood a party; (2) the court has made an error not of reasoning, but of apprehension; or (3) the court has made a decision outside the scope of the issues presented to the court by the parties).

7

connection with the October Offering, merger, and Proxy."), 32 (finding that Plaintiffs sufficiently alleged a Section 10(b) violation, "thereby satisfying the requirement of an underlying securities violation" for the Section 20(a) claim against Bain); D.I. 68 (Answering Brief) at A-3.  Under that approach, the Order did not evaluate whether Plaintiffs adequately pled the elements of an insider trading violation.  The Order accordingly permits a Section 20A claim to proceed based on a disclosure-related "predicate violation" that does not involve insider trading.[4]   The question of whether the predicate violation must involve insider trading is appropriate for certification.

The plain language of Section 20A creates a private right of action against investors who commit insider trading.  Section 20A states in relevant part:

> (a)    **Private rights of action based on contemporaneous trading.**  Any person ***who violates any provision of this chapter*** [the Exchange Act] or the rules or regulations thereunder ***by purchasing or selling a security while in possession of material, nonpublic information*** shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities ***that is the subject of such violation***, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

15 U.S.C. § 78t-1; *see also* D.I. 88 at 2-3; *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1202 (C.D. Cal. 2008) ("[T]he legislative history as well as the plain text of Section 20A" support the conclusion that the predicate violation must be an act of insider trading).  The statute's title—"Liability to contemporaneous traders for insider trading"—confirms this reading.  Congress enacted Section 20A to expand the class of plaintiffs who could sue for insider trading, not to create a new cause of action untethered from insider trading's essential elements.  *See* H.R. Rep. No. 100-910, at 11 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 6043, 6048 ("[T]he Committee does not intend to alter the substantive law with respect to insider trading with this legislation.").

---

[4] Plaintiffs' Section 20(a) claim against Bain is specifically based on Cerevel's failure to disclose "AbbVie's merger interest and Cerevel's related launch of a sales process."  ¶ 174.

Accordingly, the majority of courts to address the issue have held that a Section 20A predicate violation must involve insider trading. *See, e.g.*, *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008) (plaintiffs must "plead a predicate insider trading violation of the Exchange Act"); *Countrywide*, 588 F. Supp. 2d at 1202 ("It bears emphasis that the predicate violation must be made '*by* purchasing or selling.'  Though there is some dicta suggesting the contrary in cases not binding on this Court, this language means that the predicate violation must be an act of insider trading, not just trading while simultaneously committing a free-floating '34 Act violation." (emphasis in original)); *Refco*, 503 F. Supp. 2d at 665 ("[T]here can only be § 20A liability if the predicate violation of the Exchange Act was an act of insider trading."); *see also DeMarco v. Roberston Stephens Inc.*, 318 F. Supp. 2d 110, 126 (S.D.N.Y. 2004) (Section 20A "creates a private right of action ***to enforce the existing prohibition on insider trading under § 10(b) caselaw***.").  These courts thus evaluated whether the plaintiffs had pled the elements of an actionable insider trading claim, and ruled on the Section 20A claim accordingly. *See Countrywide*, 588 F. Supp. 2d at 1202-03 (plaintiffs sufficiently stated a predicate claim under the "classical theory" of insider trading); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 328 F. Supp. 3d 963, 986-87 (N.D. Cal. 2018) (dismissing Section 20A claim where predicate insider trading claims failed because defendants owed no duty to the plaintiff); *DeMarco*, 318 F. Supp. 2d at 126 (dismissing Section 20A claim where there were no allegations that defendant was a corporate insider who violated his fiduciary duty to the shareholders, as required under the classic theory of insider trading).  That is precisely the analysis that the Court must undertake here—and Bain submits that, if it does, it should conclude that Plaintiffs have not stated an insider trading claim against Bain as a matter of law.

9

Consistent with these holdings, courts have also held that a Section 20(a) control person claim based on a disclosure violation cannot constitute a Section 20A predicate. *See, e.g.*, *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *27 (C.D. Cal. July 1, 2008) (Section 20(a) may serve as Section 20A predicate "only where the [20(a)] claim . . . relates to insider trading"); *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 2008 WL 2178150, at *2 (N.D. Ill. May 22, 2008) (no Section 20A claim predicated on Section 20(a) where defendant "[was] not alleged to have violated Section 20(a) by engaging in insider trading (or by controlling someone who did)"). Indeed, this Court relied on *Refco* for the proposition that a Section 20(a) claim can serve as the predicate violation under Section 20A. D.I. 106 at 29. But *Refco* also unequivocally states: "[T]here can only be § 20A liability if the predicate violation of the Exchange Act was an act of insider trading." 503 F. Supp. 2d at 665. By contrast, allowing a Section 20A claim to proceed based on a non-insider-trading predicate conflicts with the statute's plain text application to "any person ***who violates any provision of this chapter*** or the rules or regulations thereunder ***by purchasing or selling a security while in possession of material, nonpublic information***."

One court in this Circuit has suggested otherwise in non-binding *dicta*, despite acknowledging that the plaintiffs had indeed pled an underlying insider trading violation by at least one defendant. *See In re Valeant Pharmaceuticals, Int'l, Inc. Sec. Litig.*, 2019 WL 2724075, at *6 (D.N.J. June 30, 2019).[5] In *Valeant*, the District of New Jersey held that "[d]efendants' argument that the predicate violation *must* be an insider trading violation is directly contradicted by Third Circuit precedent," relying on the Third Circuit's opinion in *City of Edinburgh Council v. Pfizer,*

---

[5] Certain other courts outside of the Third Circuit have allowed Section 20A claims to proceed where the predicate violation was a disclosure violation (albeit without squarely addressing the issue). *See MicroCapital Fund LP v. Conn's Inc.*, 2019 WL 3451153, at *24 (S.D. Tex. July 24, 2019) (allowing Section 20A claim to proceed where plaintiffs "stated a claim under section 10(b) for at least some of [defendants'] alleged misstatements").

10

*Inc.*, 754 F.3d 159 (3d Cir. 2014). 2019 WL 2724075, at *6 (emphasis in original).[6]  But as Bain explained in its reply brief, the Third Circuit in *Edinburgh* did not even mention, let alone decide, the question of whether a predicate violation for Section 20A must involve insider trading.  Instead, the Third Circuit found there was no insider trading violation under Section 20A because the plaintiffs "failed to adequately plead a predicate Section 10(b) violation" against two defendants who traded in the company's stock.  *Edinburgh*, 754 F.3d 159 at 175-76.  Of course, insider trading is a paradigmatic violation of Section 10(b)'s prohibition of fraudulent or deceptive schemes or devices in connection with the purchase or sale of securities, *see Salman v. United States*, 580 U.S. 39, 41-42 (2016), so the statement by the Third Circuit in *Edinburgh* is fully consistent with the statutory requirement that a "predicate violation" for Section 20A must involve insider trading.

Although Bain submits its position here is correct, Bain recognizes that a few district courts have reached opposite conclusions on this issue, and—contrary to *Valeant*'s suggestion—the Third Circuit has ***not*** issued precedential guidance on this issue.  Accordingly, there is substantial ground for difference of opinion on this issue and it should be certified for interlocutory appeal.  Indeed, even if this Court is confident in its ruling, it should "acknowledge that [this question is] hard under existing precedent" and certify the question.  *See Thomson Reuters Enterprise Centre GmbH v. Ross Intelligence*, 2025 WL 1488015, at *1 (D. Del. May 23, 2025).

**B.      Substantial Ground for Difference of Opinion Exists as to Whether a Section 20(a) Control-Person Violation That Occurs *After* the Relevant Alleged Insider Trading Can Serve as the Predicate Violation for Section 20A.**

The second question appropriate for certification is whether, even if a disclosure violation could serve as the predicate claim for the Section 20A claim, that disclosure violation may occur

---

[6] Tellingly, even in *Valeant*, the Court concluded that it needed to separately analyze the sufficiency of the plaintiffs' allegations of the defendants' scienter with respect to the trading in question, concluding that the related-disclosure allegations were not independently sufficient to support the insider trading claim under Section 20A.  *Id*. *6–7.  *See infra* Section I.D.1.

*after* the relevant alleged insider trading.  The Court held that the *earliest* "misleading" statement Plaintiffs sufficiently pled was the November 1, 2023 earnings call.  *See* D.I. 106 at 18-21 (Renaud's failure to mention "merger discussions and the actual reason for the October Offering" when asked about the decision to raise equity capital was plausibly alleged to be misleading).  But this statement was made *weeks after* Bain purchased shares in the Offering, which was approved on October 10, 2023, publicly announced on October 11, 2023, and closed on October 16, 2023. *Id.* at 6.[7]  As a result, under the reasoning of the Court's Order, Plaintiffs have failed to plead the existence of even a control person disclosure violation at the time Bain traded.

Plaintiffs cannot impose Section 20A liability for insider trading based on an underlying Exchange Act violation that had not yet occurred at the time of the trade, for the simple reason that there cannot be any unlawful trade under Section 20A before there is any underlying violation of the Exchange Act.  For Plaintiff to have a Section 20A claim here, it would require a trade that was entirely lawful at the time it was made to somehow become unlawful based on subsequent events that had not yet occurred at the time of the trade.  Accordingly, the only logical reading of Section 20A is that liability attaches at the time of the alleged insider trades—not at some indeterminate time in the future.  *See Valeant*, 2019 WL 2724075 at *6 (finding plausible predicate

---

[7] While the Court held that Cerevel had a duty to disclose the discussions about the potential merger with AbbVie, *see* D.I. 106 at 16, under the Court's ruling, November 1, 2023 was the earliest-in-time Section 10(b) violation by Cerevel or Renaud because Section 10(b) claims cannot be brought for "pure omissions." *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264-65 (2024) (holding that "Rule 10b–5(b) does not proscribe pure omissions" and "[e]ven a duty to disclose . . . does not automatically render silence misleading under Rule 10b–5(b)"—rather, the failure to disclose information can support a claim "only if the omission renders affirmative statements made misleading."); D.I. 106 at 19 (in analyzing statements made before November 1, 2023, like the October 11, 2023 press release, noting that "[w]hile the Court has found that Plaintiffs have sufficiently pled both the existence of a duty and the materiality of the merger negotiations, the limited content of the press release, as set forth in the Amended Complaint, could not reasonably mislead a reasonable investor.").

12

violation related to allegedly misleading statements in February where relevant trades occurred in June); 15 U.S.C. § 78t-1 (imposing liability on "[a]ny person who violates any provision of this chapter or the rules or regulations thereunder *by purchasing or selling a security*").[8]  The Order itself creates a difference of opinion on this issue, compared with cases that connect a Section 20A insider trading violation to a prior or simultaneous alleged misrepresentation.

Further, Bain is aware of no case law addressing this precise temporal question in the Section 20A context.  *See Bell v. Fore Sys.*, 2002 WL 32097540, at *5–6 (W.D. Pa. Aug. 2, 2002) (a substantial ground of differing opinion can involve "interpretation of a statutory provision on which there is no prior case law."); *Thomson Reuters*, 2025 WL 1488015, at *1 (finding the substantial ground for difference of opinion element satisfied where circuit court had not yet spoken on this "novel and difficult question[] of first impression").

### C.    Substantial Ground for Difference of Opinion Exists as to Whether There Can Be a Deceptive Breach of a Duty Under Insider Trading Law By a Purchaser When There Is Informational Parity With the Seller.

The third question appropriate for certification is whether a purchaser of securities can commit insider trading—which requires a *deceptive* breach of a duty—where the purchaser purchases securities from an issuer with whom it has complete informational parity.  In its Order, this Court did not reach the issue of whether *Bain* had committed a deceptive breach of any duty, but it allowed the Section 20A claim against Bain to proceed nevertheless.

Numerous court opinions and express legislative history confirm that Section 20A incorporates—without modifying—existing insider trading law.  *See DeMarco,* 318 F. Supp. 2d

---

[8] The statute of limitations for Section 20A is further consistent with this reading, as it begins to run on "the date of the last transaction that is the subject of the violation."  15 U.S.C. § 78t-1(b)(4); *see Rotkiske v. Klemm*, 890 F.3d 422, 425 (3d Cir. 2018) (in fixing the start of a limitations period, Congress generally chooses either the "date the injury actually occurred" or the "date the aggrieved party knew or should have known of the injury").

13

at 126 ("The section creates a private right of action to enforce the existing prohibition on insider trading under § 10(b) caselaw and does not create a new definition of insider trading").  Although the statute expands the group of plaintiffs who can sue  for insider trading, it still requires a plaintiff to plead the elements of an insider trading claim.  *See Countrywide*, 588 F. Supp. 2d at 1202 (Section 20A "predicate violation must be an act of insider trading, not just trading while simultaneously committing a free-floating '34 Act violation'").

Well-settled Supreme Court precedent establishes that an essential element of an insider trading claim is a deceptive breach of a specific duty.  In *Chiarella v. United States*, the Supreme Court explained that Section 10(b) does ***not*** create a "parity of information rule" or a "general duty between all participants in market transactions to forgo actions based on material, nonpublic information," but that, under the theory of insider trading that came to be known as the "classical theory," liability must be premised on "a duty to disclose arising from a relationship of trust and confidence ***between parties to a transaction***."  445 U.S. 222, 227-33 (1980); *see also United States v. O'Hagan*, 521 U.S. 642, 652 (1997) (classical theory "targets a corporate insider's breach of duty to shareholders ***with whom the insider transacts***").  When the Supreme Court endorsed the alternative "misappropriation theory" of insider trading in *O'Hagan*, the Court held that there must be a deceptive breach of duty ***to the trader's source of the confidential information to state a claim under that theory***.  *See* 521 U.S. at 655 (no "deceptive device," and thus no Section 10(b) violation, where trader "discloses to the source that he plans to trade on the nonpublic information").[9]

---

[9] Unlike Section 11 of the Securities Act of 1933 (the "Securities Act"), Section 10(b) does not impose liability for a failure to speak.  *Macquarie*, 601 U.S. at 258; *see Chiarella*, 445 U.S. at 228 ("[O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud [under Section 10(b)] only when he is under a duty to do so. . . . [The] duty to disclose [arises] because of the necessity of preventing a corporate insider from . . . tak[ing] unfair

14

Under well-settled Supreme Court precedent, then, to plead a Section 20A claim, a plaintiff must plead a breach of a duty either to a trading counterparty or to an information source. *See Countrywide*, 588 F. Supp. 2d at 1202 (a court must determine "whether the Section 20A [d]efendants engaged in insider trading that is actionable under the '34 Act"—in other words, whether liability was under "(1) the traditional or classical theory . . . [or] (2) [the] misappropriation theory")). A plaintiff must also plead that the breach involved the use of some type of deceptive device. *See O'Hagan*, 521 U.S. at 655 (Section 10(b) is "not an all-purpose breach of fiduciary duty ban; rather, it trains on conduct involving manipulation or deception.").

These elements have not been pled here. Bain (the purchaser) and Cerevel (the seller) shared informational parity regarding the limited discussions with AbbVie that preceded the Offering. Bain therefore did not breach any duty to a counterparty under the classical theory, because it purchased shares in an Offering by the Company. And it did not breach any duty to the source of the information—the Company—because Cerevel authorized Bain to participate in the Offering. As a result, there was no "conduct involving manipulation or deception." *See O'Hagan*, 521 U.S. at 655. Those facts distinguish this case from *McCormick v. Fund American Cos., Inc.*— relied on in the Order, *see* D.I. 106 at 16—where the issuer traded with uninformed stockholders.

---

advantage of the uninformed minority stockholders."); *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir. 1968) (the "essence" of Rule 10b-5 prohibits traders from "tak[ing] advantage of [information intended to be available only for a corporate purpose] knowing it is unavailable to those with whom he is dealing, i.E., the investing public."). Plaintiffs have not asserted any claims under Section 11, nor could they, because Plaintiffs did not purchase shares in the Offering, so they do not have standing to sue under the Securities Act. *See Countrywide*, 588 F. Supp. 2d at 1170 n.47 (the "universe of plaintiffs [who have standing under Section 11 of the Securities Act] contains only those who purchased pursuant to the registration statement.").

15

*See* 26 F.3d 869, 876 (9th Cir. 1994) (a "corporate issuer in possession of [MNPI] must . . . disclose that information to its shareholders *or refrain from trading with them*.").[10]

Neither the parties' briefs nor the Order identify any precedent for an insider trading claim surviving a motion to dismiss absent allegations of a deceptive breach of a duty. Supreme Court decisions preclude any such claim. With no Third Circuit authority directly on point in the Section 20A context, at the very least, there is a substantial ground for difference of opinion on this issue.

### D.    Substantial Ground for Difference of Opinion Exists as to Whether Plaintiffs Can State a Section 20A Claim Without Having Pled Bain's Scienter.

The fourth question appropriate for certification is whether Plaintiffs are required to have alleged particularized facts supporting a compelling inference that Bain acted with fraudulent intent when it purchased shares in the Offering, subject to the heightened pleading standards of the PSLRA. The Order did not address the adequacy of Plaintiffs' scienter allegations with respect to Bain's purchase in the Offering. Nor did it evaluate whether any conceivable inference of scienter was outweighed by the inference of non-fraudulent intent supported by the undisputed fact that Bain diluted its own ownership through the Offering, as required under *Tellabs*.

As noted above, Section 20A did not alter the pre-existing law of insider trading, which indisputably requires scienter. *See Dirks*, 463 U.S. at 653, 663 n.23 (a violation may be found only where there is "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities."). Indeed, district courts have explicitly

---

[10] For the first time, at oral argument, Plaintiffs asserted that Bain technically purchased its shares from the underwriters of the Offering. But any claimed deception of the underwriters is nowhere pled in the Amended Complaint and Plaintiffs failed to brief that argument and accordingly waived it. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 148-49 (3d Cir. 2017). Nor could Plaintiffs have alleged that Bain breached any duty to, or in any way deceived, the underwriters because Cerevel was the real seller in interest with authority to determine the ultimate price of the Offering and the party ultimately affected by the price of the Offering. By contrast, the underwriters effectively brokered the sale of the Offering shares at a pre-determined price payable to Cerevel.

16

held that Section 20A claims require scienter and the allegations must meet the PSRLA's rigorous standards. *See Valeant*, 2019 WL 2724075, at *8, *10 ("The PSLRA requires plaintiffs bringing Section 20A claims to allege facts giving rise to a strong inference of scienter."); *Countrywide*, 588 F. Supp. 2d at 1202-03 (a court evaluating a Section 20A claim must determine "whether the Section 20A [d]efendants engaged in insider trading that is actionable under the '34 Act," which requires an evaluation of "the scienter, loss causation, and loss elements").

By declining to address whether Plaintiffs met the PSLRA's heightened pleading requirements for scienter, the Order accepted Plaintiffs' contention that "the Court does not need to address the issue of scienter." *See* D.I. 68 at 17. That implicit reasoning conflicts with decades of insider trading law because it essentially converts the securities laws' anti-fraud provisions into a standard approaching strict liability. *See Chiarella*, 445 U.S. at 234-35 ("Section 10(b) is aptly described as a catchall provision, but what it catches must be fraud."); *U.S. v. McGee*, 763 F.3d 304, 311 (3d Cir. 2014) ("Deception through nondisclosure, therefore, is the crux of insider training liability."). It is inconsistent with the purpose of the PSLRA, which is to serve a gatekeeping function in deterring non-meritorious securities fraud lawsuits. *See, e.g.*, *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999), *as amended* (Aug. 4, 1999) ("It is clear from [legislative history] that Congress sought to reduce the volume of abusive federal securities litigation by erecting procedural barriers to prevent . . .baseless securities fraud claims.").

As explained in Bain's Opening Brief and Reply, Plaintiffs failed to meet the exacting requirements under the PSLRA to plead scienter. *See* D.I. 45 at 13-22; D.I. 88 at 6-8. The Complaint admits that the Offering diluted Bain's equity stake in Cerevel and therefore its overall economic returns. That admission is fatal to any compelling inference of scienter, as it would be economically irrational for Bain to orchestrate a dilutive offering to profit from alleged MNPI

17

when the exact opposite happened—Bain lost over $60 million as a result of the Offering.  The far more compelling non-fraudulent inference—which the Court was required to weigh under *Tellabs*—is that Bain supported and participated in the Company-endorsed Offering because of Cerevel's need to raise capital and extend its cash runway, and Bain's desire to support the Company in light of its existing investment—not that it orchestrated the Offering to profit from alleged MNPI.  *See* D.I. 45 at 13-22; D.I. 88 at 6-8.[11]  By failing to evaluate whether Section 20A requires scienter, the Order created a substantial ground for difference of opinion.

E. **These Issues Are Controlling Questions of Law That Would Materially Advance The Litigation.**

Each of the four issues presented in this brief—(i) whether the predicate violation must relate to insider trading; (ii) whether, even if a disclosure violation could serve as the predicate, that violation may occur **after** the relevant alleged insider trading; (iii) whether a purchaser of securities can commit insider trading where it purchases securities in an offering by an issuer with whom it has complete informational parity; and (iv) whether Section 20A requires scienter to be pled against the Section 20A defendant—is a controlling question of law involving the interpretation of the required elements of Section 20A and insider trading law.  *See Mylan Pharma. Inc. v. Celgene Corp.*, 2015 WL 409655, at *1 (D.N.J. Jan. 30, 2015) (pleading requirements under the Sherman Act are a controlling question of law).  These questions do not implicate any disputed facts or the sufficiency of the pleadings.  *Cf. Aion*, 2025 WL 1770791, at *4 (no controlling

---

[11] The Court of Chancery's denial of a motion to dismiss in *SEIU Pension Plans Master Tr. v. Bain Cap. Invs., LLC*, No. 2024-1274-JTL (Del. Ch.), does not change the analysis. There, Vice Chancellor Laster explained that the case is a "close call," with the "closest call" being whether the plaintiff had pled scienter; he reached that conclusion by applying a far more forgiving standard ("reasonable conceivability") than the PSLRA's.  *See* D.I. 45 Ex. 13 at 4, 21, 24; D.I. 45 at 17-18.

question of law where defendants challenged "whether the Court properly applied" certain pleading standards "to the allegations . . . in this specific case").

Moreover, the answers to these questions are significant to the litigation, and their resolution in Bain's favor would materially advance the litigation. *See Katz*, 496 F.2d at 755 (citing legislative history explaining that "controlling" means "serious to the conduct of the litigation, either practically or legally"). If the predicate offense must be an insider trading violation or must occur before the relevant trading, Bain submits that Plaintiffs have not pled a predicate violation and the Section 20A claim must be dismissed. The Section 20A claim similarly should be dismissed if Plaintiffs must allege a deceptive breach of a duty and scienter meeting the standards of the PSLRA. Thus, a ruling on these questions could lead to reversal of the Order allowing the Section 20A claim against Bain to proceed. *See Katz*, 496 F.2d at 755 ("A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal."). Additionally, as noted below, Bain joins Pfizer in submitting that the Court should additionally certify or reconsider the issue of whether Plaintiffs must plead culpable participation to state a Section 20(a) claim, which itself could also lead to dismissal of the Section 20(a) claim. But even if the Section 20(a) claim against Bain remains, dismissal of the Section 20A claim would eliminate a complex issue, significantly narrow the scope of discovery, and simplify trial. *See Aion*, 2025 WL 1770791, at \*5 (an interlocutory appeal materially advances the litigation if it "eliminates complex issues so as to simplify the trial" or "eliminates issues to make discovery easier and less costly."); *Bell*, 2002 WL 32097540, at \*5–6 (immediate appeal would "avoid the potential waste of resources that would result from an erroneous decision.").

## II.      The Court Should Certify the Question of Whether Culpable Participation Must Be Pled For Section 20(a) Claims.

19

Bain joins in Pfizer's request that the Court certify the question of whether culpable participation needs to be pled to state a claim under Section 20(a). Bain joins and incorporates in full Pfizer's Motion for Certification for Interlocutory Appeal or, Alternatively, for Reargument.

### III. In the Alternative, The Court Should Reconsider Its Order Sustaining Plaintiffs' Section 20A and Section 20(a) Claims Against Bain.

In the alternative, Bain respectfully submits that the Court should reconsider its Order to prevent the manifest injustice of allowing the Section 20A claim to proceed. *First,* it was a clear error of law to hold that Plaintiffs' Section 20(a) claim against Bain, which was based on allegedly false and misleading statements by Cerevel and Renaud, could serve as the predicate violation for Plaintiffs' Section 20A claim against Bain. *Second,* the Court's holding that Plaintiffs may allege a Section 20A claim based on Bain's alleged control liability for statements made *after* it traded was clear error. *Third,* the Court erred in holding that Plaintiffs stated a Section 20A claim without pleading that Bain committed a deceptive breach of a duty to its counterparty or to its information source—which Bain could not have done as a matter of law. *Fourth*, the case law and PSLRA require Plaintiffs to allege a strong inference of Bain's scienter to plead a Section 20A claim, and the Court erred by not evaluating scienter under the PSLRA. *Finally*, the Court erred by holding that Plaintiffs stated a Section 20(a) claim against Bain without having pled culpable participation.

### CONCLUSION

For these reasons, Bain respectfully requests that the Court certify questions arising from its March 30, 2026 Order for immediate interlocutory appeal, or, in the alternative, reconsider the Order.

OF COUNSEL:

Peter L. Welsh
Daniel V. McCaughey
Elena W. Davis
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
(617) 951-7000

Martin J. Crisp
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9000

/s/ *Christopher Fitzpatrick Cannataro*
A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
Clara Hubbard (#7320)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19801
(302) 778-1000

*Counsel for Defendant Bain Capital Investors,
LLC*

21